PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Judith Elkin (TX Bar No. 06522200)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD. | § § § | |
| Plaintiff, | § § | Case No. 3:21-cv-00842-B |
| vs. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. | § § § | |
| Defendants. | § § | |

## DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## AN ORDER TO ENFORCE THE ORDER OF REFERENCE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ...................................................................................4

    A.    Plaintiffs' Ownership and Control ...........................................................4
    B.    HarbourVest's Investment and Claims against the Debtor........................5
    C.    The HarbourVest Settlement and Objections ...........................................6
    D.    Plaintiffs Knew of the Transfer, and Plaintiff CLOH Objected to the
            Settlement ...............................................................................................7
    E.    The Dondero Parties Exercised their Right to Take Discovery...............8
    F.    The Bankruptcy Court Approves the Settlement .....................................9
    G.    The DAF and CLOH Sue the Debtor and Others in This Court............11
    H.    Counsel for the DAF and CLOH Willfully Ignore the Gatekeeper Orders ..........12

ARGUMENT .........................................................................................................15

    A.    Plaintiffs Violated Local Rule 3.3(a) By Failing to Disclose the
            Bankruptcy Case ...................................................................................15
    B.    The Complaint Should Be Automatically Referred to the Bankruptcy
            Court .....................................................................................................16
            i.       The Complaint Should Be Heard in the Bankruptcy Court. .....16
            ii.      The Order of Reference is Mandatory. .....................................17
            iii.     Any Disputes Over the Settlement or the Transfer Arise Under,
                      Arise In, and Relate to Title 11 and are Core Proceedings......18
            iv.     Any Disputes Over the Gatekeeper Orders Arise Under, Arise In,
                      and Relate to Title 11 and Are Core Proceedings....................19
            v.      The Complaint Impacts Creditor Recoveries............................20
             vi.     Mr. Seery Will Have Indemnification Claims Against the Estate. ............20
    C.    There is No Basis for a Mandatory Withdrawal of the Reference........................21
    D.    The Complaint Is Barred by the Doctrine of *Res Judicata* ....................23
    E.    This Court Should Consider Mr. Dondero's Litigious Nature ...............24

CONCLUSION.......................................................................................................25

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Angel v. Tauch*
  (*In re Chiron Equities, LLC*),
  552 B.R. 674 (Bankr. S.D. Tex. 2016) ...................................................................... 19

*Beta Operating Co., LLC v. Aera Energy, LLC*
  (*In re Memorial Prod. Partners*),
  2018 U.S. Dist. LEXIS 161159, at *9 (S.D. Tex. Sept. 20, 2018) .......................... 22

*Burch v. Freedom Mortgage Corp.*
  (*In re Burch*),
  385 Fed. Appx. 741 (5th Cir. 2021) .......................................................... 17, 18, 25

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ................................................................................................ 17

*Centrix Fin. Liq. Trust v. Sutton*,
  2019 U.S. Dist. LEXIS 154083 (D. Colo. Sept. 10, 2019) ..................................... 20

*Collins v. Sidharthan*
  (*In re KSRP, Ltd.*),
  809 F.3d 263 (5th Cir. 2015) ................................................................................... 21

*Comer v. Murphy Oil USA*,
  718 F.3d 460 (5th Cir. 2013) ................................................................................... 23

*Feld v. Zale Corp.*
  (*In re Zale Corp.*),
  62 F.3d 746 (5th Cir. 1995) ..................................................................................... 20

*Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*,
  510 F. 2d 272 (5th Cir. 1975) .................................................................................. 23

*Houston Baseball Partners, LLC v. Comcast Corp.*
  (*In re Houston Reg'l Sports Network*),
  2014 Bankr. LEXIS 2274, at *15-25 (Bankr. S.D. Tex. May 22, 2013) ................. 21

*In re Galaz*,
  841 F.3d 316 (5th Cir. 2016) ................................................................................... 19

*In re G-I Holdings, Inc.*,
  295 B.R. 211 (D. N.J. 2003) .................................................................................... 22

*In re Idearc, Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009) .................................................................... 18

*In re Margaux City Lights Partners, Ltd.*,
    2014 Bankr. LEXIS 4841 at *6 (Bankr. N.D. Tex. Nov. 24, 2014) ....................... 18

*In re Margulies*,
    476 B.R. 393 (Bankr. S.D.N.Y. 2012) .................................................................... 24

*In re National Gypsum*,
    14 B.R. 188 (N.D. Tex. 1991) .................................................................................. 22

*In re Republic Supply Co. v. Shoaf*,
    815 F.2d 1046 (5th Cir. 1987) ................................................................................. 24

*Manila Indus., Inc. v. Ondova Ltd.*
    *(In re Ondova Ltd.)*,
    2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009) ............................ 22

*Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.*
    *(In re Wolverine Radio Co.)*,
    930 F.2d 1132, 1143 (6th Cir. 1991) ...................................................................... 24

*Miller v. Meinhard-Commercial Corp.*,
    462 F.2d 358 (5th Cir. 1972) ................................................................................... 24

*Refinery Holdings Co., L.P. v. TRMI Holdings, Inc.*
    *(In re El Paso Refinery, L.P.)*,
    302 F.3d 343 (5th Cir. 2002) ................................................................................... 21

*Rodriguez v. EMC Mortgage Corp.*
    *(In re Rodriguez)*,
    2001 U.S. App. LEXIS 30564, at *5 (5th Cir. Mar. 15, 2001) ............................... 19

*See Kuzmin v. Thermaflo, Inc.*,
    2:07-CV-00554-TJW, 2009 U.S. Dist. LEXIS 42810,
    at *4-7 (E.D. Tex. May 20, 2009) ........................................................................... 16

*Southern Pac. Transp. v. Voluntary Purchasing Groups*,
    252 B.R. 373 (E.D. Tex. 2000) ................................................................................ 22

*UPH Holdings, Inc. v. Sprint Nextel Corp.*,
    2013 U.S. Dist. LEXIS 189349, at *4 (W.D. Tex. Dec. 10, 2013) ......................... 22

*Uralkali Trading, S.A. v. Sylvite Southeast, LLC*,
    2012 U.S. Dist. LEXIS 40455, at *3 (M.D. Fla. Mar. 26, 2012) ............................ 17

*Villegas v. Schmidt*,
    788 F.3d 156, 159 (5th Cir. 2015)........................................................................... 18

*Welch v. Regions Bank*,
    2014 U.S. Dist. LEXIS 96175, at *5 (M.D. Fla. July 15, 2014)............................. 17

*Wood v. Wood*
    *(In re Wood)*,
    825 F.2d 90 (5th Cir. 1987)............................................................................... 17, 18

## **Statutes**

11 U.S.C. § 1334......................................................................................................... 16

28 U.S.C. § 157....................................................................................................... passim

28 U.S.C. § 1927......................................................................................................... 25

## **Rules**

Bankr. N.D.Tex. R. 3.3 ......................................................................................... 15, 16

Bankr. N.D.Tex. R. 9014 ............................................................................................. 8

iv

Highland Capital Management, L.P., a defendant in the above-captioned case (the "Debtor" or "Highland"), submits this memorandum of law (the "Memorandum") in support of the *Debtor's Motion for an Order to Enforce the Order of Reference* (the "Motion"). In support of its Motion, the Debtor states as follows:

## PRELIMINARY STATEMENT[1]

1.     Highland is the debtor and debtor-in-possession in a bankruptcy case currently pending in the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), Case No. 19-34054-sgj11 (the "Bankruptcy Case"). The Bankruptcy Case has been pending since October 16, 2019, having been filed at the direction of James Dondero, who, on information and belief, is the person controlling and directing the actions of both The Charitable DAF Fund, L.P. (the "DAF") and CLO Holdco, Ltd. ("CLOH" and together with the DAF, "Plaintiffs") today. Both the DAF and CLOH have appeared and objected multiple times in the Bankruptcy Case.

2.     In one of those matters, the Bankruptcy Court approved a settlement between the Debtor and HarbourVest[2] (the "Settlement") pursuant to 11 U.S.C. §§ 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") over the objections of CLOH, a Plaintiff in this action, as well as other entities owned and/or controlled by Mr. Dondero. The Settlement is on appeal.[3]

---

[1] Concurrently herewith, the Debtor is filing the *Appendix in Support of the Debtor's Motion to Enforce the Reference* (the "Appendix"). Citations to the Appendix are notated as follows: Appx. #. The Complaint is Appx. 1.

[2] "HarbourVest" collectively refers to the following entities: HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P.

[3] The Settlement is being appealed by Mr. Dondero's two purported family investment trusts: The Dugaboy Investment Trust ("Dugaboy") and The Get Good Trust ("Get Good" and together with Dugaboy, the "Trusts"). The Trusts, like Plaintiffs, are controlled by Mr. Dondero. The appeal and this litigation are just one battle in Mr. Dondero's multifaceted litigation assault on the bankruptcy process.

1

3.       Plaintiffs filed their *Original Complaint* (the "Complaint")[4] in this Court seeking to have this Court undertake a *de facto* appeal or reconsideration of the Settlement and to assert monetary claims for actions undertaken in the Bankruptcy Case. However, the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (the "Order of Reference") (Appx. 2) in force in the Northern District of Texas required that this action be filed with the Bankruptcy Court presiding over the Bankruptcy Case. The Order of Reference was entered in 1984 and directs courts in this District to refer all proceedings arising under Title 11 and/or arising in or related to a case under Title 11 to the bankruptcy courts. A mandatory application of the Order of Reference prevents a race to the courthouse and inconsistent rulings by providing one forum to adjudicate ***all*** aspects of a bankruptcy case. Otherwise, debtors and creditors could blatantly forum shop and choose whether to file cases or claims in the bankruptcy court or the district court to evade what may be perceived as an unwelcoming court – which is precisely what has occurred in this case.[5] Here, the case for enforcing the Order of Reference is compelling. The Complaint addresses issues that not only arise in, arise under, and relate to Title 11 but which have already been adjudicated by the Bankruptcy Court. By this Motion, the Debtor requests that this Court enforce the Order of Reference and refer the Complaint to the Bankruptcy Court for adjudication

4.       The reason Plaintiffs filed the Complaint in this Court – rather than in the Bankruptcy Court – is obvious. Plaintiffs, under the direction of the Debtor's ousted founder, Mr.

---

[4] The Complaint contains a number of errors and material omissions, misstatements, misrepresentations, and mischaracterizations. The Debtor believes the Complaint is frivolous and should be dismissed on numerous grounds. The Debtor reserves all rights to contest the substance of the Complaint and intends to promptly inform Plaintiffs' counsel that the Debtor will seek sanctions if the Complaint is not withdrawn.

[5] Plaintiffs justify their conduct by contending that under the 1984 Amendments to the Bankruptcy Code, the Bankruptcy Court is a "unit" of this Court. Hence, in Plaintiffs' minds, the courts are indistinguishable and interchangeable and Plaintiffs can pick and choose where to file. That is not the law and would render the Order of Reference a nullity.

Dondero, have found little traction in the Bankruptcy Court for the serial, frivolous, and vexatious litigation positions they have taken in more than a dozen pending matters in the Bankruptcy Case and their attempts to interfere with the Debtor's business operations – actions that have cost the Debtor millions. Plaintiffs therefore determined their best course of action was to engage in blatant forum shopping with the goal of re-opening settled litigation and closed factual records in a court Plaintiffs hope will be more hospitable.[6] The Debtor will vigorously defend this action as (a) a flagrant attack on the Bankruptcy Court; (b) a frivolous attempt to avoid settled principals of bankruptcy jurisdiction through (less than) clever pleading; and (c) barred by *res judicata*. The Debtor have also sought to hold Plaintiffs and their counsel, among others, in civil contempt for attempting to add Mr. James P. Seery, Jr., the Debtor's independent, Bankruptcy Court-appointed CEO and CRO, as a defendant in this Case in clear violation of two final Bankruptcy Court orders.[7]

5.    The fact that the Complaint was not automatically referred to the Bankruptcy Court is attributable to a blatant omission by Plaintiffs in Section VIII of their Civil Cover Sheet (Appx. 3). Because this action is undoubtedly "related to" the Bankruptcy Case and the pending appeal of the Settlement, Plaintiffs' attorneys were required to disclose that a "related case" to the Complaint existed – as that term is used in the Local Civil Rules, effective September 1, 2020, of the Northern District of Texas (the "Local Rules"). Plaintiffs' failure to make such disclosure could not have

---

[6] The Complaint is not the first time that Plaintiffs have attempted to disenfranchise the Bankruptcy Court. On March 18, 2021, Mr. Dondero, Plaintiffs, and other entities owned and/or controlled by Mr. Dondero filed *James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Motion to Recuse Pursuant to 28 U.S.C. § 455* [Docket No. 2060] (the "Recusal Motion") pursuant to which they sought to recuse the Honorable Stacey Jernigan from the Bankruptcy Case. The Recusal Motion was denied by the Bankruptcy Court and has been appealed [Docket No. 2149].

[7] On April 19, 2021, filed *Plaintiff's Motion for Leave to File First Amended Complaint in the District Court* (the "Seery Motion") in this Court seeking leave to add Mr. Seery as a defendant, and, in response, on April 23, 2021, the Debtor filed *Debtor's Motion for an Order Requiring the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two Court Orders* [Docket No. 2247] (the "Contempt Motion"). The Bankruptcy Court ordered Plaintiffs, among others, to appear at an in person hearing on June 8, 2021, to show cause why they should not be held in contempt [Docket No. 2255] (the "Show Cause Order").

been inadvertent. And Plaintiffs have also not been candid with the Bankruptcy Court. On May 14, 2021, Plaintiffs filed a response to the Show Cause Order inaccurately claiming they had made full disclosure to this Court.[8]

6.      The Bankruptcy Court is the appropriate tribunal to address the Complaint as it clearly "arises under, arises in or relates to the Debtor's Chapter 11 case and the Settlement. The Court should send Plaintiffs a strong message that (a) such gamesmanship is not acceptable; (b) the Order of Reference will be enforced; and (c) the Complaint will be immediately sent to the Bankruptcy Court where it belongs.

## FACTUAL BACKGROUND

### A.      Plaintiffs' Ownership and Control

7.      Plaintiffs are controlled and/or directed by Mr. Dondero, the Debtor's ousted founder.[9] CLOH is an entity wholly owned and controlled by the DAF. Until at least mid-January 2021, Grant Scott, Mr. Dondero's life-long friend and college roommate, was the sole director of the DAF and of CLOH (neither of which otherwise had any officers or employees).[10] As found by the Bankruptcy Court, Mr. Dondero has engaged in a coordinated litigation campaign against the Debtor both directly and through his related entities, including Plaintiffs, with the goal of

---

[8] *See Response of the Charitable DAF Fund, L.P., CLO Holdco, Ltd., and Sbaiti & Company PLLC to Show Cause Order* [Docket No. 2313], pg. 3 (the "Bankruptcy Response") (Appx. 28). In the Bankruptcy Response, Plaintiffs prognosticate about how this Court would rule: "… [the Debtor] seem[s] to have assumed that the Motion for Leave would be granted, and that the proposed amended complaint naming Seery would be referred to [the Bankruptcy] Court for a report and recommendation." Appx. 28 at p. 12. If that were the case, Plaintiffs should have just filed in the Bankruptcy Court or, at the very least, disclosed the Bankruptcy Case in the Civil Cover Sheet.

[9] Mr. Dondero also controls, and has appeared in the Bankruptcy Case, through, among others, his two family investment trusts: Dugaboy and Get Good.

[10] Mr. Scott previously testified during a sworn deposition in the Bankruptcy Case that he had little knowledge of the investment and other activities of the DAF and CLOH and was effectively taking direction from Mr. Dondero with respect to their activities. Appx. 27, 11:10-25; 12:1-25; 13:1-25; 14:1-25; 15:1-25; 16:1-17.

"burn[ing] down the [Debtor]."[11] A list of the litigation caused by Mr. Dondero in the Bankruptcy

Case since September 2020 is Appx. 4.

**B.**    **HarbourVest's Investment and Claims against the Debtor**

8.    Prior to the commencement of the Bankruptcy Case, HarbourVest invested

approximately $80 million (the "Investment") in HCLOF, a Guernsey-based limited company

formed and managed by the Debtor and – prior to his ouster – Mr. Dondero. Immediately following

the Investment, CLOH held 49.02% of HCLOF's interests, HarbourVest held 49.98%, and the

remaining 1% was held by the Debtor and certain current and former Debtor employees. After the

Settlement, in which HarbourVest transferred its interests to a wholly-owned subsidiary of the

Debtor, the Debtor's interest in HCLOF was 50.18% and CLOH's interest remained 49.02%.

9.    HarbourVest filed Claims[12] in the Bankruptcy Case in excess of $300 million. The

Claims alleged HarbourVest was fraudulently induced into the Investment based on the material

factual misrepresentations and omissions of Mr. Dondero and certain of his employees, including

that the Debtor: (a) did not disclose it never intended to pay an arbitration award obtained by a

former portfolio manager, Joshua Terry,[13] (b) did not disclose that Mr. Dondero and the Debtor

---

[11] The Bankruptcy Court made substantial findings of facts regarding Mr. Dondero and his related entities' (including Plaintiffs') history of serial litigation in the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* (the "Confirmation Order"). The Confirmation Order is Appx. 5. *See* Appx. 5, ¶¶ 17-19, 77-78. The Confirmation Order approved the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as amended, the "Plan"), which included certain amendments. *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Docket No. 1875]. The Plan is attached to the Confirmation Order.

[12] "Claims" collectively refers: HarbourVest 2017 Global Fund L.P. (Claim No. 143), HarbourVest 2017 Global AIF L.P. (Claim No. 147), HarbourVest Dover Street IX Investment L.P. (Claim No. 150), HV International VIII Secondary L.P. (Claim No. 153), HarbourVest Skew Base AIF L.P. (Claim No. 154), and HarbourVest Partners L.P. (Claim No, 149). The Claims are Appx. 6.

[13] This award was entered in favor of Mr. Terry against a Debtor subsidiary, Acis Capital Management, L.P. ("Acis"). Instead of satisfying the award, the Dondero-controlled Debtor caused Acis to transfer its assets in an effort to become judgment proof. Mr. Terry filed an involuntary bankruptcy petition against Acis and, after intense litigation and the appointment of a chapter 11 trustee, confirmed a chapter 11 plan, which transferred Acis to Mr. Terry. These actions resulted in Acis filing a claim of not less than $75 million (Claim No. 23) against the estate.

engaged in a series of fraudulent transfers for the purpose of preventing Mr. Terry from collecting on his arbitration award, (c) misrepresented why the investment manager for HCLOF was changed immediately prior to the Investment, (d) indicated the dispute with Mr. Terry would not impact investment activities, and (e) expressed confidence in HCLOF's ability to reset or redeem certain collateralized loan obligations ("CLOs"). The Claim also asserted causes of action under Racketeering Influenced Corrupt Organizations Act ("RICO") and breaches of fiduciary duty under Guernsey common law.

## C.    **The HarbourVest Settlement and Objections**

10.    On December 23, 2020, the Debtor filed its *Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Docket No. 1625][14] (the "Settlement Motion"), pursuant to which the Debtor sought Bankruptcy Court approval of the Settlement with HarbourVest pursuant to 11 U.S.C. §§ 105(a) and 363 and Bankruptcy Rule 9019. Appx. 7. The Debtor concurrently filed the proposed *Settlement Agreement* and *Transfer Agreement for Ordinary Shares of Highland CLO Funding, Ltd.* (the "Transfer Agreement") [Docket No. 1631-1]. Appx. 8. The Settlement Agreement expressly provided that it was subject to Bankruptcy Court approval. Appx. 7, ¶ 3.

11.    Among the material terms of the Settlement was that HarbourVest would transfer its interest in Highland CLO Funding, Ltd. ("HCLOF") to the Debtor or its nominee (the "Transfer"). The Transfer was a necessary component of the Settlement. HarbourVest believed the misrepresentations entitled it to a rescission of its Investment, and HarbourVest wanted to extract itself from the Highland platform. The Settlement also provided HarbourVest with (a) an allowed, general unsecured claim in the amount of $45 million, (b) a subordinated, allowed, general

---

[14] Unless otherwise noted, all docket references refer to the docket maintained by the Bankruptcy Court.

unsecured claim in the amount of $35 million, and (c) other consideration more fully described in the Settlement Agreement. *See* Appx. 7, ¶ 32.

12.    The Settlement Motion fully disclosed all aspects of the Transfer, including (a) what HarbourVest was transferring; (b) the valuation (and method of valuation) of the asset being transferred to the Debtor; and (c) the method of the Transfer. (Appx. 7, ¶¶ 1(b) 32, 32 n.5; Appx. 8). Three objections were lodged against the proposed Settlement, all of which were filed by Mr. Dondero or entities controlled by him, including Plaintiff CLOH and Dondero's Trusts. Each of those objections was coordinated by Mr. Dondero.[15]

**D.**    **Plaintiffs Knew of the Transfer, and Plaintiff CLOH Objected to the Settlement**

13.    On January 6, 2021, Mr. Dondero filed his *Objection to Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest* [Docket No. 1697] (Appx. 9) contending, among other things, that the Settlement: (a) was not "reasonable or in the best interests of the estate" because the Debtor was ***grossly overpaying*** and (b) amounted to "a blatant attempt to purchase votes in support of the Debtor's plan." *Id*., ¶ 1. Mr. Dondero did not directly challenge the Transfer but made clear that he knew exactly what was being transferred and the valuation being placed on it: "As part of the settlement, HarbourVest will [] transfer its entire interest in [HCLOF] to an entity to be designated by the Debtor. The Debtor states that the value of this interest is approximately $22 million as of December 1, 2020." *Id*., ¶ 1, n.3.

14.    On January 8, 2021, Dondero's Trusts filed their *Objection to the Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith.* [Docket No. 1706]. (Appx. 10) Like Mr. Dondero, the Trusts made clear that they knew of the proposed Transfer and its valuation. But,

---

[15] *See Debtor's Amended Witness and Exhibit List with Respect to Evidentiary Hearing to be Held on January 8, 2021* [Adv. Proc. 21-03190-sgj, Docket No. 46], Exhibit Q.

unlike Mr. Dondero, the Trusts directly questioned (a) whether HarbourVest had the right to effectuate the Transfer, and (b) the valuation of the HCLOF interests – matters which are directly at issue in the Complaint.

15. Finally, and notably, on January 8, 2021, Plaintiff CLOH – presumably at the direction of its parent, the DAF – filed its *Objection to HarbourVest Settlement* [Docket No. 1707]. (Appx. 11) In its objection, CLOH challenged (as it does again in the Complaint) HarbourVest's right to implement the Transfer contending, among other things, that: (a) CLOH and the other members of HCLOF had a "Right of First Refusal" under the Members Agreement (*Id*., ¶ 3) and (b) "HarbourVest has no authority to transfer its interest in HCLOF without first complying with the Right of First Refusal" (*Id*., ¶ 6). In support of these contentions, CLOH offered a lengthy analysis of the Members Agreement, including CLOH's purported "Right of First Refusal" under Section 6.2 thereof. *Id*., ¶¶ 9-22.

**E.     The Dondero Parties Exercised their Right to Take Discovery**

16. By objecting to the Settlement Motion, Mr. Dondero, the Trusts, and CLOH (collectively, the "Dondero Objectors") initiated a "contested matter" under Bankruptcy Rule 9014[16] and, accordingly, had the unfettered right to conduct discovery under Bankruptcy Rule 9014(c).[17] Thus, for example, the Dondero Objectors had the right to request documents from, and take the depositions of, the Debtor, HarbourVest, HCLOF, and/or Highland HCF Fund Advisor,

---

[16] *See also* Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas 9014-1(a) ("a response is required with respect to a contested matter").

[17] The Debtor filed the Settlement Motion on December 23, 2020, and set the hearing on the motion for January 14, 2021 [Docket No. 1626]. The DAF and CLOH allege that the Debtor "set the hearing right after the Christmas and New Year's holidays, almost ensuring that no party would have the time to scrutinize the underpinnings of the deal." Appx. 1, ¶ 30. This is a bald lie (one of many) and absurd. The undisputed facts are that (a) the Settlement Motion was filed on regular notice; (b) no one requested or moved for an extension of the hearing date; and (c) no one contended they had insufficient time to "scrutinize the underpinnings of the deal" (at least until the filing of the Complaint).

Ltd. ("HCFA")[18] concerning the Settlement Motion, their objections thereto, and the Debtor's valuation of HarbourVest's interest in HCLOF and the method of valuation.

17.    The Dondero Objectors – all sophisticated parties represented by sophisticated counsel – exercised their discovery rights.[19] In particular, Mr. Dondero and CLOH conducted a three and a half hour deposition of Michael Pugatch, a representative of the HarbourVest claimants [Docket No. 1705]. (Appx. 12) However, none of the Dondero Objectors, including Plaintiffs, exercised their right to take discovery from the Debtor, HCLOF, or HCFA in connection with the Settlement Motion, except for informal requests for documents which were provided.

18.    Notably, despite the issue of the Transfer being "front and center," none of the Dondero Objectors, including Plaintiffs, ever asserted (as Plaintiffs do now) that: (a) the Debtor had a fiduciary duty to offer the HCLOF interests to CLOH, or (b) the Investment Advisers Act of 1940 (the "Advisers Act") was implicated in any way by the proposed Settlement, including the proposed Transfer. Further, although CLOH argued that the Members Agreement gave CLOH a right of first refusal, CLOH, in connection with the Settlement, never offered to buy the HCLOF interests or stated that it wanted to purchase those interests.

**F.    The Bankruptcy Court Approves the Settlement**

19.    On January 13, 2021, the Debtor filed its *Omnibus Reply in Support of Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Docket No. 1731] (the "Omnibus

---

[18] HCLOF, HCFA (in its capacity as the portfolio manager of HCLOF), the Debtor's designee, HCMLP Investments, LLC (as transferee), and HarbourVest (as transferors) were parties to the proposed Transfer Agreement pursuant to which the Transfer would be effectuated. Appx. 7, Ex. A; Appx. 8.

[19] Plaintiffs not only failed to disclose that the Dondero Objectors took discovery, they allege the opposite ("No discovery had taken place between the parties, and plaintiff did not have any notice of the settlement terms or other factors prior to the motion's filing (*or even during its pendency*) in order to investigate its rights."). Appx. 1, ¶ 29 (emphasis added).

9

Reply"). Appx. 13. The Omnibus Reply set forth an extensive rebuttal to CLOH's flawed argument that the Transfer could not be completed without HCLOF's other members being offered HarbourVest's interest in HCLOF, as allegedly required by the "Right of First Refusal" under Section 6.2. *Id*., ¶¶ 26-39. Both HCLOF – which was independently represented – and HarbourVest agreed with the Debtor's conclusions that the Members Agreement did not require HarbourVest to offer its interests to CLOH or any other member of HCLOF. *Id*., ¶ 37. At the January 14, 2021, hearing, CLOH *voluntarily withdrew* its objection after reading the Debtor's analysis of the Members Agreement:

> CLO Holdco has had an opportunity to review the reply briefing, and . . . [b]ased on our analysis of Guernsey law and some of the arguments of counsel on those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as trustee for CLO Holdco, *to withdraw the CLO Holdco objection based on the interpretation of the member agreement*.

Appx. 14 at 7:20-8:6 (emphasis added). Following CLOH's withdrawal of its objection, the Trusts also abandoned their challenge to the Transfer. *Id.* at 22:5-20.

20.    The Debtor called two witnesses in support of the Settlement Motion, Mr. Seery and Mr. Pugatch. Counsel for Mr. Dondero and the Trusts cross-examined the Debtor's witnesses but did not inquire about the value of the HCLOF interests, the Debtor's fiduciary obligations, or the Transfer (except for a line of questioning concerning which entity would hold the HCLOF interests on behalf of the Debtor). *Id*., at 87:18-89:21. At the conclusion of the hearing, the Court entered an order overruling the remaining objections and approving the Settlement [Docket No. 1788] (the "Settlement Order"). Appx. 15.

21.    The Settlement Order *expressly* authorized the transfer of HarbourVest's interest in HCLOF providing, in relevant part, that "[p]ursuant to the express terms of the [Members Agreement] . . . HarbourVest is authorized to transfer its interest in HCLOF . . . *without the need to obtain the consent of any party or to offer such interests first to any other investor in*

10

*HCLOF*." *Id.*, ¶ 6 (emphasis added). The Bankruptcy Court specifically included this language in the Settlement Order because of concerns that Mr. Dondero and his entities would "go to a different court somehow to challenge the transfer." Appx. 14 at 156:19-20.[20] The Settlement Order also clearly provided that "[t]he [Bankruptcy] Court shall retain *exclusive jurisdiction* to hear and determine all matters arising from the implementation of this Order." *Id.*, ¶ 7 (emphasis added).

22.     Only the Trusts appealed the Settlement Order [Docket Nos. 1870, 1889]. Appx. 16. Plaintiffs elected not to appeal. However, both the Trust and Plaintiffs are controlled by Mr. Dondero, and Mr. Dondero is thus both appealing the Settlement Order and seeking reconsideration of the Settlement Order in this Court.

**G.     The DAF and CLOH Sue the Debtor and Others in This Court**

23.     On April 12, 2021, after obtaining new counsel,[21] the DAF and CLOH filed the Complaint against the Debtor, HCFA, and HCLOF in this Court. The Complaint seeks to challenge the Transfer and Settlement approved by the Bankruptcy Court over Mr. Dondero's and Plaintiffs' objections and to re-open the Bankruptcy Court's factual record. To justify this blatant attempt to re-litigate the matter, the DAF and CLOH allege they recently learned that (a) the HCLOF interests were substantially more valuable than Mr. Seery testified, and (b) the Debtor had fiduciary and

---

[20] Appx. 14 at 156:10-25; 157:1-5 (emphasis added):

MR. MORRIS: . . . With respect to the order, I just want to make it clear that we are going to include a provision that specifically authorizes the Debtor to engage in -- to receive from HarbourVest the asset, you know, the HCLOF interest, and that that's consistent with its obligations under the agreement.

***The objection has been withdrawn, I think the evidence is what it is, and we want to make sure that nobody thinks that they're going to go to a different court somehow to challenge the transfer.*** So I just want to put the Court on notice and everybody on notice that we are going to put in a specific finding as to that.

THE COURT: All right. Fair . . . Fair enough. I do specifically approve that mechanism and find it is appropriate and supported by the underlying agreements.

And just so you know, I spent some time noodling this yesterday before I knew it was going to be settled, so I'm not just casually doing that. I think it's fine.

[21] Upon information and belief, Mr. Dondero effectively fired Mr. Scott and his counsel, John Kane of Kane Russell, after Mr. Scott withdrew CLOH's objection to the HarbourVest Settlement.

other duties requiring it to provide Plaintiffs with the opportunity to acquire HarbourVest's interest in HCLOF. *See, e.g.,* Appx. 1, ¶¶ 36, 49. Plaintiffs also assert claims for breach of fiduciary duty, breach of contract, negligence, violation of RICO, and tortious interference.

24.     In the Complaint, Plaintiffs recite certain facts relating to HarbourVest's Claims and the process by which the Debtor obtained Bankruptcy Court approval (*Id.*, ¶¶ 16-31) but disclose none of the undisputed facts set forth above. Plaintiffs also do not disclose that they – through their relationship to Mr. Dondero – had the same information concerning the value of the HarbourVest interests that Mr. Seery allegedly had. Finally, they do not even attempt to justify why they are seeking, in this Court, to re-litigate a Bankruptcy Court order.

## H.     Counsel for the DAF and CLOH Willfully Ignore the Gatekeeper Orders

25.     Throughout the Complaint, Plaintiffs threatened to name Mr. Seery as a defendant,[22] and indeed, on April 19, 2021, just four days after filing the Complaint, Sbaiti & Co. ("Sbaiti"), the newly-retained counsel for the DAF and CLOH, advised the Debtor's counsel that they "intend to move for leave today in the district court seeking permission to amend our complaint to add claims against Mr. Seery. They are the same causes of action. We believe we are entitled to amend as a matter of course." Counsel asked whether they could "put your client down as unopposed?" Appx. 17. In response, the Debtor informed Sbaiti of the two "Gatekeeper Orders" (defined below), which prohibited this action, provided copies, and told them, among other things, that "[i]f you proceed to amend the complaint as you suggest [] without first obtaining Bankruptcy Court approval we reserve all rights to take appropriate action and seek appropriate relief from the

---

[22] By way of example only, Plaintiffs refer to Mr. Seery as a "potential party" and suggest that he had access to and wrongfully utilized "superior non-public information" and lied under oath about the value of the asset subject to the Transfer in his testimony to the Bankruptcy Court. Appx. 1, at Introduction, ¶¶ 6, 43-44.

DOCS_NY:43079.11 36027/002

Bankruptcy Court." *Id.* Later that evening, Sbaiti confirmed their intention to seek leave from this Court to sue Mr. Seery and, on April 19, 2021, filed the Seery Motion. Appx. 18.

26.     Both Gatekeeper Orders are plain, unambiguous, and final. On January 9, 2020, the Bankruptcy Court, **with Mr. Dondero's consent and agreement**, entered the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339] pursuant to 11 U.S.C. §§ 105 and 363 and Rule 9019 (the "January Order"). Appx. 19. Pursuant to the January Order, Mr. Dondero surrendered control of the Debtor and the Independent Board was appointed. To protect the Independent Board and its agents from frivolous litigation (primarily from Mr. Dondero and his related entities), the Debtor asked for, and the Bankruptcy Court included in the January Order (without objection), a "gatekeeper" provision stating in pertinent part:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

*Id.*, ¶ 10. Mr. Seery is protected under the January Order as a member of the Independent Board and as the Debtor's CEO and CRO – an agent of the Independent Board. The January Order provided that the Bankruptcy Court "shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order. . . ."). *Id.,* ¶ 13.

27.     Seven months later, the Debtor sought Bankruptcy Court approval to appoint Mr. Seery as the Debtor's CEO and CRO. After an evidentiary hearing, the Bankruptcy Court granted the motion (without objection) and entered its *Order Approving Debtor's Motion Under*

*Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc To March 15, 2020* [Docket No. 854] pursuant to 11 U.S.C. §§ 105(a) and 363(b) (the "July Order" and with the January Order, the "Gatekeeper Orders"). Appx. 20. Like the January Order, the July Order included a "gatekeeper" provision:

> No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

*Id.*, ¶ 5. The Bankruptcy Court "retain[ed] jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of [the July] Order." *Id.*, ¶ 8.

28.     The Gatekeeper Orders are final orders, *res judicata*, and law of the case. *See* Appx. 5, ¶ 73 (finding that the Gatekeeper Orders "constitute[] law of this case and are *res judicata* pursuant to *In re Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987)").

29.     The Gatekeeper Orders also featured heavily at the Plan confirmation hearing. CLOH initially objected to the Plan, which Mr. Dondero and his proxies, including CLOH, contested.[23] In the Confirmation Order, the Bankruptcy Court provided the rationale for, and purpose of, the "gatekeeper" provisions in the Gatekeeper Orders (Appx. 5, ¶¶ 12-14) and expressly found that a "gatekeeper" provision was needed in the Plan because "Mr. Dondero and his related entities will likely commence ligation . . . after the Effective Date and do so in jurisdictions other than the Bankruptcy Court in an effort to obtain a forum which Mr. Dondero perceives will be more hospitable to his claims" (Appx. 5, ¶ 78). Despite this clear finding and

---

[23] Mr. Dondero and a number of his related entities are currently appealing the Confirmation Order.

14

order, Plaintiffs filed the Seery Motion to add Mr. Seery as a defendant and asked this Court to disregard the Gatekeeper Orders. Although this Court denied the Seery Motion, it stated "Plaintiffs may renew their motion after Defendants are served and have appeared" leaving open the possibility that Plaintiffs may still attempt to add Mr. Seery.[24] Appx. 21.

30.    In response, on April 23, 2021, the Debtor filed the Contempt Motion in the Bankruptcy Court for an order to show cause as to why Plaintiffs should not be held in contempt. Appx. 24. Plaintiffs then filed a motion in the Bankruptcy Court purporting to seek reconsideration of the July Order [Docket No. 2248] (the "Motion for Reconsideration").[25] Appx. 25. The Bankruptcy Court ordered Plaintiffs, among others, to appear at an in person hearing on June 8, 2021,[26] to show cause why they should not be held in contempt. Appx. 26.

31.    Finally, on May 14, 2021, Plaintiffs filed the Bankruptcy Response in which they argue that they followed the Gatekeeper Orders by filing the Complaint in this Court rather than the Bankruptcy Court because seeking to amend the Complaint to add Mr. Seery as a defendant was not "pursuing" a claim (as used in the Gatekeeper Orders). Appx. 28 at 13.

## ARGUMENT

### A.    Plaintiffs Violated Local Rule 3.3(a) By Failing to Disclose the Bankruptcy Case

32.    When Plaintiffs filed the Complaint, thereby initiating the action, their counsel was required to complete a Civil Cover Sheet, Section VIII of which required them to disclose whether there were any "related cases." Local Rule 3.3(a) requires that "[w]hen a plaintiff files a complaint and there is a related case . . . the complaint must be accompanied by a notice of related case." A

---

[24] If Mr. Seery incurs any costs defending or preparing to defend against Plaintiffs' action, Mr. Seery will be entitled to indemnification directly from the Debtor under the Debtor's limited partnership agreement (Appx. 22, § 4.1(h)) and indirectly through the Strand's indemnification obligations and the Debtor's guarantee of such obligations (Appx. 23).

[25] The Contempt Motion and the Motion for Reconsideration were re-docketed on April 27, 2021, without any changes.

[26] The hearing on the Show Cause Order will be the first in person hearing since March 2020.

"related case" is defined in pertinent part as a proceeding that "arises from a common nucleus of operative fact with the case being filed or removed, regardless whether the related case is a pending case. . . ." Local Rule 3.3(b)(3). As discussed above, although the Complaint asserts claims based on the same facts as the HarbourVest Settlement approved over Plaintiffs' objection by the Bankruptcy Court, the Civil Cover Sheet makes no mention of the Bankruptcy Case as a "related case." It merely describes the nature of the Complaint as one arising under RICO. Yet the Bankruptcy Case is indisputably related to this one.[27] Plaintiffs' failure to disclose the existence of a related case violates the Local Rules. *See Kuzmin v. Thermaflo, Inc.*, 2:07-CV-00554-TJW, 2009 U.S. Dist. LEXIS 42810, at \*4-7 (E.D. Tex. May 20, 2009) (finding party violated court's local rules where they failed to indicate on civil cover sheet that case was "related to" other cases).

**B.     The Complaint Should Be Automatically Referred to the Bankruptcy Court**

      **i.     The Complaint Should Be Heard in the Bankruptcy Court.**

      33.     Jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11" is conferred on district courts. 11 U.S.C. §§ 1334(a), (b). District courts, in turn, may refer proceedings to the bankruptcy courts. 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). On August 3, 1984, this Court entered the Order of Reference, which provides, in pertinent part: "*any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . be and they hereby are referred to the*

---

[27] Under 28 U.S.C. § 1334(a), this Court has original and exclusive jurisdiction over the Bankruptcy Case. Pursuant to 28 U.S.C. § 157 and the Order of Reference, this Court has referred matters in the Bankruptcy Case to the Bankruptcy Court. It is thus clear that the Bankruptcy case is pending in this District pursuant to this Court's jurisdiction, and as noted above the matters alleged in the Complaint related directly to litigated proceedings involving Plaintiffs and the Debtor in the Bankruptcy Case. These facts require appropriate disclosure in the Civil Cover Sheet.

*Bankruptcy Judges of this district for consideration and resolution consistent with law*." Appx. 2 (emphasis added). The Order of Reference therefore refers the following proceedings:

- **Proceedings "arising under Title 11":** A proceeding "arises under" Title 11 if it is a "cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987).

- **Proceedings "arising in. . . a case under Title 11":** A proceeding "arises in" Title 11 if it deals with "administrative matters that arise *only* in bankruptcy cases." *Wood*, 825 F.2d at 96 (emphasis in original).[28]

- **Proceedings "related to a case under Title 11":** A proceeding "relates to" a case under Title 11 if "the outcome of [the non-bankruptcy] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Burch v. Freedom Mortg. Corp. (In re Burch)*, 835 Fed. Appx. 741, 748 (5th Cir. 2021) (internal citations omitted); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal. . . with all matters connected with the bankruptcy estate"). A proceeding "relates to" a proceeding under Title 11 even if it arises from postpetition conduct if "it affects the estate, not just the debtor." *Wood*, 825 F.2d at 94.

### ii. The Order of Reference is Mandatory.

34.     Under the plain language of the Order of Reference, "all proceedings under Title 11 or arising or related to a case under Title 11" are ***automatically*** referred to the bankruptcy courts, and the Debtor respectfully submits that the Order of Reference is mandatory. *See Uralkali Trading, S.A. v. Sylvite Southeast, LLC*, 2012 U.S. Dist. LEXIS 40455, at *3 (M.D. Fla. Mar. 26, 2012) (finding that a substantially similar order of reference in the Middle District of Florida "mandate[d]" referral to the appropriate bankruptcy court); *Welch v. Regions Bank*, 2014 U.S. Dist. LEXIS 96175, at *5 (M.D. Fla. July 15, 2014) ("[T]his Court has declared the enforcement of the Standing Order of Reference mandatory"). The fact that 11 U.S.C. §§ 1334 confers original jurisdiction on the district court does not change this requirement as district courts and bankruptcy

---

[28] Proceedings arising under and arising in Title 11 are "core proceedings" under 28 U.S.C. § 157(b). *Wood*, 825 F.2d at 96 ("[T]he phrases 'arising under' and 'arising in' are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding. . . If the proceeding is one that would arise only in bankruptcy. It is also a core proceeding. . . .").

DOCS_NY:43079.11 36027/002

courts are distinct. *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015) ("Additionally, every other circuit to address the issue has maintained the distinction between the bankruptcy court and the district court, holding that 'a debtor must obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity'") (citations omitted).

### iii. Any Disputes Over the Settlement or the Transfer Arise Under, Arise In, and Relate to Title 11 and are Core Proceedings.

35.     It is black letter law that the determination of whether to approve a settlement of a claim is a "core proceeding" and arises in and under Title 11. The statutory predicates for relief are 11 U.S.C. §§ 105 and 363 and under Rule 9019, which are "created by the federal bankruptcy law" and "arise only in bankruptcy." *Wood*, 825 F.2d at 96; *see also, e.g., In re Idearc, Inc.,* 423 B.R. 138, 177 (Bankr. N.D. Tex. 2009) (finding approval of a settlement under Bankruptcy Rule 9019 was a "core proceeding" under 28 U.S.C. § 157(b)); *In re Margaux City Lights Partners, Ltd.*, 2014 Bankr. LEXIS 4841 at *6 (Bankr. N.D. Tex. Nov. 24, 2014) (same); Settlement Order, ¶ 2 (same). The HarbourVest Settlement also involved the allowance of HarbourVest's Claims – a black letter core proceeding under 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include, but are not limited to – (B) allowance of disallowance of claims against the estate. . . .").

36.     Since the Complaint seeks to re-litigate the HarbourVest Settlement and to re-open the Bankruptcy Court's factual record, it is seeking a ruling from this Court as to the merits of the HarbourVest Settlement and/or to litigate matters that arose from the same operative facts as the HarbourVest Settlement – in each case, a core proceeding arising in and under Title 11. If the Settlement Order or the Transfer is to be re-assessed it must be by the Bankruptcy Court under the Bankruptcy Code and Bankruptcy Rules. This Court should enforce the Order of Reference and refer the Complaint to the Bankruptcy Court. *See Burch*, 835 Fed. Appx. at 748 ("Each of Burch's

state-court claims is premised on his interpretation of a Chapter 11 bankruptcy order, and so each

arises from or is related to his Title 11 bankruptcy proceedings.").

37. Further, the Bankruptcy Court specifically retained jurisdiction in the Settlement

Order to adjudicate all disputes arising from the implementation of the Settlement Order, including

the Transfer of the HCLOF interests, and therefore retained jurisdiction to hear the Complaint. *Id.*

¶7. Even if jurisdiction had not been explicitly retained, the Bankruptcy Court, like all federal

courts, has jurisdiction to interpret and enforce its own orders. *Rodriguez v. EMC Mortgage Corp.*

*(In re Rodriguez)*, 2001 U.S. App. LEXIS 30564, at \*5 (5th Cir. Mar. 15, 2001); *In re Galaz*, 841

F.3d 316, 322 (5th Cir. 2016); *Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 684

(Bankr. S.D. Tex. 2016). The Complaint, which seeks to challenge the Transfer and re-litigate the

Settlement Order, is therefore itself a core proceeding arising in and under Title 11 and should be

heard in the Bankruptcy Court.

### iv. Any Disputes Over the Gatekeeper Orders Arise Under, Arise In, and Relate to Title 11 and Are Core Proceedings.

38. The Seery Motion was denied, and Mr. Seery has not been added as a defendant in

this Case. Plaintiffs have also filed the Motion for Reconsideration in the Bankruptcy Court.

However, to the extent Plaintiffs seek to add Mr. Seery as a defendant in this Case, any such

proceedings must be referred to the Bankruptcy Court for the reasons forth in Section B(iii) *supra*.

Like the Settlement Order, the January Order is the result of a settlement with the Committee

approved under 11 U.S.C. §§ 105 and 363 and Bankruptcy Rule 9019. The "gatekeeper" provision

in the January Order was also a required component of that settlement and the settlement would

not have been approved without it. *See* Appx. 5, ¶ 12-14. Similarly, the July Order was the result

of a motion seeking authority to appoint Mr. Seery as CEO and CRO under 11 U.S.C. §§ 105(a)

and 363(b), an administrative action that only exists in Title 11 and thus "arises in" and "arises

under" Title 11. Like the January Order, the "gatekeeper" provision in the July Order was a required component of Mr. Seery's appointment. *Id.* Any attempt to add Mr. Seery as a defendant would be re-litigating a core proceeding arising under, arising in, and related to Title 11.

### v.    The Complaint Impacts Creditor Recoveries.

39.    The Debtor's Plan provides for the orderly monetization of the Debtor's assets and the distribution of the proceeds to creditors. Because the Plan is an asset monetization plan, distributions depend on two things: (a) the total amount of allowed claims against the estate and (b) the cash available to pay those claims. Consequently, the Complaint will have a material and immediate impact on the Debtor's estate. *First*, any judgment secured by Plaintiffs against the Debtor will decrease the cash available to pay the Debtor's prepetition creditors (which cash is property of the estate under 11 U.S.C. § 541). *Second*, any delay in determining the amount owed to HarbourVest or the amount owed by the Debtor to Plaintiffs will delay payments to creditors under the Plan as the Debtor will need to reserve against such claims. This impact on creditors and the Debtor's ability to satisfy its obligations under the Plan clearly impacts the Debtor's estate and should be adjudicated by the Bankruptcy Court. *Zale*, 62 F.3d at 753 ("Those cases in which courts have upheld 'related to' jurisdiction over third-party actions do so because the subject of the third party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate."); *see generally Centrix Fin. Liq. Trust v. Sutton*, 2019 U.S. Dist. LEXIS 154083 (D. Colo. Sept. 10, 2019) (finding that in a liquidating plan, the bankruptcy court has "related to" jurisdiction over all matters that impact distributions from the liquidating trust).

### vi.    Mr. Seery Will Have Indemnification Claims Against the Estate.

40.    This Court denied the Seery Motion without prejudice, but if Mr. Seery is ever added as a defendant or is compelled to retain personal counsel because of the completely unfounded and false allegations in the Complaint, Mr. Seery will have the right to indemnification

from the estate. *See* ¶ n.24 *supra*. The cost of this indemnification will immediately decrease the amount available to creditors and will delay distributions. Again, this clearly "relates to" to the Debtor's bankruptcy. *See, e.g., Collins v. Sidharthan (In re KSRP, Ltd.)*, 809 F.3d 263, 266-67 (5th Cir. 2015) (finding that bankruptcy court had jurisdiction because of potential indemnification claims even though bankruptcy court ultimately determined the indemnification claims were invalid); *Refinery Holdings Co., L.P. v. TRMI Holdings, Inc. (In re El Paso Refinery, L.P.)*, 302 F.3d 343, 349 (5th Cir. 2002) (finding "related to" jurisdiction when "RHC's claim against Texaco could conceivably have an effect on the Estate in light of the chain of indemnification provisions beginning with Texaco and leading directly to the Debtor."); *Houston Baseball Partners, LLC v. Comcast Corp. (In re Houston Reg'l Sports Network)*, 2014 Bankr. LEXIS 2274, at *15-25 (Bankr. S.D. Tex. May 22, 2013).

**C.    There is No Basis for a Mandatory Withdrawal of the Reference**

41.    In the Seery Motion, Plaintiffs cite 28 U.S.C. § 157(d) for the proposition that bankruptcy courts are "prohibit[ed] . . . absent the parties consent, from presiding over cases or proceedings that require consideration of both Title 11 and other federal law regulation organizations or activities affecting interstate commerce." Appx. 18, at 7. Plaintiffs argue that, because they pled causes of action arising under the Advisers Act and RICO, this Court will have to withdraw the reference. Plaintiffs make the same argument in the Bankruptcy Response: "Respondents expected that the motion for leave [to amend] would likely be referred to [the Bankruptcy] Court for a report and recommendation. And Respondents planned, if necessary, to move to withdraw the reference. . . ." Appx. 28 at 12.

42.    Even assuming Plaintiffs' federal law claims are not frivolous (and they are), Plaintiffs misinterpret 28 U.S.C. § 157(d)' s applicability to this case. 28 U.S.C. § 157(d) provides for mandatory withdrawal of the reference in certain instances: "The district court shall, on timely

motion of a party, so withdraw the proceeding if . . . resolution of the proceeding *requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce*." 28 U.S.C. § 157(d) (emphasis added). However, in interpreting Section 157(d), courts in this Circuit apply the majority view and require withdrawal of the reference only:

> [W]hen "substantial and material consideration" of a federal statute other than the Bankruptcy Code is necessary to the resolution of a case or proceeding. Withdrawal is not mandatory in cases that require only the "straightforward application of a federal statute to a particular set of facts." Rather, withdrawal is in order only when litigants raise "issues requiring significant interpretation of federal laws that Congress would have intended to [be] decided by a district judge rather than a bankruptcy judge."

*Southern Pac. Transp. v. Voluntary Purchasing Groups*, 252 B.R. 373, 382 (E.D. Tex. 2000) (quoting *In re National Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991). As such, even the presence of a substantial federal question is not a basis for mandatory withdrawal; mandatory withdrawal is only proper when a bankruptcy court would have to interpret and apply federal law on a novel and unsettled question. *See Beta Operating Co., LLC v. Aera Energy, LLC (In re Memorial Prod. Partners)*, 2018 U.S. Dist. LEXIS 161159, at *9 (S.D. Tex. Sept. 20, 2018); *UPH Holdings, Inc. v. Sprint Nextel Corp*., 2013 U.S. Dist. LEXIS 189349, at *4 (W.D. Tex. Dec. 10, 2013) (holding no mandatory withdrawal when, among other reasons, "the Bankruptcy Court will be tasked with 'no more than application of federal communications law to a given set of facts.") (citations omitted). Finally, "mandatory withdrawal is to be applied narrowly to ensure bankruptcy cases are litigated in the bankruptcy courts and to prevent 157(d) from becoming an 'escape hatch' from litigating cases under the Bankruptcy Code." *See, e.g., Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009) (quoting *In re G-I Holdings, Inc*., 295 B.R. 211, 221 (D. N.J. 2003)).

43.     None of the putative federal causes of action raised by Plaintiffs require "substantial and material consideration" of a federal statute or more than the cursory application of settled federal law. In fact, most can be summarily dismissed as they either grossly misinterpret settled law, based on materially misstated facts, or assert causes of action that belong to other parties.

D.     **The Complaint Is Barred by the Doctrine of *Res Judicata***

44.     The doctrine of *res judicata* protects the finality of judgements by preventing litigants from re-litigating the same issues over and over again. "[R]es judicata has four elements: (1) the parties are identical or in privity; (2) the judgment. . . was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer v. Murphy Oil USA*, 718 F.3d 460, 467 (5th Cir. 2013). Each of those elements is satisfied here, and the Complaint is barred by *res judicata*. Plaintiffs had their opportunity to challenge these orders; they do not get a second bite at the apple or to re-litigate these issues in a different forum.

45.     As set forth above, the parties are identical. Plaintiffs had the right to object to the HarbourVest Settlement and the Transfer of the HarbourVest interests, and Plaintiffs (a) actually objected to the Settlement Motion arguing that they had a "Right of First Refusal" under the Members Agreement; (b) had the right to take discovery on all issues, including the value of the HarbourVest interests; (c) could have objected based on the Advisers Act or RICO; (d) deposed HarbourVest's 30(b)(6) witness; and (e) ***withdrew their objection once they realized that they did not have a "Right of First Refusal."*** The Bankruptcy Court also indisputably had jurisdiction over the matter. Although the Settlement Order is being appealed by the Trusts, it is a final judgment for purposes of *res judicata*. *See Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*, 510 F. 2d 272, 273 (5th Cir. 1975) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal."). Finally, as set forth above, the same claims or causes

23

of action are involved. The Complaint is a blatant collateral attack on the Settlement Order. *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (finding that regardless of relief sought, it is a collateral attack if it must in some fashion overrule a previous judgment).

46.     Similarly, the January Order was entered in January 2020 with Mr. Dondero's consent and with the knowledge of Plaintiffs.[29] It was never appealed and is final. The July Order was entered in July 2020 without objection and with the knowledge of Plaintiffs. It was (a) never appealed; (b) is final;[30] and (c) the Bankruptcy Court was a court of competent jurisdiction.[31] *See In re Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052-53 (5th Cir. 1987) (finding a court has jurisdiction for purposes of res judicata when no party contests subject matter jurisdiction in the original proceeding). Consequently, any attempt to add Mr. Seery to the Complaint and subsequent challenges to the Gatekeeper Orders would involve the same issues addressed by the Bankruptcy Court and must be dismissed on the basis of *res judicata*.

E.     **This Court Should Consider Mr. Dondero's Litigious Nature**

47.     This Court should also consider the history of this case when determining whether to enforce the reference, including Mr. Dondero's history of vexatious litigation (brought directly and indirectly) and the Bankruptcy Court's familiarity with the Bankruptcy Case and the interrelatedness of Mr. Dondero's byzantine web of related companies. Appx. 5, ¶ 77-78. In fact, the Fifth Circuit recently addressed a similar issue in *Burch v. Freedom Mortgage. Corp. (In re*

---

[29] On December 4, 2019, CLOH filed a *Notice of Appearance and Request for Copies* [Docket No. 152] in the Bankruptcy Case by and through its counsel Kane Russell Coleman Logan PC. Since then, CLOH has received notice as required by the Bankruptcy Code of all pleadings filed in the Bankruptcy Case.

[30] The Bankruptcy Court specifically found that the Gatekeeper Orders were *res judicata* in the Confirmation Order. *See* Appx. 5, ¶ 73; ¶ 28 *supra*.

[31] Plaintiffs have questioned whether the Bankruptcy Court exceeded its jurisdiction to enter the July Order in the Motion for Reconsideration. Any attempt to litigate that issue in this Court may impact the Motion for Reconsideration and must be referred to the Bankruptcy Court under the Order of Reference. *See In re Margulies*, 476 B.R. 393 (Bankr. S.D.N.Y. 2012) (citing *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.*), 930 F.2d 1132, 1143 (6th Cir. 1991)) ("If the action between third parties will have a collateral estoppel effect on the debtor, the third party action is 'related to' the bankruptcy case for jurisdictional purposes.").

*Burch).* In *Burch*, the movant sought to avoid bankruptcy court jurisdiction over claims regarding the interpretation and enforceability of prior bankruptcy court orders. *Burch*, 385 Fed. Appx. at 747. Mr. Burch, like Mr. Dondero, had also been found to be an abusive litigant. The Fifth Circuit denied Mr. Burch's attempts to avoid bankruptcy court jurisdiction through clever pleading, calling them "frivolous," and "warn[ed] Burch that any further frivolous or abusive filings in this court, the district court, or the bankruptcy court will invite the imposition of sanctions, including dismissal, monetary sanctions, and/or restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction." *Id.*, at 749; *see also* 28 U.S.C. § 1927 ("Any attorney or other person . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."). Mr. Dondero, directly and through his proxies, is a frivolous and abusive litigant – hence the need for the "gatekeeper" provisions. This Court should not provide him a forum to further abuse the judicial process.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant its Motion and enter an order in the form annexed to the Motion as **Exhibit A**, and grant any further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:43079.11 36027/002

Dated: May 19, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Judith Elkin (TX Bar No. 06522200)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        jelkin@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

26