PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD., | § § § § § § § § § § § § | |
| Plaintiff, | | Case No. 3:21-cv-00842-B |
| vs. | | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. | | |
| Defendants. | | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................................... 2

III. ARGUMENT .................................................................................................................... 7

   A.  Legal Standard ........................................................................................................ 7

   B.  Plaintiffs' Claims are Barred by the Doctrine of *Res Judicata* .......................... 8

   C.  Plaintiffs' Claims are Barred by Judicial Estoppel ............................................ 11

   D.  Plaintiffs Fail to State Claims Upon Which Relief Can be Granted ................... 13

      1.  Plaintiffs Fail to State a Claim Under RICO ........................................... 13

      2.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................. 19

      3.  Plaintiffs Fail to State a Claim for Breach of Members Agreement ........ 23

      4.  Plaintiffs Fail to State a Claim for Negligence ....................................... 24

      5.  Plaintiffs Fail to State a Claim for Tortious Interference with Contract ... 24

IV. CONCLUSION ............................................................................................................... 25

DOCS_NY:43286.6 36027/002

## TABLE OF AUTHORITIES

Page No.

**CASES**

*Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*,
  606 F.2d 602 (5th Cir. 1979) ................................................................. 19

*Allstate Ins. Co. v. Donovan*,
  No. CIV.A. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012) .................... 17

*Allstate Insurance Company v. Benhamou*,
  190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................... 17, 18

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 7, 18

*Brandon v. Interfirst Corp.*,
  858 F.2d 266 (5th Cir.1988) .............................................................. 11

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................ 18

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*,
  61 F.3d 288 (5th Cir. 1995) ................................................................. 8

*Cade v. Henderson*,
  No. CIV A 01-943, 2001 WL 1012251 F.Supp.2d (E.D.La. Aug. 31, 2001) .......... 8

*Calcasieu Marine Nat'l Bank v. Grant*,
  943 F.2d 1453 (5th Cir.1991) ......................................................... 15, 16

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ............................................................................ 25

*Comer v. Murphy Oil USA*, Inc.,
  718 F.3d 460 (5th Cir. 2013) ................................................................ 9

*Corwin v. Marney, Orton Invs.*,
  788 F.2d 1063 (5th Cir. 1986) .............................................................. 22

*Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*,
  510 F. 2d 272 (5th Cir. 1975) ............................................................... 9

*Goldstein v. SEC*,
  451 F.3d 873 (D.C. Cir. 2006) .............................................................. 22

*Grigsby v. CMI Corp.*,
  765 F.2d 1369 (9th Cir.1985) .............................................................. 20

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ...................................................................... 13, 15

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ............................................................... 12

*Hall v. Hodgkins*,
  305 F. Appx. 224 (5th Cir. 2008) ........................................................... 8

ii

*Howe v. Vaughan (Matter of Howe)*,
 913 F.2d 1138 (5th Cir. 1990) .................................................................................... 9
*In re Burzynski*,
 989 F.2d 733 (5th Cir. 1993) ............................................................................... 16, 17
*In re Coastal Plains Inc.*,
 179 F.3d 197 (5th Cir. 1999) .................................................................................. 12
*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
 258 F. Supp. 2d 576 (S.D. Tex. 2003) ..................................................................... 20
*In re Intelogic Trace, Inc.*,
 200 F.3d 382 (5th Cir. 2000) .................................................................................. 11
*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
 802 F. Supp. 2d 725 (E.D. La. 2011) ...................................................................... 18
*In re Paige*,
 610 F.3d 865 (5th Cir. 2010) .................................................................................. 11
*In re Soporex, Inc.*,
 463 B.R. 344 (Bankr. N.D. Tex. 2011) ................................................................... 21
*Matter of ATP Oil & Gas Corp.*,
 711 F. App'x 216 (5th Cir. 2017) ........................................................................... 21
*Matter of Life Partners Holdings, Inc.*,
 926 F.3d 103 (5th Cir. 2019) .................................................................................. 21
Medina v. I.N.S.,
 993 F.2d 499 (5th Cir.1993) .................................................................................... 8
*Merrill Lynch, Pierce, Fenner, & Sminth, Inc. v. Young*,
 No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar, 14, 1994) ................................ 15
*Mitchell v. Ocwen Loan Servicing, LLC*,
 No. 4:18-cv-00820-P, 2019 WL 5647599 (N.D. Tex. 2019)....................................... 8
*Montesano v. Seafirst Commercial Corp.*,
 818 F.2d 423 (5th Cir.1987) .............................................................................. 13, 17
*Ocean Energy II*,
 868 F.2d 740 (5th Cir.1989) ................................................................................... 16
*Oreck Direct, LLC v. Dyson, Inc.*,
 560 F.3d 398 (5th Cir. 2009) ................................................................................... 8
*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
 972 F.2d 580 (5th Cir.1992) ................................................................................... 25
*Ranieri v. AdvoCare International, L.P.*,
 336 F.Supp.3d 701 (N.D. Tex. 2018) ...................................................................... 13
*Ries v. Paige (In re Paige)*,
 610 F.3d 865 (5th Cir. 2010) ................................................................................... 9
*Robinson v. Standard Mortg. Corp.*,
 191 F. Supp. 3d 630 (E.D. La. 2016).................................................................. 13, 14, 15, 18
*Rodgers v. City of Lancaster Police*,
 No. 3:13-CV-2031-M-BH, 2017 WL 457084 (N.D. Tex. Jan. 6, 2017) .................... 24
*Santa Fe Industries, Inc. v. Green*,
 430 U.S. 462 (1977)................................................................................................. 19

iii

*Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates*
  *WAMU Series No. 2007-HE2 Tr.*,
  390 F. Supp. 3d 769 (E.D. Tex. 2019) ........................................................................ 24
*Snowden v. Wells Fargo Bank, N.A.*,
  No. 3:18-CV-1797-K-BN, 2019 WL 587304 (N.D. Tex. Jan. 18, 2019) ..................... 24
*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................................... 20
*Specialties of Mexico Inc. v. Masterfoods USA*,
  No. CIV.A. L-09-88, 2010 WL 2488031 (S.D. Tex. June 14, 2010) .......................... 25
*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir.2000) ...................................................................................... 14
*T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*,
  No. 4:07–cv–0419, 2008 WL 7627807 (S.D.Tex. 2008) ............................................... 8
*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) ............................................................................... 13, 15
*Test Masters Educ. Services, Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) ........................................................................................ 9
*Thomas v. City of Houston*,
  619 F. App'x 291 (5th Cir. 2015) ............................................................................... 11
*Thomas v. Houston Org. of Pub. Emps.*,
  No. CIV.A. H-14-0485, 2014 WL 4629235 (S.D. Tex. Sept. 15, 2014) ...................... 11
*Tigue Inv. Co. v. Chase Bank of Texas, N.A.*,
  No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ............... 19
*Town N. Bank, N.A.*,
  2014 WL 4851558 ................................................................................................ 20, 22
*Tuchman v. DSC Communications*,
  14 F.3d 1061 (5th Cir.1994) ................................................................................... 19, 20
*United States v. Gray*,
  96 F.3d 769 (5th Cir. 1996) ........................................................................................ 14
*United States v. McCaskey*,
  9 F.3d 368 (5th Cir.1993) ........................................................................................... 12
*United States v. Shanbaum*,
  10 F.3d 305 (5th Cir. 1994) .......................................................................................... 8
*Wade v. Household Fin. Corp. III*,
  No. 1:18-CV-570-RP, 2019 WL 433741 (W.D. Tex. Feb. 1, 2019) .............................. 9
*Wong v. Stripling*,
  881 F.2d 200 (5th Cir. 1989) ...................................................................................... 25

**STATUTES**
18 U.S.C. § 1964(c) ......................................................................................................... 18

**OTHER AUTHORITIES**
Rule 10b-5 of the Securities and Exchange Act ............................................................... 19
Section 10(b) of the Securities and Exchange Act............................................................ 19
Section 47(b) of the Advisers Act .................................................................................... 22

**RULES**
Fed. R. Bankr. P. 9014(c) ................................................................................................. 4

DOCS_NY:43286.6 36027/002

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 2, 7, 8

Fed. R. Civ. P. 9(b) ................................................................................................................... 13, 20

v

Highland Capital Management, L.P., a defendant in the above-captioned case (the "Debtor" or "Highland"), submits this memorandum of law (the "Memorandum") in support of the *Debtor's Motion to Dismiss the Original Complaint* (the "Motion").

## I.    INTRODUCTION[1]

1.      In January 2021, the Debtor filed a motion in the Bankruptcy Court for an order approving its Settlement with HarbourVest, pursuant to which, *inter alia*, HarbourVest would settle its pre-petition claims against the Debtor and transfer its interest in defendant Highland CLO Funding, Ltd. ("HCLOF"), an entity in which the Debtor already owned interests, to a subsidiary of the Debtor (the "Prior Proceeding"). CLO Holdco, Ltd. ("CLOH") objected to the proposed Settlement, presumably at the direction of its parent, the Charitable DAF Fund, L.P. (the "DAF").[2]

2.      As set forth in the Motion to Enforce, CLOH challenged the Settlement on the grounds that: (i) CLOH had a "Right of First Refusal" to acquire HarbourVest's interest in HCLOF pursuant to the Members Agreement and (ii) HarbourVest had no right to transfer its interest without complying with the purported Right of First Refusal. Two other objections were lodged against the proposed Settlement, one by James Dondero, the Debtor's founder and former CEO ("Mr. Dondero"), and the other by his Trusts.[3]  These objectors contended that HarbourVest did not have the right to effectuate the Transfer under the Members Agreement. Each of the objecting parties exercised their right to take discovery concerning the Settlement

---

[1] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

[2] Plaintiffs are controlled and/or directed by Mr. Dondero, the Debtor's ousted founder. The DAF is Mr. Dondero's donor advised fund, and CLOH is an entity wholly owned and controlled by the DAF. Until at least mid-January 2021, Grant Scott, Mr. Dondero's life-long friend and college roommate, was the sole director of the DAF and of CLOH (neither of which otherwise had any officers or employees).

[3] The Settlement is being appealed by Mr. Dondero's two purported family investment trusts: The Dugaboy Investment Trust ("Dugaboy") and The Get Good Trust ("Get Good" and together with Dugaboy, the "Trusts"). The Trusts, like Plaintiffs, are controlled by Mr. Dondero. The appeal and this litigation are just one battle in Mr. Dondero's multifaceted litigation assault on the bankruptcy process.

and the Transfer.  The Bankruptcy Court held an evidentiary hearing on the proposed Settlement and heard argument in support of parties' objections and defenses.  During the hearing, CLOH voluntarily withdrew its objection premised on the "Right of First Refusal," after which the Court overruled the remaining objections and approved the Settlement.

3.      Mr. Dondero appealed the Settlement, claiming the Debtor overpaid.  Three months later, Plaintiffs filed their *Original Complaint* (the "Complaint"), raising substantially similar core claims and issues that were litigated in the Prior Proceeding, such as the value of the HCLOF interests and whether the Plaintiffs had some superior right to acquire HarbourVest's interest in HCLOF.  Plaintiffs bring claims for: (i) breach of fiduciary duty; (ii) breach of the Members Agreement; (iii) RICO violations; (iv) negligence; and (v) tortious interference with contract.  Plaintiffs principally allege that: (i) Plaintiffs had a "Right to First Refusal" to purchase the HCLOF interests under the Members Agreement; (ii) the Debtor breached the Members Agreement by diverting this investment opportunity from Plaintiffs; and (iii) the Debtor failed to disclose the "true value" of HarbourVest's interest in HCLOF.

4.      All of Plaintiffs' claims are barred by the doctrines of *res judicata* because they are identical to those previously litigated, and fully decided, in the Prior Proceeding.  Certain claims are subject to judicial estoppel because they seek to assume positions that are inconsistent with those previously asserted, namely, that the Right of First Refusal applied to HarbourVest's interest in HCLOF.  This contradicts Plaintiffs' voluntarily withdrawal of this same contention in the Prior Proceeding.  Plaintiffs also fail to state any claims for relief that are plausible on their face under Rule 12(b)(6).

## II.      FACTUAL BACKGROUND

5.      Prior to the commencement of the Bankruptcy Case, HarbourVest invested approximately $80 million (the "Investment") in HCLOF.  Following the Investment, CLOH

held 49.02% of HCLOF's interests, HarbourVest held 49.98%, and the remaining 1% was held by the Debtor and certain Debtor employees.  After the Debtor filed for bankruptcy protection, HarbourVest filed claims against the Debtor in excess of $300 million in Bankruptcy Court, alleging that HarbourVest was fraudulently induced into the Investment based on factual misrepresentations and omissions made by Mr. Dondero and certain of his employees. **Appx. 1**.[4]

6.    On December 23, 2020, the Debtor filed its *Motion for Entry of an Order Approving Settlement With HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Docket No. 1625] (the "Settlement Motion"), pursuant to which the Debtor sought Bankruptcy Court approval of a settlement the Debtor reached with HarbourVest in December 2020 (the "Settlement"). **Appx. 2**.  The Debtor also filed the proposed *Settlement Agreement and Transfer Agreement for Ordinary Shares of Highland CLO Funding, Ltd.* (the "Transfer Agreement"). **Appx. 3**.    Pursuant to the Settlement, HarbourVest was to transfer its interest in HCLOF to the Debtor or its nominee (the "Transfer") in exchange for (a) an allowed, general unsecured claim in the amount of $45 million, (b) a subordinated, allowed, general unsecured claim in the amount of $35 million, and (c) other consideration more fully described in the Settlement Agreement. **Appx 2 ¶32**.  The Transfer was a necessary component of the Settlement.  The Settlement Motion disclosed all aspects of the Transfer, including (a) what HarbourVest was transferring; (b) the valuation (and method of valuation) of the asset being transferred to the Debtor; and (c) the method of the Transfer. ***Id.*** **¶¶1(b) 32, 32 n.5; Apx. 3**.  Mr. Dondero, CLOH, and Mr. Dondero's Trusts objected to the proposed Settlement.

---

[4] Refers to the Appendix in Support of the Debtor's Motion to Dismiss the Complaint (the "Appendix"), filed concurrently herewith.

7.      On January 6, 2021, Mr. Dondero filed his *Objection to Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest* [Docket No. 1697] **Appx. 4** ("<u>Dondero's Objection</u>"), contending that the Settlement: (a) was not "reasonable or in the best interests of the estate" because the Debtor was ***grossly overpaying*** and (b) amounted to "a blatant attempt to purchase votes in support of the Debtor's plan." ***Id.* ¶1**.  On January 8, 2021, Dondero's Trusts filed their Objection to the Debtor's *Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith*. [Docket No. 1706].  **Appx. 5** (the "<u>Trusts' Objection</u>").  The Trusts questioned (a) whether HarbourVest had the right to effectuate the Transfer, and (b) the valuation of the HCLOF interests – matters which are directly at issue in the Complaint.

8.      On January 8, 2021, Plaintiff CLOH filed its *Objection to HarbourVest Settlement* [Docket No. 1707].  **Appx. 6** ("<u>CLOH's Objection</u>").  CLOH challenged HarbourVest's right to effectuate the Transfer contending that: (a) CLOH and the other members of HCLOF had a "Right of First Refusal" under the Members Agreement, ***id.* ¶3,** and (b) "HarbourVest has no authority to transfer its interest in HCLOF without first complying with the Right of First Refusal." ***Id.* ¶6**.  CLOH offered a lengthy but faulty analysis of the Members Agreement, including CLOH's purported "Right of First Refusal" under section 6.2 thereof. ***Id.* ¶¶9-22**.

9.      By filing their objections, Mr. Dondero, the Trusts, and CLOH (collectively, the "<u>Objectors</u>") obtained the right to conduct discovery under Bankruptcy Rule 9014(c).[5]  Mr. Dondero and CLOH deposed Michael Pugatch, a representative of HarbourVest [Docket No. 1705], **Ex. 7**, but the Objectors sought no formal discovery from the Debtor, HCLOF, or Highland HCF Advisors, Ltd. ("<u>HHCFA</u>").  CLOH never contended that: (a) the Debtor had a

---

[5] Pursuant to Bankruptcy Rule 9014(c), parties to contested matters (such as the Objectors) have the full panoply of discovery rights provided under the Federal Rules of Civil Procedure, including the rights to take depositions, serve interrogatories and requests for admission, and seek the production of documents.

fiduciary duty to offer the HCLOF interests to CLOH, or (b) the Investment Advisers Act of 1940 (the "Advisers Act") was implicated by the Settlement.

10. On January 13, 2021, the Debtor filed *its Omnibus Reply in Support of Debtor's Motion for Entry of an Order Approving Settlement With HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Docket No. 1731] (the "Omnibus Reply"). **Ex. 8**. The Omnibus Reply rebutted CLOH's argument that the Transfer could not be completed without HCLOF's other members being offered HarbourVest's interest in HCLOF, as allegedly required by the "Right of First Refusal" under section 6.2. *Id.* **¶¶26-39**. At the January 14, 2021, hearing, CLOH *voluntarily withdrew* its objection after considering the Debtor's analysis of the Members Agreement by stating on the record:

> CLO Holdco has had an opportunity to review the reply briefing, and . . . [b]ased on our analysis of Guernsey law and some of the arguments of counsel on those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as trustee for CLO Holdco, *to withdraw the CLO Holdco objection based on the interpretation of the member agreement*.

**Appx. 9 at 7:20-8:6** (emphasis added). The Debtor called two witnesses in support of the Settlement Motion, its court-appointed Chief Executive Officer, James P. Seery, Jr., and Mr. Pugatch. Counsel for Mr. Dondero and the Trusts cross-examined the Debtor's witnesses but did not inquire about the value of the HCLOF interests, the Debtor's fiduciary obligations, or the Transfer. *Id.* **at 87:18-89:21**. At the conclusion of the hearing, the Court entered an order overruling the remaining objections and approving the Settlement [Docket No. 1788] (the "Settlement Order"). **Appx. 10**. The Settlement Order *expressly* authorized the transfer of HarbourVest's interest in HCLOF providing, in relevant part, that "[p]ursuant to the express terms of the [Members Agreement]. . . HarbourVest is authorized to transfer its interest in HCLOF. . . *without the need to obtain the consent of any party or to offer such interests first to*

5

*any other investor in HCLOF*." *Id.* ¶6 **(emphasis added)**.[6] The Bankruptcy Court specifically included this language because of concerns that Mr. Dondero and his entities would "go to a different court somehow to challenge the transfer." **Appx. 9 at 156:19-20**.

11. Nevertheless, on April 12, 2021, Plaintiffs filed their Complaint in this Court against the Debtor, HCLOF, and HHCFA challenging the Settlement and Transfer. **Appx. 11**.[7] The Complaint raises claims for: (i) breach of fiduciary duty; (ii) breach of the Members Agreement; (iii) RICO violations; (iv) negligence; (v) tortious interference (each, a "Claim" and collectively, the "Claims"). In its Claim for breach of fiduciary duty, Plaintiffs allege that the Debtor violated its "broad" duties to Plaintiffs under the Advisers Act and the Debtor's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of the HarbourVest interest;[8] and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without offering it to Plaintiffs. (*Id.* ¶¶67-74). In their RICO Claim, Plaintiffs allege that Defendant Highland and two affiliated entities were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and ultimately effectuating the HarbourVest Settlement. (*Id.* ¶¶113-133).

12. Plaintiffs' state-law claims rest on the same underlying allegations. In support of its claim for breach of the Members Agreement, Plaintiffs allege that the Debtor breached the Agreement's "Right of First Refusal" provision by diverting the investment opportunity away from CLOH to the Debtor. **Appx. 11 ¶¶92-102**. In its negligence claim, Plaintiffs assert that the

---

[6] *See also* Ex. 9 at 156:10-25; 157:1-5.

[7] Accordingly, the Debtor was forced to file two related motions. First, pending before this Court is the Debtor's *Motion for an Order to Enforce the Order of Reference* [Docket No. 23] (the "Motion to Enforce"). After Plaintiffs sought to add Mr. Seery as a defendant in violation of two Bankruptcy Court orders, the Debtor also filed its motion to hold Plaintiffs and their counsel in contempt. [*See* Docket No. 2247].

[8] Notably, while Mr. Dondero objected to the Settlement in the Prior Proceeding on the ground that the Debtor was overpaying, Plaintiffs contend in the instant proceeding that the Debtor underpaid.

Debtor's actions violated the Members Agreement and the Debtor's internal policies by failing to accurately calculate the HCLOF interests and failing to give Plaintiffs the Right of First Refusal to purchase the interests. (*Id.* ¶¶ 103-112). Plaintiffs' tortious interference claim is premised on the Debtor's alleged interference with Plaintiff's "Right of First Refusal" under the Members Agreement. (*Id.* ¶¶ 134-141).

### III.    ARGUMENT

13.    The Complaint should be dismissed on the following independent grounds: (i) the Claims are barred by *res judicata*, (ii) the Claims are barred by collateral estoppel, (iii) the Claims are barred by judicial estoppel, and (iv) Plaintiff fails to state claims for relief under Rule 12(b)(6).

### A.    Legal Standard

14.    To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288,

289 (5th Cir. 1995). The Court may take judicial notice of matters of public record when considering a motion to dismiss for failure to state a claim.[9]

## B.   **Plaintiffs' Claims are Barred by the Doctrine of *Res Judicata***

15.    Plaintiffs' Claims are barred by the doctrine of *res judicata*. "Claim preclusion, or 'pure' *res judicata*, is the 'venerable legal canon' that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (quoting *Medina v. I.N.S.,* 993 F.2d 499, 503 (5th Cir.1993)). "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Dismissal under Rule 12(b)(6) is proper if the elements of *res judicata* are apparent based on the facts pleaded and judicially noticed. *See Hall v. Hodgkins*, 305 F. Appx. 224, 227–28 (5th Cir. 2008); *Mitchell v. Ocwen Loan Servicing, LLC*, No. 4:18-cv-00820-P, 2019 WL 5647599, at *3 (N.D. Tex. 2019).

16.    Here, the Debtor requests the Court to take judicial notice of the record created in connection with the Settlement Motion.[10] It is clear from record that *res judicata* bars Plaintiffs' claims against the Debtor. "True *res judicata* has four element*s:* '(1) the parties are identical or least in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits.'" *Comer v. Murphy Oil USA*, Inc., 718

---

[9] *See T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D.Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 F.Supp.2d (E.D.La. Aug. 31, 2001).

[10] The Record includes (a) the Settlement Motion, and the exhibits admitted into evidence in support, (b) The Transfer Agreement; (c) Dondero's Objection; (d) the Trusts' Objection, (e) CLOH's Objection, (f) the discovery taken by the Objectors; (g) the Omnibus Reply; (h) the January 13, 201 Hearing Transcript; and (i) the Settlement Order.

F.3d 460, 466 (5th Cir. 2013) (quoting *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

17.     Plaintiffs were parties, or in privity with parties, to the Prior Proceeding. As noted *supra*, Plaintiff CLOH objected to the HarbourVest Settlement.  Although Plaintiff DAF did not file an objection, it is the parent of CLOH, is in privity with CLOH, and was controlled by the same person, Mr. Dondero's friend, Grant Scott.[11]  The second and third elements are also met.  The Bankruptcy Court presiding over the Settlement in the Prior Proceeding is a court of competent jurisdiction, and it entered a final order on the merits of the Settlement.  *See Wade v. Household Fin. Corp. III*, No. 1:18-CV-570-RP, 2019 WL 433741, at *1 (W.D. Tex. Feb. 1, 2019), report and recommendation adopted, 2019 WL 2565252 (W.D. Tex. Mar. 11, 2019)*; Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*, 510 F. 2d 272, 273 (5th Cir. 1975) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal.").

18.     The claims and causes of actions in the Complaint were raised, or could have been raised, in the Prior Proceeding.  A claim is the same if it relates to the same "transaction, or series of transactions, out of which the [original] action arose." *Ries v. Paige (In re Paige)*, 610 F.3d 865, 872 (5th Cir. 2010).  "When applying this test, the primary question is whether the lawsuits were based on 'the same nucleus of operative fact,' regardless of the relief requested, or the claims brought.  *Wade*, 2019 WL 433741, at *3. "The rule is that res judicata bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated." *Howe v. Vaughan (Matter of Howe)*, 913 F.2d 1138, 1144 (5th Cir. 1990) (emphasis in original) (internal quotations omitted).

---

[11] **Ex. 12** at 11:10-25; 12:1-25; 13:1-25; 14:1-25; 15:1-25; 16:1-17**.**

19. Plaintiffs' Claims are the "same or substantially similar" as those raised in the Prior Proceeding. All of Plaintiffs' Claims rest on allegations that the Debtor: (i) did not accurately value the HCLOF interests; (ii) concealed the value of those interests from Plaintiffs; (iii) violated the Member Agreement by failing to offer such interests to Plaintiffs pursuant to a "Right of First Refusal" provision; and (iv) diverted the investment opportunity to the Debtor without offering it to Plaintiffs. (*See* Complaint). Each of these Claims arise from the same "common nucleus of operative facts" as those raised in the Prior Proceeding. In the Prior Proceeding, Plaintiff CLOH claimed that: (i) it had a "Right of First Refusal" under the Members Agreement to purchase the HarbourVest interests and (ii) "HarbourVest ha[d] no authority to transfer its interests" in the Debtor without first "complying with the Right of First Refusal." These issues were fully brief, litigated, and decided. ***See, e.g.*, Appx. 6 ¶¶3, 6, 9-22; Ex. 7 at 140:7-25** (deposition testimony concerning Right of First Refusal); **Appx. 8 ¶ 36**.

20. Plaintiffs' Claims concerning the valuation of HarbourVest's interests in the HCLOF were also central to the issues raised in the Prior Proceeding. The Settlement Agreement fully disclosed, *inter alia*, (i) the valuation and (ii) the method of valuation. ***See* Appx. 2, 3 ¶¶1(b)**. In his Objection, Mr. Dondero asserted that the Debtor was "grossly overpaying" for HarbourVest's interests. ***See* Appx. 4 ¶1**. The Trusts' Objection similarly addressed the value of HarbourVest's interests. ***See* Appx. 5**. Discovery was taken on this very issue. ***See* Appx. 7 at 28:2-25; 30:1-25; 51:1-25; 59:1-18; 91:1-25** (extensive deposition testimony of HarbourVest relating to valuation).

21. Indeed, if Plaintiffs believed the Debtor was creating liability for the estate by entering into the Settlement Agreement, they were obligated to raise such concerns during the Prior Proceeding. This is nothing more than a *de facto* appeal or reconsideration of the

10

Settlement under the guise of asserting in this Court that Highland should be held liable for damages for actions it undertook pursuant to the Bankruptcy Court's order authorizing and approving the Settlement. Plaintiffs had a full and fair opportunity to litigate all factual and legal issues presented by the HarbourVest Settlement and the Transfer in the Bankruptcy Court.

22. Plaintiffs contend that "[i]t has recently come to light that … the HarbourVest interests, as of December 31, 2020, were worth in excess of $41,750,000," **Appx. 11 ¶ 37**. This allegation is insufficient to overcome *res judicata* because the Prior Proceeding squarely addressed the overall fairness of the Settlement, including the value of the consideration being exchanged and whether the transaction was in the best interests of the Debtor's estate. Moreover, CLOH had the unfettered right to conduct discovery on all of these issues, including the Debtor's alleged duties to CLOH. *See In re Paige*, 610 F.3d 865, 874 (5th Cir. 2010) (affirming bankruptcy court's finding that res judicata barred claims where previously unlitigated claim against debtor could or should have been asserted in earlier proceeding, where at time of earlier proceeding, party was aware of the "core" facts underlying later claim); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 388 (5th Cir. 2000). Accordingly, the claims in the Prior Proceeding and the Complaint arise from the same operative facts and are barred by *res judicata*. *See Thomas v. Houston Org. of Pub. Emps.*, No. CIV.A. H-14-0485, 2014 WL 4629235, at *4 (S.D. Tex. Sept. 15, 2014), aff'd sub nom. *Thomas v. City of Houston*, 619 F. App'x 291 (5th Cir. 2015).

**C.** **Plaintiffs' Claims are Barred by Judicial Estoppel**

23. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in [their] pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). The purpose of the doctrine is "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose

11

with the courts to suit the exigencies of self interest". *Id.* (internal quotations omitted); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir.1993).

24.     The doctrine applies: (1) "where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position." *In re Coastal Plains Inc.*, 179 F.3d 197, 206 (5th Cir. 1999). Both prongs are easily satisfied here. Plaintiffs' contentions in the Complaint are directly at odds with those taken in the Prior Proceeding. Plaintiff CLOH withdrew its objection to the Settlement Motion premised on its alleged "Right of First Refusal" under the Members Agreement. ***See* Appx. 9 at 7:20-8:6**. Plaintiffs' current Claims contradict this withdrawal because they are premised on the Debtor's "breach," or violations of, the Plaintiffs' "Right of First Refusal" under the Members Agreement. (*See generally* Complaint). The first element of judicial estoppel is met. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 398 (5th Cir. 2003) (first prong met where statement made in a previous suit by party's attorney was imputed to that party was clearly inconsistent with party's current position on that same issue).

25.     The Bankruptcy Court, in ruling on the Settlement Motion, necessarily accepted and relied on CLOH's prior position that it was withdrawing any objection premised on the Members Agreement. ***See* Appx. 9 at 8:1-10** (Bankruptcy Court accepting CHLOH's withdrawal of objection, noting that withdrawal "eliminates one of the major arguments"); ***see also* 156:10-25; 157:1-5**; *Hall*, 327 F.3d at 398 (previous court "necessarily accepted, and relied on" party's previous statements in resolving the conflict, noting that the "'judicial acceptance' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits.'").

**D.** **Plaintiffs Fail to State Claims Upon Which Relief Can be Granted**

**1.** **Plaintiffs Fail to State a Claim Under RICO**

26. To state a RICO claim, a plaintiff must allege: "1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 424 (5th Cir.1987). To defeat a motion to dismiss, "a RICO plaintiff must allege facts sufficient to establish each of the essential elements of his or her RICO Claim." *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 638 (E.D. La. 2016). The Complaint must be "plead with sufficient particularity" under Rule 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992); *see also Ranieri v. AdvoCare International, L.P.*, 336 F.Supp.3d 701, 715-16 (N.D. Tex. 2018). "Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby." *Tel-Phonic Servs*, 975 F.2d at 1134. "[T]o establish a RICO claim based on a pattern of mail or wire fraud, the plaintiff must plead that the defendant 'act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to [themselves]." *Ranieri,* 336 F.Supp.3d at 715. The plaintiff must plead that RICO violation was the "but-for and proximate cause" of their injury. *Id.*

**i.** **Plaintiffs Fail to Allege a Pattern of Racketeering Activity**

27. "To allege a 'pattern of racketeering activity,' a plaintiff must show that the defendant committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs baldly allege three predicate offenses: (i) wire fraud, (ii) mail fraud, and (iii) violation of the Advisers' Act antifraud provisions. *See* **Appx. 11 ¶¶ 130-132**. Plaintiffs fail to sufficiently plead any of these predicate acts.

13

28.     To state a claim for mail fraud, a plaintiff must allege: "(1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme." *United States v. Gray*, 96 F.3d 769, 773 (5th Cir. 1996). The elements of wire fraud are the same but apply to "wire communications in furtherance of the scheme." *Id.* "[B]oth RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir.2000). "[A] scheme to defraud must involve fraudulent misrepresentations or omissions 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Robinson*, 191 F. Supp. 3d at 639–40.

29.     The Complaint fails to satisfy the heightened pleading standards for asserting a RICO claim. The thrust of Plaintiffs' claim is that the Debtor operated in such a way as to "violate insider trading rules and regulations when it traded with HarbourVest" by concealing "non-public information that it had not supplied" to Plaintiffs. **Appx. 1 ¶118.** Plaintiffs' RICO claim is nothing more than a series of conclusory allegations predicated on activities of mail, wire, and bankruptcy fraud. *Id.* ¶¶113-133 (alleging, for instance, that Mr. Seery (i) "utilized wires and/or mails to obtain or arrive at valuations of the HCLOF interests, *id.* ¶120; (ii) "transmitted or caused to be transmitted through the interstate wires information to HCLOF investors from HCM…", *id.* ¶121, and (iii) "operated [the Debtor] in such a way that he concealed the true value of the HCLOF interests by utilizing the interstate wires and mails to transmit communications to the court in the form of written representations…"*id.* ¶122.

30.     The Complaint "does not identify specific acts of communication by mail or by interstate wires" undertaken by the Debtor "in furtherance of a fraudulent scheme." *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1994 WL 88129, at

14

*11 (S.D.N.Y. Mar, 14, 1994).  Nor do Plaintiffs plead with particularity details about the contents of the communications, or when the Debtor made such communications, to whom, or where such communications were directed.  Plaintiffs generally allege that Mr. Seery testified about the valuation of the HCLOF interests, **Appx. 11 ¶ 125**, but provide no details about mail or wire fraud.  These allegations are insufficient to state a plausible claim for relief under RICO.  *See Robinson*, 191 F. Supp. 3d at 640 (dismissing RICO claims where "vague" and "general" conclusory allegations "provides no details about the contents of any of these documents. Nor does she specify when defendants made these communications or to whom, specifically, they were directed.").

31.     Plaintiffs' allegations also fail to sufficiently plead a "pattern of racketeering activity."  "Continuity" refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Tel-Phonic Servs.,* 975 F.2d at 1139-40.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *H.J., Inc.*, 492 U.S. at 241.  A RICO "pattern" is only established "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.; see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir.1991) ("Short-term criminal conduct is not the concern of RICO.").

32.     Here, there is no such "continuity" alleged.  There is no specific "threat of repetition" or distinct threat of long-term criminal conduct.  Nor are the allegations sufficient to suggest that the Debtor "operates as part of a long-term associates that exists for criminal purposes." *H.J., Inc.*, 492 U.S. at 241.  Plaintiffs' RICO allegations concern conduct allegedly occurring in the limited period from September 2020 to January 2021, all surrounding the

15

alleged predicate acts leading up to the HarbourVest Settlement. *See, e.g.,* **Appx. 11 ¶¶119-128** (alleging that, (i) "[o]n or about September 30, 2020, Seery transmitted … through the interstate wires information to HCLOF investors," (ii) in November 2020, "HCM and HarbourVest entered into discussions about settlement the HarbourVest Claims, and (iii) in January 2021, "Seery testified that he "had valued the HarbourVest Assets at their current valuation and at fair market value"). Such allegations concern short-term, discrete transactions, and do not show a "pattern of activity," or threat of "continuing racketeering activity." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *Calcasieu*, 943 F.2d at 1464.

### ii.     Plaintiffs Fails to Allege a RICO Association-in-Fact Enterprise

33.     A RICO "enterprise" can be either a legal entity or an "association in fact" enterprise. *Burzynski*, 989 F.2d at 743 (citing 18 U.S.C. 1961(4)). "A RICO association in fact enterprise must be shown to have continuity." *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991). "Continuity or the ongoing nature of an association in fact is the linchpin of enterprise status." *Ocean Energy II*, 868 F.2d 740, 749 (5th Cir.1989). "The enterprise must have continuity of its structure and personnel, which links the defendants, and a common or shared purpose. . . An association in fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Calcasieu*, 943 F.2d at 1461 (internal quotations omitted). In other words, an "association in fact enterprise must have an existence separate and apart from the pattern of racketeering." *Id.*

34.     Plaintiffs argue that the Defendants, together, constitute an "association-in fact" enterprise because "the purpose of the association-in-fact was the perpetuation of Seery's

16

position at HCM and using the Harbourvest settlement as a vehicle to enrich persons other than the HCLOF investors, including [Plaintiffs]." Appx. ¶115. However, these allegations fail to show that Defendants functioned as a continuing unit, separate and apart from the alleged RICO violation, and fail to allege that Defendants are an "enterprise" within the purview of RICO. *See Montesano*, 818 F.2d at 427 (allegations failed to allege association-in-fact enterprise under RICO where plaintiffs only alleged that defendants "conspired in this one instance," the "enterprise was the accomplishment of this discrete event. That is not enough."); *Burzynski*, 989 F.2d at 743 (allegations of "association-in-fact" enterprise lack "continuity" where activity of enterprise related to the predicate acts forming basis of RICO allegations).

35.     Plaintiffs also fail to identify the roles of the two affiliates of the Debtor, HHCFA, and HCLOF, and how these two entities, with the Debtor, participated in the alleged criminal enterprise. *See Allstate Insurance Company v. Benhamou*, 190 F. Supp. 3d 631, 656 (S.D. Tex. 2016) (complaint failed to sufficiently allege how party "participated in the operation or management of the enterprise or association-in-fact enterprise as required by the statute," and "from these sparse allegations it appears [party] had limited involvement in the entity's affairs."); *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546, at *14 (S.D. Tex. July 3, 2012) (plaintiffs failed to plead association-in-fact enterprise under RICO where the complaint "lacks factual allegations capable of establishing how the alleged scheme was formed, who—if anyone—was in charge, how each of the defendants participated in the alleged scheme other than providing independent services, or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud"). Plaintiffs fail to allege the existence of an association-in-fact enterprise and fail to state a claim under RICO.

### iii.     <u>Plaintiffs Fail to Allege Causation</u>

36.     Plaintiffs also fail to plausibly allege causation. RICO provides civil remedies to "[a]ny person injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "An injured party must show that the violation was the but-for and proximate cause of the injury." *Allstate*, 802 F.3d at 676 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). In general, "a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." *Bridge*, 553 U.S. at 659.

37.     Here, Plaintiffs fail to allege that the Debtor's actions induced them to act or that any alleged injuries were the proximate cause thereof. Plaintiffs generally allege that "had Plaintiff been offered those [HCLOF] interests, it would have happily purchased them and therefore would have infused over $20 million in cash into the estate for the purpose of executing the Harbourvest Settlement." **Appx. 11** ¶50. Such conclusory and speculative allegations are insufficient to show proximate and but-for causation.[12] *See Robinson*, 191 F. Supp. 3d at 645 (allegations failed to state causation required for alleged RICO violation where her "after-the-fact" and "bare assertion that she would have acted differently" had she known of certain facts is insufficient, and "absent additional factual allegations to support or explain this assertion," plaintiff's pleadings fail to 'nudge[] [her] claims across the line from conceivable to plausible.'") (quoting *Twombly*, 550 U.S. at 547); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 802 F. Supp. 2d 725, 729 (E.D. La. 2011) (plaintiffs fail to allege

---

[12] Although Plaintiff CLOH alleged in their objection to the Settlement that Defendants breached the "Right of First Refusal" under the Members Agreement, Plaintiff CLOH never stated it was interested in or willing to purchase the HarbourVest interests. *See* Ex. 8.

proximate causation for RICO claim where economic harms suffered by plaintiffs are "too remote" and where theory of causation "depends on a series of speculative assumptions to link the alleged fraud" with the harm).

### 2. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

38.     Plaintiffs fail to state a claim for breach of fiduciary duty.  Plaintiffs' fiduciary claim is premised on the Debtor's alleged: (i) insider trading; (ii) concealment of the value of the HarbourVest assets; and (iii) diversion of the investment opportunity from Plaintiffs to the Debtor, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Advisers Act. *See* **Appx. 11 ¶67-80**.  Where a plaintiff's breach of fiduciary duty claim is premised on theories of securities fraud, Rule 9(b)'s heightened pleadings standards apply.  *See Tigue Inv. Co. v. Chase Bank of Texas, N.A.*, No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004).  This heightened pleading standard "protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman v. DSC Communications*, 14 F.3d 1061, 1067 (5th Cir.1994).

39.     "Section 10(b) of the Securities and Exchange Act of 1934 makes unlawful the use of 'any manipulative or deceptive device or contrivance' in contravention of SEC rules." *Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 608 (5th Cir. 1979).  Rule 10b-5 prohibits the use of any "artifice to defraud" or any act "which operates or would operate as a fraud or deceit." *See id.*  "A cause of action lies under Rule 10b-5 'only if the conduct alleged can be fairly viewed as manipulative or deceptive' within the meaning of the statute." *Id.* (quoting *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473 (1977)).

40.     To state a securities-fraud claim under section 10(b), and Rule 10b–5, plaintiffs must plead: "(1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on

which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 368 (5th Cir. 2004). "A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Id.* (quoting *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir.1985)). "[S]cienter is a crucial element of the securities fraud claims." *Tuchman*, 14 F.3d at 1067.

41.     Plaintiffs' allegations underlying its breach of fiduciary duty claim are premised largely the same conclusory allegations as those underlying its fraud-based RICO claim. ***See Appx. 1 ¶¶67-91***. Because Plaintiffs fail to plead securities fraud, any fiduciary claim premised on such allegations necessary fails as well. *See Town N. Bank, N.A.*, 2014 WL 4851558, at \*27 (plaintiffs' "breach of fiduciary duty claim is based on the same allegations as its fraud claim. Rule 9(b) therefore applies.").

42.     Plaintiffs fail to plead with particularity that any alleged omissions by the Debtor assumed any real significance for the Plaintiffs. ***See, e.g., Appx. 11 ¶82-89*** (speculating about Plaintiffs "lost opportunity cost," and vaguely asserting that "Defendants' malfeasance" has "exposed HCLOF to a massive liability from HarbourVest."). These allegations also fail to give rise to a "strong interference of scienter" sufficient to state a claim under Rule 10(b). *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 635 (S.D. Tex. 2003). Plaintiffs' allegations also fail to detail any deceptive motive on the part of the Debtor. The allegations are insufficient to lead to any inference of scienter. *See Southland*, 365 F.3d at 368 (plaintiff must plead "more than allegations of motive and opportunity to withstand dismissal" for claim of securities fraud). Plaintiffs' allegations regarding proximate cause are equally

20

deficient. *See* **Appx. 11 ¶¶88-89** (generally alleging that because of Defendants' actions, "Plaintiffs have lost over $25 million").

43.     Plaintiffs also fail to allege any breach of fiduciary claims premised on state law. Texas law[13] provides "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 221 (5th Cir. 2017) (internal quotations omitted). "The plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that that a fiduciary duty has been breached." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019).

44.     The Complaint fails to sufficiently allege facts regarding the nature of the relationship between Plaintiffs and the Debtor. *See* **Appx. 11** (generally alleging that (i) the Debtor "owed a fiduciary duty to [Plaintiffs]" pursuant to which the Debtor "agreed to provide sound investment advice, and (ii) this fiduciary relationship is "broad and applies to the entire advisors-client relationship"). The Complaint also fails to adequately allege that any state law or Guernsey fiduciary duty existed, let alone was breached. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (complaint failed to allege "the nature of the fiduciary duty owed" to plaintiff). The allegations premised on the Debtor's breach of its "internal policies and procedures" or the diversion of "corporate opportunities" are otherwise conclusory. **Appx. 11 ¶¶72-89**. *See In re Soporex, Inc.*, 463 B.R. 344, 417 (Bankr. N.D. Tex. 2011) (allegations fail to state claim for breach of fiduciary duty were conclusory and "lack of factual content" relating to corporate mismanagement and corporate waste).

---

[13] Plaintiffs allege breach of fiduciary duty under state law; however, HCLOF is a Guernsey entity and the Members Agreement is governed by Guernsey law. *See* Ex. 13 at 14.

45. To the extent that Plaintiffs rely on the Advisers Act in support of their Claims for breach of fiduciary duty, they still fail.[14] Plaintiffs' Claim is purportedly premised on the Advisors Act because (i) Defendant Debtor was Plaintiff DAF's investment adviser under an advisory agreement and (ii) Defendant HHCFA is HCLOF's investment adviser under a separate advisory agreement. However, the Adviser Act does not contain a private right of action to sue for damages arising from breach of fiduciary duty. *Corwin v. Marney, Orton Invs.*, 788 F.2d 1063, 1066 (5th Cir. 1986)); *Transamerica Mtg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) (holding there is no private right of action under Section 206 of the Advisors Act); *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 34 (S.D.N.Y. 2008) ("The only remedy available under the Advisers Act is rescission of the investment advisory contract and restitution of consideration paid for investment advisory services.").

46. There is also no fiduciary duty owed to Plaintiff CLOH as an investor in HCLOF. CLOH does not have any investment advisory relationship with Defendant Debtor (or HHCFA). Plaintiff CLOH is merely an investor in HCLOF and not an advisory client of Defendant Highland or HHCFA. It is well established that there is no fiduciary relationship between an investment adviser to HCLOF and investors in HCLOF. *See Goldstein v. SEC*, 451 F.3d 873, 879 (D.C. Cir. 2006) (no fiduciary relationship between an investment adviser to a pooled fund and an investor in the pooled fund). The claim fails as a matter of law. *See Town N. Bank*, 2014 WL 4851558, at *27 (fiduciary claim fails as a matter of law where no duty owed to plaintiff).

---

[14] Plaintiffs cite to Section 47(b) of the Advisers Act for the proposition that the Transfer of HCLOF's interests is unenforceable. However, there is no Section 47(b) of the Advisers Act.

### 3. Plaintiffs Fail to State a Claim for Breach of Members Agreement

47. Plaintiffs fail to plead sufficient facts to state a breach of contract claim premised on breach of the Members Agreement. Plaintiffs conceded there was no breach of the Members Agreement in open court. *See* **Appx. 9 at 7:20-8:6**. Plaintiffs' admission was driven by their recognition that their claim for breach is contradicted by the plain terms of the Member Agreement. Section 6.1 of the Members Agreement provides, in pertinent part, "[n]o Member shall sell … or otherwise dispose of its Shares or its commitment to settle purchases of Shares under the Subscription and Transfer Agreement (each a '**Transfer**'), *other than to an Affiliate of an initial Member party hereto*, without the prior written consent of [HHCFA]." **Appx. 13 at** § 6.1 (emphasis added). Under the Members Agreement, "Affiliate" is defined as, "with respect to a person, (i) any other person who, directly or indirectly, is in control of, or controlled by, or is under common control with, such person. . ." (*Id*. § 1.1). A "Member" is a "holder of shares in the Company." The "initial Member[s]" are the initial Members of HCLOF listed on the first page of the Members Agreement and include the Debtor, HarbourVest, and CLO Holdco. Under the plain language of Section 6.1, HarbourVest is entitled – without the consent of any party – to "Transfer" its interests in HCLOF to an "Affiliate" of any of the Debtor, HarbourVest, or CLOH. Section 6.2 provides two exceptions to the "Right of First Refusal": (1) Transfers to "affiliates of an initial Member" from Members *other than* CLO Holdco and the "Highland Principals" and (2) Transfers from CLO Holdco or a Highland Principal to the Debtor, the Debtor's "Affiliates," or another Highland Principal. Since HarbourVest transferred its interests to the Debtor or its designee, an Affiliate of an initial Member, the plain language of section 6.2 exempts HarbourVest from having to comply with the "Right of First Refusal." *See* **Appx. 13; Appx. 8 ¶¶ 28-35.** Plaintiffs' breach of contract claim fails as a matter of law.

48. Plaintiffs also fail to plead actual damages resulting from the alleged breach of the Members Agreement, other than contending, as it does throughout its Complaint, that "had plaintiff been allowed to do so, it would have obtained the interests" in HCLOF. (*Id.* ¶100). Such conclusory allegations are insufficient. *See Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-CV-1797-K-BN, 2019 WL 587304, at \*6 (N.D. Tex. Jan. 18, 2019), report and recommendation adopted, No. 3:18-CV-1797-K, 2019 WL 586005 (N.D. Tex. Feb. 12, 2019) (plaintiffs failed to plead breach of contract where they failed adequately plead "actual damages").

### 4. Plaintiffs Fail to State a Claim for Negligence

49. Plaintiffs fail to state a claim for negligence. "The elements of a negligence claim under Texas law are: '(1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.'" *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 789 (E.D. Tex. 2019). Plaintiffs' allegations underlying their negligence claim are premised on the same conclusory allegations forming the basis of their breach of contract and fiduciary duty claims. *See* **Appx. 1 ¶¶103-112**. The same pleading deficiencies discussed above are present here regarding "duty" and "proximate case." *Id.* ¶¶106-107. *See Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031-M-BH, 2017 WL 457084, at \*17 (N.D. Tex. Jan. 6, 2017) (plaintiff fails to allege how the alleged "negligence was the proximate cause of any damages to her" and fails to "allege facts related to the defendants' duty to her.").

### 5. Plaintiffs Fail to State a Claim for Tortious Interference with Contract

50. Plaintiffs' tortious interference claim is premised on the Debtor's alleged violation of the Member Agreement and concealment of the value of HCLOF. **Appx. 1 ¶¶134-141**. To state a claim for tortious interference with contract, a plaintiff must show: "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that

24

proximately causes damage, and (4) actual damage or loss." *Specialties of Mexico Inc. v. Masterfoods USA*, No. CIV.A. L-09-88, 2010 WL 2488031, at *9 (S.D. Tex. June 14, 2010). Plaintiffs' claim fails to sufficiently allege how the Debtor intentionally interfered with the Members Agreement and, in fact, have admitted that the transfer of the HCLOF interests did not violate the Members Agreement. Plaintiffs also fail to allege proximate causation or any actual damages sustained as a result of the alleged interference. Accordingly, this claim should be dismissed.

## IV. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant its Motion and enter an order in the form annexed to the Motion as **Exhibit A**, and grant any further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:43286.6 36027/002

Dated: May 27, 2021                        **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:43286.6 36027/002