SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for Charitable DAF Fund, L.P. and*
*CLO Holdco, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **CHARITABLE DAF FUND, L.P.** | § | |
| **and CLO HOLDCO, LTD.,** | § | |
| *directly and derivatively,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CAUSE NO. 3:21-cv-00842-B** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P., HIGHLAND HCF ADVISOR, LTD.,** | § | |
| **and HIGHLAND CLO FUNDING, LTD.,** | § | |
| *nominally,* | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.'S
MOTION FOR AN ORDER TO ENFORCE THE ORDER OF REFERENCE**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      PRELIMINARY STATEMENT ...........................................................................1

II.     BACKGROUND ...................................................................................................2

III.    ARGUMENT & AUTHORITY .............................................................................3

        A.      The Motion Should Be Denied Because Withdrawal of
                the Reference is Mandatory .....................................................................3

        B.      Automatic Referral is Unnecessary and Would Be Inefficient...........................9

                1.      The causes of action asserted by the Plaintiffs do not
                        "arise under," or "arise in" Title 11 are not "core"
                        proceedings ......................................................................................10

                2.      The Bankruptcy Court has limited post-confirmation
                        "related to" jurisdiction...................................................................12

        C.      The *Res Judicata* Argument is Not Relevant to the Relief
                Sought in This Motion ..........................................................................15

        D.      The Local Rule 3.3 Argument is Unavailing .......................................16

        E.      The Litigious-Nature Argument is Likewise Unavailing ...................17

        F.      Plaintiffs' Cross-Motion Should be Granted .......................................18

VI.     CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*,
   203 F.3d 914 (5th Cir. 2000) ...................................................................................15

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*,
   266 F.3d 388 (5th Cir.2001) ....................................................................................18

*Beitel v. OCA, Inc. (In re OCA, Inc.)*,
   551 F.3d 359 (5th Cir. 2008) ...................................................................................13

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013).......................................................................................6

*Beta Operating Co., LLC v. Aera Energy, LLC (In re Mem'l Prod. Partners, L.P.)*,
   No. H-18-411, 2018 U.S. Dist. LEXIS 161159 (S.D. Tex. 2018)............................7

*Burch v. Freedom Mortg. Corp. (In re Burch)*,
   835 F. App'x 741 (5th Cir. 2021) ............................................................................18

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995)................................................................................................15

*Chalmers v. Gavin*,
   No. 3:01-CV-528-H, 2002 U.S. Dist. LEXIS 5636 (N.D. Tex., Apr. 2, 2002) ....................15

*Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*,
   309 B.R. 217 (Bankr. N.D. Tex. 2004)....................................................................14

*Davis v. Dall. Area Rapid Transit*,
   383 F.3d 309 (5th Cir. 2004) ...................................................................................15

*Davis v. Life Inv'rs Ins. Co. of Am.*,
   282 B.R. 186 (S.D. Miss.2002)................................................................................10

*Faulkner v. Eagle View Capital Mmgt. (In re The Heritage Org., L.L.C.)*,,
   454 B.R. 353 (Bankr. N.D. Tex. 2011)....................................................................13

*Faulkner v. Kornman*,
   No. 10-301, 2015 Bankr. LEXIS 700 (Bankr. S.D. Tex. 2015) ..............................14

*Feld v. Zale Corp. (In re Zale Corp.)*,
   62 F.3d 746 (5th Cir.1995) ......................................................................................12

*Gupta v. Quincy Med. Ctr.*,
  858 F.3d 657 (1st Cir. 2017) .................................................................................. 11-124

*In re Cont'l Airlines Corp.*,
  50 B.R. 342 (S.D. Tex. 1985), *aff'd*, 790 F.2d 5th Cir. 1986) ....................................................4

*In re Exide Tech*s.,
  544 F.3d 196 (3d Cir. 2008)........................................................................................10

*In re Harrah's Entm't*,
  No. 95-3925, 1996 U.S. Dist. LEXIS 18097 (E.D. La. 1996) ....................................1, 5, 9, 19

*In re IQ Telecomms., Inc.*,
  70 B.R. 742 (N.D. Ill. 1987) ........................................................................................6

*In re Nat'l Gypsum Co.*,
  134 B.R. 188 (N.D. Tex. 1991).....................................................................................8

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2005) ....................................................................................14

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 307 (S.D.N.Y. 2011)...................................................................................3-4

*Kuzmin v. Thermaflo, Inc.*,
  No. 2:07-cv-00554-TJW, 2009 U.S. Dist. LEXIS 42810
  (E.D. Tex. May 20, 2009) ..................................................................................... 16-17

*Legal Xtranet, Inc. v. AT&T Mgmt. Servx., l.P. (In re Legal Xtranet, Inc.*),
  453 B.R. 699, 708–09 (Bankr. W.D. Tex. 2011)............................................................10, 11

*LightSquared Inc. v. Deere & Co.*,
  2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. 2014) ................................................................3-4

*Memphis-Shelby Cty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc).*,
  783 F.2d 1283 (5th Cir. 1986) ....................................................................................15

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
  394 F.3d 1189 (9th Cir. 2005) ....................................................................................14

*Price v. Rochford*,
  947 F.2d 829 (7th Cir. 1991) ....................................................................................14

*Rannd Res. v. Von Harten (In re Rannd Res.)*,
  175 B.R. 393 (D. Nev. 1994) ....................................................................................5-6

*Reynolds v. Tombone*,
   Civil No. 3:96-CV-3330-BC, 1999 U.S. Dist. LEXIS 9995
   (N.D. Tex., June 24, 1999)..........................................................................................15

*Risby v. United States*,
   No. 3:04-CV-1414-H, 2006 U.S. Dist. LEXIS 8798 (N.D. Tex. 2006) ..................15

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180, 84 S. Ct. 275 (1963).........................................................................6

*S. Pac. Transp. Co. v. Voluntary Purchasing Grps.*
   252 B.R. 373 (E.D. Tex. 2000) ...............................................................................8

*Stern v. Marshall*,
   564 U.S. 462 (2011).........................................................................................10, 13

*Stoe v. Flaherty*,
   436 F.3d 209 (3d Cir. 2006)...................................................................................11

*TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*,
   764 F.3d 512 (5th Cir. 2014) ..............................................................................3, 18

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009)................................................................................................15

*Travelers Ins. Co. v. St. Jude Hosp.*,
   37 F.3d 193 (5th Cir. 1994) ...................................................................................15

*Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp. (In re Am. Home Mortg. Holding)*,
   477 B.R. 517 (Bankr. D. Del. 2012) ......................................................................14

*TXMS Real Estate Invs., Inc. v. Senior Care Ctrs., LLC (In re Senior Care Centers, LLC*,
   622 B.R. 680 (Bankr. N.D. Tex. 2020)..................................................................10

*UPH Holdings, Inc. v. sprint Nextel Corp.*,
   No. A-13-CA-748-SS, 2013 U.S. Dist. LEXIS 189349
   (W.D. Tex. 2013) ................................................................................................ 7-8

*United States. Brass Corp. v. Travelers Ins. Grp., Inc. (In re United States Brass Corp.)*,
   301 F.3d 296 (5th Cir. 2002) .................................................................................10

*Valley Historic Ltd. P'ship v. Bank of N.Y.*,
   486 F.3d 831 (4th Cir. 2007) .................................................................................15

*Wood v. Wood (In re Wood)*,
   825 F.2d 90 (5th Cir.1987) ....................................................................................11

*Zerand-Bernal Grp. v. Cox*,
  23 F.3d 159 (7th Cir. 1994)-----------------------------------------------------------------------------15

**Rules & Statutes**

Fed. R. Civ. P. 12(b)(6)........................................................................................18

LRCi 3.3.................................................................................................16, 17

LRCi 7(a) ....................................................................................................17

LRCi 7(h) ....................................................................................................17

LRCi 7(i) .....................................................................................................17

LRCi 7.1(i)...................................................................................................17

17 C.F.R. 275.206(4)-7 ....................................................................................7

27 C.F.R. part 275 ..........................................................................................7

15 U.S.C. § 80b-1 ...........................................................................................8

28 U.S.C. § 157(d) ..................................................................................6,18, 19

28 U.S.C. § 1927...........................................................................................18

**Other**

Collier on Bankruptcy ¶ 3.02[2] (16th ed. 2010)....................................................13

Investment Advisers Act of 1940 ................................................................ *passim*

Investment Advisers Act Release No. 2106 (Jan. 31, 2003) ...........................................7

Investment Advisers Act Release No. 3060 (July 28, 2010) ...........................................7

Investment Advisers Act Release No. 4197 (Sept. 17, 2015)...........................................7

Racketeer Influenced and Corrupt Organizations Act (RICO).......................... *passim*

Securities Act of 1933, § 12(2) ...........................................................................6

Securities Exchange Act of 1934, § 10 ...................................................................6

Securities Exchange Act, Rule 10b-5 ....................................................................6

**PLAINTIFFS' RESPONSE TO DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR AN ORDER TO ENFORCE THE ORDER OF REFERENCE AND CROSS MOTION**

## I.

## PRELIMINARY STATEMENT

Plaintiffs The Charitable DAF Fund, L.P. and CLO Holdco Ltd. oppose Defendant Highland Capital Management, L.P.'s Motion for an Order to Enforce the Order of Reference.

This action primarily involves fiduciary duties imposed upon Registered Investment Advisers by the Investment Advisers Act of 1940 ("Advisers Act") and corresponding state law claims for breach of those duties. It also involves causes of action under the civil RICO statute, for which breaches of Advisers Act fiduciary duties serve as the predicate act. As a result, presiding over this action will require extensive consideration of federal laws regulating interstate commerce, which renders withdrawal of the reference to bankruptcy court mandatory under 28 U.S.C. § 157(d) ("The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.").

No authority requires this Court to refer this action to the bankruptcy court, only to have it return on a motion for withdrawal of the reference. The opposite is true. *In re Harrah's Entm't*, No. 95-3925, 1996 U.S. Dist. LEXIS 18097, at *11 (E.D. La. 1996) (Clement, J.) ("Although 'related to' bankruptcy jurisdiction exists over the non-debtor plaintiffs' non-bankruptcy federal securities claims against non-debtor defendants, placing that bankruptcy jurisdiction in the bankruptcy court is inappropriate because plaintiffs would be entitled to a mandatory withdrawal

---

of the reference. Rather than *waste judicial resources* on a meaningless referral to bankruptcy court, the Court will retain jurisdiction over this suit." (emphasis added)). Defendant's arguments to the contrary are unsupported by law.

Defendant's attempts to smear Plaintiffs with 12 pages of irrelevant facts and a 926-page appendix provide no additional support for the Motion. This action involves matters well outside the experience of bankruptcy courts and requires adjudication in an Article III court.

Because the reasons for denying Defendant's Motion are also reasons that this Court should withdraw the reference under 28 U.S.C. § 157(d), and because deciding the same issue twice would be inefficient and unnecessary, Plaintiffs cross-move for withdrawal of the reference.

## II.

## BACKGROUND

Defendant's factual assertions include considerable bluster and vitriol, unsupported by the lengthy materials in its appendix. Importantly, the opening sentence under the heading "Factual Background" is unsupported and false. Memorandum of Law [Doc. 23] ¶ 7. Plaintiffs are not controlled or directed by James Dondero; Plaintiffs are both controlled and directed by Mark Patrick. APP_16-17, 22; *see also* APP_10-14; *see generally* APP_1-22. And Patrick's testimony to this extent went unchallenged in a hearing before the bankruptcy court earlier this month. *Id*.

Of equal importance is Defendant's assertion that all aspects of the Harbourvest settlement, including the valuation of the assets involved, were fully disclosed. Memorandum of Law [Doc. 23] ¶ 12. This statement is unsupported by the appendix cite accompanying it, which at most constitutes a self-serving denial. And it is a hotly contested issue between the parties. The impetus to this action, in fact, was Plaintiffs having learned that the value of the assets transferred in the Harbourvest settlement was *not* as represented. Original Complaint ("Complaint" [Doc. 1]), ¶¶ 36-

48. Plaintiffs disagree with much of the remainder of what Defendant presents as "fact" in its Memorandum of Law. But Plaintiffs respectfully submit that none of it is relevant to resolution of the present Motion. And so, for brevity's sake, Plaintiffs have not elected to engage in a blow-by-blow effort to litigate those issues.

Instead, Plaintiffs' brief will focus on the nature of their causes of action as that pertains to which court—district or bankruptcy—should preside over them.

## III.

## ARGUMENT & AUTHORITY

Plaintiffs respectfully submit that Defendant's Motion should be denied and Plaintiffs' cross-motion granted for the reasons provided below:

## A. The Motion Should Be Denied Because Withdrawal of the Reference Is Mandatory

Because the Complaint relies extensively on and largely is predicated on the Investment Advisers Act of 1940, withdrawal of the reference to the bankruptcy court is mandatory here under 28 U.S.C. § 157(d). That statute requires withdrawal of the reference when a proceeding "requires consideration" of non-bankruptcy federal laws regulating interstate commerce:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d); *cf. TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 & n.40 (5th Cir. 2014) (noting bankruptcy court's "more limited jurisdiction" as a result of its "limited power" under 28 U.S.C. § 157); *LightSquared Inc. v. Deere & Co.*, 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. 2014) (quoting *Investor Prot. Corp. v. Bernard*

*L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. 2011), for the proposition that, "[i]n determining whether withdrawal is mandatory, the Court 'need not evaluate the merits of the parties' claims; rather, it is sufficient for the Court to determine that the proceeding will involve consideration of federal non-bankruptcy law'"); *In re Cont'l Airlines Corp.*, 50 B.R. 342, 360 (S.D. Tex. 1985), *aff'd*, 790 F.2d 5th Cir. 1986) ("While that second clause [of § 157(d)] might not apply when some 'other law' *only tangentially affects the proceeding*, it surely does apply when federal labor legislation *will likely be material* to the proceeding's resolution.") (emphasis added).

Plainly here, the claims in the Complaint at least involve federal laws "regulating organizations or activities affecting interstate commerce." The Advisers Act and the RICO statute are such laws, and at least the first and fourth counts of the Complaint sound under them. *See, e.g.*, Complaint ¶¶ 57 & n.5, 66, 69, 74 & n.6, 89 (explicitly invoking various provisions of the Advisers Act and accompanying regulations), 114, 117, 131, 132 (invoking the RICO statute). Defendant's entire argument against withdrawal of the reference thus turns on whether these laws "must be considered."

It is remarkable that Defendant suggests these statutes need not be considered. The briefing already puts at issue significant, hotly contested issues regarding the interplay of bankruptcy law and the Advisers Act, including

1. Whether Defendant owed fiduciary duties under the Advisers Act that are unwaivable;

2. To whom such duties are owed and whether they were violated;

3. Whether such Advisers Act fiduciary duties can be terminated by a blanket release in a bankruptcy settlement;

4. Whether *res judicata* applies to bar claims for breach of Advisers Act duties that had not yet accrued at the time of the action alleged to have barred them;

---

5. Whether a contractual jury waiver is enforceable as to claims for breach of unwaivable Advisers Act fiduciary duties;

6. Whether such waivers can be enforced as to non-parties to the waiver;

7. Whether breach of Advisers Act fiduciary duties can serve as a predicate for civil RICO liability under the RICO statute, among other significant legal issues.

Presiding over this action most certainly will require consideration of all these issues.

Before joining the Fifth Circuit, Judge Clement addressed a motion similar to Defendant's during her time in the Eastern District of Louisiana. There, in *In re Harrah's Entm't*, 1996 U.S. Dist. LEXIS 18097, at *7-8 (E.D. La. 1996), she denied a motion to refer a federal securities action to bankruptcy court, despite finding that the bankruptcy court had related-to jurisdiction. Judge Clement wrote,

> Although "related to" bankruptcy jurisdiction exists over the non-debtor plaintiffs' non-bankruptcy federal securities claims against non-debtor defendants, placing that bankruptcy jurisdiction in the bankruptcy court is inappropriate because plaintiffs would be entitled to a mandatory withdrawal of the reference. Rather than waste judicial resources on a meaningless referral to bankruptcy court, the Court will retain jurisdiction over this suit.

*Id*. at *11.

Judge Clement rejected the argument Defendant parrots here that the case would "only involve the simple application of established federal securities laws." *Id*. at *7. Instead, she relied on alleged "violations of several federal securities laws" and the plaintiff's attempt "to hold defendants directly liable and secondarily liable based on a 'controlling person' theory for certain acts and omissions." *Id*. Without any need to analyze how "established" the applicable law might be, Judge Clement concluded, [t]his federal securities litigation involves more than simple application of federal securities laws and will be complicated enough to warrant mandatory withdrawal under § 157(d)." *Id*. (citing *Rannd Res. v. Von Harten (In re Rannd Res.)*, 175 B.R.

393, 396 (D. Nev. 1994), for the proposition that withdrawal of the reference is mandatory where resolution requires more than simple application of federal securities laws, even though that court's determination was based solely on a review of the complaint's alleged violations of § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934, and Rule 10b-5).

This authority applies here. In the Complaint, Plaintiffs allege violations of federal securities law (the Advisers Act), as well as the RICO statute. Deciding even the pending motion to dismiss will require far more than simple application of these laws. Nothing more is necessary to satisfy § 157(d). *Cf. In re IQ Telecomms., Inc.*, 70 B.R. 742, 745 (N.D. Ill. 1987) ("Nevertheless, Central's second amended complaint easily meets [the § 157(d)] standard. Count 2 of the complaint consists of 76 pages and alleges that 29 individuals and entities violated RICO by engaging in a pattern of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and 139 specific instances of bankruptcy fraud, 18 U.S.C. § 152.").

Although it is unnecessary here to demonstrate that Plaintiffs' Advisers Act allegations will require application of *underdeveloped* law, that is certainly the case. As the Third Circuit pointed out in 2013, there is considerable "confusion" in the case law stemming from the fact that federal law (the Advisers Act) provides "the duty and the standard to which investment advisers are to be held," but "the cause of action is presented as springing from state law." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502 (3d Cir. 2013). The *Belmont* court further suggests the "confusion [that this situation] engenders may explain why there has been *little development in either state or federal law* on the applicable standards." *Id.* (emphasis added). "Half a century later," the *Belmont* court tells us, "courts still look primarily to *Capital Gains Research* [*,Inc.*, 375 U.S. 180, 192 (1963),] for a description of an investment adviser's fiduciary duties." *Id.* at 503;

---

*see also* Plaintiffs' Response to Motion to Dismiss (addressing Defendant's erroneous argument that the Advisers Act creates no private right of action).

This observation is bolstered by the necessity of relying extensively on SEC regulations and rulings in the Complaint. *See* Complaint ¶ 57 & n.5 (invoking Investment Advisers Act Release Nos. 3060 (July 28, 2010), and 2106 (Jan. 31, 2003), 66 (17 C.F.R. 275.206(4)-7), 69 (27 C.F.R. part 275 and Rule 10b5-1), 74 & n.6 (Advisers Act Release No. 4197 (Sept. 17, 2015)).

None of the cases Defendant cites even remotely suggests that this type of complicated litigation involving underdeveloped securities laws does not require "consideration" of federal laws. In its lead case, *Beta Operating Co., LLC v. Aera Energy, LLC (In re Mem'l Prod. Partners, L.P.)*, No. H-18-411, 2018 U.S. Dist. LEXIS 161159 (S.D. Tex. 2018), the court only held that a state-law contract claim did not require substantial reliance on federal law merely because it involved a trust created under federal law (the OCSLA). *Id*. at *16-17. Moreover, the court's determination appears to have relied primarily, if not solely, on the fact that the bankruptcy court had already submitted a memorandum opinion on the defendant's summary judgment motion, disposing of the case without the need to rely on non-bankruptcy federal law. *Id*. at *14-15, 17.

Next, Defendant cites *UPH Holdings, Inc. v. Sprint Nextel Corp*., No. A-13-CA-748-SS, 2013 U.S. Dist. LEXIS 189349 (W.D. Tex. 2013), which is, at most, only slightly on point. There, the court declined to withdraw the reference with regard to a turnover action under the Bankruptcy Code, with little analysis other than having repeated the parties' arguments. Thus, it is difficult to draw any significance from the decision. But the court seems to rely on the fact that "the primary dispute center[ed] around the existence of a 'regulatory black hole,' a span of time during which the rules concerning how to set [a telecom] intercarrier compensation rate were left undetermined." *Id*. at *6. And for that reason, the court seemed to believe there was little non-bankruptcy federal

law to consider. *Id*. at 7. Here, in contrast, the causes of action do not arise under the Bankruptcy Code, and there is an extensive regulatory scheme that, plainly, must be considered.

The other cases Defendant cites add little to the analysis, except that *S. Pac. Transp. Co. v. Voluntary Purchasing Gps*, 252 B.R. 373, 382 (E.D. Tex. 2000), holds against Defendant's position, having determined that even the court's "limited" role in approving a CERCLA settlement "necessarily involves the substantial and material consideration of CERCLA and not merely its straightforward application to the facts of this case." *Id*. at 384. The court's reason for this conclusion: its decision "will require the court to examine the unique facts of the case in light of those CERCLA provisions which create the causes of action at issue." *Id*. Of course, the same examination will be necessary here.

Notably, in *S. Pac. Transp.*, the court also stated, "[i]t is well settled that CERCLA is a statute "'rooted in the commerce clause' and is precisely 'the type of law . . . Congress had in mind when it enacted the statutory withdrawal provision [in § 157(d)].'" *Id*. at 382 (quoting *In re Nat'l Gypsum Co.*, 134 B.R. 188, 191 (N.D. Tex. 1991), (alterations in original)). The court could just as easily have been talking about the Advisers Act. *See* 15 U.S.C. § 80b-1 ("Upon the basis of facts disclosed by the record and report of the Securities and Exchange Commission made pursuant to section 30 of the Public Utility Holding Company Act of 1935, and facts otherwise disclosed and ascertained, it is hereby found that investment advisers are of national concern, in that, among other things—(1) their advice, counsel, publications, writings, analyses, and reports are furnished and distributed, and their contracts, subscription agreements, and other arrangements with clients are negotiated and performed, by the use of the mails and means and instrumentalities of interstate commerce; (2) their advice, counsel, publications, writings, analyses, and reports customarily relate to the purchase and sale of securities traded on national securities exchanges and in interstate

over-the-counter markets, securities issued by companies engaged in business in interstate commerce, and securities issued by national banks and member banks of the Federal Reserve System; and (3) the foregoing transactions occur in such volume as substantially to affect interstate commerce, national securities exchanges, and other securities markets, the national banking system and the national economy.").

In sum, the Complaint alleges violations of non-bankruptcy federal law. In presiding over the case—indeed, in addressing the currently pending Motion to Dismiss—this Court will have to substantially and materially consider those laws and their interplay with bankruptcy law. Under § 157(d), this requires withdrawal of the reference, and Defendant's motion should be denied.

**B. Automatic Referral Is Unnecessary and Would Be Inefficient**

As noted previously, Judge Clement's ruling in *In re Harrah's Entm't*, 1996 U.S. Dist. LEXIS 18097 (E.D. La. 1996), establishes that reference to the bankruptcy court—only to have the reference withdrawn—is unnecessary:

> Although "related to" bankruptcy jurisdiction exists over the non-debtor plaintiffs' non-bankruptcy federal securities claims against non-debtor defendants, placing that bankruptcy jurisdiction in the bankruptcy court is inappropriate because plaintiffs would be entitled to a mandatory withdrawal of the reference. *Rather than waste judicial resources on a meaningless referral to bankruptcy court, the Court will retain jurisdiction over this suit*.

*Id*. at *11 (emphasis added).

Defendant nonetheless argues this Court must do precisely that. Plaintiffs submit this is both wrong and tenuous, because at this stage of the bankruptcy proceedings—post confirmation— it is unclear that the bankruptcy court has jurisdiction at all.

---

1. **The causes of action asserted by the Plaintiffs do not "arise under," or "arise in" Title 11 and are not "core" proceedings.**

In the Complaint, Plaintiffs do not seek relief that would undo or reverse any settlement approved by the bankruptcy court. Neither do they attempt an end run around the provisions of any approval, Defendant's protestations notwithstanding. A proper jurisdictional analysis demonstrates Plaintiffs' causes of action asserted here are not core proceedings within the bankruptcy court's jurisdiction, for the reasons addressed below.

First of all, "the 'core proceeding' analysis is properly applied not to the case as a whole, but as to each cause of action within a case." *Legal Xtranet, Inc. v. AT&T Mgmt. Servs., L.P. (In re Legal Xtranet, Inc.*), 453 B.R. 699, 708–09 (Bankr. W.D. Tex. 2011*); Davis v. Life Inv'rs Ins. Co. of Am.*, 282 B.R. 186, 193 n. 4 (S.D. Miss.2002); *see also In re Exide Tech*s., 544 F.3d 196, 206 (3d Cir. 2008) ("A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'").

Second, the Fifth Circuit has explained that "§ 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings; therefore, a proceeding is core under section 157 if it invokes a substantive right provided by title 11[, it 'arises under' the Bankruptcy Code,] or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case[, it 'arises in' a bankruptcy case]." *United States. Brass Corp. v. Travelers Ins. Grp., Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002); *TXMS Real Estate Invs., Inc. v. Senior Care Ctrs., LLC (In re Senior Care Centers, LLC)*, 622 B.R. 680, 692–93 (Bankr. N.D. Tex. 2020); *Stern v. Marshall*, 564 U.S. 462, 476 (2011).

---

Third, none of the Plaintiffs' five causes of action—breach of fiduciary duty under the Advisers Act, breach of contract related to the HCLOF Company Agreement, negligence, RICO, and tortious interference—arise under title 11. That is, none of the substantive rights of recovery are created by federal bankruptcy law. And plainly so. Because "[a]rising under' jurisdiction [only] involve[s] cause[s] of action created or determined by a statutory provision of title 11," this is indisputably the case. *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987) (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right, created by federal bankruptcy law, that could not exist outside of bankruptcy).

Fourth and finally, for similar reasons, none of Plaintiffs' causes of action "arise in" a bankruptcy case. "Claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance*, could *only* arise in the context of a bankruptcy case." *Legal Xtranet, Inc*., 453 B.R. at 708–09 (emphasis added) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006). Defendants contend that, because the factual circumstances giving rise to the causes of action included the HarbourVest Settlement, which was approved by the bankruptcy court, this somehow transforms these causes of action into core claims. *See* Memorandum of Law ¶ 36. But it is the nature of the causes of action that determines whether they are core, not their "particular factual circumstance."

To illustrate the point, in *Gupta v. Quincy Med. Ctr.,* 858 F.3d 657, 660 (1st Cir. 2017), the bankruptcy court issued a sale order which approved an asset purchase agreement whereby the purchaser became obligated to make certain payments to employees. The purchaser failed to make these payments so the employees sued the purchaser in bankruptcy court, and the bankruptcy rendered a judgment in favor of the employees. On appeal, the district court concluded that the bankruptcy court lacked subject matter jurisdiction over the claims—claims plainly related to and

existing only because of the approved sale order that gave rise to them. The First Circuit affirmed, explaining as follows:

> [T]he fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding. Instead, the fundamental question is whether the proceeding by its nature, *not its particular factual circumstance*, could arise only in the context of a bankruptcy case. In other words, it is not enough that Appellants' claims arose in the context of a bankruptcy case or even that those claims exist only because Debtors (Appellants' former employer) declared bankruptcy; rather, "arising in" jurisdiction exists only if Appellants' claims are the type of claims that can only exist in a bankruptcy case.

*Id*. at 664–65 (emphasis added).

Like the claims in *Gupta*, the Plaintiffs' causes of action here arose in the context of a transaction approved in a bankruptcy case. But obviously, the causes of action are not "the type of claims that can only exist in a bankruptcy case." And that ends the analysis. Because Plaintiffs' causes of action do arise under the Bankruptcy Code, and because they are not claims that could only arise in the context of bankruptcy, this action is not a core proceeding.

## 2. The Bankruptcy Court has limited post-confirmation "related to" jurisdiction.

Plaintiffs do not contest that this action is related to the bankruptcy case in some fashion. That is why they amended the Civil Cover Sheet to note the bankruptcy matter. But "related to" jurisdiction is a term of art with differing requirements depending on the status of the bankruptcy case. In its current, post-confirmation status, Plaintiffs submit that the bankruptcy court lacks even "related to" jurisdiction over this action.

"Related to" jurisdiction is meant to avoid piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir.1995). Importantly, proceedings merely "related to" a case under title 11 are considered "non-core"

proceedings. *Stern*, 564 U.S. at 477; Collier on Bankruptcy ¶ 3.02[2], p. 3–26, n.5 (16th ed. 2010) ("The terms 'non-core' and 'related' are synonymous."). The jurisdictional standard for related to jurisdiction varies depending on whether the proceeding at issue was commenced pre or post confirmation. *See Beitel v. OCA, Inc. (In re OCA, Inc.),* 551 F.3d 359, 367 at n.10 (5th Cir. 2008). And "after confirmation of a reorganization plan, a stricter post-confirmation standard applies." *See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.),* 266 F.3d 388, 390–91 (5th Cir.2001) (explaining this distinction).

Essentially, "after a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* 266 F.3d at 390; *Faulkner v. Eagle View Capital Mmgt. (In re The Heritage Org., L.L.C.),* 454 B.R. 353, 358 (Bankr. N.D. Tex. 2011).

Here, on February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Bankruptcy Court Dkt. No. 1943]. The Complaint was filed on April 12, 2021. Thus, the proceeding was commenced post confirmation.

Defendant does not argue that this action involves "matters pertaining to the implementation or execution of the plan," as required under *Craig's Stores*. It does not even cite to that authority. Certainly Plaintiffs can think of no way that their action affects plan implementation or execution. Thus, it seems, Defendant's argument for bankruptcy court jurisdiction fails entirely.

While Defendant does argue that the bankruptcy court has "related to" jurisdiction as a result of a judgment potentially reducing available cash to pay creditors under the Confirmed Plan, Memorandum of Law ¶ 39, this is precisely the argument that the Fifth Circuit rejected in *Craig's*

*Stores*. *See Coho Oil & Gas, Inc. v. Finley Res., Inc.* (*In re Coho Energy, Inc.*), 309 B.R. 217, 220 (Bankr. N.D. Tex. 2004) (recognizing the rejection of this argument). As the Fifth Circuit explained: "while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which Craig's is engaged." 266 F.3d at 391. And that type of effect does not meet the threshold for post-confirmation related-to jurisdiction.

Defendant also contends that there is post-confirmation "related to" jurisdiction because the lawsuit will delay payments to creditors under the Confirmed Plan. *Id*. But this is just a re-packaged reduction-in-assets argument. The same would be true of any post-confirmation lawsuit against Defendant and does not meet the "more exacting theory of post-confirmation bankruptcy jurisdiction" required by *Craig's Stores*.

Defendant may argue that the bankruptcy court's confirmation order has not yet gone effective due to having been appealed. But even if this distinction matters, at minimum, there ought to be a sliding scale toward narrower application of "related to" jurisdiction once the bankruptcy court has issued a final confirmation order. *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (stating "post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and … the *Pacor* formulation [used to analyze related-to jurisdiction] may be somewhat overbroad in the post-confirmation context"); *Faulkner v. Kornman*, No. 10-301, 2015 Bankr. LEXIS 700 (Bankr. S.D. Tex. 2015) (stating "[t]he general rule is that post-confirmation subject matter jurisdiction is limited"); *Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp (In re Am. Home Mortg. Holding)*, 477 B.R. 517, 529-30 (Bankr. D. Del. 2012) (stating "[a]fter confirmation… the test for 'related to 'jurisdiction becomes more

---

stringent if the plaintiff *files* its action after the confirmation date") (emphasis in original); *cf. rabbd*

v. *Rochford*, 947 F.2d 829, 832 n.1 (7th Cir. 1991) (noting that "after a bankruptcy is over, it may well be more appropriate to bring suit in district court").

Finally, the retention of jurisdiction in the confirmed plan does nothing to alter the forgoing analysis. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). A bankruptcy court may not "retain" jurisdiction it does not have. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking." *Valley Historic Ltd. P'ship. v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007); *see also Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ("[O]rders approving [a] bankruptcy sale [or] . . . plan of reorganization . . . [cannot] confer jurisdiction. A court cannot write its own jurisdictional ticket.").

## C. The Res Judicata Argument Is Not Relevant to the Relief Sought in This Motion

Defendant's *res-judicata* argument does not belong in this Motion. It has no bearing on the issue presented here. This is because, to begin with, *res judicata* is always addressed by the second court in the second action. *See, e.g., Memphis-Shelby Cty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc).*, 783 F.2d 1283 (5th Cir. 1986); *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004); *Travelers Ins. Co. v. St. Jude Hosp.*, 37 F.3d 193 (5th Cir. 1994); *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914 (5th Cir. 2000); *Risby v. United States*, No. 3:04-CV-1414-H, 2006 U.S. Dist. LEXIS 8798 (N.D. Tex. 2006); *Chalmers v. Gavin*, 2002 U.S. Dist. LEXIS 5636, 2002 WL 511512 (N.D. Tex. Apr. 2, 2002); *Reynolds v. Tombone*, Civil No. 3:96-CV-3330-BC, 1999 U.S. Dist. LEXIS

9995 (N.D. Tex. June 24, 1999). Moreover, *res judicata* is not a basis for referring a matter to the bankruptcy court, and Defendant offers no authority for the notion that it is.

Instead of arguing that its *res judicata* affirmative defense should result in referral to the bankruptcy court, Defendant argues that "the Complaint . . . must be dismissed on the basis of *res judicata*. Memorandum of Law at 24; *see also id.* at 23 (subheading: "The Complaint Is Barred by the Doctrine of Res Judicata"). But dismissal is the relief sought in Defendant's pending Motion to Dismiss, which raises the same *res judicata* arguments asserted here. Plaintiffs therefore will address *res judicata* in their concurrently filed response to the Motion to Dismiss.

**D. The Local Rule 3.3 Argument Is Unavailing**

Defendant argues that Plaintiffs failed to disclose the related bankruptcy case by omitting it on the Civil Cover Sheet accompanying the Complaint, although Defendant does not request that the Court take any action as a result of the omission.

Plaintiffs submit that the omission was inadvertent, harmless, and has been corrected. The omission was inadvertent in that Plaintiffs intended to identify the Highland bankruptcy on the Civil Cover Sheet but inadvertently failed to do so and have since submitted an amended Civil Cover Sheet correcting the error. [Doc. 33]. The omission was harmless because the Complaint discloses both the bankruptcy and its relationship to the present action, a disclosure that was supplemented by Plaintiffs' Motion for Leave to Amend, which provides additional detail regarding the related bankruptcy case and attaches two orders issued in that case. Complaint ¶¶ 15-36; Motion for Leave and Exhibits [Docs. 6, 6-1, 6-2].

Defendant refers the Court to *Kuzmin v. Thermaflo.*, No. 2:07-cv-00554-TJW, 2009 U.S. Dist. LEXIS 42810, at *4-7 (E.D. Tex. May 20, 2009), for the proposition that failing to disclose a related case is a violation of the Local Rules. In *Kuzmin*, however, the plaintiff was faulted for

numerous failings, including (1) the failure to submit a Civil Cover Sheet at all, (2) the failure, upon receiving notice of the deficiency, to provide sufficient information for the clerk to identify the related action, and (3) filing a third action without any information indicating it was related to the previous two. *Id*. at \*5. The court continued, finding that plaintiff's counsel in that case had also committed violations of the mandate for professionalism in the Texas Lawyer's Creed by failing to communicate about the filings with known counsel for the opposition. *Id*. at \*6-12.

Plaintiffs respectfully submit that the *Kuzmin* case is inapposite. Plaintiffs here did not fail to submit a Civil Cover Sheet. They corrected the omission after it was brought to their attention, and their original filing did disclose, in the text of the Complaint, the information that was inadvertently omitted from the Civil Cover Sheet. Further, Plaintiffs here communicated promptly with counsel for the Defendant regarding the action and the related bankruptcy case by asking the Defendant's counsel in the related action if they would accept service of the Complaint and whether they objected to Plaintiffs' Motion for Leave to Amend.

These circumstances, Plaintiffs submit, do not rise to the level of a violation of Local Rule 3.3 or, alternatively, they constitute a harmless, corrected error at most. Plaintiffs ask the Court to treat them as no worse than Defendant's failure to include a certificate of conference with this Motion (Local Rule 7(h)), or its failure to confer with Plaintiffs' counsel before filing it (Local Rule 7(a)), or its failure to paginate its appendix consecutively (Local Rule 7(i)).

Finally, Plaintiffs submit that the omission complained of does not justify or even relate to the relief sought in this Motion.

**E. The Litigious-Nature Argument Is Likewise Unavailing**

Defendant's claims regarding James Dondero's litigiousness are likewise unconnected to the relief they are requesting here. Dondero is not a party to this case. Neither does he control either Plaintiff. APP_16-17.

For this argument, Defendant relies solely on *Burch v. Freedom Mortg. Corp. (In re Burch)*, 835 F. App'x 741 (5th Cir. 2021), and 28 U.S.C. § 1927 ("Any attorney or other person . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). Neither authority addresses whether jurisdiction appropriately lies here or in the bankruptcy court. It appears that they are cited here merely to raise the specter of potential sanctions.

Plaintiffs respectfully submit that their claims here have merit and are not frivolous. And Defendant's contrary position can and should be addressed in connection with Defendant's pending motion under Rule 12(b)(6) rather than in connection with this Motion.

**F. Plaintiffs' Cross-Motion Should Be Granted**

For the same reasons Defendant's Motion should be denied, Plaintiffs' cross-motion should be granted. Presiding over this action will require consideration of non-bankruptcy federal laws regulating interstate commerce, as well as their interplay with the Bankruptcy Code. Thus, the mandatory-withdrawal-of-the-reference provision of 28 U.S.C. § 157(d) applies.

Moreover, the bankruptcy court's jurisdiction is limited, both by § 157(d) and by plan confirmation. *See TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 & n.40 (5th Cir. 2014) (noting bankruptcy court's "more limited jurisdiction" as a result of its "limited power" under 28 U.S.C. § 157); *Bank of La. v. Craig's*

*Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.),* 266 F.3d 388, 390–91 (5th Cir.2001) (explaining that, "after confirmation of a reorganization plan, a stricter post-confirmation standard applies," and "after a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").

No authority requires this Court to refer this action to the bankruptcy court, only to have it return on a motion for withdrawal of the reference. The opposite is true. *In re Harrah's Entm't*, No. 95-3925, 1996 U.S. Dist. LEXIS 18097, at *11 (E.D. La. 1996) (Clement, J.). Thus, this Court should deny Defendant's Motion, withdraw the reference under § 157(d), and retain jurisdiction over this action.

# VI.

## CONCLUSION

For all of these reasons, Plaintiffs respectfully submit Defendant's Motion should be denied.

Dated: June 29, 2021                          Respectfully submitted,

                                             **SBAITI & COMPANY PLLC**

                                             */s Jonathan Bridges*
                                             **Mazin A. Sbaiti**
                                             Texas Bar No. 24058096
                                             **Jonathan Bridges**
                                             Texas Bar No. 24028835
                                             JPMorgan Chase Tower
                                             2200 Ross Avenue – Suite 4900W
                                             Dallas, TX  75201
                                             T:  (214) 432-2899
                                             F:  (214) 853-4367
                                             E:  mas@sbaitilaw.com
                                                 jeb@sbaitilaw.com

                                             **Counsel for Plaintiffs**