**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **CHARITABLE DAF FUND, L.P.** | § | |
| **and CLO HOLDCO, LTD.,** | § | |
| *directly and derivatively,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CAUSE NO. 3:21-cv-00842-B** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P., HIGHLAND HCF ADVISOR, LTD.,** | § | |
| **and HIGHLAND CLO FUNDING, LTD.,** | § | |
| *nominally,* | § | |
| | § | |
| *Defendants.* | § | |

**APPENDIX IN SUPPORT OF PLAINTIFFS' RESPONSE TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR AN ORDER TO ENFORCE THE ORDER OF REFERENCE AND CROSS-MOTION**

| App'x No. | Description | Bates Range |
|---|---|---|
| 1 | Declaration of Jonathan Bridges | APP_002 |
| 2 | Excerpts from June 8, 2021 Transcript of Hearing of Show Cause, Motion to Modify Order Authorizing Retention of James Seery, and Motion for Order Further Extending the Period Within Which Debtor May Remove Actions | APP_003 - 019 |
| 3 | DAF/CLO Holdco Structure Chart introduced as Exhibit 25 in Hearing of Show Cause, Motion to Modify Order Authorizing Retention of James Seery, and Motion for Order Further Extending the Period Within Which Debtor May Remove Actions | APP_020 - 022 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **CHARITABLE DAF FUND, L.P.**<br>**and CLO HOLDCO, LTD.,**<br>*directly and derivatively,* | § <br> § <br> § <br> § | |
| ***Plaintiffs,*** | § <br> § | |
| **v.** | § <br> § | **CAUSE NO. 3:21-cv-00842-B** |
| **HIGHLAND CAPITAL MANAGEMENT,**<br>**L.P., HIGHLAND HCF ADVISOR, LTD.,**<br>**and HIGHLAND CLO FUNDING, LTD.,**<br>*nominally,* | § <br> § <br> § <br> § <br> § | |
| ***Defendants.*** | § <br> § | |

### DECLARATION OF JONATHAN BRIDGES

1.      My name is Jonathan Bridges. I am over twenty-one years old and fully competent in all respects to make this Declaration.

2.      I am a partner at Sbaiti & Company PLLC, and I represent Plaintiffs Charitable DAF Fund, L.P. and CLO Holdco, Ltd. in this matter. The facts stated in this Declaration are based on my personal knowledge.

3.      Attached as Exhibit 1 is a true and correct copy of excerpts from a June 8, 2021 transcript of a hearing before the bankruptcy court at which Mr. Mark Patrick provided sworn testimony regarding Plaintiffs, his right to control them, and Mr. James Dondero's lack of any such right.

4.      Attached as Exhibit 2 is a true and correct copy of Exhibit 25 from that same hearing, which is proved up by Mr. Patrick's testimony in Exhibit 1, and which constitutes an organizational chart depicting the corporate relationships described in the testimony.

Executed on June 29, 2021.

*/s/ Jonathan Bridges*
Jonathan Bridges

App. 002

# EXHIBIT 1

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                             DALLAS DIVISION

                                    )    Case No. 19-34054-sgj-11
In Re:                              )    Chapter 11
                                    )
HIGHLAND CAPITAL                    )    Dallas, Texas
MANAGEMENT, L.P.,                   )    Tuesday, June 8, 2021
                                    )    9:30 a.m. Docket
          Debtor.                   )
                                    )    - SHOW CAUSE HEARING (2255)
                                    )    - MOTION TO MODIFY ORDER
                                    )      AUTHORIZING RETENTION OF
                                    )      JAMES SEERY (2248)
                                    )    - MOTION FOR ORDER FURTHER
                                    )      EXTENDING THE PERIOD WITHIN
                                    )      WHICH DEBTOR MAY REMOVE
                                    )      ACTIONS (2304)
_____)
```

                         TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                    UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Debtor:              Jeffrey Nathan Pomerantz
                             PACHULSKI STANG ZIEHL & JONES, LLP
                             10100 Santa Monica Blvd.,
                               13th Floor
                             Los Angeles, CA  90067-4003
                             (310) 277-6910

For the Debtor:              John A. Morris
                             Gregory V. Demo
                             PACHULSKI STANG ZIEHL & JONES, LLP
                             780 Third Avenue, 34th Floor
                             New York, NY  10017-2024
                             (212) 561-7700

For the Debtor:              Zachery Z. Annable
                             HAYWARD & ASSOCIATES, PLLC
                             10501 N. Central Expressway,
                               Suite 106
                             Dallas, TX  75231
                             (972) 755-7104

Case 21-03067-sgj Doc 37 Filed 09/29/21 Entered 09/29/21 18:09:39 Page 5 of 22
Case 3:21-cv-00842-B Document 37 Filed 06/29/21 Page 5 of 22 PageID 1736

2

```
 1    APPEARANCES, cont'd.:

 2    For the Charitable DAF,      Mazin A. Sbaiti
      CLO Holdco, Show Cause       Jonathan E. Bridges
 3    Respondents, Movants,        SBAITI & COMPANY, PLLC
      and Sbaiti & Company:        Chase Tower
 4                                 2200 Ross Avenue, Suite 4900W
                                   Dallas, TX  75201
 5                                 (214) 432-2899

 6    For Mark Patrick:            Louis M. Phillips
                                   KELLY, HART & HALLMAN, LLP
 7                                 301 Main Street, Suite 1600
                                   Baton Rouge, LA 70801
 8                                 (225) 338-5308

 9    For Mark Patrick:            Michael D. Anderson
                                   KELLY, HART & HALLMAN, LLP
10                                 201 Main Street, Suite 2500
                                   Fort Worth, TX  76102
11                                 (817) 332-2500

12    For James Dondero:           Clay M. Taylor
                                   Will Howell
13                                 BONDS ELLIS EPPICH SCHAFER
                                      JONES, LLP
14                                 420 Throckmorton Street,
                                      Suite 1000
15                                 Fort Worth, TX  76102
                                   (817) 405-6900
16
      For the Official Committee   Matthew A. Clemente
17    of Unsecured Creditors:      SIDLEY AUSTIN, LLP
                                   One South Dearborn Street
18                                 Chicago, IL  60603
                                   (312) 853-7539
19
      For the Official Committee   Paige Holden Montgomery
20    of Unsecured Creditors:      SIDLEY AUSTIN, LLP
                                   2021 McKinney Avenue, Suite 2000
21                                 Dallas, TX  75201
                                   (214) 981-3300
22
      Recorded by:                 Michael F. Edmond, Sr.
23                                 UNITED STATES BANKRUPTCY COURT
                                   1100 Commerce Street, 12th Floor
24                                 Dallas, TX  75242
                                   (214) 753-2062
25
```

3

1    Transcribed by:              Kathy Rehling
                                  311 Paradise Cove
2                                 Shady Shores, TX   76208
                                  (972) 786-3063
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24          Proceedings recorded by electronic sound recording;
               transcript produced by transcription service.

25

App. 006

Patrick - Direct                                    95

1   our witness stand and I'll swear you in.  Please raise your

2   right hand.

3        (The witness is sworn.)

4             THE COURT:  All right.  Please take a seat.

5             MARK PATRICK, DEBTOR'S WITNESS, SWORN

6                     DIRECT EXAMINATION

7   BY MR. MORRIS:

8   Q    Good afternoon, Mr. Patrick.

9   A    Good afternoon.

10  Q    Can you hear me okay?

11  A    Yes, I can.

12  Q    Okay.  You have before you several sets of binders.

13  They're rather large.  But when I deposed you on Friday, we

14  did that virtually.  Now, I may direct you specifically to one

15  of the binders or one of the documents from time to time, so I

16  just wanted you to know that those were in front of you and

17  that I may be doing that.

18       Mr. Patrick, since March 1st, 2001 [sic], you've been

19  employed by Highland Consultants, right?

20  A    I believe the name is Highgate Consultants doing business

21  as Skyview Group.

22  Q    Okay.  And that's an entity that was created by certain

23  former Highland employees, correct?

24  A    That is my understanding, correct.

25  Q    And your understanding is that Mr. Dondero doesn't have an

Case 21-03067-sgj Doc 37 Filed 09/29/21   Entered 09/29/21 18:09:39   Page 8 of 22
Case 3:21-cv-00842-B   Document 37   Filed 06/29/21   Page 8 of 22   PageID 1739

Patrick - Direct                               118

1   Q   Okay.  Let's talk for a little bit about the line of

2   succession for the DAF and CLO Holdco.  Can we please go to

3   Exhibit 25, which is in the other binder?  It's in the other

4   binder, sir.

5       (Pause.)

6   Q   I guess you could look on the screen or you can look in

7   the binder, whatever's easier for you.

8   A   Yeah.  I prefer the screen.  I prefer the screen.

9   Q   Okay.

10  A   It's much easier.

11  Q   All right.  We've got it in both spots.  But do you have

12  Exhibit 25 in front of you, sir?

13  A   Yes, I do.

14  Q   All right.  Do you know what it is?

15  A   This is the organizational chart depicting a variety of

16  charitable entities as well as entities that are commonly

17  referred to the DAF.  However, when I look at this chart, I do

18  not look at and see just boxes, what I see is the humanitarian

19  effort that these boxes represent.

20          MR. MORRIS:  Your Honor, may I interrupt?

21          THE COURT:  You may.

22          MR. MORRIS:  Okay.

23  BY MR. MORRIS:

24  Q   I appreciate that, and when your lawyers get up to ask you

25  questions, I bet they'll want to know just what you were about

Case 21-03067-sgj Doc 37 Filed 09/29/21   Entered 09/29/21 18:09:39   Page 9 of 22
Case 3:21-cv-00842-B   Document 37   Filed 06/29/21   Page 9 of 22   PageID 1740

Patrick - Direct                        119

1    to tell me.  But I just want to understand what this chart is.

2    This chart is the DAF, CLO Holdco, structure chart.  Correct?

3    A    Correct.

4    Q    Okay.  And you were personally involved in creating this

5    organizational structure, correct?

6    A    I -- yes.

7    Q    Okay.  And from time to time, the Charitable DAF Holdco

8    Limited distributes cash to the foundations that are above it.

9    Correct?

10   A    Correct.

11   Q    All right.  I want to talk a little bit more specifically

12   about how this happens.  The source of the cash distributed by

13   Charitable DAF Holdco Limited is CLO Holdco, Ltd., that

14   entity, the Cayman Islands entity near the bottom.  Correct?

15            MR. ANDERSON:  Your Honor, I have an objection.

16   Completely irrelevant.  I'm objecting on relevance grounds.

17   This has nothing to do with the contempt proceeding.  We've

18   already gone over that he authorized the filing of the

19   complaint, that he authorized the filing of the motion to

20   amend.  It's all in the record.  This is completely irrelevant

21   at this point.

22            THE COURT:  Okay.  Relevance objection.  Your

23   response?

24            MR. MORRIS:  I believe that it's relevant to the

25   Debtor's motion to hold Mr. Dondero in contempt for pursuing

Case 21-03067-sgj Doc 37 Filed 09/29/21 Entered 09/29/21 18:09:39 Page 10 of 22
Case 3:21-cv-00842-B Document 37 Filed 06/29/21 Page 10 of 22 PageID 1741

Patrick - Direct                                    127

1    transaction, because I was not a part of it -- that by Mr.

2    Dondero holding that GP interest, that it would be -- the

3    Plaintiffs, if you will, would be an affiliate entity for

4    regulatory purposes, and so he advised that if he -- if Mr.

5    Dondero transferred his GP interest to Mr. Scott, it would no

6    longer be an affiliate, is my recollection.

7    Q    Okay.  You didn't appoint Mr. Scott, did you?

8    A    No.

9    Q    That was Mr. Dondero.  Is that right?

10   A    Yes.

11   Q    Okay.  Let's go to 2021.  Let's come back to the current

12   time.  Sometime in February, Mr. Scott called you to ask about

13   the mechanics of how he could resign.  Correct?

14   A    That is correct.

15   Q    But the decision to have you replace Mr. Scott was not

16   made until March 24th, the day you sent an email to Mr. Scott

17   with the transfer documents.  Correct?

18   A    That is correct.

19   Q    And it's your understanding that he could have transferred

20   the management shares and control of the DAF to anyone in the

21   world.  Correct?

22   A    Correct.

23   Q    That's what the docu... that he had the authority under

24   the documentation, as you understood it, to freely trade or

25   transfer the management shares.  Correct?

Case 21-03067-sgj Doc 37 Filed 09/29/21   Entered 09/29/21 18:09:39   Page 11 of 22
Case 3:21-cv-00842-B   Document 37   Filed 06/29/21   Page 11 of 22   PageID 1742

Patrick - Direct                                    128

1    A    Wait.  Now, let's be precise here.

2    Q    Okay.

3    A    Are you talking about the GP interests or the management

4    shares held by Charitable DAF Holdco, Ltd.?

5    Q    Let's start with the management shares.  Can you explain

6    to the Court what the management shares are?

7              MR. ANDERSON:  Your Honor?  Hang on one second.  Your

8    Honor, I want to object again on relevance.  We're going way

9    beyond the scope of the contempt issue, whether or not --

10             MR. MORRIS:  This is about control.

11             MR. ANDERSON:  -- the motion to amend somehow

12   violated the prior order of this Court.  Getting into the

13   management structure, transfer of shares, that's way outside

14   the bounds.  I object on relevance.

15             THE COURT:  Okay.  Relevance objection?

16             MR. MORRIS:  Your Honor, they have probably 30

17   documents, maybe 20 documents, on their exhibit list that

18   relate to management and control.  I'm asking questions about

19   management and control.  Okay?  This is important, again, to

20   (a) establish his authority, but (b) the circumstances under

21   which he came to be the purported control person.

22             THE COURT:  Okay.  Overruled.  Go ahead.

23             THE WITNESS:  It might be helpful to look at the

24   organizational chart, but if not -- but I'll describe it to

25   you again.  With respect to the entity called --

Case 21-03067-sgj Doc 37 Filed 09/29/21 Entered 09/29/21 18:09:39 Page 12 of 22
Case 3:21-cv-00842-B Document 37 Filed 06/29/21 Page 12 of 22 PageID 1743

Patrick - Direct                                          129

1          MR. MORRIS:  Hold on one second.  Can we put up the

2     organizational chart again, Ms. Canty, if you can?  There you

3     go.

4          THE WITNESS:  Okay.  So with respect to the

5     Charitable DAF Holdco, Ltd., it is my understanding that Mr.

6     Scott, he organized that entity when he was the independent

7     director of the Charitable Remainder Trust, and he caused the

8     issuance of the management shares to be issued to himself.

9     And then those are, again, noneconomic shares, but they are

10    control shares over that entity.

11         And I think, to answer your question, is -- it -- he alone

12    decides who he can transfer those shares to.

13    BY MR. MORRIS:

14    Q    Do I have this right, that whoever holds the noneconomic

15    management shares has the sole authority to appoint the

16    representatives for each of the Charitable DAF entities and

17    CLO Holdco?  It's kind of a magic ticket, if you will?

18    A    It -- I think there's a -- the answer really is no from a

19    legal standpoint, because Charitable DAF Holdco is a limited

20    partner in Charitable DAF Fund, LP, so it does not have

21    authority -- authority under all -- the respective entities

22    underneath that.  It could cause a redemption, if you will, of

23    Charitable DAF Fund.  And so, really, the authority -- the

24    trickle-down authority that you're referencing is with respect

25    to his holding of the Charitable DAF GP, LLC interest.  It's a

Case 21-03067-sgj Doc 37 Filed 09/29/21 Entered 09/29/21 18:09:39 Page 13 of 22
Case 3:21-cv-00842-B Document 37 Filed 06/29/21 Page 13 of 22 PageID 1744

Patrick - Direct                                    130

1   member-managed Delaware limited liability company.  And from

2   that, he -- that authority kind of trickles down to where he

3   can appoint directorships.

4   Q    All right.  I think I want to just follow up on that a

5   bit.  Which entity is the issuer of the manager shares, the

6   management shares?

7   A    Yeah, the -- per the organizational chart, it is accurate,

8   it's the Charitable DAF Holdco, Ltd. which issued the

9   management shares to Mr. Scott.

10  Q    Okay.  And that's why you have the arrow from Mr. Scott

11  into that entity?

12  A    Correct.

13  Q    And do those -- does the holder of the management shares

14  have the authority to control the Charitable DAF Holdco, Ltd.?

15  A    Yes.

16  Q    Okay.  And as the control person for the Charitable DAF

17  Holdco, Ltd., they own a hundred -- withdrawn.  Charitable DAF

18  Holdco Limited owns a hundred percent of the limited

19  partnership interests of the Charitable DAF Fund, LP.

20  Correct?

21  A    Correct.

22  Q    And so does the holder of that hundred percent limited

23  partnership interest have the authority to decide who acts on

24  behalf of the Charitable DAF Fund, LP?

25  A    I would say no.  I mean, you know, just -- I would love to

Patrick - Direct                                          131

1    read the partnership agreement again.  But I, conceptually,

2    what I know with partnerships, I would say the limited partner

3    would not.  It would be through the Charitable DAF GP, LLC

4    interest.

5    Q    The one on the left, the general partner?

6    A    The general partner.

7    Q    I see.  So when Mr. Scott transferred to you the one

8    hundred percent of the management shares as well as the title

9    of the managing member of the Charitable DAF GP, LLC, did

10   those two events give you the authority to control the

11   entities below it?

12   A    Yes.

13   Q    Thank you.  And so prior to the time that he transferred

14   those interests to you, is it your understanding that Mr.

15   Scott had the unilateral right to transfer those interests to

16   anybody in the world?

17   A    Yes.

18   Q    Okay.  And you have that right today, don't you?

19   A    Yes, I do.

20   Q    If you wanted, you could transfer it to me, right?

21   A    Yes, I could.

22   Q    Okay.  But of all the people in the world, Mr. Scott

23   decided to transfer the management shares and the managing

24   member title of the DAF GP to you, correct?

25   A    Restate that question again?

Patrick - Direct                                        132

1  Q    Of all the people in the world, Mr. Scott decided to

2  transfer it to you, correct?

3  A    Yeah.  Mr. Scott transferred those interests to me.

4  Q    Okay.  And you accepted them, right?

5  A    Yes.

6  Q    You're not getting paid anything for taking on this

7  responsibility, correct?

8  A    I am not paid by any of the entities depicted on this

9  chart.

10 Q    And Mr. Scott used to get $5,000 a month, didn't he?

11 A    I believe that's what he testified to.

12 Q    Yeah.  But you don't get anything, right?

13 A    Correct.

14 Q    In fact, you get the exact same salary and compensation

15 from Skyview that you had before you became the authorized

16 representative of the DAF entities and CLO Holdco.  Correct?

17 A    Correct.

18           MR. MORRIS:  Okay.  Your Honor, if I may just take a

19 moment, I may be done.

20           THE COURT:  Okay.

21    (Pause.)

22           MR. MORRIS:  Your Honor, I have no further questions.

23           THE COURT:  All right.  Pass the witness.  Any

24 examination of the witness?

25                         CROSS-EXAMINATION

Case 21-03067-sgj  Doc 37  Filed 09/29/21  Entered 09/29/21 18:09:39  Page 16 of 22
Case 3:21-cv-00842-B  Document 37  Filed 06/29/21  Page 16 of 22  PageID 1747

Patrick - Cross                    136

1   Q   So did Mr. Dondero both have the control shares of the GP,

2   LLC and DAF Holdco Limited?

3   A   No, I believe not.  I believe he only held the Charitable

4   DAF GP interest and that Mr. Scott at all times held the

5   Charitable DAF Holdco, LTD interest, until he decided to

6   transfer it to me.

7   Q   Can you just tell us how Mr. Scott came to hold the

8   control shares of the Charitable DAF Holdco, LTD?

9   A   When he was the independent trustee of the Charitable

10  Remainder Trust, he caused that -- the creation of that

11  entity, and that's how he became in receipt of those

12  management shares.

13  Q   And does the Charitable DAF GP, LLC have any control over

14  Charitable DAF Fund, LP's actions or activities?

15  A   Yes, it does.

16  Q   What kind of control is that?

17  A   I would describe complete control.  It's the managing

18  member of that entity and can -- and effectively owns, you

19  know, the hundred percent interest in the respective

20  subsidiaries, and so the control follows down.

21  Q   And when did Mr. Scott replace Mr. Dondero as the GP --

22  managing member of the GP?

23  A   Well, I think as the -- and Mr. Morris had shown me with

24  respect to that transfer occurring on March 2012.

25  Q   So nine years ago?

Patrick - Cross                                             137

1    A    Yes.

2    Q    Does Mr. Dondero today exercise any control over the

3    activities of the DAF Charitable -- the Charitable DAF, GP or

4    the Charitable DAF Holdco, LTD?

5    A    No.

6    Q    Is he a board member of sorts for either of those

7    entities?

8    A    No.

9    Q    Is he a board members of CLO Holdco?

10   A    No.

11   Q    Does he have any decision-making authority at CLO Holdco?

12   A    None.

13   Q    The decision to authorize the lawsuit and the decision to

14   authorize the motion that you've been asked about, who made

15   that authorization?

16   A    I did.

17   Q    Did you have to ask for anyone's permission?

18   A    No.

19          MR. SBAITI:  No more questions, Your Honor.

20          THE COURT:  Okay.  Any -- I guess Mr. Taylor, no.

21      All right.  Any redirect?

22                      REDIRECT EXAMINATION

23   BY MR. MORRIS:

24   Q    Since becoming the authorized representative of the

25   Plaintiffs, have you ever made a decision on behalf of those

Case 21-03067-sgj Doc 37 Filed 09/29/21    Entered 09/29/21 18:09:39    Page 18 of 22
Case 3:21-cv-00842-B   Document 37   Filed 06/29/21    Page 18 of 22   PageID 1749

Patrick - Cross                         138

1  entities that Mr. Dondero disagreed with?

2  A    I have made decisions that were adverse to Mr. Dondero's

3  financial -- financial decision.  I mean, financial interests.

4  Whether he disagreed with them or not, I don't -- he has not

5  communicated them to me.  But they have been adverse, at least

6  two very strong instances.

7  Q    Have you ever -- have you ever talked to him about making

8  a decision that would be adverse to his interests?  Did he

9  tell -- did --

10  A    I didn't -- I don't -- I did not discuss with him prior to

11  making the decisions that I made that were adverse to his

12  economic interests.

13          MR. MORRIS:  Okay.  No further questions, Your Honor.

14          THE COURT:  Any further examination?  Recross on that

15  redirect?

16          MR. ANDERSON:  No further questions.

17          MR. SBAITI:  No further questions, Your Honor.

18          MR. ANDERSON:  Sorry.

19          THE COURT:  Nothing?

20          MR. ANDERSON:  I think we're good.

21          THE COURT:  Okay.  I have one question, Mr. Patrick.

22  My brain sometimes goes in weird directions.

23                    EXAMINATION BY THE COURT

24          THE COURT:  I'm just curious.  What are these Cayman

25  Island entities, charitable organizations formed in the Cayman

296

1          THE COURT:  I guess I'll see you Thursday on the

2    WebEx.  Thank you.

3          THE CLERK:  All rise.

4       (Proceedings concluded at 6:00 p.m.)

5                        --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                    CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                              **06/09/2021**

24   _____    _____
     Kathy Rehling, CETD-444                         Date
25   Certified Electronic Court Transcriber

App. 019

# EXHIBIT 2

# EXHIBIT 25

**DAF/CLO Holdco**
**Structure Chart**



**Confidential**

App. 022

GScott000007