PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD., <br><br> Plaintiff, <br><br> vs. <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. <br><br> Defendants. | Case No. 3:21-cv-00842-B |

**DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S MOTION TO ENFORCE THE
<u>ORDER OF REFERENCE</u>**

The Debtor submits this reply in support of the *Debtor's Motion for an Order to Enforce the Order of Reference* [D.I. 22] (the "Motion").[1] In further support of its Motion, the Debtor states as follows:

## I. PRELIMINARY STATEMENT[2]

1. Plaintiffs argue that the Court should deny the Motion because (i) mandatory withdrawal is required under 28 U.S.C. § 157(d); (ii) the Bankruptcy Court lacks jurisdiction to adjudicate the Complaint; and (iii) their violation of Local Rule 3.3 is harmless because withdrawal of the reference was inevitable. Plaintiffs' arguments fail for several reasons.

2. ***First***, mandatory withdrawal does not apply. The Complaint does not require substantial and material consideration of non-bankruptcy federal law. Rather, it involves application of well-settled law, including law from the Supreme Court, to address four fundamental issues: (a) did the Defendants owe Plaintiffs a fiduciary duty under the Advisers Act; (b) the scope of such duty and if it was breached; (c) remedies and damages for any breach; and (d) if a violation of the Advisers Act is a predicate act under RICO. Bankruptcy courts routinely adjudicate these issues. None of them require mandatory withdrawal.

3. ***Second***, the Bankruptcy Court has jurisdiction to adjudicate the Complaint. Bankruptcy jurisdiction is determined when the facts giving rise to the claim arose, not when a lawsuit is filed. The facts underlying the Complaint arose ***prior*** to confirmation (and would constitute an administrative claim if a claim exists); the Plan has not yet become effective; and the Debtor's assets have not vested in the Reorganized Debtor. Under Fifth Circuit precedent, the

---

[1] All capitalized terms used but not defined herein have the meanings set forth in *Defendant Highland Capital Management, L.P.'s Memorandum of Law in Support of Motion for an Order to Enforce the Order of Reference* [D.I. 22] (the "Memorandum").

[2] Concurrently herewith, the Debtor is filing the *Appendix in Support of Debtor's Reply in Support of the Debtor's Motion to Enforce the Order of Reference*. Citations to the Appendix are notated as follows: Appx. #.

Bankruptcy Court has jurisdiction to adjudicate the Complaint as it is integrally related to the Bankruptcy Court's prior approval of the HarbourVest Settlement.³ Even if a narrower standard is appropriate, which it is not, the Bankruptcy Court has "related to" jurisdiction.

4. ***Third***, Plaintiffs' failure to follow Local Rule 3.3 is not harmless. Had they followed the Rule, the Complaint would likely have been referred to the Bankruptcy Court and, under the local bankruptcy rules,⁴ the **Bankruptcy Court** would have conducted a status conference on withdrawal of the reference and provided a recommendation to this Court as to whether mandatory withdrawal applies. Plaintiffs conveniently filed an inaccurate Civil Cover Sheet⁵ and could not explain why the Complaint did not refer to 28 U.S.C. § 1334 as a jurisdictional predicate.⁶ Plaintiffs' goal⁷ here (and its wider strategy) is to avoid the Bankruptcy Court and allow it no input on which court should adjudicate the Complaint.⁸

## NO SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL LAW

5. Withdrawal of the reference is required under 28 U.S.C § 157(d) if a matter requires "substantial and material consideration" and "significant interpretation of federal laws" rather than a "straightforward application of a federal statute to a particular set of facts." *In re Nat'l Gypsum*,

---

³ The claims in the Complaint are barred by *res judicata* for the reasons set forth in the *Memorandum* (Appx. 1 at 29-30) and *Debtor's Reply in Support of Motion to Dismiss Complaint* filed concurrently herewith.

⁴ Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, Rule 5011-1.

⁵ Plaintiffs filed an amended Civil Cover Sheet [D.I. 33] but failed to disclose another related matter: the appeal of the HarbourVest Settlement pending in the District Court for the Northern District of Texas.

⁶ Appx. 2 at 109-110.

⁷ Plaintiffs attempt to distance themselves from Mr. Dondero and the vexatious litigation he has initiated directly and through his related entities. Mr. Patrick's testimony that Mr. Dondero does not control the litigation was controverted and is contradicted by Mr. Patrick's own testimony and that of Mr. Dondero, and Grant Scott. *See, e.g.,* Appx. 2 at 137-141, 155-156, 189-191, 200-201, 213, 234-240, 242; Appx. 3 at 339-380. Further, the Bankruptcy Court found in the Confirmation Order that Mr. Dondero was coordinating his related entities' efforts to "burn down the Debtor" through vexatious litigation. *See* Appx. 4 at 398-400, 436-438. A list of this litigation was included in the appendix to the Memorandum; however, it is outdated as Mr. Dondero has continued to litigate. An updated list is Appx. 5 at 543. The Motion should be viewed in the context of this litigation.

⁸ The Bankruptcy Court conducted a hearing on the Contempt Motion on June 8, 2021, and subsequently said it will find certain defendants in that action, which may include Plaintiffs, in contempt. Appx. 2 at 322-323. The Bankruptcy Court has not yet issued its written order but intends to do so shortly. Appx. 6 at 676.

2

14 B.R. 188, 192-93 (N.D. Tex. 1991); *see also Rodriguez v Countrywide Home Loans, Inc.*, 421 B.R. 341, 347-8 (S.D. Tex. 2009) (adopting majority view requiring "material and substantial consideration of non-Bankruptcy Code federal law" for mandatory withdrawal). "Consideration" means something more than the mere process of examining, thinking about, or taking into account." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996) (internal quotations omitted). Simply asserting federal law is insufficient and mandatory withdrawal only applies when a matter requires something "more than mere application of existing law to new facts." *Vicars*, 96 F.3d at 953-54; *City of N.Y. v., Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). "[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 101134, at *6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009).

6. Plaintiffs attempt to meet this stringent standard by exaggerating the complexity of their claims. But, their claims are simple and straightforward: (1) (a) did Defendants owe Plaintiffs a fiduciary duty under the Advisers Act; (b) what was that duty and was it violated; and (c) if violated, what are the remedies and potential damages and (2) is the securities violation a predicate act under RICO? These are not difficult questions or outside the Bankruptcy Court's expertise.

7. **Fiduciary Duty under the Advisers Act.** It is well-settled that, with limited, inapplicable exceptions, Section 206 of the Advisers Act[9] creates a fiduciary duty to an investment adviser's "client" (*i.e.*, the person or entity that is the counterparty to the investment management agreement) but not to an underlying investor in the "client." *Goldstein v. SEC*, 451 F.3d 873,

---

[9] Plaintiffs cite Rule 206(4)-8 of the Advisers Act, but Rule 206(4)-8 "does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law" or "a private right of action." Inv. Adv. Act Rel. No. 2628 (Aug. 3, 2007), Appx. 12 at 843-844.

3

881(D.C. Cir. 2006) ("The adviser owes fiduciary duties only to the fund [i.e., the client], not to the fund's investors. . . If the investors are owed a duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest.");[10] *see also, e.g., SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at *18-20 (S.D.N.Y. May 5, 2008) (dismissing a claim that an investment adviser owed a duty to a fund's investors rather than just the fund); *SEC v. Trabulse*, 526 F.Supp.2d 1008, 1016 (N.D. Cal. 2007) (same). HCLOF is a fund managed by HCFA, an affiliate of the Debtor. The DAF and CLOH are investors in HCLOF. The Debtor and HCFA's duties do not run to investors in HCLOF. The Debtor has never had a management agreement or client relationship with CLOH and owes it no fiduciary duty. The Debtor, at all relevant times, was party to a management agreement with the DAF and owed DAF certain duties under the agreement.[11] This analysis is not complicated and only requires a straightforward application of federal law to the facts.

8. **The Scope of the Fiduciary Duty and Breach.** An adviser's fiduciary duty is satisfied by disclosure. "To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *See Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Release No. IA-5248; File No. S7-07-18, Effective July 12, 2019, Appx. 8 at 722-723. The law is well-established; includes Supreme Court jurisprudence; and is not based on interpretation of SEC releases. *See, e.g., SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963); *Laird v. Integrated Resources,*

---

[10] There are limited exceptions to *Goldstein*, which rely on specific features in the relationship between the adviser and the investor that are not applicable here. *See U.S. v. Lay*, 612 F.3d 440, 444 (6th Cir. 2010) (only one investor in the fund); *SEC v. Sentinel Mgmt. Grp., Inc.*, 2012 U.S. Dist. LEXIS 57579, at *13 (N.D. Ill. Mar. 30, 2012) (investment guidelines were personalized for each individual investor); *Goldenson v. Steffens*, 802 F. Supp. 2d 240, 268 (D. Me. 2011) (allegations adviser had provided personalized advice to investor).

[11] The Debtor and the DAF entered into that certain *Second Amended and Restated Investment Advisory Agreement,* effective from January 1, 2017 (the "DAF Agreement"). The DAF Agreement terminated on February 28, 2021.

4

*Inc.*, 897 F.2d 826, 831-36 (5th Cir. 1990). Adjudicating this issue only requires determining if appropriate disclosures were made.[12]

9. **Remedies for Breach of Duty.** Assuming, *arguendo*, the Debtor breached its fiduciary duty to the DAF under the Advisers Act, there is no private right of action for such breach. *Transamerica Mortg. Advisors v. Lewis*, 444 U.S. 11, 13-14 (1979) ("[W]e hold there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable [on a client].")[13] The ***only*** remedy the DAF has for breach of fiduciary duty is to void the DAF Agreement (which has already been terminated), and the DAF cannot seek damages for breach of fiduciary duty (with the possibility of restitution). *See, e.g., Transamerica*, 441 U.S. at 13-14; *Corwin*, 788 F.2d at 1066; *Douglass*, 900 F.Supp.2d at 746.

10. **Bankruptcy Courts Apply the Advisers Act.** Bankruptcy courts routinely analyze federal securities laws. In fact, prior to the commencement of the Debtor's case, the Debtor, under Mr. Dondero's control, was heavily involved in the bitterly contested *Acis* bankruptcy. Appx. 1 at 15. HCLOF invested in certain CLOs managed by Acis. Mr. Dondero owned and controlled Acis prior to the appointment of a chapter 11 trustee in the *Acis* bankruptcy and controlled HCLOF prior to the Bankruptcy Case. In *Acis*, the Debtor (controlled by Dondero) brought claims ***in the Bankruptcy Court*** alleging Acis was liable to it for breach of fiduciary duties under the Advisers

---

[12] Exhibit A to the DAF Agreement includes pages of disclosures, including the following: (1) "None of the [Highland Group] . . . is precluded from engaging in or owning an interest in. . . investment activities of any kind, whether or not such ventures are competitive with [the DAF]" and (2) "[T]he Highland Group. . . may actively engage in transactions in the same securities sought by [the DAF] and, therefore, may compete with [the DAF] for investment opportunities or may hold positions opposite to positions maintained by [the DAF]." Appx. 7 at 694-695.

[13] *See also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502 (3rd Cir. 2012) ("With the exception of a private remedy relating to certain investment advisory contracts, 'the [Advisers] Act confers no other private causes of action, legal or equitable.'") (citations omitted); *Corwin v. Marney, Orton Inv.*, 788 F.2d 1063, 1066 (5th Cir. 1986) (affirming dismissal of claims under the Advisers Act "because the investors had no private causes of action"); *Douglass*, 900 F.Supp.2d at 746-47 (same).

Act – asserting nearly identical claims to those made in the Complaint. Appx. 9 at 757-758. Plaintiffs' position is an about-face from Mr. Dondero's prior position, and their argument that the Bankruptcy Court cannot adjudicate these disputes is disingenuous.

11. Further, 11 U.S.C. § 523(a)(19) requires bankruptcy courts to determine whether there were violations of "federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934),[14] any of the State securities laws, or any regulation or order issued under such Federal or State securities laws. . ." in connection with dischargeability. As part of this analysis, bankruptcy courts look to, among other things, the applicability of the Advisers Act. *See, e.g., Tillman Enters., LLC v. Horlbeck (In re Horlbeck)*, 589 B.R. 818, 832 (Bankr. N.D. Ill. 2018) ("bankruptcy courts have jurisdiction to determine liability on an underlying securities claim for purposes of § 523(a)(19)" and "liability under § 523(a)(19) cannot be supported by an alleged violation" of the Advisers Act as there is no private remedy or "actionable claim"); *Tradex Global Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui)*, 538 B.R. 793, 806-08 (Bankr. N.D. Cal. 2015) (same).[15] Bankruptcy court analysis of the Advisers Act is not limited to Section 523(a)(19). *See Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604 (Bankr. W.D. Wash. 2013) (dismissing complaint alleging that defendant owed a fiduciary duty to an investor under the Advisers Act for failure to state a claim); *Living Benefits Asset Mgmt. v. Kestrel Aircraft Co. (In re Living Benefits Asset Mgmt.),* 587 B.R. 311, 317-20 (N.D. Tex. 2018) (affirming bankruptcy court's rulings under the Advisers Act), *aff'd* 916 F.3d 528 (5th Cir. 2019);

---

[14] Section 3(a)(47) of the Securities Exchange Act of 1934 (the "Exchange Act") defines "securities laws" as "the Securities Act of 1933 (15 U.S.C. 78a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-Oxley Act of 2002, the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), *the Investment Advisers Act of 1940* (15 U.S.C. 80b et seq.), and the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa, et seq.)."

[15] *See also King v. Skolness (In re King)*, 624 B.R. 259, 301 (Bankr. N.D. Ga. 2020) (bankruptcy court could determine liability under state and federal securities laws for purposes of § 523(a)(19)); *Holzhueter v. Groth (In re Holzhueter)*, 571 B.R. 812, 822-24 (Bankr. W.D. Wis. 2017) (same).

*In re Acis Capital Mgmt. L.P., et al.*, Case No. 18-30264-sgj11, D.I. 549 (Bankr. N.D. Tex. Sept. 4, 2018) (finding the Advisers Act did not prohibit assumption of a management agreement under Section 365).

12. **Plaintiffs Cite No Applicable Case Law.** Plaintiffs wave the red flag of "securities laws" and cite two factually inapposite cases to support their argument. ***First***, they cite *In re Harrah's Entertainment*, 1996 U.S. Dist. LEXIS 18097 (E.D. La. Nov. 26, 1996), which has nothing to do with the Advisers Act. *Harrah's* involved a class action arising from the issuance of $435 million in publicly-traded debt; claims that the prospectus violated the Exchange Act; and attempts to hold the issuer's partners liable for the issuer's actions under the Exchange Act. The district court ruled that mandatory withdrawal applied because of the foregoing factors; however, none of them apply here. There is no public issuance; no retail investors; no class action; no derivative liability; no applicability of the Exchange Act; and no complicated factual analysis. Plaintiffs' Advisers Act claims require only the straightforward application of settled law to the facts in a dispute between two private parties. ***Second***, Plaintiffs cite *Belmont* for the proposition that there is "considerable 'confusion'" because "federal law (the Advisers Act) provides, 'the duty and the standard to which investment advisers are to be held,' but 'the cause of action is presented as springing from state law.'" Appx. 10 at 788. Plaintiffs ignore *Belmont's* holding. *Belmont* confirms no private right exists under the Advisers Act. *Belmont*, 708 F.3d at 502. The only "confusion" is if ***state, not federal, law*** creates a private right. *Id.* (finding the prohibition on private rights in the Advisers Act "ought to call into serious question whether a limitation in federal law can be circumvented simply by hanging the label 'state law' on an otherwise forbidden federal law claim" but recognizing split on state law claims). 28 U.S.C. § 157(d) deals with federal law, and state law claims are irrelevant.

7

13. **The Advisers Act Is Not a Predicate for RICO:** Plaintiffs allege the violation of the Advisers Act, among other things, in connection with a sale of a security (the HCLOF interests) is a predicate act. Appx. 11 at 826-827. However, RICO expressly excludes securities fraud as a predicate act. 18 U.S.C.A. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].").[16] Plaintiffs' RICO claim is for securities fraud; is barred by statute; and cannot support mandatory withdrawal. *See, e.g., MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273-80 (2d Cir. 2011) (barring RICO claims arising out of the operation of a Ponzi scheme because they involved a purchase or sale of a security despite no private right of action existing); *Affco Invs. 2001 LLC v. Proskauer Rose L.L.P.*, 625 F.3d 185, 189-91 (5th Cir. 2010) (same).[17]

## THE BANKRUPTCY COURT HAS JURISDICTION

14. "Related to" jurisdiction exists if resolution of a dispute would have a "conceivable impact on the estate." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). A judgment against the Debtor would significantly impact the estate and there is "related to" jurisdiction.[18]

---

[16] *See also* H.R. Rep. No. 104-369, at 47 (1995) ("The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the . . . Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.").

[17] Plaintiffs' additional arguments to support mandatory withdrawal are easily disposed of. First, there is no contention that the HarbourVest Settlement Order released Plaintiffs' claims and this issue is made up. Second, there is no issue regarding whether *res judicata* applies to claims not yet accrued. The Debtor's alleged breach of duties raised in the Complaint occurred prior to approval of the HarbourVest Settlement. Third, *res judicata* is an issue, but there is no "federal issue" to consider. *See Rothstein v. Kuosenfung*, 2009 U.S. Dist. LEXIS 68329, at *4-5 (S.D.N.Y. July 29, 2009) (finding movant's Advisers Act claim barred by *res judicata* under typical analysis); *Pt Pukuafu Inda v. SEC*, 2009 U.S. Dist. LEXIS 92986, at *18 (E.D. Mich. Oct. 6, 2009) (same). Lastly, Plaintiffs' jury trial waiver argument is a red herring. The DAF waived its jury trial right in the DAF Agreement. The Debtor has not argued that CLOH waived its jury trial rights (if any). It argues the Debtor owes no fiduciary duty to CLOH and that no private right of action exists under the Advisers Act. The Court should reject the attempt to create controversy and a federal issue where none exists. *See, e.g., Keach v. World Fuel Servs. Corp, (In re Montreal Me. & Atl. Ry.)*, 2015 U.S. Dist. LEXIS 74006, at *21-23 (D. Me. June 8, 2015) (finding no mandatory withdrawal when movant simply "tries to kick up some dust to make the relevant analysis seem complicated").

[18] A proceeding "relates to" a proceeding under title 11 *even if it arises from post-petition conduct* if "it affects the estate, not just the debtor." *Wood,* 825 F.2d at 94 (emphasis added).

15. Plaintiffs argue that because the Bankruptcy Court confirmed the Plan its jurisdiction is limited and determined under the restrictive standard in *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.),* 266 F.3d 388 (5th Cir. 2001). *Craig's Stores* did hold that a bankruptcy court may **lack** jurisdiction over **post-confirmation claims based on post-confirmation activities** but not that a bankruptcy court **loses** jurisdiction over **pre-confirmation claims based on pre-confirmation activities** just because of confirmation. *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335-336 (5th Cir. 2008) *citing Craig's Stores,* 266 F.3d at 389-90. Here, Plaintiffs' alleged claims arose from the HarbourVest Settlement and *prior to* confirmation of the Plan.

16. Based on *Craig's Stores* and other decisions,[19] courts developed a six-factor test to determine if there is "related to" jurisdiction post-confirmation: (1) when the claim arose; (2) what provisions in the plan exist for resolving disputes and whether the plan retains jurisdiction; (3) if the plan has been substantially consummated; (4) the parties involved; (5) if state or bankruptcy law applies; and (6) indices of forum shopping. *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.),* 309 B.R. 217 (Bankr. N.D. Tex. 2004); *Ebner v. Woodforest Partners, L.P. (In re EBCO Land Dev., Ltd.)*, 2008 Bankr. LEXIS 1207 (Bankr. S.D. Tex. Apr. 17, 2008).

17. Even if the more restrictive standard applies, these factors support bankruptcy court jurisdiction in this case. The claims in the Complaint arose from the HarbourVest Settlement (which occurred pre-confirmation) and, if they exist, are administrative claims;[20] the Plan provides

---

[19] *See EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260 (5th Cir. 2005); *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296 (5th Cir. 2002); *In re Case,* 937 F.2d 1014 (5th Cir. 1991).

[20] The causes of action asserted in the Complaint arose post-petition/pre-confirmation and thus the Complaint is, in effect, a motion for payment of an administrative claim under 11 U.S.C. § 503; should have been filed in the Bankruptcy Court; and is subject to allowance under the Bankruptcy Code and the Plan. A request for payment of an administrative claim is a core proceeding under 28 U.S.C. § 157(B)(2)(A) and (O), and arises in and under title 11. *See, e.g., Piper Aircraft Corp. v. Calabro (In re Piper Aircraft Corp.)*, 169 B.R. 766, 776 (Bankr. S.D. Fla. 1994) (in tort context, administrative claim arises from a transaction with the debtor-in-possession, and that transaction must

9

a procedure for administrative claims; the Plan has not been substantially consummated;[21] the defendant is the Debtor (and possibly its CRO/CEO); and Plaintiffs are forum shopping.[22]

## NO WASTE OF JUDICIAL RESOURCES

18. Granting the Motion would give this Court the benefit of the Bankruptcy Court's recommendation on mandatory withdrawal as required by the local rules, which require a party to file a motion for withdrawal with the bankruptcy clerk so the bankruptcy court can make a report and recommendation to this Court.[23] This is particularly important here as the Bankruptcy Court is very familiar with the parties and the issues, having conducted the evidentiary hearing to approve the HarbourVest Settlement.[24] The Bankruptcy Court's report and recommendation will aid this Court in analyzing whether withdrawal is appropriate. Plaintiffs' attempts to maneuver around the Bankruptcy Court should not be rewarded.

---

have benefitted the debtor in the operation of its post-petition business.). Once paid or disallowed, Plaintiff's administrative claim will be discharged under 11 U.S.C. § 1141(d)(1).

[21] There is recognition that while 11 U.S.C. § 1141 references confirmation of the plan, the "Effective Date is the date upon which a *confirmed* plan becomes operative and distribution of property and cash is commenced." *See* Benjamin Weintraub & Michael J. Crames, *Defining Consummation, Effective Date of Plan of Reorganization and Retention of Postconfirmation Jurisdiction: Suggested Amendments to the Bankruptcy Code and Bankruptcy Rules*, 64 Am. Bankr. L.J. 245, 277 (1990) (emphasis added); *see also* 11 U.S.C. § 1129 (allowing confirmation only if certain requirements are met, including nine referencing "the effective date of the plan").

[22] Plaintiffs, without any authority, contend that confirmation is a significant event in the jurisdictional analysis. As the *Ebner* court stated: "An action impacting a confirmed, but not substantially consummated, plan would have an impact on the debtor-creditor relationship, a factor which favors continuing jurisdiction. *See Craig's Stores,* 266 F.3d at 391." *Ebner* at *20-21. The Plan is not effective and has not been substantially consummated. *See* 11 U.S.C. § 1101(2). And it makes sense that the jurisdictional analysis of a dispute arising before a plan is effective should be more expansive. The rationale for narrowing post-confirmation jurisdiction is that the debtor is no longer under the supervision and control of the bankruptcy court; has emerged from bankruptcy; and is continuing to operate its business unfettered by the strictures of the Bankruptcy Code. *Craig's Stores,* 266 F.3d 390. Because the Plan in this case is not yet effective, the Debtor's assets have not vested in the Reorganized Debtor and the Debtor continues to operate under the strictures of the Bankruptcy Code. Plaintiffs cite no cases to support a restrictive view of bankruptcy court jurisdiction in the post-confirmation, pre-effective date period.

[23] Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, Rule 5011-1.

[24] Plaintiffs also argue allowing the Bankruptcy Court to adjudicate the *res judicata* defense is inappropriate because the *second court* determines if *res judicata* applies, not the first. Plaintiffs' argument misses the point. The Bankruptcy Court will be the *second court* if the Order of Reference is enforced and will evaluate the *res judicata* argument as the court presiding over the Complaint. Who better to determine if the proceedings in the *first court* (*i.e.* the HarbourVest Settlement) are *res judicata* in the second court than the Bankruptcy Court?

Dated: July 13, 2021     **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*