

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 11, 2022**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § | CASE NO. 19-34054-SGJ-11 |
| | § | (CHAPTER 11) |
| REORGANIZED DEBTOR. | § | |
| _____ | § | |
| CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD., | § | |
| | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 21-03067 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD., | § | |
| | § | |
| | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS THE ADVERSARY PROCEEDING

I. **INTRODUCTION**

The above-referenced adversary proceeding (the "Adversary Proceeding") is related to the bankruptcy case of Highland Capital Management, L.P. (the "Bankruptcy Case").[1] Highland Capital Management, L.P. ("Highland," the "Debtor," or sometimes the "Reorganized Debtor") filed a voluntary Chapter 11 petition on October 16, 2019, in the United States Bankruptcy Court for the District of Delaware. That court subsequently transferred venue of the Bankruptcy Case to the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), on December 4, 2019.

Before the court is Highland's motion to dismiss (the "Motion to Dismiss") the Adversary Proceeding. Highland obtained confirmation of a reorganization plan on February 22, 2021, and the plan went effective on August 11, 2021. The Adversary Proceeding was filed in April 2021 (*i.e.,* after confirmation but before the effective date of Highland's Chapter 11 plan). There were originally three Defendants named in the Adversary Proceeding: (i) Highland, and (ii) two non-Debtor affiliates which Highland controls that are called Highland HCF Advisor, Ltd. ("HHCFA") and Highland CLO Funding Ltd. ("HCLOF"). Defendant HCLOF was later dismissed by agreement with the Plaintiffs.[2] Highland's CEO, James P. Seery ("Mr. Seery"), was named in the Complaint initiating the Adversary Proceeding (the "Complaint") as a "potential" Defendant but has not been added. The Plaintiffs are two entities that are allegedly controlled and/or directed by James Dondero, Highland's founder and former CEO ("Mr. Dondero"): (i) Charitable DAF Fund, L.P. (the "DAF"), which is a Cayman Island-based hedge fund designated as a "donor-advised fund," originally seeded with funds from Highland, and (ii) CLO Holdco, Ltd. ("CLO Holdco"),

---

[1] Bankruptcy Case No. 19-34054.

[2] At the hearing held on the Motion to Dismiss, the parties announced an agreement that HCLOF would be dismissed from the Adversary Proceeding with prejudice. HCLOF was apparently only named nominally in the Adversary Proceeding and no actual relief was sought against it. An order dismissing HCLOF was entered on December 7, 2021. Highland and HHCFA were unaffected by the dismissal order.

which is also a Cayman Island-based entity, wholly owned and controlled by the DAF. Until at least mid-January 2021, Grant Scott, Mr. Dondero's life-long friend and college roommate, was the sole director of the DAF and also of CLO Holdco (neither of which otherwise had any officers or employees).

The Complaint, which was originally filed in the United States District Court for the Northern District of Texas, Dallas Division ("District Court"), but was referred to the Bankruptcy Court (as further described herein), asserts claims against Highland and HHCFA under the Racketeer Influenced and Corrupt Organizations statute (15 U.S.C. § 1961, et seq. ("RICO")), Breach of Fiduciary Duty, Breach of Contract, Negligence, and Tortious Interference with Contract—all relating to the Debtor's pursuit and effectuation *during the Bankruptcy Case* of a compromise and settlement agreement with a creditor known as HarbourVest, which *agreement was fully vetted and approved by the Bankruptcy Court* (after notice to creditors and parties in interest), pursuant to Federal Rule of Bankruptcy Procedure 9019. Accepting all facts pleaded as true and construing the Complaint in the light most favorable to the Plaintiffs, this court concludes that all of the claims in the Complaint are precluded by the doctrines of collateral estoppel and judicial estoppel. Thus, the Complaint, in its entirety, must be dismissed.

In order to understand the conclusion of this court, one must review matters that happened during the Bankruptcy Case. Although a court generally limits its inquiry on a motion to dismiss to the plaintiff's complaint or any documents attached to the complaint, a court may also take judicial notice of matters that are part of the public record when considering a motion to dismiss. *See T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.,* No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D. Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 (E.D. La. Aug. 31, 2001). The relevant public record here includes: (a) the HarbourVest

Settlement Motion,[3] and the exhibits admitted into evidence in support; (b) the Transfer Agreement;[4] (c) Mr. Dondero's Objection to the HarbourVest Settlement;[5] (d) the Objection to the HarbourVest Settlement of Dugaboy Investment Trust and Get Good Trust (*i.e,* Mr. Dondero's family trusts),[6] (e) CLO Holdco's Objection to the HarbourVest Settlement,[7] (f) the Omnibus Replies;[8] (g) the January 14, 2021 Hearing Transcript at which the Bankruptcy Court considered and approved the HarbourVest Settlement;[9] and (h) the HarbourVest Settlement Order.[10]

## II.  BACKGROUND

The creditor HarbourVest was actually a collective of investors that, in 2017, invested approximately $80 million into the entity known as HCLOF (*i.e.,* the previously dismissed nominal Defendant), thereby acquiring a 49.98% interest in it. HarbourVest filed six proofs of claim against the Debtor in the Bankruptcy Case, totaling $300 million, alleging that the Debtor had committed fraud back in 2017, in connection with its encouraging HarbourVest to invest in and acquire that 49.98% interest in HCLOF. As alluded to earlier, the Debtor and HarbourVest eventually negotiated a settlement of HarbourVest's proofs of claim.

---

[3] Debtor's Motion for an Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, DE # 1625 (the "Settlement Motion"). Note: all references herein to "DE # ____" shall refer to the docket entry number at which a pleading appears in the docket maintained in the Highland main bankruptcy case. All references to "DE # ____ in the AP" refer to the docket entry number at which a pleading appears in the docket maintained in the Adversary Proceeding.

[4] Declaration of John A. Morris in Support of the Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, DE # 1631, Exhibit 1.

[5] James Dondero's Objection to Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest, DE # 1697.

[6] Objection to Debtor's Motion for an Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, DE # 1706.

[7] CLO Holdco, Ltd.'s Objection to HarbourVest Settlement, DE # 1707.

[8] Debtor's Omnibus Reply in Support of the Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, DE # 1731; HarbourVest Reply in Support of Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest and Authorizing Actions Consistent Therewith, DE # 1734.

[9] Transcript of Hearing Held 1/14/2021, DE # 1765.

[10] *Order Approving Debtor's Settlement with Harbourvest (Claims Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith*, DE # 1788 (the "HarbourVest Settlement Order").

In December 2020, the Debtor filed a motion in the Bankruptcy Court for an order approving its settlement with HarbourVest (the "HarbourVest Settlement"), pursuant to which, *inter alia*, HarbourVest would significantly reduce its $300 million of alleged claims against the Debtor and transfer its 49.98% interest in HCLOF to an entity designated by the Debtor (the "Transfer"). At the time of the Transfer, the Debtor already owned a 0.6% interest in HCLOF, so the Transfer would give it a controlling interest (49.98% + 0.6% = 50.58%) in HCLOF.

CLO Holdco objected to the proposed HarbourVest Settlement, presumably at the direction of its parent, the DAF. CLO Holdco owned (and still owns) 49.02% of HCLOF. CLO Holdco challenged the HarbourVest Settlement on the grounds that: (i) CLO Holdco had a "Right of First Refusal" to acquire HarbourVest's interest in HCLOF pursuant to the HCLOF Members Agreement among the Debtor, HarbourVest, and CLO Holdco ("HCLOF Members Agreement"), and (ii) HarbourVest had no right to transfer its interest without complying with the purported "Right of First Refusal." Two other objections were lodged against the proposed HarbourVest Settlement, one by Mr. Dondero and the other by Mr. Dondero's two family trusts: The Dugaboy Investment Trust ("Dugaboy") and The Get Good Trust ("Get Good" and, together with Dugaboy, the "Dondero Family Trusts"). Mr. Dondero objected on the grounds that (a) the HarbourVest Settlement was not reasonable or in the best interests of the estate because the Debtor was grossly over-compensating HarbourVest, and (b) it amounted to a blatant attempt to purchase HarbourVest's votes in support of the Debtor's plan. The Dondero Family Trusts raised separate concerns regarding: (a) whether HarbourVest had the right to effectuate the Transfer, and (b) the valuation methodology the Debtor used for the HCLOF interests. Each of the objecting parties had a right to take discovery concerning the HarbourVest Settlement, including the valuation of the HCLOF interests and the Transfer.

The court held an evidentiary hearing, on January 14, 2021, on the HarbourVest Settlement and heard argument in support of the parties' objections and defenses. Highland's current CEO, Mr. Seery, and a HarbourVest representative, Michael Pugatch ("Mr. Pugatch"), were each called to testify. During the hearing, surprisingly, ***CLO Holdco voluntarily withdrew its objection, which had been premised on its alleged "Right of First Refusal,"*** based on CLO Holdco's "interpretation of the [HCLOF] member agreement."[11] Subsequent to CLO Holdco withdrawing its objection at the hearing, the Bankruptcy Court asked counsel for the Dondero Family Trusts whether they planned to press the issue of the transferability of HarbourVest's interest in HCLOF. In response, counsel responded: "No, I am not. Basically, I think it's the fairness of the settlement. I think the transferability of the interest is separate and apart from the fairness of the settlement itself. I think the fairness -- the transferability was a contractual issue between two parties that the Court does not have to drill down on." Transcript of Hearing Held 1/14/2021, DE # 1765, at 22:5-20.

At the conclusion of the hearing, the Bankruptcy Court overruled the remaining objections (*i.e.,* of Mr. Dondero and the Dondero Family Trusts) and approved the HarbourVest Settlement as fair and equitable and in the best interests of the bankruptcy estate. The HarbourVest Settlement Order made clear that HarbourVest could transfer its interest in HCLOF "without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF."[12]

In summary, pursuant to the HarbourVest Settlement that the Bankruptcy Court approved, HarbourVest, in pertinent part, would (a) transfer its interest in HCLOF to the Debtor or its nominee, (b) be allowed a general unsecured claim against the Debtor in the amount of $45 million,

---

[11] Transcript of Hearing Held 1/14/2021, DE # 1765, at 7:20-8:6.
[12] HarbourVest Settlement Order, DE # 1788.

and (c) be allowed a subordinated, general unsecured claim against the Debtor in the amount of $35 million. The HarbourVest Settlement was essentially a recission of the investment HarbourVest had made in HCLOF and also provided HarbourVest allowed, reduced claims against Highland in settlement of its alleged $300 million of damages.

The HarbourVest Settlement Order was appealed by the Dondero Family Trusts, with notice of the appeal being filed in the Bankruptcy Court on February 5, 2021. The Dondero Family Trusts argue on appeal that the Debtor overpaid for the HCLOF interests, and the HarbourVest Settlement was an attempt to gerrymander the Debtor's plan and purchase votes. No stay pending appeal has been approved and the HarbourVest Settlement was implemented. The appeal remains pending before Judge Sam Lindsay in the District Court.[13]

On April 12, 2021, the Plaintiffs, DAF and CLO Holdco, filed the Complaint initiating this Adversary Proceeding in the District Court. The action was assigned to Judge Jane Boyle. ***The subject matter of the Adversary Proceeding is entirely centered around the bona fides and permissibility of aspects of the HarbourVest Settlement.*** Despite the full vetting in the Bankruptcy Court of the HarbourVest Settlement and an order approving the HarbourVest Settlement—which, by the way, was not appealed by Plaintiffs DAF or CLO Holdco—various torts and other causes of action are now being alleged by DAF and CLO Holdco against the Debtor ***relating entirely to the HarbourVest Settlement***. As earlier alluded to, the Complaint raises claims that Highland, while a debtor-in-possession, committed: (1) breach of fiduciary duties to the Plaintiffs; (2) breach of the HCLOF Members Agreement; (3) negligence; (4) RICO violations; and (5) tortious interference.

---

[13] Case No. 3:21-cv-00261-L.

On September 20, 2021, Judge Boyle issued an Order of Reference[14] referring this action to be adjudicated as an adversary proceeding related to the Bankruptcy Case, pursuant 28 U.S.C. § 157 and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. Thus, the Complaint is now pending before the Bankruptcy Court.

In its claim for breach of fiduciary duty (**Count 1**), Plaintiffs allege that the Debtor violated its "broad" duties to Plaintiffs under the "Investment Advisers Act of 1940" and the Debtor's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of the HarbourVest interest; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without offering it to Plaintiffs.

In support of its claim for breach of the HCLOF Members Agreement (**Count 2**), Plaintiffs allege that the Debtor breached the "Right of First Refusal" provision therein, by diverting the investment opportunity away from CLO Holdco to the Debtor.

In its negligence claim (**Count 3**), Plaintiffs assert that the Debtor's actions violated the HCLOF Members Agreement and the Debtor's internal policies by failing to accurately calculate the HCLOF interests and failing to give Plaintiffs the Right of First Refusal to purchase the interests.

In their RICO Claim (**Count 4**), Plaintiffs allege that Defendant Highland and two affiliated entities were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and, ultimately, effectuating the HarbourVest Settlement.

---

[14] District Court Order of Reference, DE # 64 in the AP.

Finally, Plaintiffs' tortious interference claim (**Count 5**) is premised on the Debtor's alleged interference with Plaintiff's "Right of First Refusal" under the Members Agreement.

Highland, in response to the Complaint, filed its Motion to Dismiss on May 27, 2021. In the Motion to Dismiss, Highland argues that, based on the previous HarbourVest Settlement contested proceeding, the Plaintiffs' claims are precluded or barred by the doctrines of res judicata, collateral estoppel, [15] and judicial estoppel. Alternatively, Highland also alleges that each of the claims in the Complaint should be dismissed for failing to sufficiently state claims for relief under Rule 12(b)(6). The Motion to Dismiss seeks to have the Complaint dismissed in its entirety.

The Bankruptcy Court held a hearing on Highland's Motion to Dismiss the Adversary Proceeding now before the court. At the conclusion of the Motion to Dismiss hearing, the court took the matter under advisement.

### III. Legal Analysis

#### A. Jurisdiction and Authority

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to 28 U.S.C. § 1334(b). This Adversary Proceeding is, at a minimum, "related to" the Highland Bankruptcy Case. Moreover, it "arises in" a bankruptcy case (making it "core"), in that a claim is being asserted against a debtor (which was not yet a "reorganized debtor" at the time the action was filed) and involves actions of a debtor-in-possession in administering its case. It involves orders of this Bankruptcy Court and activities and litigation over which the Bankruptcy Court presided. This Bankruptcy Court has authority to exercise bankruptcy subject matter jurisdiction here, pursuant to 28 U.S.C. § 157(a) and (b)(2)(A), (B), and (O), and the Standing Order of Reference of

---

[15] The court notes that Highland, in the Brief in Support of the Motion to Dismiss, lists collateral estoppel, in its summary of arguments, as grounds for dismissal of the Complaint. However, nowhere else is collateral estoppel mentioned within the Motion to Dismiss and Brief in Support. Rather, Highland focuses only on res judicata and judicial estoppel.

Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. The case was referred to the Bankruptcy Court by the District Court and there are no pending motions to withdraw the reference.

B.     Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.,* 61 F.3d 288, 289 (5th Cir. 1995). The court may take judicial notice of matters of public record when considering a motion to dismiss for failure to state a claim. *See T.L. Dallas (Special Risks), Ltd.*, 2008 WL 7627807, at *2; Cade, 2001 WL 1012251, at *2.

C.     Res Judicata

The first preclusion doctrine argued by Highland in its Motion to Dismiss is res judicata. [16] Res judicata, otherwise known as "claim preclusion," literally means "the thing has been decided."

---

[16]   As mentioned earlier, there is a pending appeal of the HarbourVest Settlement Order. This fact is irrelevant for purposes of Highland's preclusion arguments. The federal rule and the rule in this circuit is that, ***despite an appeal, final orders of a court still maintain full force and effect for res judicata and collateral estoppel purposes until reversed on appeal****. Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.,* 510 F.2d 272, 273 (5th Cir.1975)

"Though it is not often the case, a finding of res judicata is appropriate on a motion to dismiss when the res judicata bar is apparent from the face of the pleadings and judicially noticed facts." *See Wade v. Household Fin. Corp. III*, No. 1:18-CV-570-RP, 2019 WL 433741, at *2 (W.D. Tex. Feb. 1, 2019). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The elements of res judicata are: "(1) the parties are identical or at least in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." *Comer v. Murphy Oil USA, Inc.,* 718 F.3d 460, 466 (5th Cir. 2013) (quoting *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). Dismissal under Rule 12(b)(6) is proper if the elements of res judicata are apparent based on the facts pleaded and judicially noticed. *See Hall v. Hodgkins*, 305 F. Appx. 224, 227–28 (5th Cir. 2008); *Mitchell v. Ocwen Loan Servicing, LLC*, No. 4:18-cv-00820-P, 2019 WL 5647599, at *3 (N.D. Tex. 2019). The fourth element of res judicata can be met where a claim or cause of action relates to the same "transaction, or series of transactions, out of which the [original] action arose." *Ries v. Paige* (*In re Paige*), 610 F.3d 865, 872 (5th Cir. 2010). "When applying this test, the primary question is whether the lawsuits were based on 'the same nucleus of operative fact,' regardless of the relief requested, or the claims brought. *Wade*, 2019 WL 433741, at *3.

Highland argues that, when taking judicial notice of the docket created in connection with the HarbourVest Settlement, it is apparent that the four elements of res judicata are met: (1) CLO

---

("[a] case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal"); *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.,* 740 F.2d 1011, 1018 (D.C. Cir. 1984) "([w]e note that the federal rule and the rule in this circuit is that collateral estoppel may be applied to a trial court finding even while the judgment is pending on appeal"); *see Huron Holding Corp. v. Lincoln Mine Operating Co*., 312 U.S. 183, 189 (1941) ("To the same effect, in the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality").

Holdco objected to the HarbourVest Settlement, and the DAF is in privity with CLO Holdco as its 100% parent; (2) the Bankruptcy Court was a court of competent jurisdiction over the HarbourVest Settlement; (3) the Bankruptcy Court entered a final order based upon the merits of the HarbourVest Settlement; and (4) the claims or causes of action arise out of the same "common nucleus of operative facts" as those raised at the HarbourVest Settlement hearing.

To be clear, Highland argues the fourth element of res judicata is met because the claims brought by the Plaintiffs in the Complaint are substantially similar to, and arise from the very same facts, as those allegations that the Plaintiffs put forth during the Bankruptcy Court hearing on the HarbourVest Settlement. In connection with the HarbourVest Settlement, Plaintiff CLO Holdco argued to the Bankruptcy Court that the Debtor: (i) violated the HCLOF Members Agreement by failing to offer such interests to Plaintiffs pursuant to a "Right of First Refusal" provision; and (ii) diverted the investment opportunity to the Debtor without offering it to Plaintiffs. And the other objectors (*i.e.,* the Dondero Family Trusts) argued to the Bankruptcy Court that the Debtor did not accurately value the HCLOF 49.98% interest that was being transferred by HarbourVest back to the Debtor. The Bankruptcy Court overruled all of these arguments.

This court agrees that the claims being brought in the Adversary Proceeding arise from the same "transaction or series of transactions" and are based on the "same nucleus of operative facts" as were litigated and adjudicated in the Bankruptcy Court in connection with the HarbourVest Settlement. The allegations take the form of causes of action for breach of fiduciary duties, breach of contract, RICO violations, and tort claims, but ***all include the very same underlying factual allegations as articulated in connection with the HarbourVest Settlement***.

However, while this court agrees with Highland that CLO Holdco's claims arise from "the same common nucleus of operative fact" as the HarbourVest Settlement, this is not the end of the

court's analysis. "Even if the two actions are the same under the transactional test, res judicata does not bar this action unless" the Plaintiffs "could and should have" brought the claims in the Complaint in the prior proceeding. *Osherow v. Ernst & Young (In re Intelogic, Inc.)*, 200 F.3d 382, 388 (5th Cir. 2000). The Fifth Circuit has recognized procedural differences between contested matters under Bankruptcy Rule 9014, such as the HarbourVest Settlement hearing, and adversary proceedings. The Fifth Circuit noted that "[c]ounterclaims are only compulsory in 'adversary proceedings,'" as Bankruptcy Rule 7013 (which adopts Federal Rule of Civil Procedure 13) does not automatically apply to "contested matters" under Bankruptcy Rule 9014. *D-1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 39 (5th Cir. 1989). The Fifth Circuit proceeded to suggest, under the "quick motion-and hearing style" of contested matters, a party is not required, or even allowed, to bring all of its claims. *Howe v. Vaughn (Matter of Howe)*, 913 F.2d 1138, 1146 (5th Cir. 1990). The Fifth Circuit clarified that, whether the earlier proceeding that is being suggested as holding res judicata effect is a contested matter or an adversary is not dispositive; rather, it is a factor in determining whether the claim at issue could or should have been effectively litigated in the earlier proceeding. *See id.* at 1146 n.28; *see also Osherow*, 200 F.3d at 388 (the court weighed "whether the bankruptcy court possessed procedural mechanisms that would have allowed" the party to assert claims in the prior contested matter).

It is important to note that the Fifth Circuit has found, on numerous occasions in which the prior proceeding was a contested matter, versus an adversary proceeding, that res judicata still applied. *See, e.g., Osherow*, 200 F.3d at 388-91 (finding res judicata applied to malpractice claims that could have been asserted at a fee hearing); *In re Baudoin*, 981 F.2d 736, 744 (5th Cir. 1993) (ruling that res judicata barred lender liability claims based on loans that had been deemed allowed claims without objection in a previous bankruptcy); *Eubanks v. FDIC*, 977 F.2d 166, 174 (5th Cir.

1992) (barring a lender liability action which could have and should have been brought as an objection to the lender's claim in a prior bankruptcy proceeding); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir. 1984) (applying res judicata to bar a claim that could have been raised as an objection to a claim asserted in a previous bankruptcy reorganization). These opinions came in the context of a cause of action not being asserted to contest a proof of claim in a bankruptcy case. The Fifth Circuit found that objections to claims in the bankruptcy process, generally contested matters, provide procedural mechanisms to bring a claim for affirmative relief under Bankruptcy Rule 3007, which allows the claim objection to be converted to an adversary proceeding.[17] *Osherow*, 200 F.3d at 389-90.

But here, the Bankruptcy Court concludes that the Plaintiffs were not provided with procedural mechanisms needed in order to bring their causes of action in the Complaint during the HarbourVest Settlement contested matter. Despite the "transactional test" being met through a finding that the claims stem from "the same nucleus of operative facts," the procedures of Bankruptcy Rule 9014 do not allow for claims of affirmative relief—whether it be RICO violations, breach of contract, breach of fiduciary duties, or tort claims—to be asserted in response to a Bankruptcy Rule 9019 motion to compromise a controversy. The Fifth Circuit has not addressed procedural mechanisms supporting res judicata in the context of a Bankruptcy Rule 9019 motion to compromise a controversy, where the bankruptcy court is limited to determining whether or not to "approve a compromise or settlement." *See* Fed. R. Bankr. P. 9019(a). Unlike in the context of claim objections, mentioned above, where counterclaims can allow the claim objection to be converted through Bankruptcy Rule 3007 to an adversary proceeding, such causes

---

[17] The court in *Osherow* went on to find that Bankruptcy Rule 9014 gives discretion to the bankruptcy court to allow other rules in Part VII of the Bankruptcy Rules to apply to contested matters. In that case, it suggested the bankruptcy court could have stayed the proceedings and allowed discovery to be commenced under the Part VII Rules to develop the affirmative causes of action to raise in the claim objection.

of action have no mechanism to exist in the context of a Bankruptcy Rule 9019 motion. The bankruptcy court is limited to granting or denying a proposed settlement as relief in ruling on a Bankruptcy Rule 9019 motion—regardless of its findings on issues that may also serve for the foundation of the causes of action asserted in the subsequent hearing (*but see "***Collateral Estoppel***" discussion below).  Procedurally, this would not allow the subsequent causes of action to ever be raised, if res judicata were to apply to a contested matter under Bankruptcy Rule 9019, which does not allow for the assertion of counterclaims or other forms of affirmative relief.

Thus, the court finds that the Plaintiffs were not given the procedural mechanisms to bring the causes of action asserted in the Complaint during the pendency of the HarbourVest Settlement contested matter. The court finds that res judicata does not apply as a doctrine to preclude the claims asserted by the Plaintiffs in the Complaint.

D.   Collateral Estoppel

On the contrary, collateral estoppel ***does*** have applicability here. Arguments potentially relevant to the collateral estoppel doctrine were made by the parties in their pleadings and at the hearing on the Motion to Dismiss (phrased in terms of res judicata), but collateral estoppel *per se* was not addressed independently.[18] The Bankruptcy Court now addresses collateral estoppel *sua sponte*. Raising preclusion doctrines *sua sponte* is in the interest of judicial economy and is appropriate, especially where both actions are before the same court.  *See Carbonell v. La. Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985).

To be clear, "res judicata encompasses two separate, but linked, preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Comer v. Murphy Oil*

---

[18] As mentioned at footnote 15, Highland did make a passing reference to the collateral estoppel doctrine in its Brief in Support of its Motion to Dismiss.

*USA, Inc.,* 718 F.3d 460, 466–67 (5th Cir. 2013)). Thus, while res judicata precludes relitigating claims or causes of action that were or could have been previously litigated in a prior action, collateral estoppel is referred to as "issue preclusion" and prevents relitigating the same ***issues or facts*** decided in a prior proceeding. Collateral estoppel precludes only the relitigation of issues or facts ***actually litigated*** in the original action, whether or not the second suit is based on the same cause of action. *Moch v. East Baton Rouge Parish School Board,* 548 F.2d 594, 596 (5th Cir. 1977). "[A] ***right, question, or fact distinctly put in issue and directly determined*** as a ground of recovery by a court of competent jurisdiction collaterally estops a party ... from relitigating the issue in a subsequent action," if the party had reasonable notice and an opportunity to be heard against the claim. *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir. 1982) (emphasis added). "Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005). Each condition must be met in order for collateral estoppel to apply. "Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue . . . and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." *In re Devoll*, No. 15-50122-CAG, 2015 WL 9460110, at *3 (Bankr. W.D. Tex. Dec. 23, 2015) (citation omitted).

So were each of these three collateral estoppel factors met? Were the ***same*** facts or issues ***actually litigated*** and was a determination of these facts and issues a ***necessary part*** of approving the HarbourVest Settlement? The Plaintiffs argued, in their response to the Motion to Dismiss, that the Bankruptcy Court did not resolve anything on the merits other than the approval of a

settlement, and that was done solely using its discretion to approve a settlement. The court thinks that this is a mischaracterization of the court's role in approving the HarbourVest Settlement.

In considering a proposed compromise and settlement agreement, a bankruptcy court must determine whether it is "fair and equitable." *Matter of Jackson Brewing*, 624 F.2d 599, 602 (5th Cir. 1980); *United States v. AWECO, Inc. (In re AWECO)*, 725 F.2d 293, 298 (5th Cir. 1984), *cert. denied* 105 S. Ct. 244 (1984). A bankruptcy court applies a three-part test set out in *Jackson Brewing* with a focus on comparing "the terms of the compromise with the likely rewards of litigation." A bankruptcy court must evaluate: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. These "other" factors—sometimes called the *Foster Mortgage* factors[19]—include: (i) "the best interests of the creditors, 'with proper deference to their reasonable views'"; and (ii) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (citations omitted).

In connection with evaluating the HarbourVest Settlement and whether it was "fair and equitable" and in the "best interests of creditors," and whether it was the "product of arms-length bargaining, and not of fraud or collusion," the Bankruptcy Court held a multi-hour hearing that included lengthy direct and cross-examination of multiple witnesses and documentary evidence. The Bankruptcy Court was required to "appraise [itself] of the relevant facts and law so that [it could] make an informed and intelligent decision." *See In re Cajun Elec. Power Coop.*, 119 F.3d 349, 356 (5th Cir. 1997). The hearing included considering the arguments and evidence regarding

---

[19] *Connecticut Gen. Life Ins. v. United Cos. Fin. Corp. (In re Foster Mortgage Co.)*, 68 F.3d 914 (5th Cir. 1995).

the methodology for the valuation of the HCLOF interest and the existence or non-existence of a "Right of First Refusal." The court heard credible testimony on, among other things, the value of the HCLOF interests from Mr. Seery and Mr. Pugatch. Both witnesses were subject to cross examination. The court heard how the value of the HCLOF interests plummeted nearly $50 million, which was caused, at least in part, by the litigation strategies taken by Highland while it was still under the control of Mr. Dondero.[20] The Plaintiffs allege in the Complaint that Mr. Seery's $22.5 million value of the HCLOF interest was baseless. The Plaintiffs believed the interests had a net asset value ("NAV") of at least $34.5 million on November 30, 2020, and a value of $41.75 million on December 31, 2020, leading up to the HabourVest Settlement hearing. Further, the Plaintiffs allege in the Complaint that Mr. Seery was receiving insider information from Mr. Dondero in December 2020 regarding the HCLOF interests and used improper valuation methods. But, for whatever reason, the Plaintiffs decided not to ask questions of Mr. Seery at the hearing or further challenge Mr. Seery's source or method of valuation for the HCLOF interests at the hearing.[21] The allegations in the Complaint surrounding Mr. Seery's method for valuation of the HCLOF interests were discoverable at the time of the HarbourVest Settlement hearing and directly relevant to the Bankruptcy Court's analysis in approving the HarbourVest Settlement. The Bankruptcy Court found the testimony elicited from Mr. Seery by Highland and the objectors to be credible in ultimately finding a $22.5 million value of the HCLOF interests was reasonable.

---

[20] Transcript of Hearing Held 1/14/2021, DE # 1765, at 96:20-97:24.

[21] Mr. Dondero and CLO Holdco appeared at and examined the HarbourVest witness, Mr. Pugatch, at a deposition before the hearing on the HarbourVest Settlement. Declaration of John Morris, Exhs. 7 & 8 thereto [DE # 2237]. Moreover, it is rather astounding to this court for anyone to suggest that any human being (Mr. Seery or anyone else) knew more, or withheld, any information that wasn't well known to Mr. Dondero and all principals/agents of DAF and CLO Holdco. Mr. Dondero and any personnel associated with DAF and CLO Holdco should have been as (or more) familiar with HCLOF's assets and their potential value than any human beings on the planet—having managed these assets for years.

While a bankruptcy court does not delve into the merits of every possible claim that is waived or compromised through a settlement, here, (a) *consideration of the value that the estate was both receiving and paying*, as well as (b) the potential existence of a "Right of First Refusal" that might have prohibited the Transfer contemplated in the HarbourVest Settlement, were very much a focus of the hearing on the HarbourVest Settlement. These are the very same issues that are the gravamen of the Plaintiffs' Complaint. They were very much "actually litigated." The Bankruptcy Court would never have approved the HarbourVest Settlement if it thought the value being exchanged was not fair, or if it thought the HCLOF Interests could not be transferred and that someone might later sue the Debtor, claiming the Transfer was improper. All parties had the chance to argue and present evidence about this. The Bankruptcy Court made a ruling based on the evidence and argument.

Further, the Bankruptcy Court included in the HarbourVest Settlement Order language to specifically avoid any future assertions or litigation as to whether a "Right of First Refusal" prevented the transfer of HCLOF interests to Highland or a Highland designee/subsidiary:

> Pursuant to the express terms of the *Members Agreement Relating to the Company*, dated November 15, 2017, *HarbourVest is authorized to transfer its interests in HCLOF to a wholly-owned and controlled subsidiary of the Debtor* pursuant to the terms of the *Transfer Agreement for Ordinary Shares of Highland CLO Funding, Ltd. without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF*. (Emphasis added.)

The court included this express language to document its finding that no "Right of First Refusal" was enforceable under the HCLOF Members Agreement based on the court's analysis of the underlying agreements, as well as representations made by CLO Holdco that it was withdrawing its objection (that was wholly based on the alleged "Right of First Refusal"). A possible "Right of First Refusal" was fully briefed by the Debtor and CLO Holdco (with whom the DAF is in privity,

as its 100% parent), and the merits of such was fully considered by this court in approving the HarbourVest Settlement.

Despite this court's conclusion that res judicata does not apply here because procedural mechanisms did not allow an assertion of causes of action in the context of a Bankruptcy Rule 9019 settlement, ***no barrier prevented the Plaintiffs from fully litigating the issues, rights, and facts at the HarbourVest Settlement hearing that form the gravamen of the Complaint***. While the causes of action in the Complaint could not be brought in connection with the HarbourVest Settlement contested matter, the issues and facts underlying the causes of action in the Complaint were fully litigated and ruled on in connection with the HarbourVest Settlement. Those issues were raised in objections and subject to witness testimony at the HarbourVest Settlement hearing and were the primary considerations that had to be evaluated for the Bankruptcy Court to approve of the HarbourVest Settlement. The Complaint fails to allege any facts independent of: (a) an improper valuation by Mr. Seery or (b) a failure by Highland to honor a "Right of First Refusal" in favor of CLO Holdco to support relief under its causes of action. Count 1 in the Complaint alleges that Highland breached a fiduciary duty to the Plaintiffs through diverting a corporate opportunity by not ***first offering*** the HCLOF interests to the Plaintiffs. While labeled as a claim for a "breach of fiduciary" duty, as opposed to a "breach of contract," the arguments are the same. Both counts argue that the HCLOF interests should have been offered to the Plaintiffs who held a superior right to purchase the interests. Again, this argument was presented in CLO Holdco's objection to the HarbourVest Settlement, which was withdrawn by CLO Holdco during the hearing. The Plaintiffs do not get a second bite of the apple at litigating a purported superior right, by dressing it up as different cause of action, when the issue at stake has already been litigated. Thus, both the HarbourVest Settlement and Complaint involve the same issues.

In summary, the first and second elements of collateral estoppel are met. The issues of valuation and a "Right of First Refusal" were one and the same as those articulated in the Complaint and were "actually litigated" in connection with the HarbourVest Settlement.

Going through the third prong of collateral estoppel, it is also met. The facts regarding valuation of the HCLOF interests and whether Highland was required to offer the HarbourVest's HCLOF interests to CLO Holdco were very much *necessary* or *essential* to the Bankruptcy Court's ruling approving the HarbourVest Settlement. The Bankruptcy Court was required to consider the value of the HCLOF interests to determine whether the consideration the estate was receiving in the compromise was fair and equitable. Further, the court noted at the settlement hearing that the "Right of First Refusal" was one of the "major arguments" in connection with the HarbourVest Settlement and the court included language in the HarbourVest Settlement Order specifically finding no such right existed. The court would not have approved the HarbourVest Settlement if it thought that it could not be accomplished or would result in Highland later being sued. This would not have been in the best interests of the estate. Thus, the HCLOF interest valuation and the ability or propriety of Highland transferring the HCLOF interest were "a necessary part of the judgment."

Further, the Plaintiffs do not dispute CLO Holdco is in privity with DAF, as DAF is the parent and controlling entity of CLO Holdco. Instead, CLO Holdco argues that it somehow was not a party to the ongoing dispute between Highland and HarbourVest that led to the HarbourVest Settlement (although it was allowed to file objections and take discovery).

Bankruptcy is a collective proceeding that allows creditors to object and raise any argument they think the court should consider that bear on the wisdom of the compromise. Generally, for a party to be bound by orders issued by the bankruptcy court, the party must receive adequate notice of the proceedings for due process reasons. *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 885

(Bankr. N.D. Tex. 2020); *In re Grumman Olson Indus., Inc.,* 467 B.R. 694, 706 (S.D.N.Y. 2012); *see also Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 799, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) ("Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process."). The Bankruptcy Rules and bankruptcy jurisprudence provide for due process protection for settlements under Rule 9019(a) by requiring that a debtor in possession give creditors and parties in interest "adequate notice and opportunity to be heard before their interests may be adversely affected." *In re Reagor-Dykes Motors*, 613 B.R. at 885 (citing *W. Auto Supply Co. v. Savage Arms, Inc.* (*In re Savage Indus., Inc.*), 43 F.3d 714, 720 (1st Cir. 1994)). Rule 9019(a) further protects interested parties "[b]y requiring court approval following a hearing before any compromise or settlement may be enforced" to ensure a transparent settlement process and provide "other creditors an opportunity to voice their concerns." *In re Reagor-Dykes Motors*, LP, 613 B.R. at 886 (citing *In re Big Apple Volkswagen*, LLC, 571 B.R. 43, 57 (S.D.N.Y. 2017)). The Plaintiffs were properly noticed, as well as appeared and participated, in the Rule 9019 process.

Thus, the court concludes all three elements of collateral estoppel are met with regard to the fact issues of value of the HCLOF interests and any "Right of First Refusal" (and the ability/propriety of transferring the HCLOF interests). ***All of the causes of action in the Complaint (Counts 1-5) revolve around these two issues that were previously fully litigated***. Thus, all causes of action asserted in the Complaint are precluded by the doctrine of collateral estoppel.

      E.    <u>Judicial Estoppel</u>

The final preclusion doctrine, asserted by Highland, is judicial estoppel. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in [their] pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The doctrine is made "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* "[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2002). "Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). In order for a party to be estopped, two elements must be satisfied: (1) it must be shown "the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position. *In re Coastal Plains Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

The Plaintiffs argue, first, that withdrawing an objection and then raising the same argument later is not taking an "inconsistent position." Second, the Plaintiffs argue that, since the HarbourVest Settlement was approved and the objection was ***unsuccessful***, CLO Holdco could not "have convinced the court to accept that previous position."

Highland argues that CLO Holdco's withdrawal of its objection at the HarbourVest hearing, that was premised on a "Right of First Refusal" under the HCLOF Members Agreement, is, in fact, directly at odds with the Complaint, which asserts claims for violations of the same "Right of First Refusal." Further, Highland argues that the Bankruptcy Court, in ruling on the HarbourVest Settlement, relied on the withdrawal of that objection—noting that the withdrawal "eliminate[d] one of the major arguments" being heard in connection with the HarbourVest

Settlement. Highland cites Fifth Circuit authority noting that the "judicial acceptance' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *Hall*, 327 F.3d at 398.

Here, the court believes that the first prong of judicial estoppel is met. At the HarbourVest Settlement hearing, CLO Holdco withdrew its objection, stating that it had determined it had no "Right of First Refusal," based on its "interpretation of the member agreement." Now Plaintiffs claim in their Complaint that CLO Holdco's "Right of First Refusal" was violated by the HarbourVest Settlement. These positions are clearly inconsistent. If that weren't enough, when asked by Debtor's counsel at the HarbourVest Settlement hearing to enter a stipulation reflecting the HarbourVest Settlement was compliant with all applicable agreements between CLO Holdco and the Debtor, counsel for CLO Holdco stated: "I'm not going to enter into a stipulation on behalf of my client, but ***the Debtor is compliant with all aspects of the contract***. We withdrew our objection, and we believe that's sufficient."[22] This statement cannot conceivably coexist with the current assertion of a "Right of First Refusal." Moreover, to the extent Plaintiffs argue that CLO Holdco merely withdrew an objection pertaining to an alleged "Right of First Refusal" ***in the HCLOF Members Agreement*** (and not an objection arguing that Highland had some non-contractual obligation to offer the HarbourVest Interest to CLO Holdco first, based on "fiduciary duty" concepts), this is "no more than ineffectual hair splitting." *See Systems. Ahrens v. Perot Sys. Corp.*, 39 F.Supp.2d 773, 778 (N.D.Tex.1999) (in response to plaintiffs arguing a position taken in one suit could coexist with a position taken in a subsequent suit, despite each position being non-qualified, unconditional statements). It would seem to be the classic example of playing fast and loose with the court.

---

[22] Transcript of Hearing Held 1/14/2021, DE # 1765, at 17:24-18:16 (emphasis added).

The court also believes that the second prong of judicial estoppel is met. The Fifth Circuit has held that judicial estoppel may be applied whenever a party makes an argument "with the explicit intent to induce the district court's reliance." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1047 (5th Cir. 1998). Further, the success requirement is satisfied when a court "necessarily accepted, and relied on" a party's position in making a determination. *Ahrens v. Perot Systems Corporation*, 205 F.3d 831, 836 (5th Cir. 2000). Here, while the Plaintiffs did not succeed in stopping the approval of the HarbourVest Settlement, that is not the proper inquiry. Instead, what matters is that the Bankruptcy Court carefully considered CLO Holdco's "Right of First Refusal" argument set out in its lengthy, written objection to the HarbourVest Settlement and perceived it as one of the major arguments that was relevant to the HarbourVest Settlement. At the HarbourVest Settlement hearing, the Plaintiffs stated: "CLO Holdco has had an opportunity to review the reply briefing, and after doing so has gone back and scrubbed the HCLOF corporate documents. Based on our analysis of Guernsey law and some of the arguments of counsel in those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as Trustee for CLO Holdco, to withdraw the CLO Holdco objection based on the interpretation of the member agreement."[23] The Bankruptcy Court relied upon that withdrawal of CLO Holdco's objection in making the determination to approve of the HarbourVest Settlement and, specifically, that Highland would not be running afoul of any obligation in entering into the HarbourVest Settlement. There is no question that, by withdrawing the objection, CLO Holdco caused the court to rely upon its withdrawal in making such determination. Thus, the Plaintiffs "convinced the court to accept that previous position."

---

[23] *Id.* at 7:24-8:6.

The Bankruptcy Court concludes both elements of judicial estoppel are met. Counts 2 and 5 of the Complaint are based solely upon a "Right of First Refusal" under the HCLOF Members Agreement. Thus, judicial estoppel bars Counts 2 and 5 of the Complaint.

## IV.    Conclusion

Based upon the facts alleged in the Complaint, the judicially noticed docket entries from the HarbourVest Settlement, and the arguments presented to the court, the court rules that, together, collateral estoppel and judicial estoppel preclude all claims brought in the Complaint. Therefore, the Motion to Dismiss is *granted* and the Complaint is dismissed in its entirety with prejudice.

Because this court believes the doctrines of collateral estoppel and judicial estoppel bar the claims of the Plaintiffs as a matter of law, the court—for the sake of efficiency and judicial economy—will forego addressing the other arguments of Highland.  Specifically, Highland has argued that, even if all of the Plaintiffs' claims are not barred as a matter of law by preclusion or estoppel theories, Plaintiffs have failed to state plausible claims upon which relief can be granted with regard to the all of counts in the Complaint based on the RICO statute, Breach of Fiduciary Duty, Breach of Contract, Negligence, and Tortious Interference with Contract.  While this court is inclined to agree with these arguments, the court will refrain from addressing them until such time as any higher court may instruct this court to address them.

Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** as to all causes of action (Counts 1-5) asserted in the Complaint with prejudice.

### ###END OF MEMORANDUM OPINION AND ORDER###