PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Reorganized Debtor. | ) |
| | ) |
| In re: CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD., | ) Adv. Pro. No. 21-03067-sgj |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HIGHLAND CAPITAL MANAGEMENT, L.P.'S RENEWED MOTION TO DISMISS COMPLAINT

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 3

  A.   Highland Settles with HarbourVest ................................................................... 3

  B.   CLOH, Dondero and Dondero-Controlled Trusts Object to the Settlement Motion .......... 4

  C.   Plaintiffs File this Adversary Case .................................................................... 6

  D.   Highland's Motion to Dismiss and the Decision ............................................... 7

III.   ARGUMENT .............................................................................................................. 7

  A.   Legal Standard ................................................................................................... 8

  B.   Counts 2 And 5 are Barred by Judicial Estoppel .............................................. 8

  C.   Plaintiffs Fail to State a Claim under RICO in Count 4 .................................. 12

    1.   Plaintiffs Fail to Allege a Pattern of Racketeering Activity ....................... 13

    2.   Plaintiffs Fails to Allege a RICO Association-in-Fact Enterprise .............. 16

    3.   Plaintiffs Fail to Allege Causation .............................................................. 17

  D.   Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty in Count 1 ........ 18

  E.   Plaintiffs Fail to State a Claim for Breach of Members Agreement in Count 2 .............. 22

  F.   Plaintiffs Fail to State a Claim for Negligence in Count 3 .............................. 23

  G.   Plaintiffs Fail to State a Claim for Tortious Interference with Contract in Count 5 ......... 24

IV.   CONCLUSION ......................................................................................................... 25

DOCS_NY:46481.14 36027/003

## TABLE OF AUTHORITIES

**Page No.**

**CASES**

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
    625 F.3d 185 (5th Cir. 2010) ............................................................................ 13

*Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*,
    606 F.2d 602 (5th Cir. 1979) ............................................................................ 18

*Allstate Ins. Co. v. Donovan*,
    2012 WL 2577546 (S.D. Tex. July 3, 2012)...................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 8

*Bordelon v. Wells Fargo Fin. La., LLC*,
    2018 U.S. Dist. LEXIS 124877 (E.D. La. July 25, 2018) .................................. 16

*Brandon v. Interfirst Corp.*,
    858 F.2d 266 (5th Cir.1988) ............................................................................... 9

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*,
    61 F.3d 288 (5th Cir. 1995) ................................................................................ 8

*Cade v. Henderson*,
    2001 WL 1012251, 2001 U.S. Dist. LEXIS 13685 (E.D. La. Aug. 31, 2001), *aff'd sub nom*
    *Cade v. USPS*, 45 Fed. App'x 323 (5th Cir. 2002).......................................... 8

*Calcasieu Marine Nat'l Bank v. Grant*,
    943 F.2d 1453 (5th Cir.1991) ..................................................................... 15, 16

*D&T Partners v. Baymark Partners LP*,
    2022 U.S. Dist. LEXIS 83140 (N.D. Tex. May 9, 2022) .................................. 13

*Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.*,
    2022 U.S. Dist. LEXIS 172351 (N.D. Tex. Sept. 22, 2022)................................ 21

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    753 F.3d 550 (5th Cir. 2014) ............................................................................... 9

*Goldstein v. SEC*,
    451 F.3d 873 (D.C. Cir. 2006)........................................................................... 22

*Grigsby v. CMI Corp.*,
    765 F.2d 1369 (9th Cir.1985) ........................................................................... 19

*H. J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)..................................................................................... 15, 16

ii

*Hall v. GE Plastic Pac. PTE Ltd.*,
    327 F.3d 391 (5th Cir. 2003) ................................................................................ 9

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................ 19

*In re Oil Spill by the Oil Rig "Deepwater Horizon"*
    802 F. Supp. 2d 725 (E.D. La. 2011)............................................................ 17, 18

*In re Soporex, Inc.*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011)................................................................ 20

*Jethroe v. Omnova Sols., Inc.*,
    412 F.3d 598 (5th Cir. 2005) ............................................................................ 9, 10

*Little v. KPMG LLP*,
    2008 WL 576226 (W.D. Tex. Jan. 22, 2008) ...................................................... 23

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Young*,
    1994 WL 88129 (S.D.N.Y. Mar, 14, 1994) .......................................................... 15

*Montesano v. Seafirst Commercial Corp.*,
    818 F.2d 423 (5th Cir.1987) ........................................................................ 12, 16

*MWK Recruiting, Inc. v. Jowers*,
    2020 U.S. Dist. LEXIS 229755 (W.D. Tex. Dec. 8, 2020) ...................... 12, 14, 15

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    No. 21-10449, 2022 U.S. App. LEXIS 25107 (5th Cir. Sept. 7, 2022)................... 21

*NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*,
    2022 U.S. Dist. LEXIS 142029 (S.D.N.Y. Aug. 9, 2022)..................................... 21

*Partain v. City of S. Padre Island*,
    2018 U.S. Dist. LEXIS 220850 (S.D. Tex. Dec. 5, 2018)..................................... 16

*Pridgin v. Safety-Kleen Corp.*, Civil Action No. 3:21-CV-00720-K, 2021 U.S. Dist. LEXIS
    240210 (N.D. Tex. Dec. 16, 2021) ...................................................................... 19

*Reed v. City of Arlington*,
    650 F.3d 571 (5th Cir. 2011) ................................................................................ 9

*Robinson v. Standard Mortg. Corp.*,
    191 F. Supp. 3d 630 (E.D. La. 2016)............................................... 12, 14, 15, 17

*Rodgers v. City of Lancaster Police*,
    2017 WL 457084 (N.D. Tex. Jan. 6, 2017) .......................................................... 24

*Santa Fe Industries, Inc. v. Green*,
    430 U.S. 462 (1977)............................................................................................ 18

*SEC v. Cap. Gains Research Bureau, Inc.*,
    375 U.S. 180 (1963)............................................................................................ 21

*Sivertsen v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates
    WAMU Series No. 2007-HE2 Tr.*,
    390 F. Supp. 3d 769 (E.D. Tex. 2019)................................................................. 24

iii

*Snowden v. Wells Fargo Bank, N.A.*,
   2019 WL 587304 (N.D. Tex. Jan. 18, 2019),
   *adopted by* 2019 WL 586005 (N.D. Tex. Feb. 12, 2019) ...................................................... 23

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................................... 18, 19

*Specialties of Mexico Inc. v. Masterfoods USA*,
   2010 WL 2488031 (S.D. Tex. June 14, 2010) ......................................................... 24

*St. Germain v. Howard*,
   556 F.3d 261 (5th Cir. 2009) ................................................................................... 13

*St. Paul Mercury Ins. Co. v. Williamson*,
   224 F.3d 425 (5th Cir. 2000) ................................................................................... 14

*Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*,
   374 F.3d 330, 335 (5th Cir. 2004) ....................................................... 9, 10, 11, 12

*T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*,
   2008 WL 7627807 2008 U.S. Dist. LEXIS 112613 (S.D. Tex. May 22, 2008) ......................... 8

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
   975 F.2d 1134 (5th Cir. 1992) ....................................................................... 12, 14, 15

*Tigue Inv. Co. v. Chase Bank of Texas, N.A.*,
   2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ......................................................... 18

*Transamerica Mtg. Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) ................................................................................................. 21

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
   798 F.3d 265 (5th Cir. 2015) ................................................................................... 11

*United States v. Gray*,
   96 F.3d 769 (5th Cir. 1996) ..................................................................................... 14

*United States v. McCaskey*,
   9 F.3d 368 (5th Cir.1993) ......................................................................................... 9

*Woods v. Michael*,
   No. 20-80651-CV, 2021 U.S. Dist. LEXIS 26563 (S.D. Fla. Feb. 9, 2021) ........................... 13

## STATUTES

18 U.S.C. § 1961(4) ......................................................................................................... 18

18 U.S.C. § 1964(c) ................................................................................................... 14, 19

Highland Capital Management, L.P., a defendant in the above-captioned case (the "Debtor" or "Highland," as applicable), submits this memorandum of law in support of Highland's *Renewed Motion to Dismiss Complaint* (the "Motion").[2]

## I.    INTRODUCTION[3]

1.    This matter comes back to the Court on remand from the United States District Court for the Northern District of Texas (the "District Court"). On September 2, 2022, the District Court entered its memorandum opinion and order (the "Decision")[4] on Plaintiffs' appeal of this Court's order (the "MTD Order")[5] granting Highland's motion to dismiss this action (the "Original MTD").[6] In short, the District Court (i) reversed this Court's finding that collateral estoppel barred Plaintiffs' claims and (ii) remanded the judicial estoppel finding for a determination as to whether Plaintiffs' withdrawal of its objection to the Settlement on a claimed Right of First Refusal was "inadvertent*." * Decision at 17.

2.    There can be no credible dispute that Plaintiff CLOH's withdrawal of its objection to the Settlement was "advertent" and, therefore, that judicial estoppel bars Counts 2 and 5 of the Complaint. In addition, all Counts of Plaintiffs' Complaint[7] should be dismissed on the substantive grounds Highland advanced in the Original MTD and renews and restates herein.

3.    In January 2021, the Debtor moved for an order approving its Settlement with HarbourVest pursuant to which, *inter alia*, HarbourVest settled its claims against the Debtor and

---

[2] Concurrently herewith, Highland is filing the *Appendix in Support of Defendant Highland Capital Management, L.P.'s Renewed Motion to Dismiss Complaint* (the "Appendix"). Citations to the Appendix are notated as follows: Ex. #, Appx. #.

[3] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

[4] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, No. 3:21-cv-03129-B (N.D. Tex. Sept. 2, 2022) (slip op.), District Court Docket No. 28 (also available at 2022 U.S. Dist. LEXIS 159461), **Ex. 12, Appx. 437-458**.

[5] District Court Docket No. 100 (slip op.) (also available at 2022 Bankr. LEXIS 659).

[6] Docket No. 26. Unless otherwise indicated, "Docket No." refers to the docket maintained in this Adversary Proceeding.

[7] Docket No. 1-1.

transferred its interest in HCLOF, to a subsidiary of the Debtor (the "Prior Proceeding").  **Ex. 2,**

**Appx. 62-75**.  CLOH objected to the Settlement, presumably at the direction of its parent, the

"Charitable" DAF Fund, L.P. (the "DAF")[8] (**Ex. 6, Appx. 123-133**) on the grounds that: (i) it had

a "Right of First Refusal" to acquire HarbourVest's interest in HCLOF and (ii) HarbourVest could

not transfer its interest without complying with that purported right.  *Id.*  Two other objections

were lodged, one by Mr. Dondero and the other by his Trusts.[9]  **Exs. 4-5, Appx. 96-122.**  Each

objecting party had the right to, and took advantage of, discovery, and the Court held an evidentiary

hearing on the proposed Settlement and heard argument in support of parties' objections and

defenses.  During the hearing, CLOH voluntarily withdrew its objection premised on the "Right

of First Refusal," after which the Court overruled the remaining objections and approved the

Settlement.[10]

4.     Three months later, Plaintiffs—with a new trustee and new counsel—filed their

Complaint asserting that the Debtor violated the "Right of First Refusal," breached the Members

Agreement, and otherwise violated its alleged duties to Plaintiffs.  But, as discussed below,

Plaintiffs are judicially estopped from arguing the "Right of First Refusal" was violated.  CLOH

asserted this very argument during the Prior Proceeding, and knowingly, voluntarily, and

advertently withdraw it after due deliberation of the underlying facts, relevant documents, and

---

[8] The Court observed at the time that DAF, the parent of CLOH, "was seeded with contributions from Highland, is managed/advised by Highland, and [its] independent trustee is a long-time friend of Highland's chief executive officer[], Mr. Dondero." *In re Acis Cap. Mgmt., L.P.*, 2019 Bankr. LEXIS 292, at *19 (Bankr. N.D. Tex. Jan. 31, 2019) (emphasis in original). Mark Patrick—Mr. Dondero's employee and senior tax counsel of more than a decade—subsequently was appointed trustee of the DAF but this Court has found, and the District Court affirmed, that James Dondero ("Mr. Dondero") exerted significant control over both Mr. Patrick and the DAF.  *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *17-23 (N.D. Tex. Sept. 28, 2022); *see also Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 2780, at *5 n.5 (Bankr. N.D. Tex. Sept. 30, 2022).

[9] "Trusts" means The Dugaboy Investment Trust and The Get Good Trust, Mr. Dondero's family "trusts:"

[10] The Trusts appealed the Settlement, claiming (ironically and cynically) that the Debtor overpaid.  On September 26, 2022, the District Court denied the appeal for lack of standing and affirmed this Court's order approving the Settlement. *See* 3:21-cv-00261-L, Docket No. 38.

2

applicable law.  Judicial estoppel thus bars Counts 2 and 5 of the Complaint.  Plaintiffs also fail to

state any claims on which relief can be granted, and the Complaint must be dismissed under Rule

12(b)(6), applicable here via Bankruptcy Rule 7012.

## II.    FACTUAL BACKGROUND

### A.    Highland Settles with HarbourVest

5.    Highland CLO Funding, Ltd. ("HCLOF") is a Guernsey-based investment vehicle

managed by its Guernsey-based board of directors.  Highland HCF Advisors, Ltd. ("HCFA"), a

wholly-owned subsidiary of Highland, is its portfolio manager.[11]  Prior to the commencement of

the Bankruptcy Case, HarbourVest[12] invested approximately $80 million in HCLOF.  Following

its investment, CLO Holdco, Ltd. ("CLOH") held 49.02% of HCLOF's interests, HarbourVest

held 49.98%, and the remaining 1% was held by the Debtor and certain Debtor employees.  After

the Debtor filed bankruptcy, HarbourVest filed claims against the Debtor in excess of $300

million, alleging that it was fraudulently induced into its investment by factual misrepresentations

and omissions made by Mr. Dondero and certain of his employees prior to the bankruptcy.

(HarbourVest proofs of claim).  **Ex. 1, Appx. 1-61**

6.    On December 23, 2020, the Debtor filed its motion [Docket No. 1625] (the

"Settlement Motion") seeking Bankruptcy Court approval of its settlement with HarbourVest (the

"Settlement").  **Ex. 2, Appx. 62-75**.  Pursuant to the Settlement, HarbourVest was to transfer its

interest in HCLOF to the Debtor's nominee (the "Transfer") in exchange for allowed claims

against the estate and certain other consideration. **Ex. 2 ¶ 32, Appx. 71-72; Ex. 3, Appx. 76-95.**

---

[11] HCLOF is past its investment period, and HCFA's role is limited to advising on the liquidation of HCLOF's
portfolio and the recovery of cash for distributions to HCLOF's members.

[12] "HarbourVest" means, collectively, HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P.,
HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF
L.P., and HarbourVest Partners L.P.

The Transfer was a necessary component of the Settlement—HarbourVest was essentially seeking rescission of its investment in HCLOF—and the Settlement Motion disclosed all aspects of the Settlement and Transfer, including (i) what HarbourVest was transferring; (ii) the valuation (and method of valuation) of the interests being transferred; (iii) the method of transfer; and (iv) the claims against Highland that HarbourVest would receive.  **Ex. 2 ¶ 32 & n.5, Appx. 71-72; Ex. 3, ¶ 1(b), Appx. 78**.

B.      **CLOH, Dondero and Dondero-Controlled Trusts Object to the Settlement Motion**

7.      On January 6, 2021, Mr. Dondero filed his objection to the Settlement [Docket No. 1697] ("Dondero's Objection").  **Ex. 4, Appx. 96-111**.  On January 8, 2021, the Trusts filed their objection [Docket No. 1706] (the "Trusts' Objection").  **Ex. 5, Appx. 112-122**.

8.      CLOH also objected to the Settlement on January 8, 2021 [Docket No. 1707] ("CLOH's Objection").  **Ex. 6, Appx. 123-133.**   CLOH challenged HarbourVest's right to effectuate the Transfer contending that: (i) CLOH and the other members of HCLOF had a "Right of First Refusal" under the Members Agreement, *id*. ¶ **3, Appx. 125,** and (ii) "HarbourVest has no authority to transfer its interest in HCLOF without first complying with the Right of First Refusal." *Id*. ¶ **6, Appx. 126**.  CLOH offered a lengthy, but faulty, analysis of the Members Agreement, including CLOH's purported "Right of First Refusal" under Article 6 thereof.  *See id*. ¶¶ **9-22, Appx. 127-132**.

9.      After filing their objections, CLOH and Mr. Dondero exercised their right to conduct discovery under Bankruptcy Rule 9014(c) and deposed Michael Pugatch, a representative of HarbourVest [Docket No. 1705]. **Ex. 7, Appx. 134-188**.  CLOH never contended that: (i) the Debtor had a fiduciary duty to offer the HCLOF interests to CLOH (and it did not) or (ii) the Investment Advisers Act of 1940 (the "IAA") was implicated by the Settlement (and it is not).

4

10.      On January 13, 2021, the Debtor filed its reply [Docket No. 1731] (the "Omnibus Reply") (**Ex. 8, Appx. 189-211**), in which it established that the Members Agreement did not impede the Settlement and rebutted CLOH's argument that the Transfer could not be completed without complying with the "Right of First Refusal" under Article 6, *id*. **¶¶ 26-39, Appx. 203-209**.

11.      Subsequently, at the January 14, 2021, hearing, CLOH *voluntarily withdrew* its objection after considering the Debtor's analysis of the Members Agreement and applicable law. CLOH's counsel unequivocally stated on the record:

> CLO Holdco has had an opportunity to review the reply briefing, and after doing so has gone back and scrubbed the HCLOF corporate documents. ***Based on our analysis of Guernsey law and some of the arguments of counsel on those pleadings and our review of the appropriate documents***, I obtained authority from my client, Grant Scott, as trustee for CLO Holdco, ***to withdraw the CLO Holdco objection based on the interpretation of the Members Agreement***.

**Ex. 9 at 7:20-8:6, Appx. 219-220** (emphasis added).

12.      The Debtor called two witnesses in support of the Settlement Motion—its court-appointed Chief Executive Officer, James P. Seery, Jr., and Mr. Pugatch.  Counsel for Mr. Dondero and the Trusts cross-examined the Debtor's witnesses but did not inquire about the value of the HCLOF interests, the Debtor's purported fiduciary obligations, or the Transfer.  **Ex. 9 at 87:18-89:21, Appx. 299-301**.  At the conclusion of the hearing, in reliance on CLOH's withdrawal of its Objection, and the evidence admitted at the hearing, the Court entered an order overruling the remaining objections and approving the Settlement [Docket No. 1788] (the "Settlement Order"). **Ex. 10, Appx. 386-409.**  The Settlement Order *expressly* authorized the transfer of HarbourVest's interest in HCLOF to a Debtor subsidiary providing, in relevant part, that "[p]ursuant to the express terms of the [Members Agreement] … HarbourVest is authorized to transfer its interest in HCLOF to a wholly-owned and controlled subsidiary of the Debtor … ***without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF***." *Id*. **¶ 6,**

Appx. 390 (emphasis added).[13]  This Court included this language because of concerns that Mr. Dondero would "go to a different court somehow to challenge the transfer." **Ex. 9 at 156:17-22, Appx. 368**.[14]

C.    **Plaintiffs File this Adversary Case**

13.    With a new trustee and new counsel, on April 12, 2021, Plaintiffs effectively resurrected the CLOH Objection by filing their Complaint in the District Court, in which they, *inter alia*, challenged the Transfer premised on the "Right of First Refusal." **Ex. 11, Appx. 410-436**. The District Court subsequently referred the case to this Court.   [Docket No. 1-1].   The Complaint raises claims for: (i) breach of fiduciary duty (Count 1); (ii) breach of the Members Agreement (Count 2); (iii) RICO violations (Count 3); (iv) negligence (Count 4); (v) tortious interference (Count 5) (each, a "Count" and collectively, the "Counts").   In Count 1 (breach of fiduciary duty), Plaintiffs allege that the Debtor violated its "broad" duties to Plaintiffs under the IAA and the Debtor's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of the HarbourVest interest; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without offering it to Plaintiffs. *Id.* **¶¶ 67-74**.[15]   In Count 3 (RICO), Plaintiffs allege that the Debtor and two affiliated entities were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and ultimately effectuating the HarbourVest Settlement.  *Id.* **¶¶ 113-133**.

---

[13] *See also* **Ex. 9 at 156:10-25; 157:5**.

[14] *Id.* **at 156:10-25; 157:1-5, Appx. 368-369** (emphasis added).

[15] Ironically (and cynically), Plaintiffs' baseless insider trading allegations are premised on Mr. Dondero's unsolicited disclosure of alleged material non-public information regarding MGM Holdings.  Mr. Dondero's disclosure to Mr. Seery violated the injunction issued by this Court and presumably violated Mr. Dondero's duties and obligations as a director of MGM Holdings.

6

14.     Plaintiffs' state-law Counts rest on the same underlying allegations.  In support of Count 2 for breach of the Members Agreement, Plaintiffs again allege that the Debtor breached the "Right of First Refusal."  **Complaint ¶¶ 92-102**.  In Count 4 (negligence), Plaintiffs assert that the Debtor's actions violated the Members Agreement and the Debtor's internal policies by failing to accurately calculate the HCLOF interests and failing to give Plaintiffs the Right of First Refusal to purchase the interests. *Id.* ¶¶ **103-112**.  Count 5 (tortious interference) is again premised on the Debtor's alleged interference with Plaintiffs' "Right of First Refusal" under the Members Agreement. *Id.* ¶¶ **134-141**.

**D.      Highland's Motion to Dismiss and the Decision**

15.     On May 27, 2021, Highland filed the Original MTD, which this Court granted on the grounds of collateral and judicial estoppel.[16]  MTD Order at 22, 26.  Plaintiffs appealed the MTD Order to the District Court and that appeal was consolidated with Plaintiffs' appeal of this Court's order denying their motion for a stay.  *See* 3:21-cv-03129-B, Docket No. 20.[17]  On September 2, 2022, the District Court issued the Decision in which it reversed and remanded the MTD Order.[18]  The District Court reversed this Court's finding that Plaintiffs' claims were barred by collateral estoppel.  On judicial estoppel, the District Court affirmed this Court's findings that the first two elements of judicial estoppel were satisfied (Decision at 14-17) but remanded solely for a determination on whether Plaintiffs' inconsistent position was "inadvertent." *Id.* at 17-18.

## III.      ARGUMENT

16.     Counts 2 and 5 are barred by judicial estoppel, and Plaintiff fails to state claims for relief under Rule 12(b)(6) as to all Counts of the Complaint.

---

[16] Because this Court granted the Original MTD on these bases, it "refrain[ed] from addressing" Highland's motion to dismiss on Rule 12(b)(6) grounds.  MTD Order at 26.

[17] Defendant HCLOF was voluntarily dismissed from this case on December 7, 2021.  Docket No. 80.

[18] Plaintiffs did not appeal the Decision.

7

A.    **Legal Standard**

17.    To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at

556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

*Twombly*, 550 U.S. at 557).  "When well-pleaded facts fail to meet th[e] [Twombly] standard, 'the

complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" Decision at 5

(quoting *Iqbal*, 556 U.S. at 679).  Dismissal is proper under Rule 12(b)(6) when, taking the facts

alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that

would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289

(5th Cir. 1995).  The Court may take judicial notice of matters of public record when considering

a motion to dismiss for failure to state a claim.[19]

B.    **Counts 2 And 5 are Barred by Judicial Estoppel**

18.    Counts 2 and 5, for breach of the Members Agreement and tortious interference

with the Members Agreement, are barred by judicial estoppel.  Judicial estoppel is "a common law

doctrine by which a party who has assumed one position in [its] pleadings may be estopped from

---

[19] *See T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, 2008 U.S. Dist. LEXIS 112613, at *5 (S.D. Tex. May 22, 2008); *Cade v. Henderson*, 2001 U.S. Dist. LEXIS 13685, at *6-7 (E.D. La. Aug. 31, 2001), *aff'd sub nom Cade v. USPS*, 45 Fed. App'x 323 (5th Cir. 2002).

assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988);

Decision at 14. The purpose of the doctrine is "to protect the integrity of the judicial process" by

"prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-

interest." *Brandon*, 858 F.2d 266, 268 (internal quotations omitted); *United States v. McCaskey*, 9

F.3d 368, 378 (5th Cir. 1993); Decision at 14.

19.      As set out in the Decision: "A court examines three criteria when determining the

applicability of judicial estoppel: '(1) the party against whom judicial estoppel is sought has

asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted

the prior position; and (3) the party did not act inadvertently.'" Decision at 14 (quoting *Reed v.

City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (*en banc*)).[20] As discussed *supra*, the District

Court affirmed this Court's determination on the first two criteria but remanded for a determination

as to whether Plaintiffs' change of position was "inadvertent." *Id.* at 18. Thus, the only issue

before this Court on a judicial estoppel determination is the element of "inadvertence"—an issue

not raised by Plaintiffs in their prior briefing to this Court.

20.      A failure to disclose is considered "'inadvertent' only when, in general, the *debtor*

either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."

*Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374

F.3d 330 (5th Cir. 2004); *see also Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600-01 (5th Cir.

2005) ("To establish that [debtor's] failure to disclose was inadvertent, [debtor] may prove either

---

[20] In the Fifth Circuit, the element of "inadvertence" is generally applied in a bankruptcy context where a debtor, post-discharge, seeks to assert a claim that had or could have been addressed within the bankruptcy. Thus, it is unclear whether the element of "inadvertence" applies in this case, which relates to a *non-debtor plaintiff's* change of position in an adversary proceeding. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 n.3 (5th Cir. 2014) (rejecting appellant's argument that the third factor of "inadvertence" applies in a non-bankruptcy case, noting, "we apply [inadvertence] only when the judicial estoppel is based on the non-disclosure of a claim in a prior bankruptcy proceeding."); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (applying two-factor test to judicial estoppel determination in non-bankruptcy case, namely, (a) whether position was inconsistent, and (b) whether court relied on such position). Regardless, there can be no viable dispute that Plaintiffs' conduct was "advertent."

that she did not know of the inconsistent position or that she had no motive to conceal it from the

court … at the time she filed her bankruptcy petition.")

21.     Plaintiffs' inconsistent position with regard to their Claims premised on the "Right

of First Refusal" was not "inadvertent."  Plaintiffs knew of and analyzed the factual and legal

issues concerning Counts 2 and 5 when they unequivocally withdrew their Objection to the

Transfer in the Prior Proceeding; indeed, CLOH's thorough, multi-page objection to the Transfer

was premised on an alleged violation of the "Right of First Refusal." *See* **Ex. 6 ¶¶ 3, 6, Appx.**

**125-126**.

22.     After "review[ing] the reply briefing," "scrubb[ing] the HCLOF corporate

documents," analyzing Guernsey law, and reviewing the "appropriate documents," CLOH, on the

record, withdrew its Objection to the Transfer premised on the "Right of First Refusal" "based on

the interpretation of the Members Agreement." *See* **Ex. 9 at 7:20-8:6, Appx. 219-220.**  Thus,

Plaintiffs[21] knew of the underlying facts and legal issues underlying Counts 2 and 5 when CLOH

withdrew its Objection in the Prior Proceeding.  Based on the record, CLOH's inconsistent

positions regarding the "Right of First Refusal" under the Members Agreement are deliberate,

directed, and advertent.  They cannot possibly be deemed "inadvertent." *See Superior Crewboats,*

*Inc.*, 374 F.3d at 335-36 (debtors' non-disclosure of a viable personal injury claim in schedules

filed in their no asset bankruptcy case was not "inadvertent" where debtors "were aware of the

facts underlying the claim" for months, noting, "[a]lleged confusion as to a limitations period does

not evince a lack of knowledge as to the existence of the claim."); *Jethroe*, 412 F.3d at 601 (failure

to disclose claim was not "inadvertent" where party was aware of "the facts giving rise to them"

---

[21] It is indisputable that the DAF is in privity with CLOH and therefore cannot be heard to argue that only CLOH
should be bound by judicial estoppel for filing and then withdrawing its objection. *Charitable DAF Fund L.P.*, 2022
U.S. Dist. LEXIS 175778, at *12-13 ("DAF is in privity with CLO Holdco because it controls and owns 100% of
CLO Holdco … [DAF] had a fair chance to challenge the gatekeeping orders or [is] in privity with an entity that did.")

at the time she filed her bankruptcy petition); *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015) (failure to disclose claims was not "inadvertent" where party "was aware of the facts underlying his claims as early as 2010 and [] filed this lawsuit in 2011," noting that, inadvertence through lack of knowledge cannot be shown "as long as the debtor has enough information to suggest that he may have a potential claim; the debtor need not know all of the underlying facts or even the legal basis of the claim.").

23.     Accordingly, Plaintiffs' inconsistent legal positions with regard to the Transfer violating the "Right of First Refusal" in the Members Agreement were in no way, shape, or form the result of "inadvertence." [22]

24.     Any claim of inadvertence is also belied by Plaintiffs' self-evident financial interest in the way that they have chosen to proceed here.  In the (unlikely) event they succeed on their claims for breach of contract or tortious interference, Plaintiffs would have "reaped a windfall" in withdrawing their Right of First Refusal objection.  *See Superior Crewboats*, 337 F.3d at 336.  Had Plaintiffs acquired the Interests, they would have had to pay tens of millions of dollars to HarbourVest.[23]  Those Interests would have been speculative, illiquid, hard to value (by their own admission), and subject to portfolio performance risk.  By contrast, in the Complaint, Plaintiffs now seek monetary recovery or specific performance.  ***See* Complaint ¶ 143** (ad damnum).  But

---

[22] Plaintiffs' allegation in support of Count 2 that "Plaintiff was not informed of the fact that HarbourVest had offered its shares to Defendant HCM for $22.5 million …" (**Complaint ¶ 98**) is irrelevant, inaccurate, and contradicted by the record.  The allegation is irrelevant because the "Right of First Refusal" is not dependent on the value of the shares. The allegation is inaccurate because HarbourVest did not "offer" its interest in HCLOF to Highland.  Rather, pursuant to the Settlement, HarbourVest *transferred* its interest in HCLOF to Highland's nominee in exchange for allowed claims against the estate and other consideration given to resolve HarbourVest's claim for, among other things, rescission of its investment in HCLOF. **Ex. 2 ¶ 32, Appx. 71-72; Ex. 3, Appx. 76-95.**  Finally, the allegation is contradicted by the record because the Settlement Motion expressly stated that the net asset value of the interest was "estimated to be approximately $22 million as of December 1, 2020."  **Ex. 2 ¶ 32 & n.5, Appx. 71-72; Ex. 3, ¶ 1(b), Appx. 78.**

[23] HarbourVest received a total of $80 million in allowed claims in the Settlement.  Presumably, Plaintiffs would have had to have paid that much for the Interests.

HCLOF's investments have been (with limited exception) reduced to cash or equivalents. Accordingly, the only current risk with respect to the Interests is litigation risk—a risk generally created by Plaintiffs.[24]  Their financial interest in bringing the claim in this posture—they allowed the Debtor to assume the speculative risk yet now seek to seize the non-speculative reward—on its own vitiates any claim of inadvertence. *See Superior Crewboats*, 337 F.3d at 336 (debtors "had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim").  For this additional reason, Counts 2 and 5 are barred by judicial estoppel.

25.    Accordingly, Plaintiffs' inconsistent position is not the result of "inadvertence," and Counts 2 and 5 should, therefore, be dismissed on grounds of judicial estoppel.

**C.    Plaintiffs Fail to State a Claim under RICO in Count 4**

26.    To state a RICO claim, a plaintiff must allege: "1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 424 (5th Cir.1987).  To defeat a motion to dismiss, "a RICO plaintiff must allege facts sufficient to establish each of the essential elements of his or her RICO claim." *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 638 (E.D. La. 2016).  The RICO claim must be plead "with sufficient particularity" under Rule 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992); *see also MWK Recruiting, Inc. v. Jowers*, 2020 U.S. Dist. LEXIS 229755, at *23 (W.D. Tex. Dec. 8, 2020).  "Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby." *Tel-Phonic Servs*, 975 F.2d at 1134 (internal quotations omitted).  "[T]o establish a RICO claim based on a pattern of mail or wire

---

[24] *See, e.g.*, Bankr. Docket Nos. 3507, 3550.

fraud, the plaintiff must plead that the defendant act[ed] knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to [themselves]." *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 715 (N.D. Tex. 2018) (internal quotations omitted).

### 1.   <u>Plaintiffs Fail to Allege a Pattern of Racketeering Activity</u>

27.     "'A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *D&T Partners v. Baymark Partners LP*, 2022 U.S. Dist. LEXIS 83140, at \*15 (N.D. Tex. May 9, 2022) (quoting *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)).   Plaintiffs allege three predicate offenses: (i) wire fraud, (ii) mail fraud, and (iii) violation of the IAA's antifraud provisions. ***See* Complaint ¶¶ 130-132**.   Plaintiffs fail to sufficiently plead any predicate act.

28.     First, alleged violations of securities laws cannot be predicate acts for a RICO claim. *See* 18 U.S.C. § 1964(c); *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 191 (5th Cir. 2010).   Thus, to the extent that Plaintiffs' RICO claims, however pitched, allege "conduct that would have been actionable as fraud in connection with the purchase or sale of securities" (18 U.S.C. § 1964(c)), the claims are barred by statute.   "Courts have interpreted the scope of § 1964(c)'s so-called 'securities fraud exception' broadly to apply even where a plaintiff does not expressly plead securities fraud as the predicate act, where a plaintiff could not have even brought a securities fraud claim against the particular defendant, and where a plaintiff pleads securities fraud violations but fails to state a claim for relief." *Woods v. Michael*, No. 20-80651-CV, 2021 U.S. Dist. LEXIS 26563, at \*8 (S.D. Fla. Feb. 9, 2021).   Plaintiffs' RICO claim is wholly predicated on violations of the securities laws: "Defendants' conduct violated the wire fraud and mail fraud laws, and the [IAA's] antifraud provisions."   **Complaint ¶ 132**.   Because the RICO claim is improperly founded on alleged securities fraud, it must be dismissed.

29.    Second, the Complaint fails to state a claim for mail or wire fraud.  To state a claim

for mail fraud, a plaintiff must allege: "(1) a scheme to defraud, (2) which involves the use of the

mails, (3) for the purpose of executing the scheme." *United States v. Gray*, 96 F.3d 769, 773 (5th

Cir. 1996).  The elements of wire fraud are the same but apply to "wire communications in

furtherance of the scheme." *Id.*  "[B]oth RICO mail and wire fraud require evidence of intent to

defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul*

*Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000); *Robinson*, 191 F. Supp. 3d at

639–40 ("[A] scheme to defraud must involve fraudulent misrepresentations or omissions").

Accordingly, the specificity requirements and heightened pleading standards of Rule 9(b) apply.

*See MWK Recruiting*, 2020 U.S. Dist. LEXIS 229755, at *23-24 (claim failed to allege time or

location of fraudulent occurrences).  The Complaint fails to satisfy Rule 9(b).

30.    The thrust of Plaintiffs' claim is that the Debtor operated in such a way as to "violate

insider trading rules and regulations when it traded with HarbourVest" by concealing "non-public

information that it had not supplied" to Plaintiffs.  **Complaint ¶ 118**.  Plaintiffs' RICO claim is

nothing more than a series of conclusory allegations predicated on allegations of mail, wire, and

securities fraud. ***See id. ¶¶ 113-133***.  The Complaint only vaguely alleges, for instance, that Mr.

Seery (i) "utilized the interstate wires and/or mails to obtain or arrive at valuations of the HCLOF

interests," ***id. ¶ 120***; (ii) "transmitted or caused to be transmitted through the interstate wires

information to HCLOF investors from HCM," ***id. ¶ 121*** and (iii) "operated [the Debtor] in such a

way that he concealed the true value of the HCLOF interests by utilizing the interstate wires and

mails to transmit communications to the court in the form of written representations…" ***id. ¶ 122***.

Plaintiffs do not plead with particularity details about the contents of those alleged

communications, when the Debtor had them, to whom, or where such communications were

directed. *See Merrill Lynch, Pierce, Fenner & Smith v. Young*, 91 Civ. 2923 (CSH), 1994 U.S. Dist. LEXIS 2929, at *22-27 (S.D.N.Y. Mar. 15, 1994); *Tel-Phonic Servs.*, 975 F.2d at 1138. Plaintiffs only generally allege that Mr. Seery testified about the valuation of the HCLOF interests (**Complaint ¶ 125**) but provide no details about mail or wire fraud.

31.     The Complaint therefore "does not identify specific acts of communication by mail or by interstate wires" undertaken by the Debtor "in furtherance of a fraudulent scheme" as required by Rule 9(b).  *See Merrill Lynch*, 1994 U.S. Dist. LEXIS 2929, at *31-32; *Tel-Phonic Servs*, 975 F.2d at 1134 (Rule 9(b) requires pleading particulars of time, place, content and maker of the misrepresentation).  Plaintiffs' allegations are insufficient to state a plausible claim for relief under RICO.  *See Robinson*, 191 F. Supp. 3d at 640 (dismissing RICO claims where plaintiff provided no factual details); *see also MWK Recruiting,* 2020 U.S. Dist. LEXIS 229755 at *23-24.

32.     Finally, Plaintiffs also fail to plead a "pattern of racketeering activity."  "To prove a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *MWK Recruiting,* 2020 U.S. Dist. LEXIS 229755, at *25 (quoting *Tel-Phonic Servs.,* 975 F.2d at 1139-40 (W.D. Tex. Dec. 8, 2020)). To constitute a "pattern," the activities must show "continuity." *Tel-Phonic Servs.,* 975 F.2d at 1140.  "Continuity" refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 1139-40. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* (quoting *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)); *see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir.1991) ("Short-term criminal conduct is not the concern of RICO.")

33.    Here, the Complaint does not allege "continuity."  There is no specific "threat of repetition" or distinct threat of long-term criminal conduct.  Nor do the allegations suggest the Debtor is "operating as part of a long-term association that exists for criminal purposes." *See Partain v. City of S. Padre Island*, 2018 U.S. Dist. LEXIS 220850, at \*43 (S.D. Tex. Dec. 5, 2018) (quoting *H. J. Inc.,* 492 U.S. at 242-43).  Plaintiffs' RICO bald allegations concern only non-specific conduct allegedly occurring in a limited period, September 2020 to January 2021, concerning one transaction—the HarbourVest Settlement. ***See, e.g.,* Complaint ¶¶ 119-128**.  Such allegations concern short-term, discrete transactions, and do not show a "pattern of activity," or threat of "continuing racketeering activity."  *See Calcasieu*, 943 F.2d at 1464.

### 2.    Plaintiffs Fails to Allege a RICO Association-in-Fact Enterprise

34.    A RICO "enterprise" can be either a legal entity or an "association in fact" enterprise.  18 U.S.C. 1961(4).  "A RICO association in fact enterprise must be shown to have continuity."  *Calcasieu*, 943 F.2d at 1461.  "The linchpin of enterprise status is the continuity or ongoing nature of the association." *Bordelon v. Wells Fargo Fin. La., LLC*, 2018 U.S. Dist. LEXIS 124877, at \*8 (E.D. La. July 25, 2018) (internal quotation marks omitted).

> The enterprise must have continuity of its structure and personnel, which links the defendants, and a common or shared purpose. . . An association in fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.

*Calcasieu*, 943 F.2d at 1461 (internal quotations omitted).  That is, an "association in fact enterprise must have an existence separate and apart from the pattern of racketeering."  *Id.*

35.    Plaintiffs argue that the Defendants, together, constitute an "association-in fact" enterprise because "the purpose of the association-in-fact was the perpetuation of Seery's position at HCM and using the HarbourVest settlement as a vehicle to enrich persons other than the HCLOF investors, including [Plaintiffs]." **Complaint ¶ 115.** However, these allegations fail to show that

16

Defendants functioned as a continuing unit, separate and apart from the alleged RICO violation, and fail to allege that Defendants are an "enterprise" within the purview of RICO. *See Montesano*, 818 F.2d at 427 (association-in-fact enterprise not pled under RICO where plaintiffs alleged only that defendants "conspired in this one instance").

36.     Plaintiffs also fail to identify the roles of the two affiliates of the Debtor, HCFA and HCLOF, and how they, with the Debtor, participated in the alleged criminal enterprise.[25] *See Allstate Ins. Co. v. Donovan*, 2012 U.S. Dist. LEXIS 92401, at *31-32 (S.D. Tex. July 3, 2012) (complaint lacked factual allegations scheme formation, who was in charge, how each defendant participated, and whether there were communications or understanding among the defendants advancing the fraud).

### 3.      Plaintiffs Fail to Allege Causation

37.     Plaintiffs also fail to plausibly allege causation. RICO provides civil remedies to "[a]ny person injured in [their] business or property *by reason of* a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). "An injured party must show that the violation was the but-for and proximate cause of the injury." *Robinson*, 191 F. Supp. 3d at 645 (internal quotations omitted). Causation requires "[a] direct relationship between the fraud and the injury." *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 802 F. Supp. 2d 725, 730 (E.D. La. 2011).

38.     Here, Plaintiffs fail to allege that the Debtor's actions induced them to act or that any Debtor's actions were the proximate cause of any cognizable injury. Plaintiffs generally allege that "had Plaintiff been offered those [HCLOF] interests, it would have happily purchased them and therefore would have infused over $20 million in cash into the estate for the purpose of executing the HarbourVest Settlement." **Complaint ¶ 50**. Such conclusory and speculative

---

[25] Highland and Mr. Seery are subject to this Court's oversight. Mr. Seery was specifically appointed by this Court to oversee the Debtor. The Debtor and Mr. Seery were thus risibly unlikely participants in a RICO enterprise.

"would have" allegations are insufficient to show proximate and but-for causation.[26]   *See Robinson*, 191 F. Supp. 3d at 645 (allegations failed to state causation where plaintiff's "after-the-fact" and "bare assertion that she would have acted differently" had she known of certain facts were insufficient "absent additional factual allegations to support or explain this assertion,"); *In re Oil Spill by Oil Rig Deepwater Horizon*, 802 F. Supp. 2d at 729 (no causation where economic harms suffered by plaintiffs were "too remote" and causation theory "depends on a series of speculative assumptions to link the alleged fraud" with the harm).

39.     Plaintiffs' RICO claim fails every element and should be dismissed.

**D.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty in Count 1**

40.     Plaintiffs fail to state a claim for breach of fiduciary duty. Plaintiffs' fiduciary duty claim is premised on the Debtor's alleged: (i) insider trading; (ii) concealment of the value of the HarbourVest interests; and (iii) diversion of an investment opportunity from Plaintiffs to the Debtor, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and the IAA. ***See Complaint ¶¶ 67-80***. Where, as here, a plaintiff's breach of fiduciary duty claim is premised on theories of securities fraud, Rule 9(b)'s heightened pleadings standards apply. *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, 2004 U.S. Dist. LEXIS 27582, at *4 (N.D. Tex. Nov. 15, 2004). "Section 10(b) of the Securities and Exchange Act of 1934 makes unlawful the use of 'any manipulative or deceptive device or contrivance' in contravention of SEC rules." *Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 608 (5th Cir. 1979). "A cause of action lies under Rule 10b-5 'only if the conduct alleged can be fairly viewed as manipulative or deceptive' within the meaning of the statute." *Id.* (quoting *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473 (1977)). To state a securities-fraud claim under section 10(b) and Rule 10b–5,

---

[26] At no time prior to filing the Complaint did CLOH indicate it wanted to acquire the Interests or state that it was interested in, willing, or able to purchase the HarbourVest interests.

plaintiffs must plead: "(1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 368 (5th Cir. 2004). "A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Id.* (quoting *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir.1985)). "[S]cienter is a crucial element of the securities fraud claims." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

41.     Plaintiffs' allegations underlying their breach of fiduciary duty claim are premised on largely the same conclusory allegations as those underlying their fraud-based RICO claim. ***See* Complaint ¶¶ 67-91**. Because Plaintiffs fail to properly plead securities fraud, any fiduciary claim premised on such allegations necessarily fails as well. *See Town North Bank, N.A. v. Shay Fin. Servs.*, 2014 U.S. Dist. LEXIS 137551, at *74 (N.D. Tex. Sep. 30, 2014). Plaintiffs fail to plead with particularity that any alleged omissions by the Debtor assumed any real significance for the Plaintiffs. ***See, e.g.*, Complaint ¶¶ 82-89** (speculating about Plaintiffs' "lost opportunity cost," and vaguely asserting that "Defendants' malfeasance" has "exposed HCLOF to a massive liability from HarbourVest"). These allegations also fail to give rise to a "strong interference of scienter" sufficient to state a claim under Rule 10(b). *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 635 (S.D. Tex. 2003); *Southland*, 365 F.3d at 368 (plaintiff must plead "more than allegations of motive and opportunity to withstand dismissal" for claim of securities fraud). Plaintiffs' allegations regarding proximate cause are equally deficient. ***See* Complaint ¶¶ 88-89** (vaguely alleging that because of Defendants' actions, "Plaintiffs have lost over $25 million").

42.     Plaintiffs also fail to allege any breach of fiduciary claims premised on state law. Texas law[27] provides "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 221 (5th Cir. 2017) (internal quotations omitted).  "The plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that that a fiduciary duty has been breached." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019).

43.     The Complaint fails to sufficiently allege facts regarding the nature of the relationship between Plaintiffs and the Debtor.  ***See* Complaint ¶¶ 62-63** (generally alleging simply that (i) the Debtor "owed a fiduciary duty to [Plaintiffs]" pursuant to which the Debtor "agreed to provide sound investment advice, and (ii) this fiduciary relationship is "broad and applies to the entire advisors-client relationship").  The Complaint also fails to adequately allege that any state law or Guernsey fiduciary duty existed, let alone was breached for the same reasons. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (no allegation of "the nature of the fiduciary duty owed" to plaintiff).  The allegations of the Debtor's breach of its "internal policies and procedures" or the diversion of "corporate opportunities" are vague and conclusory. **Complaint ¶¶ 72-89**.  *See In re Soporex, Inc.*, 463 B.R. 344, 417 (Bankr. N.D. Tex. 2011).

44.     Plaintiffs allege the Debtor breached its "unwaivable" fiduciary obligation under the IAA by, among other things, "diverting a corporate opportunity."  **Complaint ¶¶ 82-84**.  This

---

[27] Plaintiffs allege breach of fiduciary duty under state law; however, HCLOF is a Guernsey entity and the Members Agreement is governed by Guernsey law. *See* Ex. 13 at 14.  Under the internal affairs doctrine, Guernsey law controls on issues of fiduciary duties to the members. *See Pridgin v. Safety-Kleen Corp.*, 2021 U.S. Dist. LEXIS 240210, at *6 (N.D. Tex. Dec. 16, 2021).

Count is purportedly premised on the IAA because (i) the Debtor was the DAF's investment adviser under an advisory agreement and (ii) HCFA is HCLOF's investment adviser under a separate advisory agreement.[28]  However, under clear Supreme Court precedent, the IAA does not provide a private right of action to sue for damages arising from breach of fiduciary duty.[29] *Transamerica Mtg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) (holding there is no private right of action under Section 206 of the IAA); *see also Charitable DAF Fund, L.P.*, 2022 Bankr. LEXIS 2780, at *13, n. 23 ("The court notes that the … Supreme Court has held [in *Transamerica*] that there is not a private right of action for damages under the [IAA]."); *NexPoint Diversified Real Estate Tr.*, 2022 U.S. Dist. LEXIS 142029, at *8 ("Plaintiff has not adequately pleaded a claim … under the IAA … there is no private right of action to bring a claim pursuant to [Section 206 of the IAA].")[30]

45.     Even if there were a right of action under the IAA, Plaintiffs' allegations would still be deficient for failure to plead "duty" or "breach."  The Debtor owed no duty to offer the Interests to Plaintiffs.  The Transfer was effectuated in compliance with the Members Agreement and "Right of First Refusal."  The DAF's advisory agreement included full and clear disclosure that the Debtor could compete with the DAF for investments with no obligation to offer those investments to the DAF.[31]  *SEC v. Cap. Gains Research Bureau, Inc.*, 375 U.S. 180, 181-82 (1963) (finding disclosure of an adviser's "practice of purchasing shares … for his own account" satisfied the

---

[28] Plaintiffs cite to Section 47(b) of the IAA for the proposition that the Transfer is unenforceable.  **Complaint ¶ 89**. There is no Section 47(b) in the IAA.

[29] A party can seek to void an investment management agreement under Section 215 of the IAA if the agreement's formation or performance would violate the IAA.  *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 142029, at *9-10 (S.D.N.Y. Aug. 9, 2022).  Plaintiffs have not pled such claim nor could they.

[30] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. App. LEXIS 25107, at *26 (5th Cir. Sept. 7, 2022).

[31] *See, e.g.*, **Ex. 14 at Appx. 504** ("The Fund will be subject to a number of actual and potential conflicts of interest … including … that … Highland … may actively engage in transactions in the same securities sought by the Fund and, therefore, may compete with the Fund for investment opportunities…").

adviser's fiduciary obligations under the IAA); *Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *10-11 (N.D. Tex. Sept. 22, 2022) (addressing argument that fiduciary obligations under the IAA cannot be waived and finding no breach of duty when conflict disclosed). Defendants also owed no duty to CLOH as an investor in HCLOF; there is no fiduciary relationship between an adviser to a fund and the fund's investors. *Goldstein v. SEC*, 451 F.3d 873, 879 (D.C. Cir. 2006).

46. There was also no corporate opportunity to divert. HarbourVest asserted a claim against the Debtor seeking, among other things, effectively the rescission of its investment in HCLOF, an investment allegedly induced by fraud. The Settlement effectuated that remedy. Because HarbourVest had no claims against Plaintiffs, there was no taking of a corporate opportunity. The Debtor was resolving a claim against the Debtor, not purchasing a security for cash, and could not transfer its liability to HarbourVest to Plaintiffs.

47. Accordingly, Count 1, for breach of fiduciary duty, should be dismissed.

**E.    Plaintiffs Fail to State a Claim for Breach of Members Agreement in Count 2**

48. In addition to Count 2 being barred by judicial estoppel, Plaintiffs fail to plead sufficient facts to state a breach of the Members Agreement's Right of First Refusal. **Complaint ¶¶ 92-102**. Further, Plaintiffs' claim of breach is contradicted by the Members Agreement itself. Section 6.1 of the Members Agreement **(Ex. 13, § 6.1, Appx. 468-469)** grants members the unconditional right to transfer its interests to an "Affiliate of an initial Member." Section 6.2 **(*Id.*, § 6.2, Appx. 469)** sets forth the Right of First Refusal and has two exceptions: (i) transfers to "affiliates of an initial Member" from Members *other than* CLOH and the "Highland Principals" and (ii) transfers from CLOH or a Highland Principal to (a) the Debtor, (b) the Debtor's "Affiliates," or (c) another Highland Principal. Under the Members Agreement, "Affiliate" is defined as, "with respect to a person, (i) any other person who, directly or indirectly, is in control

22

of, or controlled by, or is under common control with, such person …" *Id.* § 1.1, Appx. 463.  A "Member" is a "holder of shares in the Company." *Id.*, § 1.1, Appx. 464.  The "initial Member[s]" are the initial Members of HCLOF listed on the first page of the Members Agreement and include the Debtor, HarbourVest, and CLOH. *Id.*, § 6.2, Appx. 469.  Since HarbourVest transferred its interests directly to the Debtor's wholly-owned subsidiary—an Affiliate of an initial Member—the transfer was permitted, without restriction, under section 6.1 and satisfied the exception to the Right of First Refusal in section 6.2. *See* **Ex. 13, Appx. 459-487; Ex. 8 ¶¶ 28-35, Appx. 203-208.**

49.     Plaintiffs also fail to plead actual damages resulting from the alleged breach of the Members Agreement, other than contending, that "had plaintiff been allowed to do so, it would have obtained the interests" in HCLOF. *E.g.,* **Complaint ¶ 100**.  Such conclusory allegations ignore the fact that CLOH elected not to make an offer to purchase the HCLOF interests[32] and, in any event, are insufficient to state a claim.  *See Snowden v. Wells Fargo Bank, N.A.*, 2019 WL 587304, at *6 (N.D. Tex. Jan. 18, 2019), *adopted by* 2019 U.S. Dist. LEXIS 22982 (N.D. Tex. Feb. 12, 2019) (actual damages inadequately pled); Little v. KPMG LLP, 2008 U.S. Dist. LEXIS 26281, at *15 (W.D. Tex. Jan. 22, 2008) (lost profits claim "speculative and conjectural.")

**F.     Plaintiffs Fail to State a Claim for Negligence in Count 3**

50.     The Complaint fails to state a claim for negligence.  First, this Count is barred by the Plan.[33]  Highland has been exculpated from all claims for "conduct occurring on or after [October 16, 2019] in connection with or arising out of (i) the … administration of the Chapter 11 Case … and (v) any negotiations, transactions, and documentation in connection with the foregoing" unless such conduct constituted "bad faith, gross negligence, criminal misconduct, or

---

[32] *See* note 26 *supra*.

[33] "Plan" means the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808].

willful misconduct."[34]  The negotiation and consummation of the Settlement were part of the "administration of the Chapter 11 Case," and Highland, therefore, has been exculpated from Plaintiffs' claim for negligence.  *NexPoint Advisors, L.P.*, 2022 U.S. App. LEXIS 25107, at *33. Second, even absent exculpation, Plaintiffs fail to state a claim.  "The elements of a negligence claim under Texas law are: '(1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.'"  *Sivertsen v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 789 (E.D. Tex. 2019).  The negligence allegations (**Complaint ¶¶ 106-107**) are speculative, conclusory, and fail to allege proximate cause; the claim must be dismissed.  *See Rodgers v. City of Lancaster Police*, 2017 U.S. Dist. LEXIS 14588, *37 (N.D. Tex. Jan. 6, 2017). To the extent Plaintiffs' negligence claim is premised on a breach of the Members Agreement, the advisory agreement with DAF, or the IAA, they are duplicative of Plaintiffs' other Counts and fail for the reasons set forth above.

**G.**   **Plaintiffs Fail to State a Claim for Tortious Interference with Contract in Count 5**

51.    Plaintiffs' tortious interference claim is premised on the Debtor's alleged violation of the Members Agreement and concealment of the value of HCLOF.  **Complaint ¶¶ 134-141**. The elements of tortious interference with contract are: "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss."  *Specialties of Mexico Inc. v. Masterfoods USA*, 2010 U.S. Dist. LEXIS 58782, at *15 (S.D. Tex. June 14, 2010).  Plaintiffs fail to allege how the Debtor intentionally interfered with the Members Agreement, and Plaintiffs have conceded—and are judicially estopped from arguing otherwise—that the transfer of the HCLOF interests did not violate the

---

[34] Plan, Art. I.B.62; Art. IX.C, *aff'd* 2022 U.S. App. LEXIS 25107, at *33.

Members Agreement.  Plaintiffs also fail to allege proximate causation or any actual damages sustained as a result of the alleged interference.  This claim should be dismissed.

## IV.    **CONCLUSION**

WHEREFORE, Highland respectfully requests that the Court grant the Motion, enter an order in the form annexed to the Motion as **Exhibit A**, and grant such further relief as the Court deems just and proper.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

DOCS_NY:46481.14 36027/003

Dated:  October 14, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*