# EXHIBIT 6

**Appx. 00123**

Docket #1707  Date Filed: 01/08/2021

Joseph M. Coleman (State Bar No. 04566100)
John J. Kane (State Bar No. 24066794)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-SGJ |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |

**CLO HOLDCO, LTD.'S OBJECTION TO HARBOURVEST SETTLEMENT**

**TO THE HONORABLE STACEY G. JERNIGAN, U.S. BANKRUPTCY JUDGE:**

CLO Holdco, Ltd. ("**CLO Holdco**") respectfully files this *Objection to Harbourvest Settlement* (the "**Harbourvest Settlement Objection**") which seeks entry of an order from this Court denying the Debtor's *Motion for Entry of an Order Approving Settlement with Harbourvest (Claims Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* (the "**Harbourvest Settlement Motion**") for the reasons stated below. In support of the Harbourvest Settlement Objection, CLO Holdco respectfully states as follows:

**I.
BACKGROUND**

**A.    TRANSFERRING SHARES IN HCLOF**

1. CLO Holdco owns 75,061,630.55 shares, or about 49.02% of Highland CLO Funding, Ltd. ("**HCLOF**"). Other shareholders include Harbourvest 2017 Global AIF L.P., Harbourvest Global Fund L.P., Harbourvest Dover Street IX Investment L.P., and Harbourvest Skew Base AIF L.P., and HV International VIII Secondary L.P. (collectively, "**Harbourvest**"). Harbourvest owns approximately 49.98% of HCLOF. The remaining 1% is owned by the Debtor and a five other investors.

2. HCLOF is governed by a *Members Agreement Relating to the Company* dated November 15, 2017 by and between each of the members of HCLOF, including Harbourvest, the Debtor, and CLO Holdco (the "**Member Agreement**"). A copy of that agreement is attached hereto as **Exhibit A**.

3. Section 6 of the Member Agreement addresses the "Transfer or Disposals of Shares." MEMBER AGREEMENT, § 6. The Member Agreement places strict restrictions on the sale or transfer of shares to entities other than the initial Member's own affiliates. *See id.* at §§ 6.1, 6.2. Before a Member can transfer its interests to a party other than its own affiliates it must: (i) obtain the prior written consent of the Portfolio Manager; and (ii) "offer to the other Members a right to purchase the Shares, on a pro rata basis with respect to their current Shares, at the same price (which must be cash) as such Shares are proposed to be purchased by the prospective third party purchaser pursuant to an irrevocable offer letter" (the "**Right of First Refusal**"). *Id.* As further stated in section 6.2 of the Member Agreement, "The other Members will have 30 days following receipt of the letter to determine whether to purchase their entire pro rata portion of the Shares proposed to be Transferred." *Id.* at § 6.2.

B. **THE HARBOURVEST SETTLEMENT**

4. On December 23, 2020, the Debtor filed the Harbourvest Settlement Motion. On the following day, the Debtor filed a copy of the Settlement Agreement referenced in the

Harbourvest Settlement Motion (the **"Settlement Agreement"**) [Dkt. No. 3].  In the Settlement Agreement, Harbourvest represents and warrants that it is authorized to transfer its interest in HCLOF to the Transferee, HCMLP Investments, LLC (the **"Transferee"**).  SETTLEMENT AGREEMENT, Ex. A. § 3.  Further, the Transferee and Debtor agree to be bound by the terms and conditions of the Member Agreement.  *Id.* at § 1.c.

5.  In exchange for conveniently classified allowed claims under the Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the **"Plan"**) [Dkt. No. 1472], Harbourvest agrees to vote in favor of the Plan and to transfer all of its interests in HCLOF to the Transferee.  SETTLEMENT AGREEMENT, § 1.

6.  As detailed below, CLO Holdco objects to the Harbourvest Settlement Motion because Harbourvest has no authority to transfer its interests in HCLOF without first complying with the Right of First Refusal.  The only way to effectuate such a transfer without first providing other members the Right of First Refusal is an intentionally inaccurate interpretation of the Member Agreement's contractual provisions that would render specific passages redundant and meaningless.  More simply put, the only way Harbourvest and the Debtor could effectuate the Settlement Agreement is by violating fundamental tenets of contract interpretation.

## II.
## ARGUMENTS AND AUTHORITIES

A.  CONTRACT INTERPRETATION – AVOIDING REDUNDANCIES AND SURPLUS LANGUAGE

7.  The Fifth Circuit recognizes fundamental tenets of contract interpretation, and notes that "contracts should be read as a whole, viewing particular language in the context in which it appears.  *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 51 F. App'x 930 (5th Cir. 2002) (citing Restatement (Second) of Contracts § 202 (1981)).  The Fifth Circuit has applied substantially the same tenets of contract interpretation across the laws of various jurisdictions, and consistently reasons that "[a]ll parts of the agreement are to be reconciled, if possible, in order to avoid an

inconsistency. A specific provision will not be set aside in favor of a catch-all clause." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947 (5th Cir. 1981) (internal citations omitted); and *see Hawthorne Land Co. v. Equilon Pipeline Co., LLC*, 309 F.3d 888, 892–93 (5th Cir. 2002); *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016); *Wooley*, 51 F.Appx. at 930.

8. Reconciliation of terms that would otherwise render other parts of a contract redundant is fundamental to proper contract interpretation. *Hawthorne Land*, 309 F.3d at 892-93. As the Firth Circuit explained in *Hawthorne Land*, "each provision of a contract must be read in light of the other provisions so that each is given the meaning suggested by the contract as a whole. A contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage." *Id.* (internal citations and quotations omitted). In other words, provisions of a contract should be read to create harmony, not internal inconsistencies, redundancies, and unnecessary surplus language. *See, e.g., Luv N' Care*, 844 F.3d at 447 (overturning district court on appeal by interpreting contract in manner that eliminated perceived redundancy).

B. **ANALYZING THE MEMBER AGREEMENT**

9. Section 6.1 of the Member Agreement will almost certainly be cited by the Debtor and Harbourvest as authority for their entry into the Settlement Agreement, regardless of whether other Members or the Portfolio Manager consent. It states, in pertinent part, that:

> No Member shall sell, pledge, charge, mortgage, assign, assign by way of security, transfer, convey, exchange or otherwise dispose of its Shares or its commitment to settle purchases of Shares under the Subscription and Transfer Agreement (each a "Transfer"), other than to an Affiliate of an initial Member party hereto, without the prior written consent of the Portfolio Manager…

MEMBER AGREEMENT, § 6.1. Harbourvest will likely stress that under the terms of the Member Agreement, it can transfer its interests so long as the transfer is to "an Affiliate of an initial Member." Indeed, the Debtor will no doubt point out to this Court that Harbourvest is

conveniently transferring its interests in HCLOF to an Affiliate of the Debtor, and that the Debtor is an initial Member listed in the Member Agreement.

10. Section 6.1, however, must be read in the context of the Member Agreement, and in conjunction with the transfer restrictions found in section 6.2. Read together it is clear that the consent exception allowing a transfer in 6.1 was intended to allow a Member to transfer its shares to *its* own Affiliate, without required consents and effectuating a Right of First Refusal. Doing so would allow inter-company transfers within a corporate structure without the need for complicated procedures. Applying Fifth Circuit precedent, this interpretation fits squarely within the agreement and gives weight to the terms of section 6.2 of the Member Agreement, as explained below.

**(i)    Surplusage – Specific Allowance of Transfers by CLO Holdco to Debtor Affiliates**

11. Recall that both CLO Holdco and the Debtor are initial Members to the Member Agreement. MEMBER AGREEMENT, p. 3. Section 6.2 of the Member Agreement states, in pertinent part, that "Prior to making any Transfer of Shares (other than Transfers to Affiliates of an initial Member or, *in the case of CLO Holdco or a Highland Principal, to Highland, its Affiliates or another Highland Principal*) a Member must first…" comply with the Right of First Refusal. *Id.* at § 6.2 (emphasis added). The italicized language above is important for two reasons: (i) it specifically enumerates that CLO Holdco can transfer its interests to Debtor Affiliates without having to pursue the Right of First Refusal; and (ii) it allows only limited transfers between Members, as opposed to between a Member and an Affiliate of an initial Member.

12. If, as the Debtor and Harbourvest will likely argue, Members are allowed to transfer their interests to any Affiliates of any other initial Members, there is absolutely no need for the Member Agreement to specifically authorize CLO Holdco to transfer its interests to the Debtor's Affiliates. Per Fifth Circuit fundamentals of contract interpretation, that purported redundancy

should not be discarded as mere surplusage, and the Member Agreement should be interpreted in a manner that gives weight to that provision. *Hawthorne Land*, 309 F.3d at 892-93.

13. If the Member Agreement is read to literally allow all "Transfers to Affiliates of an initial Member" there would be no reason to expressly set forth allowed transfers between specific Members and other Member's Affiliates. If the Member Agreement sought to list all allowed transfers between Members and their Affiliates, it should have similarly noted that any Member could transfer its interest to any Harbourvest Member entity, as each Harbourvest Member entity is an Affiliate of the other Harbourvest Member entities. Alternatively, if the specific enumeration of CLO Holdco and the Highland Principals' transfer rights was surplusage, it would presumably have listed other parties' rights, or had inclusive language such as "including but not limited to" or "for example." The Member Agreement lacks such language and, as a result, should be interpreted in a manner that both gives weight to the specific provision while reconciling other provisions of the contract.

**(ii)   Absurd Results – Disparate Transfer Rights Between Members**

14. Note that the Member Agreement does not generally allow a transfer of interests from Member to Member unless specifically enumerated. Section 6.2 specifically allows only CLO Holdco and the Highland Principals to make transfers to other Members, but those other Members include only the Debtor or another Highland Principal. MEMBER AGREEMENT, § 6.2. It does not allow the Debtor to transfer interests to any Member, and does not expressly allow any Member, other than limited transfers by CLO Holdco and the Highland Principals, to transfer interests to any other Member. *Id.* For instance, if the Debtor wished to transfer its interests to CLO Holdco, it would first have to offer <u>all</u> of the other Members their Right of First Refusal. *Id.*

15. Similarly, if Harbourvest wished to transfer its interest to CLO Holdco, it could not do so without first providing the Right of First Refusal to all other Members. *Id.* As noted above,

however, allowing a Member to transfer its interest to an Affiliate of any initial Member would allow *all* of the Members to transfer their interests to any Harbourvest Member entity, as the Harbourvest Members are Affiliates of each other.  Given the specific enumeration of CLO Holdco and the Highland Principals' rights to inter-Member transfers, it would be inconsistent to expand that specific provision to allow all transfers by all Members to any Harbourvest entity without first providing a Right of First Refusal.

16. Such a reading would lead to absurd results. It would grant similarly situated Members profoundly disparate rights under the agreement, and could easily lead to manipulation. For instance, because the Harbourvest Members are technically Affiliates of an initial Member (each other), they could obtain control of all of the interests in HCLOF without any Member receiving a Right of First Refusal for any transfer. No other Member could do that. For instance, if CLO Holdco wished to acquire other Members' interests, the transferring member (including Harbourvest) would have to offer a Right of First Refusal in *every instance*. To resolve that potential disparate treatment—though CLO Holdco and Harbourvest own nearly identical ownership interests in HCLOF—CLO Holdco would have to form an Affiliate and acquire interests through the Affiliate. That simply *cannot* be the intended result of the Member Agreement.

17. Instead, the Member Agreement must be read to require Harbourvest to provide a Right of First Refusal to the other Members of HCLOF before transferring its interests to either the Debtor or the Transferee.

C. **THE RIGHT OF FIRST REFUSAL IN BANKRUPTCY**

18. Most cases addressing third party rights of first refusal in bankruptcy involve the assignment of leases and landlords' rights of first refusal. In those cases, courts analyze whether such a provision in the *debtor's* contract is a defacto restriction on assignment that may be excised

from the agreement. This case is very different. Here, it is a creditor that owes a right of first refusal to another non-debtor entity.

19. Even so, at least one court has issued telling commentary on a bankruptcy court's ability to excise provisions of a bargained-for contract, stating "A bankruptcy court's authority to excise a bargained for element of a contract is questionable and modification of a nondebtor contracting party's rights is not to be taken lightly." *In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 51-52 (Bankr. M.D.N.C. 2003) (citing *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1991)). CLO Holdco was unable to find any case that would allow a bankruptcy court to invalidate or otherwise excise a third party's right of first refusal in what largely amounts to a non-debtor contract.

20. As the Member Agreement requires Harbourvest to provide a Right of First Refusal to the non-Debtor Members under section 6.2 of the Agreement, and such Members have 30 days to review and determine whether to purchase their pro-rata shares offered by Harbourvest, Harbourvest lacks contractual authority to enter into the Settlement Agreement.

D. **HARBOURVEST'S LACK OF AUTHORITY PRECLUDES ENFORCEMENT OF SETTLEMENT**

21. Harbourvest has not completed its conditions precedent to the transfer of its interest to Transferee under the Member Agreement. As detailed above, and in section 6.2 of the Agreement, Harbourvest must effectuate the Right of First Refusal before it can transfer its interests in HCLOF. MEMBER AGREEMENT, § 6.2. Harbourvest is, in essence, bound by the condition precedent of effectuating the Right of First Refusal before it is authorized under the Member Agreement to enter into the Settlement Agreement.

22. Courts should not enforce a settlement agreement where a party has a condition precedent to entry into the agreement and fails to satisfy that condition. *In re De La Fuente*, 409 B.R. 842, 846 (Bankr. S.D. Tex. 2009). As noted in part in *De La Fuente*, the court would not recognize

or enforce a settlement where the parties were subject to conditions precedent before the settlement could be effective, and the conditions precedent were not satisfied. This Court should similarly deny Harbourvest's proposed settlement, as it would deny the Members' Right of First Refusal, which is the benefit of their bargain under the Member Agreement.

### III.
### PRAYER FOR RELIEF

WHEREFORE, CLO Holdco requests that this Court grant the Objection and enter an order denying the Harbourvest Settlement Motion.

DATED: January 8, 2020

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: ___/s/ John J. Kane___
Joseph M. Coleman
State Bar No. 04566100
John J. Kane
State Bar No. 24066794

901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com

**ATTORNEYS FOR CLO HOLDCO, LTD.**

## CERTIFICATE OF SERVICE

      I hereby certify that on January 8, 2020, a true and correct copy of the foregoing CLO Holdco Objection was served via the Court's electronic case filing (ECF) system upon all parties receiving such service in this bankruptcy case; and via e-mail upon the United States Trustee at Lisa.L.Lambert@usdoj.gov and upon the following parties:

| | |
|---|---|
| Paige Holden Montgomery<br>Penny P. Reid<br>Juliana L. Hoffman<br>2021 McKinney Avenue, Suite 2000<br>Dallas, Texas 74201<br>Email: pmontgomery@sidley.com<br>       preid@sidley.com<br>       jhoffman@sidley.com | Jeffrey N. Pomerantz<br>Ira D. Kharasch<br>John A. Morris<br>Gregory V. Demo<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA 90067<br>Email: jpomerantz@pszjlaw.com<br>       ikharasch@pszjlaw.com<br>       jmorris@pszjlaw.com<br>       gdemo@pszjlaw.com |
| Bojan Guzina<br>Matthew A. Clemente<br>Dennis M. Twomey<br>Alyssa Russell<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Email: bguzina@sidley.com<br>       mclemente@sidley.com<br>       dtwomey@sidley.com<br>       alyssa.russell@sidley.com | Melissa S. Hayward<br>Texas Bar No. 24044908<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Email: MHayward@HaywardFirm.com<br>       ZAnnable@HaywardFirm.com |

<u>Counsel for Harbourvest:</u>
M. Natasha Labovitz
Erica S. Weisgerber
Daniel E. Stroik
Vickie L. Driver
Christina W. Stephenson
Email: nlabovitz@debevoise.com
       eweisgerber@debevoise.com
       destroik@debevoise.com
       vickie.driver@crowedunlevy.com
       crissie.stephenson@crowedunlevy.com

                                                                       */s/ John J. Kane*
                                                                       John J. Kane