SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for Charitable DAF Fund, L.P.
and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| CHARITABLE DAF FUND, L.P. AND CLO HOLDCO, LTD., DIRECTLY AND DERIVATIVELY | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING LTD., NOMINALLY | § | |
| | § | |
| Defendants. | § | |

## RENEWED MOTION TO WITHDRAW THE REFERENCE

The Charitable DAF Fund, L.P. and CLO Holdco, Ltd., Plaintiffs in the above-referenced adversary proceeding, file this Motion under 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, Rule 5011-1 of the Local Bankruptcy Rules, and this Court's standing order, Order of Reference of Bankruptcy Cases & Proceedings Nunc Pro Tunc, In re Miscellaneous Order No. 3:04-MI-00033 (N.D. Tex. Oct. 4, 1982), as to the above-referenced adversary

proceeding. Plaintiffs respectfully re-urge withdrawal of the reference in light of Highland Capital Management, L.P.'s Renewed Motion to Dismiss and arguments advanced therein.

## I.

## BACKGROUND

1. Plaintiffs filed this action in district court. In response to Highland's motion seeking reference to the bankruptcy court [Doc. 1-1], Plaintiffs filed an opposition and cross-motion seeking withdrawal of the reference [Doc. 36]. The district court granted Highland's motion and referred the action to the bankruptcy court without addressing the merits of Plaintiff's cross-motion or the underlying statutory basis for withdrawal [Doc. 64].

2. In the bankruptcy court, Plaintiffs filed a proposed motion to withdraw the reference as an exhibit to their Motion for Stay [Doc. 69-1], explaining in the stay motion that they understood the Plan Injunction to prohibit them from advocating for withdrawal of the reference at that time, but that they would do so if allowed.

3. Highland moved to dismiss the action under Rule 12 of the Federal Rules of Civil Procedure [Doc. 26]. The bankruptcy court granted that motion [Doc. 80]. The district court reversed [Doc. 99].

4. Highland now re-urges dismissal under Rule 12 for the same and other reasons [Doc. 123], relying on arguments that implicate federal statutes and require, Plaintiffs submit, withdrawal of the reference now.

## II.

## WITHDRAWAL OF THE REFERENCE IS MANDATORY

5. This adversary proceeding primarily involves fiduciary duties imposed upon Registered Investment Advisers by the Investment Advisers Act of 1940 ("Advisers Act") and

---

Renewed Motion to Withdraw the Reference                                                                 Page 2

corresponding state law claims for breach of those duties. As a result, presiding over this action will require extensive consideration of federal laws regulating interstate commerce, which renders withdrawal of the reference to bankruptcy court mandatory under 28 U.S.C. § 157(d).

6. Under § 157(d), withdrawal of the reference is mandatory when a proceeding "requires consideration" of non-bankruptcy federal laws regulating interstate commerce:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d); *cf. TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 & n.40 (5th Cir. 2014) (noting bankruptcy court's "more limited jurisdiction" as a result of its "limited power" under 28 U.S.C. § 157); *LightSquared Inc. v. Deere & Co.*, 2014 U.S. Dist. LEXIS 14752 (S.D.N.Y. 2014) (quoting *Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. Jan. 31, 2011), for the proposition that, "[i]n determining whether withdrawal is mandatory, the Court 'need not evaluate the merits of the parties' claims; rather, it is sufficient for the Court to determine that the proceeding will involve consideration of federal non-bankruptcy law'"); *In re Cont'l Airlines Corp.*, 50 B.R. 342, 360 (S.D. Tex. 1985), *aff'd*, 790 F.2d 35 (5th Cir. 1986) ("While that second clause [of § 157(d)] might not apply when some 'other law' only tangentially affects the proceeding, it surely does apply when federal labor legislation will likely be material to the proceeding's resolution.") (emphasis added).

7. Plainly here, the claims in the Complaint at least involve federal laws "regulating organizations or activities affecting interstate commerce." The Advisers Act is such a law, and at least the first count of the Complaint implicates it. *See, e.g.*, Complaint [Doc. 1-1] ¶¶ 57 & n.5, 66,

69, 74 & n.6, 89 (explicitly invoking various provisions of the Advisers Act and accompanying regulations). Defendant's entire argument against withdrawal of the reference thus turns on whether these laws "must be considered."

8. It is readily apparent that these statutes must be considered in this adversary proceeding. The briefing already puts at issue significant, hotly contested issues regarding the interplay of bankruptcy law and these federal statutes, including

- Whether Defendant owed federal fiduciary duties under the Advisers Act that are unwaivable;

- To whom such duties are owed and whether they were violated;

- Whether they are actionable under federal law;

- Whether such Advisers Act fiduciary duties can be terminated by a blanket injunction in a bankruptcy plan;

- Whether a contractual jury waiver is enforceable as to claims for breach of unwaivable Advisers Act fiduciary duties;

- Whether such waivers can be enforced as to non-parties to the waiver.

Presiding over this action most certainly will require consideration of these issues.

9. Before joining the Fifth Circuit, Judge Clement addressed a similar matter during her time in the Eastern District of Louisiana. There, in *In re Harrah's Entm't*, 1996 U.S. Dist. LEXIS 18097, at *7-8 (E.D. La. 1996), she denied a motion to refer a federal securities action to bankruptcy court, relying on a rationale fully applicable here. Despite finding that the bankruptcy court had related-to jurisdiction, Judge Clement wrote,

> Although "related to" bankruptcy jurisdiction exists over the non-debtor plaintiffs' non-bankruptcy federal securities claims against non-debtor defendants, placing that bankruptcy jurisdiction in the bankruptcy court is inappropriate because plaintiffs would be entitled to a mandatory withdrawal of the reference.

*Id.* at *11.

10. Judge Clement rejected the argument that the case would "only involve the simple application of established federal securities laws." *Id*. at *7. Instead, she relied on alleged "violations of several federal securities laws" and the plaintiff's attempt "to hold defendants directly liable and secondarily liable based on a 'controlling person' theory for certain acts and omissions." *Id*.

11. Without any need to analyze how "established" the applicable law might be, Judge Clement concluded, "This federal securities litigation involves more than simple application of federal securities laws and will be complicated enough to warrant mandatory withdrawal under § 157(d)." *Id.* (citing *Rannd Res. v. Von Harten (In re Rannd Res.)*, 175 B.R. 393, 396 (D. Nev. 1994), for the proposition that withdrawal of the reference is mandatory where resolution requires more than simple application of federal securities laws, even though that court's determination was based solely on a review of the complaint's alleged violations of § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934, and Rule 10b-5).

12. This authority is on all fours here. In the Complaint, Plaintiffs allege violations of federal securities law (the Advisers Act), as well as the RICO statute. Highland has taken the position that the RICO Statute cannot apply because of exclusions under RICO for claims that raise securities laws violations. Deciding the renewed motion to dismiss will require far more than simple application of these laws. Nothing more is necessary to satisfy § 157(d). *Cf. S. Pac. Transp. Co. v. Voluntary Purchasing Grps.*, 252 B.R. 373, 382-84 (E.D. Tex. 2000) (holding that even the court's "limited" role in approving a CERCLA settlement "necessarily involves the substantial and material consideration of CERCLA" and "will require the court to examine the unique facts of the case in light of those CERCLA provisions which create the causes of action at issue"). *Compare id.* at 382 ("It is well settled that CERCLA is a statute "'rooted in the commerce clause'

and is precisely 'the type of law . . . Congress had in mind when it enacted the statutory withdrawal provision [in § 157(d)].'") *with* the Advisers Act, 15 U.S.C. § 80b-1 ("Upon the basis of facts disclosed by the record and report of the Securities and Exchange Commission made pursuant to section 30 of the Public Utility Holding Company Act of 1935, and facts otherwise disclosed and ascertained, it is hereby found that investment advisers are of national concern, in that, among other things—(1) their advice, counsel, publications, writings, analyses, and reports are furnished and distributed, and their contracts, subscription agreements, and other arrangements with clients are negotiated and performed, by the use of the mails and means and instrumentalities of interstate commerce; (2) their advice, counsel, publications, writings, analyses, and reports customarily relate to the purchase and sale of securities traded on national securities exchanges and in interstate over-the-counter markets, securities issued by companies engaged in business in interstate commerce, and securities issued by national banks and member banks of the Federal Reserve System; and (3) the foregoing transactions occur in such volume as substantially to affect interstate commerce, national securities exchanges, and other securities markets, the national banking system and the national economy.").

13.     Although it is unnecessary to demonstrate that Plaintiffs' Advisers Act allegations will require application of underdeveloped law, that certainly is the case. As the Third Circuit pointed out in 2013, there is considerable "confusion" in the case law stemming from the fact that federal law (the Advisers Act) provides "the duty and the standard to which investment advisers are to be held," but "the cause of action is presented as springing from state law." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502 (3d Cir. 2013). The *Belmont* court further suggests the "confusion [that this situation] engenders may explain why there has been little development in either state or federal law on the applicable standards." *Id*. (emphasis added). "Half a century

---

later," the *Belmont* court tells us, "courts still look primarily to *Capital Gains Research [, Inc.*, 375 U.S. 180, 192 (1963),]* for a description of an investment adviser's fiduciary duties." *Id*. at 503; *see also* Plaintiffs' Response to Renewed Motion to Dismiss (addressing the Debtor's erroneous argument that the Advisers Act creates no private right of action). This observation is bolstered by the necessity of relying extensively on SEC regulations and rulings in the Complaint. *See* Complaint ¶ 57 & n.5 (invoking Investment Advisers Act Release Nos. 3060 (July 28, 2010), and 2106 (Jan. 31, 2003), 66 (17 C.F.R. 275.206(4)-7), 69 (27 C.F.R. part 275 and Rule 10b5-1), 74 & n.6 (Advisers Act Release No. 4197 (Sept. 17, 2015)).

### III.

### THIS ADVERSARY PROCEEDING IS NOT A CORE PROCEEDING

14. In previous briefing, the Debtor has suggested that this adversary proceeding should remain in bankruptcy court because it is a core proceeding under Title 11. Plaintiffs respectfully submit this is incorrect because the causes of action asserted in the Complaint do not "arise under," or "arise in" Title 11 and therefore cannot be "core" proceedings.

15. To be clear, Plaintiffs are not seeking and have disclaimed any relief that would literally unwind or reverse any settlement approved by the bankruptcy court. Neither do Plaintiffs attempt an end run around the provisions of any approval. They merely seek vindication of their rights via damages, and they respectfully submit that a proper jurisdictional analysis demonstrates their causes of action are not core proceedings within the bankruptcy court's jurisdiction, for the reasons addressed below.

16. *First*, "the 'core proceeding' analysis is properly applied not to the case as a whole, but as to each cause of action within a case." *Legal Xtranet, Inc. v. AT&T Mgmt. Servs., L.P. (In re Legal Xtranet, Inc.)*, 453 B.R. 699, 708–09 (Bankr. W.D. Tex. 2011); *Davis v. Life Inv'rs Ins.*

*Co. of Am.*, 282 B.R. 186, 193 n. 4 (S.D. Miss.2002); *see also In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) ("A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'").

17. **_Second_**, the Fifth Circuit has explained that "§ 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings; therefore, a proceeding is core under section 157 if it invokes a substantive right provided by title 11[, it 'arises under' the Bankruptcy Code,] or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case[, it 'arises in' a bankruptcy case]." *United States. Brass Corp. v. Travelers Ins. Grp., Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002); *TXMS Real Estate Invs., Inc. v. Senior Care Ctrs., LLC (In re Senior Care Centers, LLC)*, 622 B.R. 680, 692–93 (Bankr. N.D. Tex. 2020); Stern v. Marshall, 564 U.S. 462, 476 (2011).

18. **_Third_**, none of the Plaintiffs' five causes of action—breach of fiduciary duty under the Advisers Act, breach of contract related to the HCLOF Company Agreement, negligence, RICO, and tortious interference—arise under title 11. That is, none of the substantive rights of recovery are created by federal bankruptcy law. And plainly so. Because "[a]rising under' jurisdiction [only] involve[s] cause[s] of action created or determined by a statutory provision of title 11," this is indisputably the case. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987) (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right, created by federal bankruptcy law, that could not exist outside of bankruptcy).

19. **_Fourth_**, for similar reasons, none of Plaintiffs' causes of action "arise in" a bankruptcy case. "Claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Legal*

*Xtranet, Inc.*, 453 B.R. at 708–09 (emphasis added) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006). The Debtor has previously argued that, because the factual circumstances giving rise to the causes of action included the HarbourVest Settlement, which was approved by the bankruptcy court, this somehow transforms Plaintiffs' causes of action into core claims. But it is the nature of the causes of action that determines whether they are core, not their "particular factual circumstance." *Id.*

20. To illustrate the point, in *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 660 (1st Cir. 2017), the bankruptcy court had issued a sale order which approved an asset purchase agreement whereby the purchaser became obligated to make certain payments to employees. The purchaser failed to make these payments, so the employees sued the purchaser in bankruptcy court, and the bankruptcy court rendered a judgment in favor of the employees. On appeal, the district court concluded that the bankruptcy court lacked subject matter jurisdiction over the claims—claims plainly related to and existing only because of the approved sale order that gave rise to them. The First Circuit affirmed, explaining as follows:

> [T]he fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding. Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case. In other words, it is not enough that Appellants' claims arose in the context of a bankruptcy case or even that those claims exist only because Debtors (Appellants' former employer) declared bankruptcy; rather, "arising in" jurisdiction exists only if Appellants' claims are the type of claims that can only exist in a bankruptcy case.

*Id.* at 664–65 (emphasis added).

21. Like the claims in *Gupta*, the Plaintiffs' causes of action here arose in the context of a transaction approved in a bankruptcy case. But obviously, the causes of action are not "the type of claims that can only exist in a bankruptcy case." And that ends the analysis. Because

Plaintiffs' causes of action do arise under the Bankruptcy Code, and because they are not claims that could only arise in the context of bankruptcy, this action is not a core proceeding.

## IV.

## CONCLUSION

In sum, because 28 U.S.C. § 157(d) mandates withdrawal of the reference here, and because this is not a "core" proceeding, the Court should withdraw the reference as to this adversary proceeding and grant Plaintiffs all additional relief to which they may be entitled.

Dated:  November 18, 2022

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Jonathan Bridges*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
   jeb@sbaitilaw.com

**Counsel for Plaintiffs**