SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| CHARITABLE DAF FUND, L.P. AND CLO | § | |
| HOLDCO, LTD., DIRECTLY AND DERIVATIVELY | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| HIGHLAND HCF ADVISOR, LTD., AND | § | |
| HIGHLAND CLO FUNDING LTD., NOMINALLY | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' RESPONSE TO RENEWED MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................ 2

III.    MOTIONS TO STRIKE .................................................................................... 5

    A.    Defendant's Successive Motion to Dismiss Should Be Stricken ......................... 5

    B.    Defendant's Exhibits Should Be Stricken ............................................................ 6

IV.    PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF ............................... 6

    A.    Judicial Estoppel Should Not Be Applied to Counts 2 or 5 ................................ 7

        1.    Highland's Reliance on Collateral Evidence is Improper ......................... 7

        2.    Highland Has Not Shown a Lack of Inadvertence ................................... 8

            a.    Holdco Did Not Intentionally Conceal its Breach of
Contract or Tortious Interference Claims from the
Court and Had No Motive to Do So ............................................. 8

            b.    New Facts Giving Rise to the Claims Were Not
Known to Holdco .......................................................................... 9

    B.    Plaintiffs Have Properly Pled Claims for Breach of Fiduciary
Duty ...................................................................................................................... 9

        1.    Highland and HCFA Owe Fiduciary Duties Under the
Advisers Act ............................................................................................. 9

        2.    Holdco Has Standing to Bring a Breach of Fiduciary
Duty Claim Directly and Derivatively ................................................... 11

        3.    The DAF Has Direct Standing to Bring Fiduciary Duty
Claims ..................................................................................................... 16

        4.    Plaintiffs Have Alleged Several Breaches of Fiduciary
Duty ......................................................................................................... 17

5.      Rule 9(b) Does Not Apply to These Fiduciary Duty
        Claims ................................................................................................18

C.      Plaintiffs Pled Claims for Breach of Contract and Tortious
        Interference ........................................................................................20

D.      Plaintiffs Have Pled a Claim for Negligence ......................................22

E.      Motion to Dismiss RICO Claim Under Rule 41 ..................................23

F.      Highland's Request for Fees Fails .......................................................23

VI.     MOTION IN THE ALTERNATIVE FOR LEAVE TO AMEND ................................23

VII.    CONCLUSION............................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Abrahamson v. Fleschner,*
    568 F.2d 862 (2d Cir. 1977)..............................................................................................14

*Alphonse v. Arch Bay Holdings, L.L.C.,*
    548 F. App'x 979 (5th Cir. 2013) ......................................................................................12

*Anderson* v. *Abbott,*
    321 U.S. 349 (1944)...........................................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................................................... 6-7

*Basic Capital Mgmt. v. Dynex Commer., Inc.,*
    402 S.W.3d 257 (Tex. App.—Dallas 2013, pet. denied) ....................................................21

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................................7

*Belmont v. MB Inv. Partners, Inc.,*
    708 F.3d 470 (3d Cir. 2013)...............................................................................................13

*Broyles v. Cantor Fitzgerald & Co.,*
    No. 10-854, 2014 U.S. Dist. LEXIS 169364 (M.D. La. Dec. 8, 2014) ................................13

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.,*
    No. 7841-VCP, 2015 Del. Ch. LEXIS 237 (Del. Ch. Sep. 10, 2015)...................................15

*Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*
*(In re Highland Cap. Mgmt., L.P.),*
    643 B.R. 162 (N.D. Tex. 2022)............................................................................................7

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ..............................................................................................6

*Commerce Bank v. Malloy,*
    No. 13-CV-252, 2013 U.S. Dist. LEXIS 106329 (N.D. Okla. July 30, 2013) ................... 8-9

*Cudd Pressure Control, Inc. v. Roles,*
    328 F. App'x 961 (5th Cir. 2009) (unpublished) ..................................................................9

*Dandridge v. Williams,*
    397 U.S. 471 (1970)............................................................................................................5

*Douglass v. Beakley*,
    900 F. Supp. 2d 736 (N.D. Tex. 2012) ...........................................................................12, 16

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981) .............................................................................................23

*Du Bois v. Martin Luther King Jr. Family Clinic, Inc.*,
    No. 3:17-CV-2668-L, 2018 U.S. Dist. LEXIS 246910,
    (N.D. Tex. May 29, 2018)......................................................................................................6

*Edgar v. Mite Corp.*,
    457 U.S. 624 (1982)...........................................................................................................12

*Fink v. Nat'l Sav. & Tr. Co.*,
    772 F.2d 951 (D.C. Cir. 1985) ...........................................................................................18

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
    462 U.S. 611 (1983)...........................................................................................................12

*Fisk Elec. Co. v. DQSI, L.L.C.*,
    740 F. App'x 399 (5th Cir. 2018) (unpublished) .................................................................23

*Fund of Funds, Ltd. v. Vesco*,
    74-Civ-1980, 1976 U.S. Dist. LEXIS 14183 (S.D.N.Y. July 12, 1976)...............................20

*Goldenson v. Steffens*,
    No. 2:10-cv-00440, 2014 U.S. Dist. LEXIS 201258 (D. Me. Mar. 7, 2014) .......................13

*Hand v. Dean Witter Reynolds, Inc.*,
    889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied)...............................11

*Holt Atherton Industries, Inc. v. Heine*,
    835 S.W.2d 80 (Tex. 1992)................................................................................................21

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004)..........................................................................18, 19

*Jackson v. Dear and Seven Others*,
    [2013 GLR 167] Guernsey Royal Ct. ..................................................................................15

*Jacobsen v. Osborne*,
    133 F.3d 315 (5th Cir. 1998) .............................................................................................23

*Laird v. Integrated Res.*,
    897 F.2d 826 (5th Cir. 1990) ........................................................................................11, 17

*Lampkin v. UBS Painewebber, Inc. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
238 F. Supp. 3d 799 (S.D. Tex. 2017) ...............................................................11

*Leffall v. Dall. Indep. Sch. Dist.*,
28 F.3d 521 (5th Cir. 1994) ...............................................................23

*Legate v. Livingston*,
822 F.3d 207 (5th Cir. 2016) ........................................................... 5-6

*Leyse v. Bank of Am. Nat'l Ass'n*,
804 F.3d 316 (3d Cir. 2015) ...............................................................6

*Lovelace v. Software Spectrum*,
78 F.3d 1015 (5th Cir. 1996) ...............................................................6

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
288 S.W.3d 401 (Tex. 2009) ...............................................................22

*Navigant Consulting, Inc. v. Wilkinson*,
508 F.3d 277 (5th Cir. 2007) ...............................................................9

*Pool v. Johnson*,
No. 3:01-CV-1168-L, 2002 U.S. Dist. LEXIS 6613
(N.D. Tex. Apr. 15, 2002) ...............................................................16

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
29 S.W.3d 74 (Tex. 2000) ...............................................................21

*Reneker v. Offill*,
No. 3:08-cv-1394-D, 2010 U.S. Dist. LEXIS 38526
(N.D. Tex. Apr. 19. 2010) ...............................................................6

*Romano v. Merrill Lynch, Pierce, Fenner & Smith*,
834 F.2d 523 (5th Cir. 1987) ...............................................................11

*Santa Fe Indus. v. Green*,
430 U.S. 462 (1977) ........................................................... 9-10

*Sassen v. Tanglegrove Townhouse Condo. Ass'n*,
877 S.W.2d 489 (Tex. App.—Texarkana 1994, writ denied) ...............................................................16

*Scanlan v. Texas A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) ...............................................................7

*SEC v. ABS Manager, LLC*,
No. 13cv319, 2014 U.S. Dist. LEXIS 80542 (S.D. Cal. June 11, 2014) ........................ 14-15

*SEC v. Ambassador Advisors, LLC*,
    576 F. Supp. 3d 286 (E.D. Pa. 2021) ................................................................. 10

*SEC v. Blavin*,
    760 F.2d 706 (6th Cir. 1985) ............................................................................ 17

*SEC v. Tambone*,
    550 F.3d 106 (1st Cir. 2008) ....................................................................... 10, 14

*SEC v. World Tree Fin., L.L.C.*,
    43 F.4th 448 (5th Cir. 2022) ...................................................................... 10, 18

*SEC v. Zandford*,
    535 U.S. 813 (2002) .......................................................................................... 10

*Snowden v. Wells Fargo Bank, N.A.*,
    No. 3:18-cv-1797, 2019 U.S. Dist. LEXIS 23557 (N.D. Tex. Jan. 18, 2019) ...................... 21

*State ex rel. Udall v. Colonial Penn Ins. Co.*,
    812 P.2d 777 (N.M. 1991) ........................................................................... 12-13

*Strougo ex rel. Braz. Fund v. Scudder, Stevens & Clark, Inc.*,
    964 F. Supp. 783 (S.D.N.Y. 1997) .................................................................... 13

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) .............................................................................. 13

*Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*,
    374 F.3d 330 (5th Cir. 2004) ............................................................................... 8

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
    No. 3:03-CV-2490, 2004 U.S. Dist. LEXIS 27582 (N.D. Tex. Nov. 15, 2004) ................... 19

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979) ....................................................................................... 9-10

*United States SEC v. Markusen*,
    143 F. Supp. 3d 877 (D. Minn. 2015) ................................................................ 15

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ................................................................................. 6

*W. Res. Life Assurance Co. v. Graben*,
    233 S.W.3d 360 (Tex. App.—Fort Worth 2007, no pet.) ..................................... 11

*ZPR Inv. Mgmt. v. SEC*,
    861 F.3d 1239 (11th Cir. 2017) ....................................................................... 19

## Codes, Rules and Statutes

15 U.S.C. § 80a-3(a)(1)(A) ......................................................................................... 14

15 U.S.C. § 80a-3(a)(1)(C) ......................................................................................... 14

15 U.S.C. § 80b-8(d) .................................................................................................. 17

15 U.S.C. § 80b-15(a) ............................................................................... 13, 15, 18, 22

15 U.S.C. § 80b-6(2) ............................................................................................. 14, 19

15 U.S.C. § 80b-6(4) ............................................................................................. 14, 19

15 U.S.C. § 80b-15(a) ......................................................................................... 13, 18, 22

17 C.F.R. § 206(4)-8 ........................................................................................... 14, 15

17 C.F.R. § 275.204A-1 .............................................................................................. 10

FED. R. CIV. P. 9(b) ......................................................................... 18-19, 20, 24

FED. R. CIV. P. 12(b)(6) ............................................................................. 6, 7, 20, 24

FED. R. CIV. P. 12(g) .............................................................................................. 6, 12

FED. R. CIV. P. 15(a) ................................................................................................. 23

FED. R. EVID. 201(b) ................................................................................................. 13

## Other

Commission Interpretation Regarding Standard of Conduct for Investment Advisers,
Investment Advisers Act Release No. IA-5248, 84 Fed. Reg. 33,669 (July 12, 2019) ........ 10, 17

Investment Advisers Act Release No. IA-2106 (Jan. 31, 2003) .................................. 10

Investment Advisers Act Release No. 3060, 75 Fed. Reg. 49,234 (Aug. 12, 2010) .................. 10

RESTATEMENT (THIRD) OF AGENCY § 8.01 (AM. L. INST. 2006) .................................. 10

# I.

## <u>INTRODUCTION</u>

This action arises from Defendant's role as an investment advisor to the Plaintiffs under the Investment Advisers Act of 1940 (the "<u>Advisers Act</u>"). Plaintiffs learned—after the fact—that Defendant had failed to disclose to them the true value of securities sold in connection with a settlement that was approved in Defendant's bankruptcy proceedings and failed to obtain their informed consent to the transaction. Defendant's actions thus violated unwaivable fiduciary duties arising under the Advisers Act.

**_First_**, Highland's arguments concerning "judicial estoppel" improperly rely upon evidence outside the four corners of Plaintiffs' pleadings and raise new arguments that were not raised previously. The Court should not consider this extraneous evidence or successive motion practice. Moreover, Highland ignores the pleadings stating that there was evidence then unknown to Plaintiffs—namely, the falsity of the representation of the value of the assets in question—at the time of the HarbourVest 9019 settlement hearing—making any inconsistency in their positions inadvertent. With this inadvertence, judicial estoppel cannot apply.

**_Second_**, Highland feigns ignorance of the Advisers Act § 206(4) which imposes direct liability on an advisor to investors—something recognized by the Supreme Court and the Securities and Exchange Commission. Indeed, Highland's own CEO testified under oath that he and Highland owed direct fiduciary duties to investors. Highland misleads this Court by suggesting there is no private cause of action under the Investment Advisers Act—which is false under Supreme Court precedent. Highland then fails to disclose that the Act gives rise to unwaivable fiduciary duties actionable at common law via claims for fiduciary duty and negligence, and which can also be brought derivatively.

***Third***, other than judicial estoppel, Highland has no articulated basis for dismissing the contract and tortious interference claims. Highland's arguments are conclusory and superficial at best—as are its arguments for dismissing the negligence claim. Highland's reliance on the Plan injunction entered by this Court to vitiate liability for unwaivable fiduciary duties is baseless.

As has been the case all along, Highland is seeking to avoid fair scrutiny of its self-dealing. Highland's assumption that Plaintiffs have not been harmed ignores Supreme Court precedent holding that injury is not an element of an Advisers Act violation, and ignores the fact that Plaintiffs were denied a prime investment opportunity—of the sort Highland and its subsidiary were advising Plaintiffs about—so that Highland and its current CEO could reap a windfall at Plaintiffs' expense. Discovery will bear out the allegations which have been pleaded with particularity and in good faith. In the unlikely event the Court considers the Renewed Motion to Dismiss to have any validity, then the Plaintiffs request leave to amend their pleadings to cure any identified deficiencies.

## II.

## FACTUAL BACKGROUND

Plaintiff Charitable DAF Fund, L.P. ("DAF") is a charitable fund that helps several causes throughout the country, including providing millions of dollars every year to local charities in Dallas and around the country, such as family shelters, education initiatives, veteran's welfare associations, public works (such as museums, parks and zoos), and education (such as specialty schools in underserved communities). Original Complaint ("Compl.") at ¶ 10.

Since 2012, the DAF was advised by its registered investment advisor, Defendant Highland Capital Management, L.P. ("Highland"), and its various subsidiaries about where to invest. (Compl. at ¶ 11). This relationship was governed by an investment advisory agreement. (Compl.

at ¶ 12). As the DAF's investment advisor, Highland owed the DAF fiduciary obligations, including the duty against self-dealing, the duty to put the DAF's best interest ahead of its own, and the duty to obtain informed consent from the DAF. (Compl. at ¶¶ 56–57, 62).

In 2017, Highland advised the DAF to acquire 143,454,001 shares of Highland CLO Funding, Ltd ("HCLOF"), which the DAF did via a holding entity, Plaintiff CLO Holdco, Ltd. ("CLO Holdco"). (Compl. at ¶ 12).

Shortly thereafter, CLO Holdco entered into a Subscription and Transfer Agreement whereby a series of related entities collectively referred to as "HarbourVest" acquired a 49.98% membership interest in HCLOF (the "HarbourVest Interests"). (Compl. at ¶¶ 13–14). As part of this transaction Holdco retained a 49.02% membership interest. (Compl. at ¶ 13), and Highland took a 0.6% membership interest HCLOF (Compl. at ¶ 25).

HCLOF's portfolio manager is Highland HCF Advisor, Ltd. ("HCFA"), which is subsidiary of Highland and is controlled and operated by Highland. (Compl. at ¶ 24). Both are registered investment advisers ("RIA"). As such, both Highland and HCFA owed fiduciary duties to CLO Holdco as an investor in the HCLOF fund. James P. Seery, Jr., CEO of Highland, testified that Highland owed such fiduciary duties under the Investment Advisers Act of 1940 (the "Advisers Act") to investors in the funds that Highland manages (App_0008-10, 0014).

The HCLOF parties' rights and obligations as members of HCLOF were governed by the *Members Agreement Relating to the Company* dated November 15, 2017 ("Company Agreement"). (Compl. at ¶¶ 93–94) (App_0018-35). Under the Company Agreement, no member was allowed to sell shares to another member without first providing all other members the opportunity and right to purchase a *pro rata* portion thereof at the same price being offered. (Compl. at ¶ 95; App_0026-27).

In October 2019, Highland filed for Chapter 11 (Compl. at ¶ 15). As part of this bankruptcy, HarbourVest filed its proof of claim against Highland totaling over $300 million (Compl. at ¶¶ 16, 21-23). Highland denied the validity of these claims. (Compl. at ¶ 17, 26).

In the meantime, Highland continued to control HCLOF through its subsidiary HCFA. (Compl. at ¶¶ 115–124). In September 2020, HCLOF was underperforming, and the value of the investment had diminished—the HarbourVest Interests had diminished $52 million in value. (Compl. at ¶ 27). On September 30, 2020, Highland utilized interstate wires to transmit information to the HCLOF investors regarding the value of their respective interests. (Compl. at ¶ 121). In the following months, however, the value HCLOF began to improve and Highland did not update investors; by the end of November 2020, the value of HCLOF's total assets increased to $72,969,492 ($36,484,746 allocated to HarbourVest) and by the end of December, HCLOF's reached $86,440,024 ($43,202,724 allocated to HarbourVest's Interests). (Compl. at ¶¶ 123–124). However, Highland did not transmit these valuations to Plaintiffs (Compl. at ¶ 120).

Around November 2020, Highland and HarbourVest—utilizing the interstate wires—entered into discussions about settling HarbourVest's claims in the bankruptcy. (Compl. at ¶ 119). Highland and HarbourVest reached a settlement, which Highland requested the bankruptcy court approve on December 23, 2020 (the "9019 Hearing"). (Compl. at ¶ 29; App_0046-64). As part of the settlement, Highland agreed to allow HarbourVest $45 million in unsecured claims, which were expected to yield about seventy cents on the dollar to HarbourVest (roughly $31,500,000). (Compl. at ¶ 32; App_46-64). As part of the consideration for the $45 million in allowed claims, HarbourVest sold its interest in HCLOF to Highland for $22,500,000 (Compl. at ¶ 33) (the "HarbourVest Settlement").

Despite Highland's fiduciary obligations to Plaintiffs, Highland concealed the rising value

of HCLOF and the Harbourview Interests, as well as the value that it was buying the interest for. It diverted the entire opportunity to participate in this windfall transaction to itself in violation of its fiduciary duties (Compl. at ¶ 67).

At the January 14, 2021, Bankruptcy Rule 9019 hearing to approve the settlement, HCF's CEO testified that the value allocated to the HarbourVest Interests was $22.5 million. (Compl. at ¶¶ 34, 37). The bankruptcy court issued an order approving the HarbourVest Settlement (App_0065-68) (the "9019 Order"). The sale of the HarbourVest Interests transformed Highland from a minority member with a 0.6% interest into the controlling member with a 50.49% interest.

The truth was otherwise. As Plaintiffs learned only after the fact from former Highland employees who were familiar with the valuation, the HarbourVest interest was actually worth $41,750,000 on a net asset value basis. (Compl. at ¶¶ 34, 37). Highland's failure to inform HCLOF—whom it controlled through HCFA—or Holdco, means Highland reaped a $20 million-plus windfall by self-dealing and without proper disclosure, resting on affirmative misrepresentations by its CEO, and without obtaining informed consent from its investors.

This lawsuit followed and is now subject to a second successive motion to dismiss in violation of the Rules of Civil Procedure and precedent.

## III.

## <u>MOTIONS TO STRIKE</u>

### A. <u>Defendants' Successive Motion to Dismiss Should be Stricken</u>

This Court presumptively denied Highland's bases for dismissal on the merits by not ruling on them, and during the first appeal, Highland did not ask the district court to rule on the merits or to affirm on that basis as it could have. *See Dandridge v. Williams,* 397 U.S. 471, 475 n.6 (1970). By failing to raise those presumptively denied bases for dismissal on appeal, Highland waived

them, *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016), and cannot re-assert them now.

The Fifth Circuit and the district courts within it have repeatedly held that successive Rule 12(b)(6) motions are not allowed under Rule 12(g) and (h), and that a motion such as this one can only be brought as a 12(c) motion after the pleadings have closed. *See* Fed. R. Civ. P. 12(g) and (h); *see, e.g., Du Bois v. Martin Luther King Jr. Family Clinic, Inc.*, No. 3:17-CV-2668-L, 2018 U.S. Dist. LEXIS 246910, at *5-6 (N.D. Tex. May 29, 2018). Accordingly, this is not a "renewed motion;" it is an improper *successive* motion to dismiss and should be stricken. *DuBois*, 2018 U.S. Dist. LEXIS 246910, at *5-6; *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 322 n.5 (3d Cir. 2015) ("district courts should enforce [the rule against successive motions] even if their failure to do so is not a ground for reversal").

## B. DEFENDANTS' EXHIBITS SHOULD BE STRICKEN

The district courts in this district have also held that a court should only take judicial notice of facts "'sparingly at the pleadings stage.'" *Reneker v. Offill*, No. 3:08-cv-1394-D, 2010 U.S. Dist. LEXIS 38526, at *5 (N.D. Tex. Apr. 19. 2010) (Fitzwater, J.) (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)). Courts in the Fifth Circuit have held that, other than legal documents, a court cannot take judicial notice of unpled *facts* unless the facts are undisputed. *See Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996). Thus, this Court should strike the appendix submitted with the motion as impertinent and improper.

## IV.

## PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF

Motions to dismiss for failure to state a claim are viewed with disfavor and are seldom granted. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of

the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). This Court must draw all reasonable inferences in favor of the plaintiff. *See Collins*, 224 F.3d at 498. Rule 8 does not demand "'detailed factual allegations[.]'" *Id*. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling upon a Rule 12(b)(6) motion, the Court cannot decide disputed fact issues. The court may grant a motion under Rule 12(b)(6) *only if* it can determine with certainty that the plaintiff cannot prove a set of facts that would allow the relief sought in the complaint. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

## A. JUDICIAL ESTOPPEL SHOULD NOT BE APPLIED TO COUNTS 2 OR 5

The district court on appeal remanded for consideration of whether judicial estoppel applied to Counts 2 or 5 of the Complaint. *Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 174-75 (N.D. Tex. 2022) ("Remand Order"). Plaintiffs still disagree that there was any judicial admission, but nonetheless address the questions that were remanded.[1]

### 1. Highland's Reliance on Collateral Evidence is Improper

Highland's entire argument on judicial estoppel fails for two reasons already addressed: First, it relies on new arguments not raised previously. And second, it relies on evidence outside of the four corners of the Complaint. For instance, the question of inadvertence which the district court remanded for this Court's consideration is not one that can be resolved on the pleading because it asks *why* Holdco withdrew its objection. That cannot be determined at this early stage, and Highland's selective document-dump is not competent evidence, not properly admitted, and therefore not proper for this Court to consider at the 12(b)(6) stage.

---

[1] Plaintiffs adopt and incorporate the arguments made previously to this Court and before the district court on appeal as to why judicial estoppel does not apply, and reserve all rights on appeal. For the purposes of this briefing and for the sake of brevity, Plaintiffs address the issues reserved for remand to this Court.

### 2.  Highland Has Not Shown a Lack of Inadvertence

The Fifth Circuit has addressed "inadvertence" in the bankruptcy context by citing a debtor's duty to disclose all claims at the beginning of a bankruptcy. *See Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) ("The debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment.") (italics in original). Here, no such duty to object to a 9019 settlement exists. Nonetheless, Holdco's 9019 objection addressed *HarbourVest*'s violations of the Member Agreement. But Count 2 of the Complaint alleges that *Highland* violated the HCLOF Company Agreement by failing to offer the interest to Holdco (and other members) before it transferred the interest to its subsidiary. HoldCo never brought its objection as to Highland or its subsidiary. And Count 5 alleges that Highland HCF Advisors L.P. tortiously interfered with the Company Agreement in its investment advisory role, another claim that was not brought as an objection (and for which no duty to object existed).

### a.  Holdco Did Not Intentionally Conceal its Breach of Contract or Tortious Interference Claims From the Court and Had No Motive to Do So

There is no evidence in the record that Holdco intentionally concealed its claims from the Court for breach of contract or tortious interference—nor that it had any reason to do so. The opposite is true. The contract claims were disclosed, albeit they were withdrawn without prejudice. There was no motive to conceal the claims to the extent they were known to Holdco at the time. This Court and the district court has already ruled that the withdrawal of those claims did not attach *res judicata* or *collateral estoppel* preclusion. Other courts have found that unsuccessful legal positions taken during a 9019 hearing are not a basis for finding that judicial estoppel applies where those legal positions relate to matters more properly addressed in an adversary proceeding. *See,*

---

*e.g.*, *Commerce Bank v. Malloy*, No. 13-CV-252, 2013 U.S. Dist. LEXIS 106329, at *15-17 (N.D. Okla. 2013). Therefore, their withdrawal without prejudice did not, and was not expected to, have any preclusive effect making the withdrawal inadvertent as to any alleged inconsistency.

### b. New Facts Giving Rise to the Claims Were Not Known to Holdco

The facts giving rise to the lawsuit arose after the 9019 hearing. To wit, the tortious interference claim stems from Highland's concealment and misrepresentation of the net asset value of HCLOF prior to and during the 9019 hearing—the true value of which only became known to Holdco well after this Court's 9019 hearing and 9019 Order (Compl. ¶¶ 36-45, 47-52). Because of the misrepresentation and the self-dealing entailed therein, Holdco is able to state a tortious interference claim based upon inadvertence. And but for the misrepresentation, Holdco would not have withdrawn its objection, and would have made a more robust objection to the settlement or sought a different path. Therefore, judicial estoppel is improper.

### B. PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR BREACH OF FIDUCIARY DUTY

In Texas, the elements of a breach of fiduciary duty are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.'" *Cudd Pressure Control, Inc. v. Roles*, 328 F. App'x 961, 964 (5th Cir. 2009) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007)).

### 1. Highland and HCFA Owe Fiduciary Duties Under the Advisers Act

"The Investment Advisers Act of 1940 was the last in a series of Acts designed to eliminate certain abuses in the securities industry, abuses which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963). The Advisers Act thus "establishes 'federal fiduciary standards' to

govern the conduct of investment advisers." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 17 (1979) (citing *Santa Fe Indus, v. Green*, 430 U.S. 462, 471, n.11 (1977)).

The Advisers Act imposes both a duty of care and a duty of loyalty on investment advisors. *See SEC v. Tambone,* 550 F.3d 106, 146 (1st Cir. 2008) ("[15 U.S.C. § 80b-6] imposes a fiduciary duty on investment advisers to act at all times in the best interest of the fund and its investors."); *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021) ("The fiduciary duties under § 206(2) also require investment advisers to seek "best execution" for all their clients' transactions. "Best execution" means obtaining 'the most favorable terms reasonably available under the circumstances.'"); 17 C.F.R. § 275.204A-1 (describing the required investment adviser code of ethics, and its focus on conflicts of interest).

The Advisers Act was also enacted in part to prevent conflicts of interest, self-dealing and fraud by investment advisors. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. at 186–87. A key prohibition is that the advisor cannot engage in cherry picking—selecting the best securities and opportunities in a way that enriches itself. *Accord SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 460 (5th Cir. 2022) ("Because cherry-picking involves allocating more profitable trades to certain accounts, an adviser is 'stealing from one customer to enrich himself'"). *See also* Investment Advisers Act Release No. 3060, 75 Fed. Reg. 49,234 (Aug. 12, 2010) ("Under the Advisers Act, an advisor is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own") (*citing* Investment Advisers Act Release No. 2106 (Jan. 31, 2003)).[2]

---

[2] The SEC's interpretive guidance of the Advisers Act is accorded *Chevron* deference. *See SEC v. Zandford*, 535 U.S. 813 (2002). In interpreting § 206 of the Advisers Act, the SEC has recognized that conflicts of interest arise where an advisor seeks to take advantage of an opportunity that it otherwise might offer to its client. *See* Commission Interpretation Regarding Standard of Conduct for Investment, Release No. IA–5248, Fed. Reg./Vol. 84, No. 134 at 33675-77 (citing Restatement (Third) of Agency, § 8.01 (2006)

Texas courts have also found that advisors owe fiduciary duties of care and loyalty. *W. Res. Life Assurance Co. v. Graben*, 233 S.W.3d 360, 374 (Tex. App.—Fort Worth 2007, no pet.); *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987) (holding that advisors owe investors fiduciary duties under Texas law); *Lampkin v. UBS Painewebber, Inc. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 238 F. Supp. 3d 799, 851 (S.D. Tex. 2017) (under Texas law, an investment advisor and investors are in a formal fiduciary relationship). Texas law provides that a fiduciary relationship is governed by the terms of the agency. *See Hand v. Dean Witter Reynolds, Inc.*, 889 S.W. 2d 483, 492 (Tex. App.—Houston [14th Dist.] 1994, *writ denied*). The Advisers Act provides the scope of, and rules governing, the advisor/advisee agency relationship. *See Laird v. Integrated Res.*, 897 F.2d 826, 834 (5th Cir. 1990).

Here, HCFA is a wholly-owned subsidiary of Highland. Both are registered investment advisors under the Advisers Act of 1940 (Compl. ¶ 56). Highland operates HCFA, which serves as the Portfolio Manager of Highland CLO Funding, Ltd. ("HCLOF"). Highland was a direct advisor to the DAF. Therefore, Highland and HCFA each owed fiduciary duties to the DAF and Holdco respectively.

## 2. Holdco Has Standing to Bring a Breach of Fiduciary Duty Claim Directly and Derivatively

Highland contends that Holdco, as a mere investor in HCLOF who is not in privity with

---

(explaining that "the general fiduciary principle, …also requires that an agent refrain from using the agent's position or the principal's property to benefit the agent or a third party.")). A necessary but not sufficient measure by the advisor is full and fair disclosure and obtaining the client's informed consent before the advisor takes such an action. *Id*. at 33676-77. "In order for disclosure to be full and fair, it should be sufficiently specific so that a client is able to understand the material facts or conflicts of interest and make an informed decision whether to provide consent." *Id.* at 33676. This includes all information about an advisor's potential gain or advantage—especially hidden ones and ulterior motives. *Id.* at 33677. The failure to make such disclosures and obtain informed consent in a manner that is not disinterested is a breach of the fiduciary duty under the Adviser's Act. *Id.* at 33677.

---

Highland or HCFA, lacks standing. This is incorrect as a matter of law.

   ***First***, Highland incorrectly states that there is no private right of action under the Advisers

Act. This is simply not true. Section 215 recognizes a limited private right of action for equitable

relief including disgorgement, wherein one may seek to void the rights of a violator who performs

a contract in violation of the Advisers Act. *See* 15 U.S.C. § 215. *TAMA*, 444 U.S. at 19 ("[W]hen

Congress declared in § 215 that certain contracts are void, it intended that the customary legal

incidents of voidness would follow, including the availability of a suit for rescission or for an

injunction against continued operation of the contract, and for restitution."). Plaintiff has pled

disgorgement and is entitled to it under this statute.

   ***Second***, the Northern District of Texas decided almost a decade ago that, although the

Advisers Act does not itself create a cause of action for damages, state law fiduciary duty claims

can be brought for violations of the Advisers Act. *See Douglass v. Beakley*, 900 F. Supp. 2d 736,

751-52, n.16 (N.D. Tex. 2012) (Boyle, J.) (denying motion to dismiss state fiduciary duty claims

predicated on breaches of the Advisers Act).[3] Therefore, Holdco has standing to bring its claims

---

[3] Highland newly contends that because HCLOF is a Guernsey company, Guernsey fiduciary duty law applies under the internal affairs doctrine to decide whether a fiduciary duty claim by an investor can be brought against an investment advisor. This argument fails. For one thing, it was not raised originally—meaning it was waived under Rule 12(g) and (h). For another, the argument incorrectly supposes—without any support—that the internal affairs doctrine would apply and would select Guernsey law for duties related to HCLOF. The internal affairs doctrine only applies to HCLOF's *internal* affairs—i.e., the duties of officers and directors towards the company and shareholders. *Accord Alphonse v. Arch Bay Holdings, L.L.C.*, 548 F. App'x 979, 986 (5th Cir. 2013) (noting that internal affairs doctrine does not apply where rights with respect to "third parties external to the corporation are at issue") (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 621-22 (1983)). The internal affairs doctrine is NOT at issue here as neither Highland nor HCFA is alleged to be an officer or director of HCLOF, nor is their fiduciary duty alleged to arise out of service in such a role. Nor can the internal affairs doctrine circumvent federal securities laws. The Supreme court in *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982) held that the internal affairs doctrine was irrelevant where the issue was the violation of the securities laws between a shareholder and a third party who was not an officer or director of the company, and that the internal affairs doctrine could not be used to circumvent federal securities laws. *See id; cf. Anderson* v. *Abbott*, 321 U.S. 349, 365 (1944) (declining to apply the law of the State of incorporation to determine

---

for violations of the Advisers Act under applicable state law. *Id*. Other courts are in accord. *See*

*Goldenson v. Steffens*, No. 2:10-cv-00440, 2014 U.S. Dist. LEXIS 201258, at *137 (D. Me. Mar.

7, 2014) *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502-06 (3d Cir. 2013); *State ex rel.*

*Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 785 (N.M. 1991); *Strougo ex rel. Brazil Fund v.*

*Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 799 (S.D.N.Y. 1997), *rev'd in part on other*

*grounds in Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002).

*__Third__*, the fiduciary duties under the Advisers Act are not limited to direct advisees.

Highland's CEO, James Seery, testified under oath—under *direct examination by Highland's*

*lawyers*—that he and Highland, as registered investment advisors, owed fiduciary duties to the

funds they managed, and the *investors* in those funds. (App_0009) ("The goals of the

debtor…number one, discharge Highland's, … duties to investors in the funds. Those are fiduciary

duties under the Investment Advisers Act."); (App_14) ("the Investment Advisors Act puts a

fiduciary duty on Highland Capital to discharge its duty to the **investors**. So, while we have duties

to the estate, we also have duties, as I mentioned in my last testimony, **to each of the investors in**

**the funds**.") (bolding added). Seery's sworn, uncontradicted testimony is a judicial admission and

an undisputed fact that this Court may take judicial notice of at this stage. *See* Fed. R. Evid. 201(b).

---

whether a banking corporation complied with the requirements of federal banking laws because "no State
may endow its corporate creatures with the power to place themselves above the Congress of the United
States and defeat the federal policy concerning national banks which Congress has announced"); *Broyles
v. Cantor Fitzgerald & Co.*, No. 10-854, 2014 U.S. Dist. LEXIS 169364 (M.D. La., Dec. 8, 2014) (internal
affairs doctrine does not apply to claims of breach of a fiduciary duty against stockbroker). Here, Highland's
and HCFA's fiduciary duties arise out of their roles as registered investment advisors to the DAF directly
and to HCLOF, and so are non-waivable. *See* 15 U.S.C. § 80b-6 and § 80b-15(a). Those duties are subject
to their Advisory Agreements, neither of which select Guernsey law—actually, they expressly select Texas
law. *See* Offering Memo p. 82 ("[HCFA]'s Portfolio Management Agreement is governed by the laws of
the State of Texas.") (APP_0175); DAF/HCMLP Advisory Agmt at ¶ 14(e) (APP_0219) Moreover, the
Offering Memorandum (which is incorporated via the Company Agreement § 2.2), states that HCFA is
"subject to the provisions of the Investment Advisers Act." Offering Memo at p. 13 and 59 (APP_0106 and
0152).

---

***Fourth***, the Advisers Act § 206 expressly imposes duties owed directly to investors in a fund. *See* 15 U.S.C. § 80b-6(4). Highland attempts to circumscribe the issue to just "clients". But Section 206(4) says nothing about clients while §§ 206(1) and (2) expressly limit duties only to "clients". *Accord SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("[15 U.S.C. § 80b-6(4)] imposes a fiduciary duty on investment advisors to act at all times in the best interest of the fund *and its investors*." (emphasis added)). The Supreme Court and circuit courts long ago recognized the right of investors in pools of funds to bring direct actions against the fund managers for breaches of the Advisers Act. *See, e.g., TAMA*, 444 U.S. at 13; *Abrahamson v. Fleschner*, 568 F.2d 862, 871-74 (2d Cir. 1977) *rev'd in part on other grounds*.

Furthermore, § 206(4) empowered the SEC to enact regulations refining the scope of the duties under § 206(4). Pursuant to its grant of authority, the SEC promulgated 17 C.F.R. § 275.206(4)-8 ("Rule 206(4)-8") to enforce the fiduciary standards in Section 206(d), making it unlawful for an advisor to a "pooled investment vehicle" to:

> (1) Make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, **to any investor** or prospective investor in the pooled investment vehicle; or
>
> (2) Otherwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative **with respect to any investor** or prospective investor in the pooled investment vehicle.

17 C.F.R. § 275.206(4)-8 (bolding added). By its plain terms, Rule 206(4)-8(a) expressly anticipates a lack of direct privity and imposes direct duties on investment advisors to investment funds with respect to the investors in those funds—which includes Holdco.[4] *SEC v. ABS Manager,*

---

[4] Highland does not appear to contest that HCLOF is a "pooled investment vehicle" for the purposes of this regulation. Normally, HCLOF would have to register under the Investment Company Act. The Investment Company Act, 15 U.S.C. § 80a-3(a)(1)(A), (C) states that an investment company is an issuer that "is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of

---

*LLC*, No. 13cv319, 2014 U.S. Dist. LEXIS 80542, at *45 (S.D. Cal. June 11, 2014) (adopting

SEC's position and granting summary judgment as to violations of Rule 206(4)-8 because "section

206(4) and Rule 275.206(4)-8. . .prohibit the same conduct as sections 206(1) and 206(2) but in

connection with 'pooled investment vehicles'"); *SEC v. Markusen*, 143 F. Supp. 3d 877,891 (D.

Minn. 2015) (denying motion to dismiss action by investors against manager of fund); *Goldenson*,

2014 U.S. Dist. LEXIS 201258, at *139 (holding that an advisor to a pooled vehicle had general

fiduciary duty to investors even as to outside investments made by the advisor).

**_Fifth_**, Holdco also pled its claims derivatively (Compl. at Caption and at ¶ 91). Thus, to

the extent HCLOF has a breach of fiduciary duty claim (which it also does), because HCLOF is a

Guernsey entity, Guernsey law determines derivative standing. Here, Guernsey law recognizes

both derivative and double-derivative standing, especially where, as here, the company is

controlled by the alleged wrongdoer. *See Jackson v. Dear and Seven Others*, [2013 GLR 167]

Guernsey Royal Ct. (Talbot, Lieut, Bailiff) (adopting English company law on derivative actions

and finding that double derivative actions are recognized vehicles in Guernsey corporations and

customary law); *see also Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, No. 7841-VCP, 2015

Del. Ch. LEXIS 237, at *49 (Del. Ch. Sep. 10, 2015) (noting derivative action for Guernsey entity

---

investing, reinvesting, or trading in securities" or that "is engaged or proposes to engage in the business of
investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment
securities having a value exceeding 40 per centum of the value of such issuer's total assets[.]" HCLOF
Meets this definition. *See, e.g.,* Company Agreement recital B and § 2.2 (APP_0017-18); Offering Memo
(APP_0094-97, 0106-107). The exceptions identified in Rule 206(4)-8(2) are for investment companies
that do not publicly offer their shares and have fewer than 100 investors. *Markusen*, 143 F.Supp.3d at 891
(holding that investment fund not required to register where it "[has] less than 100 investors and do[es] not
publicly offer [its] securities"). HCLOF meets this definition. *See* Offering Memo at i ("There will be no
public offer of the Placing Shares") (APP_0085) and at p. 75 (shareholders list) (APP_0168). Thus, because
HCLOF would have to register under the Investment Company Act but for the exceptions to identified in
Rule 206(4)-8, *id.* at p. i ("[HCLOF] has not been and will not be registered under the Investment Company
Act of 1940"), HCLOF qualifies as a "pooled investment vehicle".

---

could proceed). Highland nowhere so much as purports to challenge the derivative standing of

Holdco nor cites a single legal authority contravening it.

Therefore, Holdco has standing to bring claims for breach of the Advisers Act fiduciary

duties as well as state law fiduciary duty claims.

### 3.  The DAF Has Direct Standing to Bring Fiduciary Duty Claims

The Original Complaint pleads that Highland and the DAF are in a direct advisory

relationship by virtue of a contractual arrangement. (Compl. ¶ 58). As the DAF's registered

investment advisor, Highland is DAF's fiduciary. *See Douglass v. Beakley*, 900 F. Supp. 2d 736,

at 751-52, n.16. The Advisory Agreement further commits Highland to value financial assets "in

accordance with the then current valuation policy of the Investment Advisor [Highland], a copy of

which will provided to the General Partner upon request." (Compl. ¶ 60). And while Highland

contracted for the recognition that it would be acting on behalf of others and could be in conflict

with advice given to the DAF, (Advisory Agreement ¶ 12), nowhere did it purport to *waive* the

fiduciary duties owed to the DAF not to trade as a principal in a manner that was self-dealing or

harmed the DAF. (Compl. ¶ 61). Additionally, Highland was appointed the DAF's attorney-in-

fact. (Compl. at ¶ 59). "As the appointment of an attorney-in-fact creates a fiduciary relationship

as a matter of law, Texas law imposes special duties on persons acting in that capacity." *Pool v.

Johnson*, No. 3:01-CV-1168-L, 2002 U.S. Dist. LEXIS 6613, at *17 (N.D. Tex. Apr. 15, 2002)

(citing *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.—

Texarkana 1994, *writ denied*)). Under Texas law, "[a] fiduciary owes its principal a high duty of

good faith, fair dealing, honest performance, and strict accountability." *Id*. (citing *Sassen*, 877

S.W.2d at 492).

Here, Highland cannot to subrogate the DAF's rights to its own, nor self-deal, nor mislead

the DAF as to a competitive purchase. The DAF further has the right to full and fair disclosure by Highland before it usurps an opportunity that it was advising the DAF on. This is especially so because Highland cannot do indirectly what it cannot do directly. 15 U.S.C. § 80b-8(d).

### 4.  Plaintiffs Have Alleged Several Breaches of Fiduciary Duty

Highland breached multiple fiduciary obligations in the process of negotiating and consummating the HarbourVest Settlement. The materiality of misrepresenting the value and the benefit to Highland of the investment is not debatable. *Accord SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985). And Highland cannot escape liability for this duty by conducting its advisory activities through HCFA. *See* 15 U.S.C. § 80b-8(d).

Highland and HCFA breached the duty of care and the duty of loyalty. The Advisers Act's primary purpose is to eliminate advisors' conflicts of interest and ensure that advisors always act in the best interest of the investor. *See Laird,* 897 F.2d at 839. The Advisers Act also makes clear that the duty of loyalty means putting CLO Holdco's interest first. *See* Securities and Exchange Commission Interpretative Release*, Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, 84 FR 33681 SEC Release No. IA-5248; File No. S7-07-18, 17 CFR Part 276, June 5, 2019 ("SEC Release") at p. 8, 23 (internal citations omitted). Under this duty, the Advisers Act explains that an advisor must have a rational, non-self-interested basis for how it allocates investment opportunities. *Id*. at 27.

Here, the HCLOF Company Agreement makes it clear that the purposes of HCLOF's investors is to acquire profitable CLO and CLO-related securities—which the shares in HCLOF would fall under (App_0020).[5] The Offering Memorandum specifically incorporated the Advisers

---

[5] The Company Agreement states that HCLOG "has been established to provide its investors with exposure to CLO Notes on both a direct basis and indirect basis and senior secured loans on an indirect basis, through the use of the investments described in its investment policy [in the Offering Memo]."

Act as a governing limit on Highland's ability to usurp investment opportunities. Offering Memo at p. 59 (APP_0151 to 0152).

Defendants' reserving for themselves without proper disclosure the entire HarbourVest interest in HCLOF is plainly a violation of fiduciary duty—and a knowing one at that.[6] The fact that it was alleged to have been done knowingly, if not purposefully, satisfies the scienter requirement. "[A]s other courts have pointed out, cherry picking can satisfy the scienter element because it involves the knowing conduct of picking certain accounts over others." *World Tree Fin.,* 43 F.4th 448, 463 (citing cases).

And to the extent Highland contends that the Company Agreement or any other provision waives its obligations under the Advisers Act, or those of HCFA, those waivers are null and void under 15 U.S.C. § 80b-15(a).[7]

### 5. Rule 9(b) Does Not Apply to These Fiduciary Duty Claims

For Rule 9(b) to apply, the claim must sound in fraud. *See* FED. R. CIV. P. 9(b). "Allegations of breach of fiduciary duty are not necessarily fraud allegations." *In re Elec. Data Sys. Corp.* "ERISA" Litig., 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004) (citing *Fink v. Nat'l Sav. & Trust Co.,*

---

[6] Highland entered into settlement negotiations in November 2020 with HarbourVest where it first learned of HarbourVest's intent to sell its interests in HCLOF. (Compl. ¶ 119). On December 23, 2020, Highland moved for approval of the HarbourVest Settlement. On January 14, 2021, at the Bankruptcy Court for the Northern District of Texas, Highland's CEO declared the that the value of HarbourVest's Interest in HCLOF was $22.5 million (Compl. at ¶ 34). The Bankruptcy Court approved a settlement that permitted Highland to obtain HCLOF's interest for this amount (Compl. at ¶¶ 32-34). In truth, the HarbourVest Interests were worth in excess of $41,750,000 at that time. (Compl. at ¶ 37). Highland, however, did not disclose the true value of HarbourVest's interests to Plaintiffs. (Compl. at ¶ 75). Furthermore, the value of the trade, the potential upside in the trade, and the nature of the trade were never disclosed to Holdco or the DAF prior to the hearing—indeed, the value and nature was misrepresented to them at the hearing. (Compl. ¶ 76, ¶ 120). Highland converted its 0.6% interest into a 50.58% interest and thereby control of HCLOF.

[7] Even if this court dismisses the contract claim (Count 2), that would not operate to deprive CLO Holdco or the DAF of the right to have Highland put their interests first as a matter of Advisers Act fiduciary duty. Defendants cannot waive those fiduciary obligations. *See* 15 U.S.C. § 80b-15(a).

---

249 U.S. App. D.C. 33, 772 F.2d 951, 959 (C.A.D.C. 1985) (holding that plaintiffs did not plead fraud where the complaint only alleged a breach of fiduciary duty of loyalty or care)). Plaintiffs also allege that Highland breached fiduciary duties by self-dealing when Highland purchased the entire HarbourVest Interests without providing Plaintiffs with the opportunity to participate. (Compl. at ¶ 76–88). These allegations do not require a false statement, nor require Plaintiffs' reliance, nor damage to Plaintiffs (a benefit to Highland suffices), all of which are elements of fraud. Because fraudulent conduct does not underlie Plaintiffs allegations, Rule 9(b) does not apply. *Tigue Inv. Co. v. Chase Bank of Tex. N.A.*, No. 3:03-CV-2490-N, 2004 U.S. Dist. LEXIS 27582, at *7–8 (N.D. Tex. Nov. 15, 2004). "Although fraud and breach of a duty to inform may both involve an omission, the Court does not find that every breach of a fiduciary duty to inform is a scheme to defraud." *EDS,* 305 F. Supp. 2d at 672.

Thus, Rule 9(b) does not apply here because violations of §§ 206(2) and (4) of the Advisers Act do not require proving or even alleging all the elements of fraud. 15 U.S.C. § 80b-6(4). Negligence is sufficient to establish liability under § 206(2) and (4). *See Capital Gains*, 375 U.S. at 195 ("… Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and actual injury to the client."); *ZPR Inv. Mgmt. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017) ("Sections 206(2) and (4) require no showing of scienter, and a showing of negligence is sufficient.") (internal citations omitted). Nor is a showing of reliance required. *Id.*

Even if Rule 9(b) did apply, it was met here. Plaintiff alleges the specific disclosures and statements in the Complaint made by Jim Seery under oath—when they were made, who made them, where they were made, and in what context. (Compl. ¶¶ 25-45; 47-51, 53, 55-91). Plaintiffs

further allege why those statements were false and how the falsity caused Plaintiffs injury. *Id*.[8]

*Accord Fund of Funds, Ltd. v. Vesco*, 74-Civ-1980, 1976 U.S. Dist. LEXIS 14183, at *31 (S.D.N.Y. 1976) ("The complaint identifies the alleged fraudulent transactions and how the fraud was accomplished. Defendant's roles in those events are described and specific actions by defendant, as a participant in allegedly unlawful activity, is delineated.").

Therefore, Rule 9(b) is not a basis for dismissing the claims herein.

**C.  PLAINTIFFS PLED CLAIMS FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE**

Plaintiff CLO Holdco's breach of contract claim is straightforward. Under the HCLOF Company Agreement, a "Transfer" of the shares of HCLOF is defined to include the "sale" of the shares. Company Agreement, § 6.1 (App_0026). Sections 6.1 and 6.2 of the Agreement purport to allow sales by members of their interests in HCLOF to "affiliates" of members, but not to members themselves, without certain conditions precedent. App_0026-27). One of those conditions is that the other members have to be afforded the right to purchase their pro-rata portion (App_0027).

Highland contends that the "transfer" to its "nominee," HCMLP Investments, LLC, is a transfer to an "affiliate." But this is factual gerrymandering and outside the scope of a 12(b)(6). The transfer that is the basis of Plaintiffs' contract claim is the sale by HarbourVest to Highland. That sale was accomplished through the Settlement Agreement with Highland (App_0046-54). In the Settlement Agreement, Highland paid for the HarbourVest Interests. In return, HarbourVest agreed to release its claims against Highland and transfer the HarbourVest Interests *to Highland*. (App_0047). Highland's supposed "nominee," HCMLP Investments, LLC was not a party to this agreement and Highland's nominee did not pay for those interests. *Id*. Therefore, the Settlement

---

[8] Indeed, Seery's testimony that is averted to specifically stated that Class 8 interests were only going to be paid some seventy cents on the dollar. Yet, according to publicly filed documents, almost 100% of Class 8 interests have been paid. What changed? Nothing.

---

Agreement constitutes a sale to *Highland*, and the sale violated Section 6.2 of the Company Agreement. The addendum transfer where Highland delegated its right to receive the shares to a nominee is "form over substance" and is bad faith, in violation of the Company Agreement § 20.5's "good faith" clause.

Defendant argues that Plaintiffs failed to plead actual damages. But Defendant ignores that fact that Plaintiffs plead that the breach of contract denied them the opportunity to obtain a share of the HabourVest Interests at a $20+ million discount, which it alleges are damages. (Compl. at ¶¶ 98–100, 102). Lost profits are an available remedy for breach of contract. *Basic Capital Mgmt. v. Dynex Commer., Inc.*, 402 S.W.3d 257, 268 (Tex. App.—Dallas, 2013). "Recovery for loss profits does not require that the loss be susceptible of exact calculation." *Id.* (quoting *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Highland claims that Plaintiffs' damages are too speculative. The case it cites, *Snowden v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1797, 2019 U.S. Dist. LEXIS 23557, at \*13–14 (N.D. Tex. Jan. 18, 2019), which is completely inapposite on the facts because there no one had actually lost their use and enjoyment of the home. However, Plaintiffs do plead that it would have paid for the interest with cash. (Compl. ¶ 49-50). Highland's choice to disbelieve this allegation is not relevant here.

Turning to tortious interference. The elements are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Because Highland's entire premise for dismissing Plaintiffs' tortious interference claim is predicated on the non-existence of an enforceable contract and/or judicial estoppel, Plaintiff's tortious interference claim likewise survives. Plaintiffs' tortious interference claim survives for

another reason: the self-dealing and misleading statements by Highland as to the value of HarbourVest, which enabled it to circumvent the contractual duties, and the right of first refusal was a willful interference with Holdco's rights under the Company Agreement. There is no motion suggesting that Holdco did not allege that it suffered an injury due to the failure to be offered the HarbourVest interest and lose control of HCLOF to Highland. Nothing in the record states that Plaintiffs conceded that the HarbourVest sale did not violate the Company Agreement.

### D. PLAINTIFFS HAVE PLED A CLAIM FOR NEGLIGENCE

Highland's entire argument for dismissal of the negligence cause of action is incorporating its other arguments. But this is a waiver because it has not articulated any basis for dismissal and has not shown which elements have not been met. First, under long-established Texas law, the elements of a negligence claim are: (a) a legal duty owed by one person to another; (b) breach of that duty; and (c) damages proximately caused by the breach. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Here, the Motion should be denied because the elements have all been pled. *See* Compl. ¶ 103-112. As argued before, the Advisers Act imposes a duty of care and loyalty under § 206(4). Even if Highland's misleading statements were unintentional, and/or its disclosure failures were unintentional, they were doubtlessly in violation of the standard of care, and Highland makes no argument to the contrary.

Highland's attempt to argue that the Plan exculpation precludes this claim is a non-starter. It was raised previously, meaning it is waived under Rule (g) and (h) and therefore should be stricken. Moreover, the duty of care here is a *federally imposed duty* which is *unwaivable* under 15 U.S.C. § 80b-15(a) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or with any rule, regulation, or order thereunder shall be void."). No case undersigned could find—and no case cited by Highland—makes an

exception for a Chapter 11 debtor to be able to violate the securities laws with impunity.

## E.  MOTION TO DISMISS RICO CLAIM UNDER RULE 41

Plaintiffs respectfully dismiss the RICO claim under Rule 41(a) to the extent such a claim is revealed to have existed under non-securities bases. Because Highland has conceded that Plaintiffs' claims are actionable under the federal securities laws and the Advisers Act, and has cited same as a basis for dismissing the RICO claim, Highland is precluded and estopped from denying the violations of the Securities Laws and the Advisers Act. As such, to the extent that other, non-securities law violations may give rise to RICO violations, Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.

## F.  HIGHLAND'S REQUEST FOR FEES FAILS

Defendants' oblique request for fees is baseless. Absent a contract or law shifting the responsibility for fees, a party is expected to bear their own fees in litigation. *See Fisk Elec. Co. v. DQSI, L.L.C.*, 740 F. App'x 399, 401-02 (5th Cir. 2018). This is as true for a successful defendant as it is for a successful plaintiff. *Id*. Here, no contract or law provides for attorneys' fees to even a prevailing defendant. Therefore, no fees may be awarded.

## V.

## <u>MOTION IN THE ALTERNATIVE FOR LEAVE TO AMEND</u>

Plaintiffs respectfully ask for leave to amend in the alternative to cure any pleading deficiencies that the Court determines exist. A court's discretion to deny leave is severely limited by the bias of Rule 15(a) favoring amendment. *See Dussouy v. Gulf Coast Invest. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend "should not be denied 'unless there is a *substantial reason* to do so.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (emphasis added) (quoting *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

Amendment would not be futile because—to the extent necessary under Rules 8 or 9(b)—Plaintiffs could add more detail, if necessary, on the representations and falsity, and on the allegations claimed to be deficient. The balance between Rule 8 and Rule 9(b) is not always perfect on the first try, and Plaintiffs should not be dismissed for want of an opportunity to cure any deficiencies. Plaintiffs could further add, if necessary, other acts by Highland wherein it has sold assets and used the funds to pay off its own creditors, which would buttress the allegations that this is not an isolated set of facts. Plaintiffs would further suggest that upon amendment, Plaintiffs would plead that there is a pattern of violations of the Advisers Act by Highland over the course of the past year which  threatens to continue unabated into the future because Highland has clearly decided to shirk fiduciary duties to the investors in its funds.

## VI.

## CONCLUSION

For the foregoing reasons, the successive 12(b)(6) motion should be denied.

Dated:  November 18, 2022                    Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/  Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
     jeb@sbaitilaw.com

*Counsel for Plaintiffs*