UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
|    Debtor, | § | |
| ---------------------------------------------- | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| and CLO HOLDCO, LTD., | § | |
| | § | |
|    Plaintiffs/Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-3129-B |
| | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
|    Defendant/Appellee. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Appellants The Charitable DAF Fund, L.P. (Charitable DAF) and CLO

Holdco, Ltd. (CLO Holdco)'s appeals from the bankruptcy court's Motion to Dismiss Order and

Motion to Stay Order. For the reasons that follow, the Motion to Dismiss Order is **REVERSED** and

**REMANDED**. The Motion to Stay Order is **AFFIRMED**.

## I.

## BACKGROUND[1]

These are consolidated appeals from an adversary proceeding in a bankruptcy case. The Debtor, Highland Capital Management, L.P. (HCM), filed for Chapter 11 bankruptcy on October 16, 2019, in the United States Bankruptcy Court for the District of Delaware and that court transferred venue to the United States Bankruptcy Court for the North District of Texas. *In re Highland Cap. Mgmt. L.P.*, 2022 WL 780991, at *1 (Bankr. N.D. Tex. Mar. 11, 2022).

In 2017, Charitable DAF—through the holding entity CLO Holdco—purchased 49.02% of the available shares of Highland CLO Funding, Ltd. (HCLOF) based upon investment advice from HCM.[2] Doc. 9, Appellant's Br., 5. Another entity, HarbourVest, acquired 49.98% of the HCLOF shares and HCM and its employees acquired the remaining 1%. *Id.*; Doc. 21, Appellee's Br., 7. A company agreement (the HCLOF Member Agreement) governing the rights and obligations of HCLOF shareholders purportedly prohibited a member from "sell[ing] shares to another member without first providing all other members the right to purchase a pro rata portion thereof at the same price" (the Right of First Refusal). Doc. 9, Appellant's Br., 6. The value of the HCLOF shares fluctuated throughout the bankruptcy proceedings; the actual value is one of the issues giving rise to some of Charitable DAF's causes of action. *Id.* at 6–7; R. at 551–65.

---

[1] Because these are two consolidated appeals with separate appellate records, the Court indicates when it switches between the separate appellate records by footnotes. The Appellant's Brief and record cites in this Background section are in Doc. 6 in case No. 3:22-CV-0695-B. Appellee's Brief, which was filed after consolidation, is in case No. 21-CV-3129-B.

[2] Except where otherwise stated, the Court refers to Charitable DAF and CLO Holdco collectively as Charitable DAF because Charitable DAF controls and owns CLO Holdco and both entities have the same director. Doc. 21, Appellee's Br., 7 & n.6. Appellant Charitable DAF does not dispute this relationship and imputes the actions of CLO Holdco to itself throughout Appellant's brief. *See* Doc. 9, Appellant's Br., 13–14 (imputing the Objection to both Appellants).

During the bankruptcy, "HarbourVest filed proof of claims against [HCM] totaling over $300 million, notionally." Doc. 9, Appellant's Br., 6. As part of the settlement for these claims, "HarbourVest agreed to sell its interest in HCLOF to [HCM]." *Id.* at 8. HCM would then have majority ownership of HCLOF. *See id.* at 5; Doc. 21, Appellee's Br., 7. "CLO Holdco filed an objection to the settlement, contending that the HCLOF Member Agreement entitled [CLO] Holdco to a Right of first Refusal" (the Objection). Doc. 9, Appellant's Br., 8. At the beginning of the settlement hearing (the Rule 9019 Settlement Hearing), CLO Holdco withdrew its Objection. Doc. 21, Appellee's Br., 10–11; R. at 6269–70. After overruling the remaining objections from the other parties, the bankruptcy court approved the HarbourVest Settlement. Doc. 9, Appellant's Br., 9.

This Adversary Proceeding stems from the complaint filed by Appellants on April 12, 2021, in this Court in *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P., et al.*, Case No. 3:21-CV-0842-B. *Id.*; Complaint, *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, No. 3:21-CV-0842-B (N.D Tex. Apr. 12, 2021), Doc. 1. On September 20, 2021, this Court referred that case to the bankruptcy court for "docket[ing] as an Adversary Proceeding associated with the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P." Order of Reference, *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, No. 3:21-CV-0842-B (N.D. Tex. Sept. 20, 2021), Doc. 64. During the Adversary Proceeding, Appellants moved for a stay of the case (the Motion to Stay) and Appellees moved to dismiss the case (the Motion to Dismiss). R. at 1634–67, 3248–52. On November 23, 2021, the bankruptcy court held a hearing on the Motion to Stay and Motion to Dismiss. *Id.* at 5951. The bankruptcy court denied the Motion to Stay at the hearing and later entered an order granting the Motion to Dismiss, dismissing all causes of action with prejudice. *Id.* at 5977; *In re Highland*, 2022 WL 780991, at *12. Appellants promptly appealed both orders; this

Court consolidated the appeals. *In re Highland Cap. Mgmt.*, 2022 WL 2193000, at *1, *4 (N.D. Tex. June 17, 2022). While the appeals were pending, the Fifth Circuit affirmed the HCM reorganization plan (the Plan), but vacated the exculpatory provision "as to all parties *except* [HCM], the Committee and its members, and the Independent Directors for conduct within the scope of their duties." *Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.*, 2022 WL 3571094, at *14 (5th Cir. Aug. 19, 2022).

The appeals are fully briefed and ripe for review. The Court considers them below.

## II.

## LEGAL STANDARDS

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because the district court functions as an appellate court in this scenario, it applies the same standards of review that federal appellate courts use when reviewing district court decisions. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992) (citations omitted).

A.    *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiffs complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

B.    *Motion to Stay*

Incidental to a court's inherent power to control its docket is the power to stay proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A court considers four factors when determining whether to stay a case pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors of the traditional standard are the most critical." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken*, 556 U.S. at 434).

## III.

## ANALYSIS

The Court begins with the appeal of the Motion to Dismiss Order because it can only review the appeal of the Motion to Stay Order if it reverses the bankruptcy court's decision to dismiss the causes of action in the adversary proceeding. *In re Highland*, 2022 WL 2193000, at *2. Finding reversal of the Motion to Dismiss Order warranted, the Court then reviews the appeal of the Motion to Stay Order.

A.    *Appeal of the Motion to Dismiss Order*[3]

Charitable DAF raises three issues in its appeal of the Motion to Dismiss Order: (1) whether the bankruptcy court "commit[ted] reversible error by sua sponte dismissing this action on the basis of collateral estoppel without giving notice and an opportunity to respond"; (2) whether collateral estoppel barred Charitable DAF's claims when the claims were adjudicated in a Rule 9019 Settlement Hearing; and (3) whether the bankruptcy court's application of judicial estoppel erroneously relied on a transcription error, an ostensibly inconsistent position of Charitable DAF, or a failure to conclude that "subsequently discovered evidence . . . render[ed] the ostensible inconsistency 'inadvertent.'" Doc. 9, Appellant's Br., 2.

An appellate court reviews a dismissal under Rule 12(b)(6) de novo. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 868 (5th Cir. 2000). "[T]he application of collateral estoppel is" also reviewed de novo. *Id.* (quoting *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997)). However, "a [bankruptcy] court's decision to invoke the equitable doctrine of judicial estoppel [is reviewed] for abuse of discretion." *Cox v. Richards*, 761 F. App'x 244, 246 (5th Cir. 2019) (citing

---

[3] For this appeal, the record and document citations are in case No. 3:22-CV-0695-B. However, Appellee's Brief is in case No. 21-CV-3129-B.

*United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015)). Therefore, this Court reviews the bankruptcy court's sua sponte invocation of collateral estoppel de novo, the application of collateral estoppel de novo, and the invocation of judicial estoppel for abuse of discretion. The Court addresses each in turn below.

    1.    <u>Sua Sponte Dismissal</u>

The bankruptcy court dismissed Charitable DAF's claims with prejudice based on collateral estoppel—even though neither party raised the issue "per se"—finding their res judicata arguments relevant to the issue. *In re Highland*, 2022 WL 780991, at *7. The Court first considers whether the sua sponte application was proper.

Charitable DAF challenges the bankruptcy court's sua sponte invocation of collateral estoppel to dismiss its claims. Doc. 9, Appellant's Br., 11–12. Specifically, Charitable DAF argues that the bankruptcy court could "only do so if the 'procedure employed is fair'—that is, if prior notice is given with adequate time for the plaintiff to prepare a response." *Id.* at 12 (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177–78 (5th Cir. 2006)). The failure to provide "notice and an opportunity to dispute the claimed bases for dismissal is reversible error," according to Charitable DAF. *Id.*

The Court disagrees. The Fifth Circuit has recognized two instances when a court may dismiss a case sua sponte on the basis of collateral estoppel: when (1) "both actions were brought in courts of the same district" or (2) "all of the relevant facts are contained in the record and . . . uncontroverted." *OneBeacon Am. Ins. Co. v. Barnett*, 761 F. App'x 396, 399 (5th Cir. 2019) (first quoting *Trammell Crow Residential Co. v. Am. Prot. Ins. Co.*, 574 F. App'x 513, 522 (5th Cir. 2014); and then quoting *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001)). This case easily

fits into the first category because all of the proceedings at issue took place in the bankruptcy court before the same judge. *See In re Highland*, 2022 WL 780991, at *7 (relying on the former category to dismiss the case). Thus, the bankruptcy court did not err by raising the collateral estoppel issue sua sponte.

This case is unlike the *Carroll* case cited by Charitable DAF, which did not involve collateral estoppel. 470 F.3d 1171. In *Carroll*, the Fifth Circuit held that a court may dismiss a case sua sponte under Federal Rule of Civil Procedure 12(b)(6) if the "procedure employed is fair[,]" which requires "both notice of the court's intention and an opportunity to respond." *Id.* at 1177 (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). The district court erred by not providing "notice or opportunity to be heard" and "did not even . . . mention [some of the dismissed] claims in its order of dismissal." *Id.*

This case is more akin to *McIntyre v. Ben E. Keith Co.* where the Fifth Circuit upheld the district court's sua sponte raising of the issue of res judicata to dismiss the case under Rule 12(b)(6). 754 F. App'x 262, 265 (5th Cir. 2018). In *McIntyre*, the plaintiff's "Civil Rights Act and FLSA actions were brought before the same federal district court." *Id.* Because the latter action closely resembled the former action, the Fifth Circuit found no reversible error with the district court's raising the issue of res judicata sua sponte. *Id.*

First, dismissal for failure to state a claim like in *Carroll* and dismissal for collateral estoppel as in the instant case are conceptually and procedurally different. In the former, the plaintiff is in the process of attempting to "allege[] [their] best case," *Bazrowx*, 136 F.3d at 1054, while collateral estoppel occurs after a plaintiff "alleged [their] best case" and fully litigated the issue. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Put more succinctly, collateral estoppel eliminates "unnecessary

judicial waste" from repeated attempts at alleging the best case. *Arizona v. California*, 530 U.S. 392, 412 (2000) (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Second, the parties addressed res judicata during oral argument and in their pleadings before the bankruptcy court. While res judicata is not collateral estoppel, it is closely related. *Hous. Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) ("[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion."). Thus, the bankruptcy court employed a fair procedure by allowing the parties to litigate the issues, including res judicata, before dismissing the case sua sponte. *See generally Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("District courts may, for appropriate reasons, dismiss cases *sua sponte*.").

The Court next considers whether the bankruptcy court's substantive application of collateral estoppel was proper.

2.    Collateral Estoppel

"Collateral estoppel prevents litigation of an issue when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'"[4] *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013) (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)). "Relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *In re Southmark Corp.*, 163 F.3d at 932.

Charitable DAF attacks each element of collateral estoppel, so the Court addresses each

---

[4] Appellant lists a fourth element occasionally referenced by the Fifth Circuit—"there is no special circumstance that would make it unfair to apply the doctrine"—but the Court finds no reason to address this possible fourth element in this case. *See In re Southmark Corp.*, 163 F.3d 925, 932 n.9 (5th Cir. 1999) (declining to apply the fourth element because appellant "failed to support it factually").

element individually.

        *i.    Identical issue*

The bankruptcy court found "(a) consideration of the value that the estate was both receiving and paying, as well as (b) the potential existence of a 'Right of First Refusal' . . . [were] the gravamen of [Charitable DAF's] Complaint." *In re Highland*, 2022 WL 780991, at *9 (emphasis omitted). During the settlement hearing, the bankruptcy court had to determine whether the HarbourVest Settlement "was 'fair and equitable' and in the 'best interests of creditors,' and whether it was the 'product of arms-length bargaining, and not of fraud or collusion[.]'" *Id.* at *8. This determination entailed "arguments and evidence regarding the methodology for the valuation of the HCLOF interest and the existence or non-existence of a 'Right of First Refusal.'" *Id.*

Charitable DAF argues that the issues are not identical because the Objection "only addressed whether HarbourVest . . . had performed all conditions precedent to being able to transfer the interest to Highland *as another co-investor*" and did not present an identical claim "for breach of the HCLOF [Member] Agreement" and associated damages. Doc. 9, Appellant's Br., 13–14. Further, "even if this one contract issue was fully . . . litigated," only the second cause of action in Charitable DAF's complaint arguably parallels that issue, according to Charitable DAF—the others are distinct. *Id.* at 14–15. Charitable DAF contends that these non-contract causes of action rely on evidence that was not known at the Rule 9019 Settlement Hearing, "stem from events that either occurred post-hearing, or were not discovered until after the hearing." *Id.* at 15.

The Court finds the issues are identical. CLO Holdco's Objection specifically argued:

> Harbourvest has no authority to transfer its interests in HCLOF without first complying with the Right of First Refusal. The only way to effectuate such a transfer without first providing other members the Right of First Refusal is an intentionally

inaccurate interpretation of the Member Agreement's contractual provisions that would render specific passages redundant and meaningless.

R. at 4730. The bankruptcy court also heard argument and testimony from Seery, HCM's chief executive and chief restructuring officer, and Pugatch, a managing director of HarbourVest, about the valuation of HCLOF's assets at the settlement hearing. *Id.* at 6273, 6292, 6303–05 ("The twenty-two and a half [million] is the current—actually, the November value of HCLOF—the HarbourVest interests in HCLOF."), 6358, 6374 ("The current value is right around $22-1/2 million.").

In the Original Complaint, Charitable DAF brought five causes of action: breach of fiduciary duties, breach of the HCLOF Member Agreement, negligence, RICO, and tortious interference. *Id.* at 551–65. The breach of fiduciary duties and negligence causes of action center around the alleged concealment of the rising value of HCLOF's assets and failing to offer the purchase of the assets to CLO Holdco or Charitable DAF before offering to HCM. *Id.* at 553–55, 559–60. The breach of the HCLOF Member Agreement cause of action encompasses the Right of First Refusal in the agreement. *Id.* at 558–59. The RICO cause of action alleges that HCM used mail and wire fraud "to obtain or arrive at valuations of the HCLOF interests," and "conceal[ ] the true value of the HCLOF interests." *Id.* at 560–64. Lastly, the tortious interference cause of action stems from HCM's alleged interference with CLO Holdco's Right of First Refusal in the Member Agreement and "misrepresenting the fair market value" of HCLOF's assets. *Id.* at 564–65. In sum, all of these causes of action involve either the valuation of HCLOF or the Right of First Refusal, so the issues are the same as those before the bankruptcy court at the Rule 2019 Settlement Hearing.

     *ii.*   *Actually Litigated*

The bankruptcy court found the same arguments were also actually litigated, reasoning:

> The Bankruptcy Court would never have approved the HarbourVest Settlement if it thought the value being exchanged was not fair, or if it thought the HCLOF Interests could not be transferred and that someone might later sue the Debtor, claiming the Transfer was improper. All parties had the chance to argue and present evidence about this. The Bankruptcy Court made a ruling based on the evidence and argument.

*In re Highland*, 2022 WL 780991, at *9.

Charitable DAF argues that because the Objection was withdrawn and no one objected to the withdrawal, the issue asserted therein was not litigated. Doc. 9, Appellant's Br., 16. Additionally, it claims the Rule 9019 Settlement Hearing is not a mini-trial and, therefore, cannot serve as an opportunity for a party to litigate their claims. *Id.* at 17–18 (citing *Off. Comm. of Unsecured Creditors v. Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 541 (5th Cir. 2015)).

An issue is not actually litigated and, thus, precluded unless the legal standard in the prior action mirrors the legal standard of the latter action. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995) (citations omitted). The bankruptcy court approved the HarbourVest Settlement after applying the *Jackson Brewing* test, which considers:

> (1) the probability of success in litigating the claims subject to the Settlement Agreement, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise, including: (i) the best interests of the creditors, with proper deference to their reasonable views, and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

R. at 5568; *see also In re Highland*, 2022 WL 780991, at *8 (quoting *Off. Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015)). Stated more succinctly, when faced with a settlement, the bankruptcy court ensures the "compromise is truly 'fair and equitable' and 'in the best interest of the estate.'" *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th

Cir. 1980) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* (*TMT Trailer*), 390 U.S. 414, 424 (1968)).

However, in the context of litigating actual claims—such as those asserted by Charitable DAF—a court applies a preponderance of the evidence standard, not the probability of success standard from *Jackson Brewing. Copeland*, 47 F.3d at 1423; *In re Zale Corp.*, 62 F.3d 746, 766 n.60 (5th Cir. 1995) ("We also note for future reference that the legal standard in a settlement hearing differs from that applicable in an adversary proceeding or state court trial . . . . Consequently, we doubt that the findings of the bankruptcy court in a settlement hearing would have preclusive effect in adversary proceedings or state court trials."). *See generally Weaver v. Aquila Energy Mktg.*, 196 B.R. 945, 957 (S.D. Tex. 1996) ("[S]ettlement hearings and preference actions involve the application of different legal standards."). "Examining whether a particular settlement is fair or equitable and in the best interest of the estate and creditors is a different inquiry, driven by different policies, than litigation of the actual claim." *Copeland*, 47 F.3d at 1423. While the issues of the Right of First Refusal and the valuation of HCLOF were raised in the Rule 9019 Settlement Hearing, the parties did not fully litigate the issues as one would at trial, and the bankruptcy court did not resolve the issues according to a preponderance of the evidence standard. Because the bankruptcy court applied a legal standard in the Rule 9019 Settlement Hearing that is inapplicable to the adjudication of Charitable DAF's causes of action, the issues were not actually litigated in the Rule 9019 Settlement Hearing and collateral estoppel does not apply.[5] The Court **REVERSES** the bankruptcy court on this issue.

---

[5] Having found the second element of collateral estoppel unmet, the Court need not address the third element—necessity of the previous determination to the prior decision.

3.      <u>Judicial Estoppel</u>

The bankruptcy court found the elements of judicial estoppel met and barred the second and fifth causes of action, which rely on the Right of First Refusal. *In re Highland*, 2022 WL 780991, at *12. The Court now addresses whether judicial estoppel applies to Charitable DAF's second and fifth causes of action.

Judicial estoppel is an equitable common law doctrine aimed at preventing a party from asserting an inconsistent legal position from a previous proceeding. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *Id.* (alteration in original) (quoting *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988)). A court examines three criteria when determining the applicability of judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

Charitable DAF raises arguments for each of the judicial estoppel elements, so the Court addresses each element below.

       i.      *Inconsistent legal position*

Charitable DAF argues that the bankruptcy court's determination relies on a transcription error that amounted to an admission of HCM's compliance with the Right of First Refusal. Doc. 9, Appellant's Br., 22–23. The corrected transcript makes clear that no admission was made on behalf of CLO Holdco, according to Charitable DAF. *Id.* at 23–24.

The relevant portion of the original transcript reads:

> In response to Mr. Morris, I'm not going to enter into a stipulation on behalf of my client, **but** the Debtor is compliant with all aspects of the contract. We withdrew our objection, and we believe that's sufficient.

R. at 6280. The corrected transcript reads:

> In response to Mr. Morris, I'm not going to enter into a stipulation on behalf of my client **that** the Debtor is compliant with all aspects of the contract. We withdrew our objection, and we believe that's sufficient.

Doc. 9-1, Appellant's Br. Ex. A, 4.

Accepting this verison of the record, CLO Holdco refused to "enter into a short stipulation on the record reflecting that the Debtor's acquisition of HarbourVest's interests in HCLOF is compliant with all of the applicable agreements between the parties." *Id.*; R. at 6280. However, moments before this, CLO Holdco withdrew its Objection premised on the Right of First Refusal stating:

> CLO Holdco has had an opportunity to review the reply briefing, and after doing so has gone back and scrubbed the HCLOF corporate documents. Based on our analysis of Guernsey law and some of the arguments of counsel in those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as Trustee for CLO Holdco, to withdraw the CLO Holdco objection based on the interpretation of the member agreement.

R. at 6269–70. The bankruptcy court's decision rests primarily on this earlier withdrawal of the Objection and only later buttresses its argument with the then-unknown transcription error. *In re Highland*, 2022 WL 780991, at *11 (following discussion of the withdrawal of the Objection with "[i]f that weren't enough" before mentioning the then-unknown transcription error). Thus, if the earlier withdrawal—without the transcription error—satisfies the first element of judicial estoppel then the bankruptcy court did not commit any error even if it referenced an incorrect transcription of the latter exchange.

The Court finds the bankruptcy court did not err in finding the first element of judicial estoppel. CLO Holdco made clear in the withdrawal of its objection that it no longer disputed the other parties' interpretation of the Right of First Refusal, which now forms the basis of Charitable DAF's second and fifth causes of action. *See* R. at 6269–70. Thus, the withdrawal of the objection put CLO Holdco on the opposite side of the legal argument that Charitable DAF now makes in its second and fifth causes of action. The first element of judicial estoppel is established because Charitable DAF has taken inconsistent positions in separate proceedings.

ii.    *The bankruptcy court accepted the prior position*

The bankruptcy court solely relied on the withdrawal of the Objection to find the second element of judicial estoppel established. *In re Highland*, 2022 WL 780991, at *12. In the words of the bankruptcy court, it "perceived [this objection] as one of the major arguments that was relevant to the HarbourVest Settlement." *Id.* "The [b]ankruptcy [c]ourt relied upon that withdrawal of CLO Holdco's objection in making the determination to approve of the HarbourVest Settlement and, specifically, that Highland would not be running afoul of any obligation in entering into the HarbourVest Settlement." *Id.*

Charitable DAF argues that there is no acceptance by the bankruptcy court of a prior position because without the transcription error, there is no admission and no inconsistent position. Doc. 9, Appellant's Br., 25–26. Further, it contends that the withdrawal of the Objection is not the equivalent of stating the Right of First Refusal causes of action are meritless. *Id.* at 26–27.

The bankruptcy court did not err in finding the second element of judicial estoppel met because it necessarily relied on the change in CLO Holdco's assessment of its Objection. The Right of First Refusal created a major obstacle to approval of the HarbourVest Settlement. When CLO

Holdco withdrew its Objection based on the Right of First Refusal, the Court had to accept CLO Holdco's position that the Right of First Refusal no longer posed an obstacle to the HarbourVest Settlement. Thus, the Court finds no error by the bankruptcy court for the second element of judicial estoppel.

*iii.     Inadvertence of Charitable DAF*

The bankruptcy court did not examine the inadvertence of Charitable DAF in asserting inconsistent legal positions. *See In re Highland*, 2022 WL 780991, at *12.

Charitable DAF argues that it did not know the facts for several of its claims until after the settlement hearings, so it could not have asserted these claims at the hearing. Doc. 9, Appellant's Br., 27. Charitable DAF relies on the allegations surrounding the valuations of the HCLOF assets and the alleged acts violating the RICO statutes. *Id.* at 27–29. Additionally, the bankruptcy court did not address the inadvertence element for judicial estoppel and a failure to apply the correct legal standard is reversible error, Charitable DAF contends. Doc. 9, Appellant's Br., 27; Doc. 27, Appellant's Reply, 3–4.

The Court agrees with Appellant's last argument. A court abuses its discretion by applying the wrong legal standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Def. Distrib. v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). And the misapplication of a legal standard is reviewed de novo. *In re Woerner*, 783 F.3d 266, 270–71 (5th Cir. 2015). By not addressing the third element of judicial estoppel, the bankruptcy court applied the wrong legal standard. The Fifth Circuit implicitly recognized this third element—inadvertence—in *In re Coastal Plains, Inc.*, 179 F.3d at 206, 210, which the bankruptcy court cited for its legal standard. *In re Highland*, 2022 WL 780991, at *11. The Fifth Circuit has since clarified that "[t]his circuit . . . recognizes *three* particular requirements"

- 17 -

for judicial estoppel. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008) (emphasis added). Because the bankruptcy court did not address the inadvertence element in its order dismissing Charitable DAF's second and fifth causes of action, the bankruptcy court abused its discretion. While the district court finds no issue in the bankruptcy court's analysis of the first two elements of judicial estoppel, the bankruptcy court did not address this third element, warranting remand for determination by the bankruptcy court whether Charitable DAF acted inadvertently to change its legal position.

### 3.    Leave to Amend

Charitable DAF requested leave to amend its complaint in its response to the motion to dismiss, R. at 2272–73, which the bankruptcy court denied by dismissing all claims with prejudice. *In re Highland*, 2022 WL 780991, at *12. The Court need not address this argument because, upon remand, the bankruptcy court will have the opportunity to reassess Charitable DAF's claims and determine whether amendment should be allowed under Federal Rule of Civil Procedure 15(a). *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (listing factors a court considers when determining whether to allow amendment of the complaint).

### C.    *Appeal of the Motion to Stay Order*[6]

Appellant Charitable DAF raises one issue on appeal of the Motion to Stay Order: "Did the bankruptcy court err by proceeding with the case rather than staying it" when Charitable DAF was enjoined "from litigating any action against Appellee [HCM]"? Doc. 11, Appellant's Br., 2. The bankruptcy court denied Charitable DAF's Motion to Stay All Proceedings and the subsequent Amended Motion to Stay All Proceedings, reasoning:

---

[6] For this appeal, the record and document citations are in case No. 3:21-CV-3129-B.

> I just don't think that you have shown that, you know, either the exculpation clause
> or the injunction provisions of the plan somehow tie your hands in arguing the
> 12(b)(6) motion, defending against the 12(b)(6) motion today or I just think that
> your arguments reflect, frankly, a misunderstanding of how the injunction language
> and exculpation language applies here.

R. at 2087; *see also id.* at 4–5.

On appeal, Charitable DAF argues that the bankruptcy court erred in its denial of the motion for a stay because the Plan Confirmation Order's injunction prohibited Charitable DAF from participating in the case, "terminat[ing] any case or controversy and stripp[ing] the bankruptcy court of jurisdiction." Doc. 11, Appellant's Br., 7. Accordingly, "[t]he bankruptcy court could only stay the case pending the [appeal of the Plan Confirmation Order's injunction], or dismiss the case as barred by the injunction[,]" Charitable DAF contends." *Id.* at 9.

As noted above, the Fifth Circuit affirmed the Plan in all respects except one and specifically affirmed the injunction. *Highland*, 2022 WL 3571094, at *13–14. The injunction in the Plan provides that "all Enjoined Parties are and shall be permanently enjoined . . . from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind . . . against or affecting the Debtor or the property of the Debtor." R. at 2401. And the term Enjoined Parties includes "(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor [and] . . . (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case." *Id.* at 2358.

Relatedly, the Plan exculpates HCM[7] "from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of [execution of the Plan]." *Id.* at 2398. However, this exculpation provision[8] does "not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) [other specific entities actions]." *Id.* at 2398–99.

The bankruptcy court did not abuse its discretion[9] in denying the motion for a stay of the case. The bankruptcy court found that the Plan's injunction and exculpation provisions—*which it approved*—did not prevent Charitable DAF from pursuing its causes of action. *Id.* at 2087. In effect, the bankruptcy court held that Charitable DAF could continue to litigate its causes of action and the Court agrees. *See id.* Just like the bankruptcy court, this Court does not see how the injunction and exculpation provisions prohibit Charitable DAF from participating in the below action. The exculpation provision permits Charitable DAF to bring claims against HCM for "bad faith, fraud,

---

[7] The Plan makes clear that the term Exculpated Party does not include Charitable DAF. R. at 2359 ("Exculpated Parties" means, collectively, (i) the Debtor . . . provided, however, that, for the avoidance of doubt, none of . . . the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities) . . . is included in the term 'Exculpated Party.'").

[8] Subsequently to this appeal, the Fifth Circuit vacated a portion of the exculpation provision. *Highland*, 2022 WL 3571094, at *12. The Fifth Circuit held that "the exculpation of certain non-debtors . . . was unlawful" so the court "str[uck] all exculpated parties from the Plan except for [HCM], the Committee and its members, and the Independent Debtors." *Id.* Charitable DAF brings its causes of action against HCM, so what remains of the exculpation provision still applies to this case. *See id.*

[9] The parties disagree on whether this Court reviews the denial of the stay for abuse of discretion or de novo. Doc. 11, Appellant's Br., 6 ("Questions of law are reviewed de novo."); Doc. 16, Appellee's Br., 2 ("The Court reviews the bankruptcy court's order for abuse of discretion."). Charitable DAF does not pursue this argument in its Reply, so this argument is considered waived, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006), as well as incorrect. *See Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (citing *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992)) ("We review a district court's denial of a stay pending appeal for abuse of discretion.").

gross negligence, criminal misconduct, or willful misconduct" and Charitable DAF's causes of action—breach of fiduciary duty, breach of contract, negligence, and RICO—appear to fit within these categories of claims. *Id.* at 490–504, 2398–99. Further, Charitable DAF continued to participate by responding to HCM's motion to dismiss and participating in the hearing regarding the motion to dismiss. *See* Section III(A) *supra*. Lastly and importantly, Charitable DAF did not even attempt to address the traditional stay elements. R. at 2087 ("I guess one might say the traditional four-factor test for a stay of a proceeding has really not been the subject of the argument here for a stay."). Without argument on the factors for a stay, this Court lacks any basis to overturn the bankruptcy court.

The bankruptcy court's Motion to Stay Order is **AFFIRMED**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the bankruptcy court's Motion to Dismiss Order and **AFFIRMS** the bankruptcy court's Motion to Stay Order.

**SO ORDERED**.

**SIGNED: September 2, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 21 -