PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| In re: CHARITABLE DAF FUND, L.P., AND CLO HOLDCO LTD., | Adv. Pro. No. 21-03067-sgj |
| Plaintiffs, | |
| vs. | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., AND HIGHLAND CLO FUNDING, LTD. | |
| Defendants | |

## BRIEF IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT, L.P.'S RESPONSE TO "RENEWED" MOTION TO WITHDRAW THE REFERENCE

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

   I.        There is No Basis for Mandatory Withdrawal of the Reference ........................... 6

        a.     The Motion Is Untimely and Should Be Denied .................................... 7

        b.     The Renewed MTD Does Not Require "Substantial and Material Consideration" of Significant Federal Laws ............................................ 9

        c.     Plaintiffs Cite No Applicable Case Law. ............................................... 14

        d.     Plaintiffs' Additional Arguments Are Meritless. ................................... 15

   II.       The Court Has "Core" Jurisdiction to Adjudicate the Complaint........................ 16

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Affco Invs. 2001 LLC v. Proskauer Rose L.L.P.*,
   625 F.3d 185 (5th Cir. 2010) ....................................................................... 13

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2012) ........................................................................ 14

*Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*,
   485 B.R. 604 (Bankr. W.D. Wash. 2013)..................................................... 12

*Carter v. Schott (In re Carter Paper Co.)*,
   220 B.R. 276 (Bankr. M.D. La. 1998)......................................................... 15

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*
*(In re Highland Cap. Mgmt., L.P.)*,
   2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022) ........................... passim

*City of N.Y. v., Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991) ...................................................................... 7

*Connolly v. Bidermann Indust. U.S.A., Inc.*,
   1996 U.S. Dist. LEXIS 8059 (S.D.N.Y. June 13, 1996) .......................... 7

*Corwin v. Marney, Orton Inv.*,
   788 F.2d 1063 (5th Cir. 1986) ..................................................................... 11

*Drew v. WorldCom, Inc.*,
   2006 U.S. Dist. LEXIS 52318 (S.D.N.Y. July 26, 2006) ......................... 8

*Dugaboy Inv. Tr. v. Highland Cap Mgmt., L.P.*,
   2022 U.S. Dist. LEXIS 172351 (N.D. Tex. Sept. 22, 2022)...................... 10

*Goldstein v. SEC*,
   451 F.3d 873 (D.C. Cir. 2006)............................................................... 9, 10

*Gupta v. Quincy Med. Ctr.*,
   585 F.3d 657 (1st Cir. 2017)...................................................................... 17

*Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*,
   565 B.R. 193 (Bankr. D. N.M. 2017) ......................................................... 15

*Holzhueter v. Groth (In re Holzhueter)*,
   571 B.R. 812 (Bankr. W.D. Wis. 2017)...................................................... 12

*Hupp v. Educ. Credit Mgmt. Corp.*,
   2007 U.S. Dist. LEXIS 68199 (S.D. Cal. Sept. 13, 2007) ....................... 8

*In re AI Copeland Enters., Inc.*,
   991 F.2d 233 (5th Cir. 1993) ..................................................................... 16

*In re Colo. Place L.P.*,
   2002 Bankr. LEXIS 2000 (Bankr. N.D. Tex. Feb. 5, 2002)..................... 17

*In re Fresh Approach, Inc.*,
   51 B.R. 412 (Bankr. N.D. Tex. 1985)......................................................... 7

*In re Harrah's Entertainment*,
   1996 U.S. Dist. LEXIS 18097 (E.D. La. Nov. 26, 1996) ........................................ 13

*In re Highland Cap. Mgmt., L.P.*,
   2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021),
   *aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022) ............................. 3

*In re Nat'l Gypsum*,
   14 B.R. 188 (N.D. Tex. 1991) .................................................................................. 6

*In re New York Trap Rock Corp.*,
   158 BR 574 (S.D.N.Y. 1993) ................................................................................... 8

*In re Pilgrim's Pride Corp.*,
   453 B.R. 691 (Bankr. N.D. Tex. 2011) ................................................................... 17

*In re Rickel & Assoc., Inc.*,
   2003 U.S. Dist. LEXIS 23136 (S.D.N.Y. Dec. 24, 2003) ......................................... 8

*In re SGS Studio, Inc.*,
   256 B.R. 580 (Bankr. N.D. Tex. 2000) ................................................................... 17

*In re Taco Bueno Rests., Inc.*,
   606 B.R. 289 (Bankr. N.D. Tex. 2019) ................................................................... 17

*In re UAL Corp.*,
   386 B.R. 701 (Bankr. N.D. Ill. 2008) ..................................................................... 15

*In re Vicars Ins. Agency, Inc.*,
   96 F.3d 949 (7th Cir. 1996) .................................................................................... 7

*In re Weblink Wireless, Inc.*,
   2003 Bankr. LEXIS 2312 (Bankr. N.D. Tex. Mar. 12, 2003) .................................. 17

*Keach v. World Fuel Servs. Corp, (In re Montreal Me. & Atl. Ry.)*,
   2015 U.S. Dist. LEXIS 74006 (D. Me. June 8, 2015) ............................................. 15

*King v. Skolness (In re King)*,
   624 B.R. 259 (Bankr. N.D. Ga. 2020) .................................................................... 12

*Kirschner v. Dondero (In re Highland Cap. Mgmt., L.P.)*,
   2022 Bankr. LEXIS 1028 (Bankr. N.D. Tex. Apr. 6, 2022)...................................... 6

*Laird v. Integrated Res., Inc.*,
   897 F.2d 826 (5th Cir. 1990) ................................................................................. 10

*Langenkamp v. Culp*,
   498 U.S. 42 (1990) ................................................................................................ 15

*Living Benefits Asset Mgmt. v. Kestrel Aircraft Co. (In re Living Benefits Asset Mgmt.)*,
   587 B.R. 311 (N.D. Tex. 2018, *aff'd* 916 F.3d 528 (5th Cir. 2019) ........................ 12

*Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*,
   2009 U.S. Dist. LEXIS 102134 (N.D. Tex. Oct. 1, 2009),
   *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009) ............................... 7

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
   651 F.3d 268 (2d Cir. 2011) .................................................................................. 13

*Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.),*
    931 F.3d 432 (5th Cir. 2019) ............................................................... 16

*NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.,*
    48 F.4th 419 (5th Cir. 2022) ................................................................ 3

*NexPoint Diversified Real Es. Tr. v. Acis Cap. Mgmt., L.P.,*
    2022 U.S. Dist. LEXIS 142029 (S.D.N.Y. Aug. 9, 2022) .................... 11

*Omega Overseas, Ltd. v. Griffith,*
    2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014) .................... 11

*Rand Energy Co. v. Del Mar Drilling Co. (In re Rand Energy Co.),*
    256 B.R. 712 (Bankr. N.D. Tex. 2000) ................................................. 17

*Reading Co. v. Brown,*
    391 U.S. 471 (1968) ..................................................................... 16, 17

*Robare Grp., Ltd. v. SEC,*
    992 F.3d 468, 472 (D.C. Cir. 2019) ..................................................... 10

*SEC v. Cap. Gains Rsch. Bureau, Inc.,*
    375 U.S. 180 (1963); .......................................................................... 10

*SEC v. Northshore Asset Mgmt.,*
    2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ......................... 9

*SEC v. Trabulse,*
    526 F.Supp.2d 1008 (N.D. Cal. 2007) .................................................... 9

*Sec. Farms v. Int'l Bhd. of Teamsters,*
    124 F.3d 999, 1007 (9th Cir. 1997) ........................................................ 7

*Tillman Enters., LLC v. Horlbeck (In re Horlbeck),*
    589 B.R. 818 (Bankr. N.D. Ill. 2018) ................................................... 12

*Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.),*
    258 F.3d 385 (5th Cir. 2001) ............................................................... 16

*Tradex Glob. Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui),*
    538 B.R. 793 (Bankr. N.D. Cal. 2015) ................................................. 12

*Transamerica Mortg. Advisors v. Lewis,*
    444 U.S. 11 (1979) .............................................................................. 11

## STATUTES

11 U.S.C. § 503(b)(1)(A) ........................................................................ 16

11 U.S.C. § 523(a)(19) ............................................................................ 12

18 U.S.C.A. § 1964(c) ............................................................................ 13

28 U.S.C § 157(d) ............................................................................ passim

28 U.S.C. § 1334 ..................................................................................... 17

28 U.S.C. § 157 ..................................................................................... 4, 7

28 U.S.C. § 157(b) .................................................................................. 17

## OTHER AUTHORITIES

9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] ................................................................................. 7

*Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Release No.
IA-5248; File No. S7-07-18 (July 12, 2019) ......................................................................... 10

*Prohibition on Fraud by Advisers to Certain Pooled Investment Vehicles*, Release No. IA-2628;
File No. S7-25-06 (Aug. 3, 2007) .......................................................................................... 9

DOCS_NY:46770.8 36027/003

Highland Capital Management, L.P., a defendant in the above-captioned adversary proceeding ("Highland"), hereby submits this brief in support of its response (the "Response") to the *Renewed Motion to Withdraw the Reference* [D.I. 128] (the "Motion") filed by plaintiffs The Charitable DAF Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLOH," and together with DAF, "Plaintiffs").[2] In opposition to the Motion, Highland states as follows:

## PRELIMINARY STATEMENT[3]

1.      This Court should deny Plaintiffs' Motion because it is yet another attempt to forum shop, delay adjudication, and waste judicial and estate resources.

2.      On April 12, 2021, Plaintiffs commenced this action in the District Court by filing its (baseless) Complaint. After Highland moved to enforce the reference, Plaintiffs cross-moved for a ruling that mandatory withdrawal of the reference was required under 28 U.S.C § 157(d) and that enforcing the reference would therefore be pointless. On September 29, 2021, notwithstanding Plaintiffs' cross-motion, the District Court enforced the reference and sent this matter to this Court for adjudication.

3.      After referral, Plaintiffs pressed their Stay Motion, and on November 18, 2021, stated that, if their request for a stay were denied, they would file a motion for mandatory withdrawal of the reference. Plaintiffs' Stay Motion was denied, but Plaintiffs, for unknown reasons, did not move to withdraw the reference at that time.

4.      Now, a year after the hearing on the Original MTD and after resolution of Plaintiffs' appeal of the MTD Order, Plaintiffs filed the Motion to withdraw the reference under 28 U.S.C. § 157(d). The Motion is untimely. The Complaint was referred to this Court in September 2021.

---

[2] Concurrently herewith, Highland is filing its *Appendix in Support of Highland Capital Management, L.P.'s Response to Renewed Motion to Withdraw the Reference* (the "Appendix"). Citations to the Appendix are as follows: Ex. #, Appx. #.

[3] All capitalized used but not defined in this Preliminary Statement have the meanings given to them below.

Plaintiffs could have filed a motion to withdraw at that time; they did not and instead adjudicated the Original MTD on the merits in this Court. The MTD Order was remanded in early September 2022. Plaintiffs could have filed a motion to withdraw at that time; they did not. Instead, Plaintiffs waited to file the Motion until a month after Highland filed the Renewed Motion and after all parties had expended significant resources adjudicating the matter in this Court. The Motion also fails on the merits.

5.    *First*, the Complaint does not require substantial and material consideration of non-bankruptcy federal law. Notwithstanding that, Plaintiffs argue mandatory withdrawal is necessary so that the District Court, not this Court, can resolve four fundamental issues: (a) whether Highland owe Plaintiffs a fiduciary duty under the IAA; (b) the scope of such duty and whether breached; (c) remedies and damages for any breach; and (d) whether a violation of the IAA can be a predicate act under RICO. But the foregoing allegations only require application of well-settled federal law, including law from the Supreme Court. None warrant withdrawal.

6.    *Second*, the Bankruptcy Court has jurisdiction to adjudicate the Complaint. The facts underlying the Complaint arose *after* the Petition Date but *prior* to confirmation from Highland's ordinary course operation of its estate. Assuming a viable claim exists, it would be an "administrative expense claim," and this Court has core jurisdiction to adjudicate administrative expense claims.

7.    Ultimately, the Motion is another waste of judicial and estate resources and should be denied as untimely, prejudicial to Highland, and meritless.

## BACKGROUND

8.    On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.    On February 22, 2021, this Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808] (the "Plan").  The Plan became effective on August 11, 2021 [Bankr. Docket No. 2700] (the "Effective Date").[4]

10.    Pursuant to the Plan, this Court expressly retained jurisdiction to "allow, disallow, determine, liquidate … any Claim … including, without limitation, the resolution of any request for payment of any Administrative Expense Claim …."  Plan, Art. XI.[5]

11.    On April 12, 2021, Plaintiffs filed their *Original Complaint* [D.I. 1] (the "Complaint") in the U.S. District Court for the Northern District of Texas (the "District Court"), in which they alleged that the Bankruptcy Court approved settlement with HarbourVest somehow violated the contractual and extra-contractual duties Highland purportedly owed (i) to CLOH as an investor in Highland CLO Funding, Ltd. ("HCLOF") and (ii) to DAF as an advisee under an investment management agreement.  Complaint ¶¶ 56-112.[6]  Highland's alleged misconduct in settling the HarbourVest claim occurred during the last quarter of 2020 and the first quarter of

---

[4] On September 8, 2022, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the Confirmation Order's factual findings and legal conclusions. *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022).

[5] The Plan defines "Administrative Expense Claim," in relevant part, as a:

Claim for costs and expenses of administration of the Chapter 11 Case … pursuant to sections 503(b), 507(a)(2), 507(b) … including … (a) the actual and necessary costs and expense incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor ….

Plan, Art I.B.2.

[6] Plaintiffs subsequently sought to add Mr. Seery as a defendant in violation of two orders entered by this Court. Plaintiffs' actions resulted in this Court holding Plaintiffs, among others, in contempt. *In re Highland Cap. Mgmt., L.P.*, 2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021), *aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022).  The contempt order was affirmed by the District Court, but Plaintiffs have, of course, appealed to the Fifth Circuit.

2021, *i.e.* after the Petition Date but before the Effective Date while Highland was a debtor-in-possession. *Id.* ¶¶ 29-54.

12.     On May 19, 2021, Highland moved for an order to enforce the standing order of reference (Misc. Order No. 33) [D.I. 22] (the "<u>Motion to Enforce</u>") in the District Court arguing that the Complaint asserted claims arising in, arising under, or related to Title 11 and Highland's bankruptcy case.

13.     On May 27, 2021, Highland moved to dismiss the Complaint [D.I. 26] (the "<u>Original MTD</u>").  The Original MTD was fully briefed to the District Court.

14.     On June 29, 2021, Plaintiffs filed their response to the Motion to Enforce [D.I. 36] in which they cross-moved, arguing the Motion to Enforce should be denied because the claims in the Complaint were subject to mandatory withdrawal of the reference, could not be adjudicated in this Court, and that granting the Motion to Enforce would therefore be pointless.  The arguments in Plaintiffs' cross-motion are identical to those in the Motion.

15.     On August 26, 2021, Plaintiffs filed a motion in the District Court to stay all proceedings pending appeal of the Confirmation Order [D.I. 55] (the "<u>Stay Motion</u>"), arguing that the Plan injunction somehow prohibited the prosecution of the Complaint.  The Stay Motion was fully briefed to the District Court.

16.     On September 20, 2021, the District Court—notwithstanding Plaintiffs' cross-motion—granted the Motion to Enforce [D.I. 1] and referred this case to this Court, including the Original MTD, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated as a matter related to the … Bankruptcy of Highland Capital Management, L.P."  This Court docketed the proceeding and set a hearing for November 23, 2021, on both the Original MTD and Stay Motion.

4

17.     On November 18, 2021, five days before the scheduled hearing, Plaintiffs filed—without leave of this Court[7]—an amended motion to stay the proceedings [D.I. 69] and attached a draft motion to withdraw the reference [D.I. 69-1] (the "Proposed Motion").  Plaintiffs said they would file the Proposed Motion if this Court denied the Stay Motion.

18.     At the November 23 hearing, this Court denied the Stay Motion from the bench,[8] finding Plaintiffs' arguments "reflect[ed] frankly, a misunderstanding of how the injunction language … applies here"[9] and that the injunction did not prevent litigation of the Complaint in this Court.  Subsequently, Plaintiffs argued the merits of the Original MTD, including their alleged claims under the Investment Advisers Act (the "IAA") and RICO, to this Court.[10]  Plaintiffs, for reasons known only to them, never filed the Proposed Motion.

19.     On March 11, 2022, this Court granted the Original MTD [D.I. 100] (the "MTD Order") and dismissed the Complaint with prejudice.  *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022).  Plaintiffs appealed the MTD Order to the District Court and that appeal was consolidated with Plaintiffs' appeal of this Court's denial of the Stay Motion.  *See* 3:21-cv-03129-B, Docket No. 20 (N.D. Tex. Jun. 17, 2022).  Both appeals were fully briefed to the District Court. Plaintiffs did not raise 28 U.S.C. § 157(d) in the appeals or otherwise argue that this Court lacked jurisdiction to have entered the MTD Order.

---

[7] Ex. 1, Appx. 12 ("I will say that these last-minute amended motions are not going to be tolerated …. Your firm has already been sanctioned once in this adversary proceeding …. So, you know, I'm just kind of baffled why you would take a chance filing an amended motion without leave or somehow getting it to the attention of the Court or running it by the other parties for their consent to you doing it.")

[8] A formal order denying the Stay Motion was entered on December 7, 2021 [D.I. 81].

[9] Ex. 1, Appx. 30.

[10] Ex. 1, Appx. 65-97.

20.    On September 2, 2022, the District Court remanded the MTD Order to this Court for further proceedings. *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022). The District Court, in the same opinion, affirmed this Court's denial of the Stay Motion. *Id.* at 24-28.

21.    On October 14, 2022, Highland filed its renewed motion to dismiss [D.I. 122] (the "Renewed MTD"). Plaintiffs responded to the Renewed MTD on November 18, 2022 (the "Response") but did not include a statement regarding their consent to entry of final orders or judgments as required by Federal Rule of Bankruptcy Procedure 7012(b).

22.    On November 18, 2022, only after the parties expended significant resources adjudicating the Complaint in this Court did Plaintiffs file the Motion seeking mandatory withdrawal of the reference. Although the Motion is styled as a "renewed" motion, it renews nothing.

## **ARGUMENT**

### I.    **There is No Basis for Mandatory Withdrawal of the Reference**

23.    Under 28 U.S.C. § 157(d), a district court "shall, ***on timely motion*** of a party, so withdraw a proceeding if … resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Assuming a timely motion, mandatory withdrawal is warranted only if a matter requires "substantial and material consideration" and "significant interpretation of federal laws[,]" rather than a "straightforward application of a federal statute to a particular set of facts." *In re Nat'l Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991); *Kirschner v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1028, at *27-28 (Bankr. N.D. Tex. Apr. 6, 2022) (same).

DOCS_NY:46770.8 36027/003

24. Simply asserting federal law is insufficient and mandatory withdrawal only applies when a matter requires something "more than mere application of existing law to new facts." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). "[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at \*6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009).

    *a.*    ***The Motion Is Untimely and Should Be Denied***

25. A motion to withdraw the reference may only be granted if it is "timely." 28 U.S.C. § 157(d). Section 157(d) does not define "timely," but it has been interpreted as requiring a motion be made at the first reasonable opportunity. *See In re Fresh Approach, Inc*., 51 B.R. 412, 415-16 (Bankr. N.D. Tex. 1985) (finding a motion to withdraw the reference untimely when filed sixteen days after the court entered its decision on the matter); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997). ("A motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'"); *Connolly v. Bidermann Indust. U.S.A., Inc.,* 1996 U.S. Dist. LEXIS 8059, at \*8 (S.D.N.Y. June 13, 1996) ("Plaintiff's delay of over eight months renders her motion untimely, and as such it does not meet the threshold requirement set forth in 28 U.S.C. § 157(d)."); 9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] ("[M]otions for mandatory withdrawal must be made as soon as it is apparent that it is necessary for the district court to hear the proceeding").

26. Failure to timely move for mandatory withdrawal is dispositive, especially when that delay would prejudice the non-movant or is an attempt to delay or forum shop. *See Fresh Approach,* 51 B.R. at 415 ("[A] motion to withdraw reference should not be used as a vehicle to

protract litigation and delay controversies.  'If a motion for withdrawal of reference is not timely

made, it will almost certainly be held that the provisions of the second sentence of section 157(d)

have been waived.'") (citations omitted); *see also Hupp v. Educ. Credit Mgmt. Corp*., 2007 U.S.

Dist. LEXIS 68199, at *8-10 (S.D. Cal. Sept. 13, 2007) ("Courts have found a motion to withdraw

the reference untimely when a significant amount of time has passed since the moving party had

notice of grounds for withdrawing the reference or where the withdrawal would have an adverse

effect on judicial economy"); *Drew v. WorldCom, Inc.***, 2006 U.S. Dist. LEXIS 52318, at *8-9

(S.D.N.Y. July 26, 2006) (denying motion to withdraw reference filed eighteen months after

objection to claim, noting "there is no legitimate justification for the length of the delay in this

case," and "the timing of [movants'] motion gives rise to a strong inference that he is attempting

to forum shop").[11]

27.     Here, the Motion is untimely and can only be interpreted as an attempt to forum

shop, delay adjudication, and waste judicial and estate resources.  The Complaint was referred to

this Court on September 20, 2021.  Plaintiffs did not file a motion to withdraw at that time

(although they threatened to file the Proposed Motion), and consequently the parties spent

considerable time and resources adjudicating the MTD Order in this Court on the merits in

November 2021.  Subsequently, the parties spent more time and resources adjudicating the appeal

of the MTD Order.  The MTD Order was remanded to this Court on September 2, 2021.  But

Plaintiffs did not file the Motion until November 18, 2022, after Highland spent more time and

---

[11] *In re Rickel & Assoc., Inc.*, 2003 U.S. Dist. LEXIS 23136, *6 (S.D.N.Y. Dec. 24, 2003) (finding motion to withdraw reference untimely where "the bankruptcy court had devoted substantial resources to the claim," and "defendants [] seek to retrace in the district court substantially the same journey previously taken in the bankruptcy court," noting "the potential prejudice … of having a case dislodged from its steady progression in the bankruptcy court's calendar to be placed on that of the district court."); *In re New York Trap Rock Corp.*, 158 BR 574, 577 (S.D.N.Y. 1993) (finding untimely a motion to withdraw reference filed after a "short" period of three months where "time span was rich with events," and the circumstances strongly indicated forum shopping—"[f]orum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success.").

resources briefing and filing the Renewed MTD.  Instead of timely filing a motion to withdraw the

reference, Plaintiffs allowed Highland (and this Court) to expend substantial time, effort, and

money briefing and arguing this case *in this Court*.  Plaintiffs' belated attempt to now have the

case adjudicated in the District Court is impermissible.  The Motion is untimely and prejudicial to

Highland.  It should be denied on that basis alone.

> **b.**     ***The Renewed MTD Does Not Require "Substantial and Material Consideration"
> of Significant Federal Laws***

28.     Even if the Motion were timely (it is not), the Complaint does not require

"substantial and material consideration" and "significant interpretation of federal laws."  Plaintiffs

attempt to bootstrap themselves into this stringent standard by exaggerating the complexity of their

baseless claims.  But, their claims are simple:  (a)(i) did Highland owe Plaintiffs a fiduciary duty

under the IAA; (ii) what was the nature of that duty and was it violated; and (iii), if violated, what

are the remedies and potential damages and (b) is the alleged securities fraud a predicate act under

RICO?  These are not difficult questions or outside this Court's expertise.

29.     **Fiduciary Duty under the IAA.**  It is well-settled that Section 206 of the IAA

creates a fiduciary duty to an investment adviser's "client" (*i.e.* the person or entity that is the

counterparty to the investment management agreement) but not to an underlying investor in the

"client." *Goldstein v. SEC*, 451 F.3d 873, 881(D.C. Cir. 2006) ("The adviser owes fiduciary duties

only to the fund [*i.e.*, the client], not to the fund's investors … If the investors are owed a duty and

the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest.")[12]

30.     HCLOF is a fund managed by Highland HCF Advisors, Ltd. ("HCFA"), a Highland subsidiary.  CLOH is an investor in HCLOF; DAF is not.  Highland's and HCFA's duties do not run to investors in HCLOF, just to HCLOF itself.  Highland has never had a management agreement or client relationship with CLOH and owes it no fiduciary or other duty.  Highland, at all relevant times, was party to a management agreement with DAF and owed DAF certain duties under that agreement.[13]  This analysis is not complicated and only requires a straightforward application of settled law.

31.     **The Scope of the Fiduciary Duty and Breach.**  An adviser's fiduciary duty is satisfied by disclosure.  "To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship."  *See Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Release No. IA-5248; File No. S7-07-18 (July 12, 2019), Ex. 4, Appx. 170-71.  The law is well-established; includes Supreme Court jurisprudence; is not based solely on interpretation of SEC releases; and was recently opined on by the District Court in one of Mr. Dondero's numerous appeals of this Court's orders.  *See, e.g., SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 191-92 (1963); *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 831-36 (5th Cir. 1990); *Robare Grp., Ltd. v. SEC*, 992 F.3d 468, 472 (D.C. Cir. 2019); *Goldstein*, 451 F.3d at 881; *Dugaboy Inv. Tr. v. Highland Cap Mgmt., L.P.*, 2022 U.S. Dist.

---

[12] *See also SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at *18-20 (S.D.N.Y. May 5, 2008) (dismissing a claim that an investment adviser owed a duty to a fund's investors rather than just the fund); *SEC v. Trabulse*, 526 F.Supp.2d 1008, 1016 (N.D. Cal. 2007) (same); *Prohibition on Fraud by Advisers to Certain Pooled Investment Vehicles*, Release No. IA-2628; File No. S7-25-06 (Aug. 3, 2007), Ex. 2, Appx. 119 (Rule 206(4)-8 "does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law").

[13] Highland and DAF entered into that certain *Second Amended and Restated Investment Advisory Agreement*, effective from January 1, 2017 (the "DAF Agreement").  Ex. 3, Appx. 126-48.  The DAF Agreement terminated on February 28, 2021.

10

LEXIS 172351, at *10-11 (N.D. Tex. Sept. 22, 2022).   Adjudicating this issue only requires

determining if appropriate disclosures were made (which they were).[14]

32.    **Remedies for Breach of Duty.**   Assuming, *arguendo*, that Highland breached its

fiduciary duty to DAF under the IAA, under clear Supreme Court precedent, there is no private

right of action for such breach under Rule 206 of the IAA.  *Transamerica Mortg. Advisors v. Lewis*,

444 U.S. 11, 13-14 (1979) ("[W]e hold there exists a limited private remedy under the Investment

Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other

private causes of action, legal or equitable [on a client]").[15]   There is no unsettled federal law.[16]

33.    **Bankruptcy Courts Apply the IAA.**   Finally, bankruptcy courts routinely analyze

federal securities laws.  In fact, this Court reviewed Plaintiffs' claims earlier this year although it

did not rule on them.  *Charitable DAF Fund*, 2022 Bankr. LEXIS 659, at *39-40 ("[This Court]

---

[14] Exhibit A to the DAF Agreement includes pages of disclosures, including the following: (1) "[Highland] … is [not] precluded from engaging in or owning an interest in. . . investment activities of any kind, whether or not such ventures are competitive with [DAF]" and (2) "[Highland] … may actively engage in transactions in the same securities sought by [DAF] and, therefore, may compete with [DAF] for investment opportunities or may hold positions opposite to positions maintained by [DAF]." Ex. 3, Appx. 142-43.

[15] *See also Corwin v. Marney, Orton Inv*., 788 F.2d 1063, 1066 (5th Cir. 1986) (affirming dismissal of claims under the Advisers Act "because the investors had no private causes of action"); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 2780, at *13 n.23 ("the court notes that the … Supreme Court has held [in *Transamerica*] that there is not a private right of action for damages under the IAA."); *NexPoint Diversified Real Es. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 142029, at *9-10 (S.D.N.Y. Aug. 9, 2022) ("[U]nder the IAA … there is no private right of action to bring a claim pursuant to [Section 206 of the IAA].").

[16] Plaintiffs alleged, for the first time, in their Response to the Renewed MTD that "Section 215 [of the IAA] recognizes a limited private right of action for equitable relief" (even though Section 215 is not mentioned in the Complaint).  Response at 12.  Plaintiffs do not mention Rule 215 in the Motion but will presumably argue it is a basis for mandatory withdrawal of the reference.  It is not.  First, Rule 215 was not pled in the Complaint and cannot be the basis for withdrawal—there is no claim to withdraw.  Second, Rule 215 imposes no fiduciary duty of any kind but simply provides, under clear Supreme Court precedent, "a limited private remedy … to void an investment advisers contract, but … confers no other private causes of action, legal or equitable."  *Transamerica*, 441 U.S. at 24; *see also Corwin*, 788 F.2d at 1066 ("The Investors seek damages, not the voiding of an investment advisers contract, and there is no such private cause of action based on [Section 215]").  That remedy applies only when an advisory agreement was made in violation of any provision of the IAA, not for subsequent breaches.  *NexPoint* , 2022 U.S. Dist. LEXIS 142029, at *10 (Section 215 "'voids a contract only where the contract would be invalid under that principle—that is, where the contract was made illegally or requires illegal performance.'") (quoting *Omega Overseas, Ltd. v. Griffith*, 2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014)).  Here, the contours of Rule 215 (and its lack of applicability to the Complaint) are well-settled and will only require the application of that settled case law to the facts of this case.

will forego addressing the other arguments of Highland …. While this court is inclined to agree with those arguments, the court will refrain from addressing them until such time as any higher court may instruct this court to address them.")  Further, Highland was heavily involved in the bitterly contested bankruptcy of Acis Capital Management, L.P. ("Acis").  *In re Acis Cap. Mgmt., L.P.*, *et al*, Case No. 18-30264-sgj11 (Bankr. N.D. Tex. 2019).  In *Acis*, Highland (then controlled by Mr. Dondero) brought claims *in this Court* alleging Acis was liable to Highland for breach of fiduciary duties under the IAA—nearly identical claims to those in the Complaint.  Ex. 5, Appx. 205-06.

34.     Moreover, 11 U.S.C. § 523(a)(19) requires bankruptcy courts to determine if there were violations of "federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934) …"[17] in connection with discharge.  As part of this analysis, bankruptcy courts look to, among other things, the applicability of the IAA.  *See, e.g., Tillman Enters., LLC v. Horlbeck (In re Horlbeck)*, 589 B.R. 818, 832 (Bankr. N.D. Ill. 2018) ("bankruptcy courts have jurisdiction to determine liability on an underlying securities claim for purposes of § 523(a)(19)" and "liability under § 523(a)(19) cannot be supported by an alleged violation" of the Advisers Act as there is no private remedy or "actionable claim"); *Tradex Glob. Master Fund SPC, Ltd. v. Pui-Yun Chui (In re Pui-Yun Chui)*, 538 B.R. 793, 806-08 (Bankr. N.D. Cal. 2015) (same).[18] Bankruptcy court analysis of the IAA, however, is not limited to Section 523(a)(19).  *See Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604 (Bankr. W.D. Wash. 2013)

---

[17] Section 3(a)(47) of the Securities Exchange Act of 1934 (the "Exchange Act") defines "securities laws" as "the Securities Act of 1933 (15 U.S.C. 78a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), the Sarbanes-Oxley Act of 2002, the Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.), the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), *the Investment Advisers Act of 1940* (15 U.S.C. 80b et seq.), and the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa, et seq.)" (emphasis added).

[18] *See also King v. Skolness (In re King)*, 624 B.R. 259, 301 (Bankr. N.D. Ga. 2020) (bankruptcy court could determine liability under state and federal securities laws for purposes of § 523(a)(19)); *Holzhueter v. Groth (In re Holzhueter)*, 571 B.R. 812, 822-24 (Bankr. W.D. Wis. 2017) (same).

(dismissing complaint alleging that defendant owed a fiduciary duty to an investor under the IAA for failure to state a claim); *Living Benefits Asset Mgmt. v. Kestrel Aircraft Co. (In re Living Benefits Asset Mgmt.),* 587 B.R. 311, 317-20 (N.D. Tex. 2018) (affirming bankruptcy court's rulings under the IAA), *aff'd* 916 F.3d 528 (5th Cir. 2019); *In re Acis Cap. Mgmt. L.P., et al.*, Case No. 18-30264-sgj11, D.I. 549 (Bankr. N.D. Tex. Sept. 4, 2018) (Ex. 6, Appx. 228-30) (finding the IAA did not prohibit assumption of a management agreement under Section 365).

35.    **The IAA Cannot Be a RICO Predicate**:    Plaintiffs allege that determining whether securities fraud can be a predicate act under RICO requires mandatory withdrawal. Motion ¶ 12.   This argument also fails.    ***First***, Plaintiffs concede they have no RICO claim. Response at 23.   Consequently, it should not be a basis for withdrawal of the reference.   ***Second***, RICO, by its terms, expressly excludes securities fraud as a predicate act.   18 U.S.C.A. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].")[19]   Because Plaintiffs' RICO claim is premised on an alleged securities fraud, it is barred by the express language of the RICO statute. *See, e.g., MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273-80 (2d Cir. 2011) (barring RICO claims arising out of the operation of a Ponzi scheme because they involved a purchase or sale of a security despite no private right of action existing); *Affco Invs. 2001 LLC v. Proskauer Rose L.L.P.*, 625 F.3d 185, 189-91 (5th Cir. 2010) (same).   There is no unsettled question of federal law warranting mandatory withdrawal.

---

[19] *See also* H.R. Rep. No. 104-369, at 47 (1995) ("The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the . . . Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.")

      **c.**     ***Plaintiffs Cite No Applicable Case Law.***

36.    Plaintiffs' only citations to support their arguments are to two factually inapposite cases. **First**, they cite *In re Harrah's Entertainment*, 1996 U.S. Dist. LEXIS 18097 (E.D. La. Nov. 26, 1996), which has nothing to do with the IAA. *Harrah's* involved a class action arising from the issuance of $435 million in publicly traded debt; claims that the prospectus violated the Exchange Act; and attempts to hold the issuer's partners liable for the issuer's actions under the Exchange Act. The district court ruled that mandatory withdrawal applied because of the foregoing factors, none of which apply here. There is no public issuance; no retail investors; no class action; no derivative liability; no applicability of the Exchange Act; and no complicated factual analysis. Plaintiffs' IAA claims require only the straightforward application of settled law to the facts in a dispute between two private parties.

37.    ***Second***, Plaintiffs cite *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470 (3d Cir. 2012), for the proposition that there is "considerable 'confusion'" because "federal law (the IAA) provides, 'the duty and the standard to which investment advisers are to be held,' but 'the cause of action is presented as springing from state law.'" Motion ¶ 13. *Belmont* confirms no private right of action exists under the IAA. *Belmont*, 708 F.3d at 502. The only "confusion" noted in *Belmont* is if ***state, not federal, law*** creates a private right. *Id.* (finding the lack of private rights in the IAA "ought to call into serious question whether a limitation in federal law can be circumvented simply by hanging the label 'state law' on an otherwise forbidden federal law claim" but recognizing split on state law claims). But Plaintiffs have not pled a state law claim, and an unpled claim is irrelevant—there is nothing to withdraw under 28 U.S.C. § 157(d). Further, section 157(d) requires mandatory withdrawal only ***if material federal law is implicated***; state law claims—even properly pled ones—are not a basis for mandatory withdrawal.

DOCS_NY:46770.8 36027/003

### d.    *Plaintiffs' Additional Arguments Are Meritless.*

38.    Plaintiffs' allege two additional arguments to support mandatory withdrawal.  *First*, Plaintiffs argue the District Court needs to assess whether a breach of fiduciary duty claim "can be terminated by a blanket injunction in a bankruptcy plan."  Motion ¶ 8.  But Plaintiffs have been told *three times* that the Plan's injunction does not prevent Plaintiffs' prosecution of their alleged IAA claims so long as they are prosecuted in this Court—twice by this Court and once by the District Court.[20]  *Second*, Plaintiffs' jury trial waiver argument is premature and irrelevant.  DAF affirmatively waived its jury trial right in the DAF Agreement (Ex. 3, Appx. 138),[21] but neither Plaintiff has a jury trial right having availed themselves of the equitable jurisdiction of this Court.[22]  And, importantly for the Motion, Highland has not yet moved to strike Plaintiffs' jury trial demand.[23]  Accordingly, Plaintiffs' request to withdraw the reference on the jury trial question is

---

[20] Ex. 1, Appx. 30 ("I just don't think that you have shown that … the injunction provisions of the plan somehow tie your hands in arguing the 12(b)(6) motion, defending against the 12(b)(6) motion today or I just think that your arguments reflect, frankly, a misunderstanding of how the injunction language … applies here."); Ex. 7, Appx. 261 (responding to DAF's assertion that it could not prosecute a claim for an IAA breach of fiduciary duty because of the Plan injunction "THE COURT:  Why not?  Why not?  Why not?  There is nothing that would have precluded you from filing a request for allowance of administrative claim."); *Charitable DAF*, 643 B.R. at 176-77 ("The bankruptcy court found the Plan's injunction … did not prevent [DAF] from pursuing its causes of action. … [T]he bankruptcy court held that Charitable DAF could continue to litigate its cause of action and the Court agrees. … Just like the bankruptcy court, this Court does not see how the injunction … prohibit[s] [DAF] from participating [in litigating the Complaint] … [and] [DAF] continued to participate by responding to HCM's motion to dismiss and participating in the hearing regarding the motion to dismiss.")

[21] Plaintiffs argue that the District Court must determine whether DAF's contractual waiver "can be enforced as to non parties [*i.e.*, CLOH] to the waiver" (Motion ¶ 8), but Highland has not argued that CLOH waived its jury trial rights through the DAF Agreement.

[22] The causes of action in the Complaint are administrative expense claims (*see infra* ¶¶ 39-41), and, by pursuing the Complaint, Plaintiffs have triggered the claims allowance process and subjected themselves to this Court's equitable jurisdiction.  *See, e.g., In re UAL Corp.*, 386 B.R. 701, 707 (Bankr. N.D. Ill. 2008) ("[B]y filing a claim … the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power … As such, there is no Seventh Amendment right to a jury trial … Claims for payment of an administrative expense are no different from other claims in this regard.") (citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)); *see also Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, 565 B.R. 193, 202 (Bankr. D. N.M. 2017) (same); *Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 290-311 (Bankr. M.D. La. 1998) (finding breach of fiduciary duty claim against bankruptcy trustee originally filed in state court was an administrative expense claim and no jury trial right existed).

[23] Highland will move to strike the jury trial demand if the Renewed MTD is denied, but if the time comes to adjudicate Plaintiffs' jury trial right, it will be decided by this Court as a matter of core bankruptcy law.  Highland reserves all rights.

premature; there is currently nothing to withdraw. Plaintiffs' thinly veiled attempt to create controversy and a federal issue where none exists should be rejected. *See, e.g., Keach v. World Fuel Servs. Corp, (In re Montreal Me. & Atl. Ry.)*, 2015 U.S. Dist. LEXIS 74006, at *21-23 (D. Me. June 8, 2015) (finding no mandatory withdrawal when movant simply "tries to kick up some dust to make the relevant analysis seem complicated").

## II.     The Court Has "Core" Jurisdiction to Adjudicate the Complaint

39.     The Court has already found that this action "arises in" Highland's bankruptcy case and is a "core" proceeding.

> [This action] "arises in" a bankruptcy case (making it "core"), in that a claim is being asserted against a debtor (which was not yet a "reorganized debtor" …) and involves actions of a debtor-in-possession in administering its case. It involves orders of this Bankruptcy Court and activities and litigation over which the Bankruptcy Court presided.

*Charitable DAF*, 2022 Bankr. LEXIS 659, at *14-15. Plaintiffs did not appeal that portion of the MTD Order, and it is binding.

40.     But even in the absence of a prior ruling, this action involves the adjudication of an administrative expense claim and is quintessentially "core," having "arisen in" Highland's bankruptcy. An administrative expense claim is a priority claim under Section 503(b) for, among other things, "the actual, necessary costs and expenses of preserving the estate …." 11 U.S.C. § 503(b)(1)(A). Administrative expense claims include claims arising from a debtor-in-possession's postpetition negligence, tortfeasance, and malfeasance. *See Reading Co. v. Brown,* 391 U.S. 471, 478-79 (1968) (holding that if a debtor-in-possession commits a tort or harms a non-debtor following the petition date, the resulting claim is an administrative expense claim even though there was no benefit to the debtor's estate); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 2780, at *19-21 (Bankr. N.D. Tex.

Sept 30, 2022) (finding Highland's alleged breach of its contractual and extra-contractual duties under the IAA to DAF constituted an administrative expense claim).[24]

41.    Plaintiffs were allegedly harmed by Highland's breach of its duties and obligations (a) *after* the Petition Date, but *before* the Effective Date, *i.e.*, while Highland was a debtor-in-possession, and (b) arising from the ordinary course operation of its estate.  Accordingly, under *Reading* (and this Court's recent precedent), the claims alleged in the Complaint, if valid, would be administrative claims.  This Court retained jurisdiction to adjudicate administrative claims (Plan, Art. XI), and adjudication of an administrative claim is a "core" proceeding.  *See In re Weblink Wireless, Inc*., 2003 Bankr. LEXIS 2312, at *3 (Bankr. N.D. Tex. Mar. 12, 2003) ("The allowance of an administrative expense to be paid pursuant to a confirmed plan of reorganization constitutes a core matter over which the court has jurisdiction to enter a final order."); *see also In re Taco Bueno Rests., Inc.*, 606 B.R. 289, 292 (Bankr. N.D. Tex. 2019) (finding core jurisdiction to adjudicate administrative claim); *In re Pilgrim's Pride Corp*., 453 B.R. 691, 692 (Bankr. N.D. Tex. 2011) ("Objections [to administrative expense claims] are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).").[25]  This Court has "core" jurisdiction to adjudicate the Complaint and can enter final orders under 28 U.S.C. §§ 157(b) and 1334(b).[26]

---

[24] *See, e.g., Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 388 (5th Cir. 2001); *In re AI Copeland Enters., Inc.*, 991 F.2d 233, 239 (5th Cir. 1993).

[25] *See also In re Colo. Place L.P.*, 2002 Bankr. LEXIS 2000, at *1 (Bankr. N.D. Tex. Feb. 5, 2002) (same); *In re SGS Studio, Inc*., 256 B.R. 580, 581 (Bankr. N.D. Tex. 2000) (same); *Rand Energy Co. v. Del Mar Drilling Co. (In re Rand Energy Co.)*, 256 B.R. 712, 714 (Bankr. N.D. Tex. 2000) (same).

[26] Plaintiffs cite *Gupta v. Quincy Medical Center*, 585 F.3d 657 (1st Cir. 2017) to support their argument that this Court lacks jurisdiction over the Complaint. In *Gupta*, the bankruptcy court approved an asset purchase agreement pursuant to 11 U.S.C. § 363, which provided that certain employees would receive severance if terminated. When they were subsequently terminated, they sought damages for breach of the purchase agreement *in the bankruptcy court*. The First Circuit held that the severance claims arose "solely" from the alleged breach of the agreement and not from (a) a breach of the order approving the agreement, (b) a question of interpretation of that order, (c) the administration of the bankruptcy estate, or (d) the Bankruptcy Code (*Id.* at 664) and accordingly held there was no bankruptcy jurisdiction. *Gupta* is irrelevant. The Complaint asserts administrative expense claims against the estate and thus invokes the claims allowance process and this Court's equitable jurisdiction—a quintessentially core action.

## **CONCLUSION**

42.     Highland respectfully requests that the Court deny the Motion and grant such

further relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Dated: December 9, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

19