BTXN 221 (rev. 09/22)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Highland Capital Management, L.P.<br><br>　　　　　　　　　　　Debtor(s)<br>Charitable DAF Fund, LP  et al.<br>　　　　　　　　　　　Plaintiff(s)<br>　vs.<br>Highland Capital Management, LP  et al.<br>　　　　　　　　　　　Defendant(s)<br><br>Charitable DAF Fund, LP et al.<br>　　　　　　　　　　　Plaintiff(s)<br>　vs.<br>Highland Capital Management, LP et al.<br>　　　　　　　　　　　Defendant(s) | §§§§§§§§§§§§§§§§§ | Case No.:    19−34054−sgj11<br>Chapter No.:   11<br><br>Adversary No.:    21−03067−sgj<br><br>Civil Case No.:        3:22−cv−02802−S |

# NOTICE OF TRANSMITTAL OF REPORT AND RECOMMENDATION

I am transmitting:

    One copy of:  Report and Recommendation to the District Court on "Renewed Motion to Withdraw the Reference" [Bankr. Doc. No. 128] .


DATED:  2/6/23                    FOR THE COURT:
                                    Robert P. Colwell, Clerk of Court

                                    by: /s/Sheniqua Whitaker, Deputy Clerk



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed February 6, 2023**

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § § | BANKR. CASE NO. 19-34054-SGJ-11 (CHAPTER 11) |
| REORGANIZED DEBTOR. | § | |
| | § | |
| CHARITABLE DAF FUND, L.P. and CLO HOLDCO, LTD., | § § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADV. PRO. NO. 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | CIV. ACT. NO. 3:22-cv-02802-S CIV. ACT. NO. 3:21-cv-0842-B |
| | § | |
| DEFENDANT. | § | |

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT
ON "RENEWED MOTION TO WITHDRAW THE REFERENCE"
[BANKR. DOC. NO. 128]**

I.  **INTRODUCTION**

The above-referenced adversary proceeding is related to the now long-running Chapter 11 bankruptcy case of Highland Capital Management, L.P. ("Highland," the "Debtor," or sometimes the "Reorganized Debtor"). Highland is the main Defendant in this action, which was filed by Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Plaintiffs") on April 12, 2021, in the District Court (*during* Highland's bankruptcy case and *prior* to the effective date of Highland's Chapter 11 plan) and assigned to Judge Jane Boyle. For the *second* time since this action was filed, the Plaintiffs are urging the District Court to withdraw the reference from the bankruptcy court. The *first* time that Plaintiffs urged it (unsuccessfully) was on June 29, 2021, to Judge Boyle, in Civil Action No. 3:21-cv-0842-B, in response to Defendant's motion to *enforce* the reference and in their cross-motion thereto, in which Plaintiffs specifically urged the District Court to find that mandatory withdrawal of the reference under 28 U.S.C. § 157(d) applied to the action and so enforcing the reference (and, thus, sending the action to the bankruptcy court) would be pointless. Judge Boyle entered an order on September 20, 2021, granting Defendant's motion to enforce the reference, referring the action to this bankruptcy court "to be adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No. 19-34054."[1] Plaintiffs brought their "Renewed Motion to Withdraw the Reference" ("Renewed MTWR") on November 18, 2022,[2] more than a year after Judge Boyle rejected their arguments and referred the action to the bankruptcy court. The Renewed MTWR was transmitted to the District Court on December 15, 2022 and assigned to a different district judge – Judge Karen Scholer – under the above-referenced civil action number.[3] Much has happened during this time

---

[1] *See Order of Reference*, Civ. Act. No. 3:21-cv-0842-B, Doc. No. 64.

[2] *See Renewed Motion to Withdraw the Reference*, Adv. Pro. 21-3067-sgj, Bankr. Doc. No. 128.

[3] *See* Civ. Act. No. 3:22-02802-S, Doc. No. 1.

span. This "jurisdictional ping pong" (as it might fairly be described) is best understood with the timeline of relevant events set forth in Part III below. But first, a description of the parties is in order.

## II. THE PARTIES

Highland is the main Defendant in this action. There were originally two other Defendants: (a) Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey-based investment vehicle that is now past its investment period, and (b) Highland HCF Advisors, Ltd. ("HCFA"), which has been described as a non-debtor, wholly owned subsidiary of Highland, which served as a portfolio manager for HCLOF. HCLOF was dismissed with prejudice from this action on December 7, 2021 [Bankr. Doc. No. 80]. The other Defendant, HCFA, has never appeared in this action, and it appears it was never served with the summons and complaint.[4] The court is unclear why—perhaps it was dissolved as part of the Highland reorganization or has no assets.

The Plaintiffs are CLO Holdco Ltd. ("CLO Holdco") and Charitable DAF Fund, L.P. ("DAF"). DAF is CLO Holdco's parent company. Both Plaintiffs are Cayman Island entities and are affiliated with Highland's former chief executive officer and founder (James Dondero). Plaintiff CLO Holdco also happens to own a 49.02% equity interest in the dismissed Defendant HCLOF.

For ease of reference—and because there are a very large number of lawsuits pending in the Northern District of Texas involving Highland and its affiliates—this action presently before the

---

[4] Highland noted on page 3 of its *Motion for an Order Extending the Time to File a Responsive Pleading*, filed in the District Court on May 6, 2021, at Doc. No. 9 (and entered on the bankruptcy court docket on September 29, 2021 at Bankr. Doc. No. 9) that "[w]hile Highland agreed to accept service on its own behalf, it could not and did not accept service on behalf of the other defendants, Highland HCF Advisors, Ltd. and Highland CLO Funding, Ltd. (together, the "Other Defendants")" and that "to the best of Highland's knowledge, the Other Defendants have not been served with the Complaint such that the time for each of them to serve a responsive pleading has not begun to run." A *Waiver of Service of Summons* with respect to HCLOF was filed on June 3, 2021 (at Doc. No. 30 in both the District Court and bankruptcy court), but there does not appear on either docket any proof of service or waiver of service with respect to service of the summons and complaint on HCFA that would indicate that HCFA has been served as of this date.

court will be referred to as the "Lawsuit Pertaining to HarbourVest Bankruptcy Settlement." The timeline below fully explains this.

### III. THE RELEVANT TIMELINE

**October 16, 2019**: Highland filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").

**December 23, 2020**: Highland (during its bankruptcy case—and before getting a Chapter 11 plan approved) moved for approval by the bankruptcy court of a significant settlement it reached with entities collectively known as HarbourVest. HarbourVest was a disputed creditor—asserting a $300 million proof of claim against Highland—and it also happened to own a 49.98% equity interest in the Defendant HCLOF. Pursuant to the proposed settlement between Highland and HarbourVest (the "HarbourVest Settlement"), HarbourVest agreed to transfer its 49.98% equity interest in Defendant HCLOF to Highland (or Highland's designee) and agreed to greatly reduce its disputed claim in the bankruptcy case from $300 million to $80 million (which would be given part unsecured creditor status and part subordinated status).

**January 8, 2021**: Plaintiff CLO Holdco objected to the HarbourVest Settlement, presumably at the direction of its parent, DAF (the other Plaintiff herein). CLO Holdco argued that: (i) it, as a 49.02% equity member of HCLOF, had a "Right of First Refusal," pursuant to the HCLOF membership agreement, to acquire the 49.98% equity interest that HarbourVest was going to be transferring to Highland under the HarbourVest Settlement; and (ii) HarbourVest could not transfer its 49.98% equity interest to Highland without compliance with this purported right of first refusal. CLO Holdco did not object on any other basis to the HarbourVest Settlement.

**January 14, 2021:** The bankruptcy court held an evidentiary hearing on the proposed HarbourVest Settlement, during which CLO Holdco voluntarily withdrew its objection to the

HarbourVest Settlement premised on the "Right of First Refusal." After an extensive presentation of evidence, the bankruptcy court overruled certain remaining objections (specifically, those of certain family trusts of James Dondero) and approved the HarbourVest Settlement. Note that the Dondero family trusts appealed to the District Court the approval of the HarbourVest Settlement, and their appeal was dismissed for lack of standing.

**February 22, 2021:** The bankruptcy court entered an order confirming a Chapter 11 plan for Highland [Bankr. Doc. No. 1943] (the "Confirmation Order"), which confirmed Highland's extensively mediated, negotiated, and litigated plan [Bankr. Doc. No. 1808] (the "Plan"). The Plan became effective on August 11, 2021 [Bankr. Doc. No. 2700] (the "Effective Date"). At least the following provisions are germane to this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. First, pursuant to the Plan, the bankruptcy court expressly retained jurisdiction/authority to "allow, disallow, determine, liquidate … any Claim … including, without limitation, the resolution of any request for payment of any Administrative Expense Claim …." Plan, Art. XI. Second, the Plan defined "Administrative Expense Claim," in relevant part, as a: "Claim for costs and expenses of administration of the Chapter 11 Case . . . pursuant to sections 503(b), 507(a)(2), 507(b) … of the Bankruptcy Code, including … (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor . . . ." Plan, Art. I.B.2.

**April 12, 2021**: Plaintiffs commenced this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement in the District Court—which was assigned Civ. Action No. 21-CV-0842-B (Judge Jane Boyle)—naming Debtor/Highland, HCFA, and HCLOF as Defendants. To be clear, this lawsuit was filed at a time when Highland was still a debtor in possession (its Plan had been recently confirmed, but the plan Effective Date had not yet occurred—it occurred in August 2021). The

5

underlying Complaint ("Complaint") alleges that conduct of Highland during the bankruptcy case in late 2020 and early 2021 revolving around the HarbourVest Settlement—prior to the Confirmation Order—violated contractual and extra-contractual duties Highland purportedly owed (i) to Plaintiff CLO Holdco as an investor in HCLOF; and (ii) to Plaintiff DAF as an advisee under an investment advisory agreement. The Complaint raises claims: (i) by Plaintiffs for breaches of fiduciary duty against Highland and HCFA (Count 1); (ii) by CLO Holdco for breach of the HCLOF Members Agreement against all three Defendants (Count 2); (iii) by Plaintiffs for negligence against Highland and HCFA (Count 3); (iv) by Plaintiffs for violations of the Racketeer Influenced and Corrupt Organizations statute (15 U.S.C. § 1961, et seq. ("RICO")) against Highland (Count 4); and (v) by CLO Holdco for tortious interference against Highland (Count 5). In Count 1 (breach of fiduciary duty), Plaintiffs allege that Debtor/Highland violated its "broad" duties to Plaintiffs under the Investment Advisers Act and Highland's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of HarbourVest's 49.98% equity interest in HCLOF; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without first offering it to Plaintiffs.[5] In Count 4 (RICO), Plaintiffs allege that Highland and its co-Defendants were an "association-in-fact" engaged in a pattern of racketeering activity for this same underlying conduct; namely, failing to disclose the valuation of HCLOF's interest and ultimately effectuating the HarbourVest Settlement. Again,

---

[5] While specific statutory references to the federal Investment Advisers Act are sparse in the Complaint, subsequent pleadings of the Plaintiffs make clear they are referring to at least 15 U.S.C. § 80b-6 and 80b-15(a) (which they cite as imposing both a duty of care and a duty of loyalty, each unwaivable, on investment advisors, in favor of funds and its investors, citing *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008)); 15 U.S.C. § 206(2) (which they cite as requiring investment advisers to seek "best execution" for all their clients' transactions, citing *SEC v. Ambassador Advisors, LLC,* 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021)); and 15 U.S.C. § 215 (which they cite as recognizing "a limited private right of action for equitable relief including disgorgement, wherein one may seek to void the rights of a violator who performs a contract in violation of the Advisers Act"). Response to Renewed Motion to Dismiss, pp. 12-13. Bankr. Doc. No. 130.

Highland's alleged misconduct was the act of settling the $300 million proof of claim filed against Highland by HarbourVest under the terms and conditions of the HarbourVest Settlement. To be clear, the HarbourVest Settlement was implemented after full notice to creditors in the Highland case, an evidentiary hearing, and approval by the bankruptcy court after fulsome findings of fact and conclusions of law. And as noted earlier, one of the Plaintiffs, CLO Holdco, even objected to the HarbourVest Settlement and then withdrew its objection the morning of the bankruptcy court's hearing on the HarbourVest Settlement.

**May 19, 2021**: Soon after the commencement of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, Highland moved before Judge Boyle for an order to enforce the Northern District of Texas's standing order of reference (Misc. Order No. 33) [Bankr. Doc. No. 22] (the "Motion to Enforce"), arguing that the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement should be referred to the bankruptcy court, since it asserted claims arising in, arising under, or related to Title 11 and Highland's bankruptcy case.

**May 27, 2021**: Highland also swiftly moved to dismiss the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement [Bankr. Doc. No. 26] (the "Original MTD"). The Original MTD was fully briefed to Judge Boyle.[6]

**June 29, 2021:** Plaintiffs reacted by filing their response to the Motion to Enforce [Bankr. Doc. No. 36], arguing the Motion to Enforce should be denied, and ***cross-moving therein that Judge Boyle should keep the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement*** because the claims therein were subject to mandatory withdrawal of the reference, under 28 U.S.C § 157(d)—i.e., they involved "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" and could not be adjudicated

---

[6] Defendant HCLOF filed a *Motion to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P.* in the District Court at Doc. No. 57 (Bankr. Doc. No. 57) on August 30, 2021.

in the bankruptcy court. To be clear, the underlying Complaint (while all about the HarbourVest Settlement) asserts claims of breach of fiduciary duty under the federal Investment Advisers Act ("IAA") and state law; breach of contract; negligence; RICO; and tortious interference with contract. Notably, the arguments in Plaintiffs' cross-motion on June 29, 2021 appear to be identical to those in Plaintiffs' Renewed MTWR now before the court.

**August 26, 2021:** Plaintiffs filed a motion before Judge Boyle asking her to stay the action before her, pending appeal of the Confirmation Order [Bankr. Doc. No. 55] (the "Stay Motion"), arguing that the Plan injunction somehow prohibited the prosecution of the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. The Stay Motion was fully briefed to Judge Boyle.

**September 20, 2021:** The District Court (Judge Boyle) granted Highland's Motion to Enforce and referred this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement to the bankruptcy court, including the Original MTD, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated as a matter related to the … Bankruptcy of Highland Capital Management, L.P." [Bankr. Doc. No. 64].

**November 23, 2021:** Plaintiffs and Defendants argued the Stay Motion and the merits of the Original MTD, including their alleged claims under the IAA and RICO, to the bankruptcy court. Following the hearing the bankruptcy court denied the Stay Motion.[7]

**March 11, 2022:** The bankruptcy court granted the Original MTD and issued a written ruling on it (the "MTD Order")—never getting to the merits of the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. [Bankr. Doc. No. 100]. Rather, the bankruptcy court dismissed the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement with prejudice, on the

---

[7] *See Order Denying Motion to Stay*, Bankr. Doc. No. 81, entered on December 7, 2021. As noted above,, the bankruptcy court also entered, on December 7, 2021, its *Order Granting Highland CLO Funding, Ltd.'s Motion to Dismiss* [Bankr. Doc. No. 80].

basis that the claims were precluded by the doctrines of collateral estoppel and judicial estoppel. *See Charitable DAF Fund, L.P. and CLO Holco, Ltd. v. Highland Cap. Mgmt., L.P., et al. (In re Highland Cap. Mgmt., L.P.)*, 2022 WL 780991 (Bankr. N.D. Tex., Mar. 11, 2022). The bankruptcy court concluded that the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement were barred due to the strategic decisions of Plaintiff CLO Holdco during the bankruptcy case (i.e., choosing to withdraw its objection to the HarbourVest Settlement) and that decision was also binding on its Co-Plaintiff DAF (its parent) since the two were in privity. On March 25, 2022, the Plaintiffs appealed the MTD Order to the District Court. *See* 3:21-cv-00695-B, Doc. No. 2. The Plaintiffs did not raise 28 U.S.C. § 157(d) in the appeal or otherwise argue that the bankruptcy court lacked jurisdiction or authority to have entered the MTD Order.

**June 17, 2022:** Judge Boyle entered an order consolidating the appeal of the MTD Order with Plaintiff's appeal of the bankruptcy court's order denying the Stay Motion, which had been assigned Civ. Act. No. 3:21-cv-03129. *See* 3:21-cv-03129-B, Doc. No. 20.

**September 2, 2022**: Judge Boyle, sitting this time in an appellate capacity: (i) reversed the bankruptcy court's conclusion that collateral estoppel barred Plaintiffs' claims but (ii) remanded on the judicial estoppel determination.[8] *See Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022). Specifically, Judge Boyle determined that the bankruptcy court had erred in its ruling that collateral estoppel barred entirely the claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, but Judge Boyle separately, in evaluating the bankruptcy court's determination that judicial estoppel also barred Plaintiff's Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, ruled that the bankruptcy court did not make a certain finding necessary to conclude judicial estoppel applied

---

[8] Judge Boyle also affirmed the bankruptcy court's order denying the Stay Motion.

(i.e., a finding of "inadvertence"). Thus, Judge Boyle remanded to the bankruptcy court for possible further findings on the judicial estoppel doctrine and presumably for an adjudication on the merits of the various claims asserted in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, if the bankruptcy court concluded judicial estoppel did *not* apply (after evaluating the "inadvertence" factor).

**September 8, 2022**: Meanwhile, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the Confirmation Order's factual findings and legal conclusions in support of the Highland Plan. *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt.*, L.P., 48 F.4th 419 (5th Cir. 2022). A petition for writ of certiorari is now pending before the U.S. Supreme Court regarding the Plan Confirmation Order. To be clear, there has never been a stay of the Plan (i.e., the Confirmation Order), and the Highland Plan has been in effect since August 11, 2021.

**October 14, 2022**: In response to Judge Boyle's remand, *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022), Highland filed a renewed motion to dismiss [Bankr. Doc. No. 122] (the "Renewed MTD"). It addresses the "inadvertence" factor on the judicial estoppel defense (arguing it bars Counts 2 and 5 of the Complaint), and also argues that all claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement—even if not precluded by the doctrine of judicial estoppel—are not plausible on their face, under *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**November 18, 2022**: Plaintiffs responded to the Renewed MTD and also filed their Renewed MTWR, again urging mandatory withdrawal of the reference. Plaintiffs once again are arguing that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement "requires consideration" of non-bankruptcy federal laws regulating interstate commerce and, thus,

mandatory withdrawal of the reference applies under 28 U.S.C. § 158(d). ***Interestingly, Plaintiffs have now moved to dismiss their RICO count (without prejudice)***.[9] Thus, their sole "other federal law" argument boils down to this:

> This adversary proceeding primarily involves fiduciary duties imposed upon Registered Investment Advisers by the Investment Advisers Act of 1940 ("Advisers Act") and corresponding state law claims for breach of those duties. As a result, presiding over this action will require extensive consideration of federal laws regulating interstate commerce, which renders withdrawal of the reference to bankruptcy court mandatory under 28 U.S.C. § 157(d).

Renewed MTWR, at ¶ 5.

### IV. RECOMMENDATION

The bankruptcy court recommends that Plaintiffs' Renewed MTWR be denied. The bankruptcy court clearly has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1334(b). The Renewed MTWR was not timely filed, which is required under the mandatory withdrawal provisions of 28 U.S.C. § 157(d), and it is the quintessential attempt at a second bite at the apple.

#### A. *Jurisdiction and Core Nature of the Action*

First, there is no concern about lack of bankruptcy subject matter jurisdiction here. Bankruptcy subject matter jurisdiction exists over the claims against the Defendant pursuant to 28 U.S.C. §§ 1334(b) and 157. Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings ***arising under*** title 11, or ***arising in*** or ***related to***

---

[9] *See* Plaintiff's Response to Renewed MTD at 23 ("Plaintiffs respectfully dismiss the RICO claim under Rule 41(a) to the extent such a claim is revealed to have existed under non-securities bases. Because Highland has conceded that Plaintiffs' claims are actionable under the federal securities laws and the Advisers Act, and has cited same as a basis for dismissing the RICO claim, Highland is precluded and estopped from denying the violations of the Securities Laws and the Advisers Act. As such, to the extent that other, non-securities law violations may give rise to RICO violations, Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.")

cases under title 11."[10] (Emphasis added.) The bankruptcy courts, in turn, are delegated authority to exercise that jurisdiction from the district courts, under 28 U.S.C. § 157(a).[11] There does not appear to be any dispute that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement is at least "related to" the Highland bankruptcy case. Thus, bankruptcy subject matter jurisdiction exists.[12] Moreover, there does not appear to be any dispute that the action involves "core" matters over which a bankruptcy court may generally enter final judgments.[13] As noted recently by the Fifth Circuit: "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. For example, claims concerning the administration of the estate, allowance or disallowance of claims against the estate, and sale of property of the estate are all core proceedings.[14] *See generally In re Southmark Corp.*, 163 F.3d 925, 930-31 (5th Cir. 1999) (malpractice suit against an examiner's accountant was a core proceeding; "The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. . . . Award of the professionals'

---

[10] 28 U.S.C. § 1334(b); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("[Section] 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e., proceedings 'related to' bankruptcy.").

[11] *In re PFO Glob., Inc.,* 26 F.4th at 252 (citing 28 U.S.C. § 157(a)).

[12] *In re Bass*, 171 F.3d at 1022 ("To determine whether [bankruptcy] jurisdiction exists, 'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995))).

[13] Plaintiffs' Renewed MTWR seemed to dispute that core matters are involved. But their position on this at the status conference on this seemed equivocal. In addition, as noted earlier, there is a non-debtor Defendant named herein, HCFA, that is a subsidiary of Highland. Likely, claims asserted against it by Plaintiffs (which appear to be asserted at Counts 1-3) would not be core matters. However, HCFA has not been served and has failed to appear or defend in this matter. Thus, presumably there will be no adjudication of the claims against it in this action and the claims against it are irrelevant.

[14] *Foster v. Aurzada, et al.* No. 22-10310 and No. 22-10318, slip. Op. at p. 5 (5th Cir. Jan. 3, 2023) (per curium), *citing In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) and 28 U.S.C. § 157(b)(2)(A), (B), (N), (O)).

fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.").[15]

Again, there appears to be no dispute here regarding the "core/noncore" status of the claims. Plaintiffs' argument is that, even if the claims are core, mandatory withdrawal of the reference is necessitated, pursuant to 28 U.S.C.§ 157(d), because of other federal law, besides bankruptcy law, being significantly implicated.

B. *Untimeliness*.

Plaintiffs' request for mandatory withdrawal of the reference is by any reasonable measure "untimely." Under 28 U.S.C. § 157(d), a district court "shall, on **timely** motion of a party, so withdraw a proceeding if … resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). Assuming a timely motion, mandatory withdrawal is warranted only if a matter requires "substantial and material consideration" and "significant interpretation of federal laws[,]" rather than a "straightforward application of a federal statute to a particular set of facts." *In re Nat'l Gypsum*, 14 B.R. 188, 192-93 (N.D. Tex. 1991); *Kirschner v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1028, at *27-28 (Bankr. N.D. Tex. Apr. 6, 2022) (same). The Renewed MTWR was filed **fourteen months** after Judge Boyle referred this action to the bankruptcy court. Moreover, it was filed after: (a) the bankruptcy court made a final ruling on a motion to dismiss, (b) Judge Boyle ruled on that final bankruptcy court ruling in an appellate capacity, and (c) remanded back to the bankruptcy court for further proceedings.

---

[15] *See id.* at 930 (citing 28 U.S.C. § 157(b)(3)) (stating that whether claim has a state law origin is not dispositive to whether it is a core bankruptcy matter); *In re Wood*, 825 F.2d at 97 n.34 (stating that whether right is state created is not dispositive to whether proceeding is core under 28 U.S.C. § 157).

To be clear, 28 U.S.C. § 157(d) does not define "timely," but it has been interpreted as requiring a motion to be made at the first reasonable opportunity. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 415-16 (Bankr. N.D. Tex. 1985) (finding a motion to withdraw the reference untimely when filed sixteen days after the court entered its decision on the matter); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007, n.3 (9th Cir. 1997). ("A motion to withdraw is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'"); *Connolly v. Bidermann Indust. U.S.A., Inc.,* 1996 U.S. Dist. LEXIS 8059, at *8 (S.D.N.Y. June 13, 1996) ("Plaintiff's delay of over eight months renders her motion untimely, and as such it does not meet the threshold requirement set forth in 28 U.S.C. § 157(d)."); 9 COLLIER ON BANKRUPTCY ¶ 5011.01[2] ("[M]otions for mandatory withdrawal must be made as soon as it is apparent that it is necessary for the district court to hear the proceeding").

But this isn't just any untimely motion. This is a ***second*** motion. This appears to be the proverbial second bite at the apple—urged right after Highland, after reviewing Judge Boyle's September 2022 appellate ruling, moved for dismissal of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, this time fully arguing the judicial estoppel factors that Judge Boyle determined had not been fully vetted. The Highland Renewed MTD also asks the bankruptcy court to, this time, rule on the merits of the claims (which the bankruptcy court did not do last time), in the event judicial estoppel does not apply. The Renewed MTWR appears to be an attempt by Plaintiffs to avoid the bankruptcy court exercising its duties in response to Judge Boyle's remand. It appears to be forum shopping and an attempt at delaying adjudication. The reality is that, if the bankruptcy court rules on the Renewed MTD in a way Plaintiffs find unsatisfactory, they can appeal again to the District Court. The further reality is that if judicial estoppel prevails, there will never be any "substantial and material consideration" and "significant interpretation of federal

14

laws]" in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. *In re Nat'l Gypsum,* 14 B.R. 188, 192-93.

> C. No "Substantial and Material Consideration" and "Significant Interpretation of Federal Laws" are Implicated Here; This is At Bottom a Request for Allowance of an Administrative Expense Claim

To be clear, the causes of action in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement are tantamount to the assertion of administrative expense claims against a Chapter 11 Debtor. As a general matter, the filing of administrative expense claims triggers the claims allowance process and subjects a claimant to the bankruptcy court's equitable jurisdiction. *See, e.g., In re UAL Corp.*, 386 B.R. 701, 707 (Bankr. N.D. Ill. 2008) ("[B]y filing a claim … the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power … As such, there is no Seventh Amendment right to a jury trial … Claims for payment of an administrative expense are no different from other claims in this regard.") (citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)); *see also Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, 565 B.R. 193, 202 (Bankr. D. N.M. 2017) (same); *Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 290-311 (Bankr. M.D. La. 1998) (finding breach of fiduciary duty claim against bankruptcy trustee originally filed in state court was an administrative expense claim and no jury trial right existed). It is difficult to see Plaintiffs' strategy here as anything other than an attempted end-run around the bankruptcy court. They argue as justification that there is substantial other federal law involved. But Plaintiffs' claims do not seem complex. If Plaintiffs survive the Renewed MTD (based on the judicial estoppel factors) their federal claims are simply: (a)(i) did Highland owe both Plaintiffs a fiduciary duty under the IAA; (ii) if so, what was the nature of that duty and was it violated; and (iii), if violated, what are the remedies and potential damages? Fiduciary duties (and interpretation of

15

different sources of fiduciary duties) certainly are not outside a bankruptcy court's expertise. *See In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996); *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (mandatory withdrawal requires "significant interpretation, as opposed to simple application, of federal laws"). "[M]andatory withdrawal is to be applied narrowly" to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist. LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *aff'd* 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009). Moreover, bankruptcy courts frequently consider other federal law (as well as state law) in adjudicating claims against the estate.

"Claims against the estate" is what's implicated here. The claims were asserted against the Debtor/Highland before its plan went effective and involve a time period during its case. Administrative expense claims include claims arising from a debtor-in-possession's postpetition negligence, tortfeasance, and malfeasance. *See Reading Co. v. Brown,* 391 U.S. 471, 478-79 (1968) (holding that if a debtor-in-possession commits a tort or harms a non-debtor following the petition date, the resulting claim is an administrative expense claim even though there was no benefit to the debtor's estate)  Moreover, the Plan made very clear that claims such as this were required to be filed in the bankruptcy court by a date certain. *See In re Weblink Wireless, Inc.,* 2003 Bankr. LEXIS 2312, at *3 (Bankr. N.D. Tex. Mar. 12, 2003) ("The allowance of an administrative expense to be paid pursuant to a confirmed plan of reorganization constitutes a core matter over which the court has jurisdiction to enter a final order."); *see also In re Taco Bueno Rests., Inc.,* 606 B.R. 289, 292 (Bankr. N.D. Tex. 2019) (finding core jurisdiction to adjudicate administrative claim); *In re Pilgrim's Pride Corp.*, 453 B.R. 691, 692 (Bankr. N.D. Tex. 2011) ("Objections [to administrative expense claims] are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B)"). The bankruptcy court has "core" jurisdiction to

adjudicate the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement and can enter final orders under 28 U.S.C. §§ 157(b) and 1334(b).

For all these reasons, the Renewed MTWR should be denied.

### V.   COMPLAINCE WITH LOCAL BANKRUPTCY RULE 5011-1

Finally, in compliance with Local Bankruptcy Rule 5011-1, the bankruptcy court reports that it held a status conference in this matter on Wednesday January 25, 2023, at 1:30 pm. All parties appeared through counsel. As noted above, Highland opposes withdrawal of the reference, and the Plaintiffs continue to urge it. Both sides presented their arguments orally. There is no stay of this action in place. As noted earlier, there is a pending Renewed MTD of Highland, filed after remand to the bankruptcy court by Judge Boyle, that the bankruptcy court has under advisement. There is no scheduling order in place currently. The parties are not ready for trial (indeed, the Defendant argues no trial is warranted, given its positions urged in the Renewed MTD). As discussed herein, this action presents core matters. There are no jury trial rights.

Again, it is the conclusion and recommendation of the bankruptcy court that the Renewed MTWR should be denied in its entirety.

###END OF REPORT AND RECOMMENDATION###