

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 25, 2023**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | BANKR. CASE NO. 19-34054-SGJ-11 |
| L.P., | § | (CHAPTER 11) |
| REORGANIZED DEBTOR. | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| CHARITABLE DAF FUND, L.P. and | § | |
| CLO HOLDCO, LTD., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADV. PRO. NO. 21-03067-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | CIV. ACT. NO. 3:22-cv-02802-B |
| L.P., | § | |
| | § | |
| DEFENDANT. | § | |

_____

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
## HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## "RENEWED MOTION TO DISMISS COMPLAINT"
## [ADV. PROC. DOC. NO. 122]

## I.    INTRODUCTION.

The above-referenced Action (herein so called)—now more than two years running on a circuitous path between the bankruptcy court and district court—is related to the even longer-running Chapter 11 bankruptcy case of Highland Capital Management, L.P. ("Highland," the "Debtor," or sometimes the "Reorganized Debtor"). Now before the bankruptcy court is a renewed Rule 12(b)(6)[1] motion to dismiss the Action ("Renewed MTD") filed by Highland, the main Defendant in this Action. [Adv. Proc. Doc. No. 122].[2]

This Action was filed by two plaintiffs, Charitable DAF Fund, L.P. and CLO Holdco, Ltd. ("Plaintiffs"), on April 12, 2021. The Action was commenced *in the District Court* (*during* Highland's bankruptcy case and *prior* to the effective date of Highland's Chapter 11 plan) and was randomly assigned to District Judge Jane Boyle. The Action was originally assigned Civil Action No. 3:21-cv-0842-B. But Highland thereafter filed a motion to *enforce* the standing order of reference in this District,[3] urging the District Court to refer the Action to the bankruptcy court presiding over its bankruptcy case. The Plaintiffs filed a response and a cross-motion of their own, urging the District Court to determine that mandatory withdrawal of the reference under 28 U.S.C. § 157(d) applied to the Action. Judge Boyle entered an order on September 20, 2021, granting Highland's motion to enforce the reference, referring the Action to this bankruptcy court "to be

---

[1] This is a reference to Fed. R. Civ. Proc. 12(b)(6), applicable in bankruptcy adversary proceedings, pursuant to Fed. R. Bankr. Proc. 7012.

[2] When referring to pleadings filed in this Action on the docket maintained by the bankruptcy clerk, the court will use the abbreviation "Adv. Proc. Doc. No. ____." When referring to pleadings filed in the main Highland bankruptcy case on the docket maintained by the bankruptcy clerk, the court will use the abbreviation "Bankr. Doc. No. ____." When referring to pleadings filed in this Action on the docket maintained by the District Clerk, the court will use the abbreviation "D.C. Doc. No. ____."

[3] *See* Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, of the United States District Court Northern District of Texas ("Miscellaneous Rule No. 33"), dated August 3, 1984.

adjudicated as a matter related to the consolidated Chapter 11 Bankruptcy of Highland Capital Management, L.P., Chapter 11 Case No. 19-34054" ("Original Order of Reference").[4]

Plaintiffs later brought a "Renewed Motion to Withdraw the Reference" ("Renewed MTWR") on November 18, 2022—more than a year after Judge Boyle rejected their arguments. The Renewed MTWR was transmitted to the District Court on December 15, 2022, and randomly assigned by computer to a different district judge – Judge Karen Scholer – under new civil action number 3:22-cv-02802-S.  The Action was thereafter transferred to Judge Boyle, and renumbered as 3:22-cv-02802-B.  The Renewed MTWR remains pending before Judge Boyle at this time.

Much has happened in the Action, before, during, and after the Original Order of Reference and the Renewed MTWR, in what might aptly be referred to as "jurisdictional ping pong." This is best understood with the timeline of relevant events set forth in Part III below. But first, a description of the parties is in order.

## II.    THE PARTIES.

A.  *The Defendants*.

As noted, Highland is the main Defendant in this Action.

There were originally two other Defendants.  One was Highland CLO Funding, Ltd. ("HCLOF"), a non-debtor entity, based in the jurisdiction of Guernsey (which is an island in the English Channel).  HCLOF held investments, including investments in vehicles referred to as "CLOs."[5]  HCLOF is now **50.58%** owned by Highland and one Highland's wholly owned

---

[4] *See Original Order of Reference*, Civ. Act. No. 3:21-cv-0842-B, Adv Proc. Doc. No. 64.

[5] "A CLO is a type of structured financial transaction that pools debt instruments issued by corporations.  The pooled loans are funneled into a trust entity commonly referred to as a 'special purpose vehicle' ('SPV') that raises funds through equity investment and by issuing notes to third-party investors. Cash flow from the CLOs is paid out to noteholders and, subsequently, to equity holders." *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.,* 620 F. Supp. 3d 36, 40 (S.D.N.Y. 2022)(docket citations omitted).

subsidiaries called HCMLP Investments, LLC. The Defendant HCLOF was dismissed with prejudice from this Action on December 7, 2021 [Adv. Proc. Doc. No. 80].

The other Defendant was Highland HCF Advisors, Ltd. ("HCFA"), a non-debtor entity that is wholly owned by Highland and has historically served as the portfolio manager for HCLOF. HCFA has never appeared in this Action. It appears HCFA was never served with the summons and complaint.[6] The court is unclear why HCFA was never served—perhaps it has no assets and the Plaintiffs decided it was not important in this dispute. Highland's Brief in support of its Renewed MTD, that is now before the court, states that HCFA's role is limited at this point in time to simply advising HCLOF regarding the liquidation of HCLOF's portfolio of investments and the recovery of cash for distributions to HCLOF's members.[7] [Adv. Proc. Doc. No. 123, p. 3, n. 11.]

B. *The Plaintiffs.*

The Plaintiffs are CLO Holdco Ltd. ("CLO Holdco") and Charitable DAF Fund, L.P. ("DAF").

DAF is the parent company of CLO Holdco. DAF is a Cayman Island hedge fund that represents that it is part of a "donor-advised fund" established for charitable purposes.

CLO Holdco is also a Cayman Island entity.

---

[6] Highland noted in a *Motion for an Order Extending the Time to File a Responsive Pleading*, filed May 6, 2021, in Civ. Act. No. 3:21-cv-0842-B, at D.C. Doc. No. 9, at p. 3, and entered on the bankruptcy docket on September 29, 2021, at Adv. Proc. Doc. No. 9, that "[w]hile Highland agreed to accept service on its own behalf, it could not and did not accept service on behalf of the other defendants, Highland HCF Advisors, Ltd. and Highland CLO Funding, Ltd. (together, the 'Other Defendants')" and that "to the best of Highland's knowledge, the Other Defendants have not been served with the Complaint such that the time for each of them to serve a responsive pleading has not begun to run." A *Waiver of Service of Summons* with respect to HCLOF was filed on June 3, 2021 (at Doc. No. 30 in both the District Court and bankruptcy court), but there does not appear on either docket any proof of service or waiver of service with respect to HCFA that would indicate that HCFA has been served as of this date.
[7] HCLOF is represented to be now "past its investment period."

4

Both Plaintiffs are part of an intricate structure of companies that were originally funded (long ago) by Highland and/or entities that were controlled by Highland's founder and former CEO Mr. James Dondero ("Mr. Dondero").

Plaintiff CLO Holdco happens to own a 49.02% equity interest in HCLOF (the aforementioned dismissed Defendant). Thus, Defendant Highland and Plaintiff CLO Holdco are essentially co-owners of HCLOF. As explained below, it is not a happy arrangement, post-bankruptcy.

C. *Interrelationships.*

While this is all complex, the key focus in this Action is the entity HCLOF and Highland's and CLO Holdco's now unhappy co-ownership of same. As noted, Highland (and its subsidiary) own 50.58% of HCLOF, and CLO Holdco owns 49.02% of HCLOF.[8] As also noted, Highland and CLO Holdco—post-bankruptcy—are not happy business partners with regard to their co-ownership of HCLOF.

It all stems back to when an unrelated third-party, called HarbourVest[9]--previously a 49.98% owner of HCLOF—transferred its ownership interest in HCLOF to Highland (actually to Highland's wholly owned subsidiary, HCMLP Investments, LLC). Before this, Highland had only owned .6% of HCLOF, so the transfer from HarbourVest made Highland (along with its subsidiary) the majority owner of HCLOF (.6% + 49.98% = 50.58%). This transfer happened pursuant to a significant settlement agreement approved during the bankruptcy case (which happened to be objected to by CLO Holdco—although CLO Holdco later withdrew its objection to the settlement).

---

[8] Apparently, a few former Highland employees collectively own or owned about .4% of HCLOF.
[9] "HarbourVest" means, collectively, HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P.

For ease of reference—and because there are a very large number of lawsuits pending in the Northern District of Texas involving Highland—this Action presently before the court will sometimes be referred to henceforth as the "<u>Lawsuit Pertaining to HarbourVest Bankruptcy Settlement</u>." The timeline below attempts to fully explain all of this.

### III.    THE RELEVANT TIMELINE

**<u>October 16, 2019</u>**:  Highland filed its voluntary chapter 11 bankruptcy case (the "<u>Petition Date</u>").

**<u>January 2020:</u>** Corporate governance changes were implemented at Highland, as a result of pressure from the Official Committee of Unsecured Creditors appointed in the bankruptcy case and the United States Trustee, both of whom expressed concerned with Highland's then-current management. New independent directors were appointed, including James P. Seery, Jr. ("Mr. Seery"), and thereafter Mr. Seery was named Chief Restructuring Officer ("CRO") and, eventually, the new Chief Executive Officer ("CEO") of Highland.  Highland's co-founder, Mr. Dondero, was removed as CEO of Highland.  This was all approved by order of the bankruptcy court.

**<u>December 23, 2020</u>**:  Several months into the bankruptcy case, Highland (through its new management) moved for bankruptcy court approval of a significant settlement it reached with the party known as HarbourVest.  To be clear, HarbourVest was/is wholly unrelated to Highland (and wholly unrelated to Mr. Dondero).  HarbourVest is a large investment firm that was a disputed creditor of Highland—asserting ***$300 million in proofs of claim against Highland***, regarding a prepetition investment opportunity that had not developed in the way HarbourVest had envisioned—specifically, HarbourVest's investment in HCLOF whereby it acquired a 49.98% equity interest in HCLOF.   Pursuant to the proposed settlement between Highland and

HarbourVest (the "HarbourVest Bankruptcy Settlement"), HarbourVest agreed to transfer its 49.98% equity interest in HCLOF to Highland (or an entity to be designated by Highland) and agreed to greatly reduce its disputed proofs of claim in the bankruptcy case from $300 million to $80 million (which would be given part unsecured creditor status and part subordinated status). The HarbourVest Bankruptcy Settlement was essentially a recission of HarbourVest's investment in HCLOF.

**January 8, 2021**:  Plaintiff CLO Holdco objected to the HarbourVest Bankruptcy Settlement, presumably at the direction of its parent, DAF (the other Plaintiff herein).  CLO Holdco argued that: (i) it (as an equity member of HCLOF) had a right to acquire the 49.98% equity interest in HCLOF that HarbourVest was going to be transferring to Highland under the HarbourVest Bankruptcy Settlement, pursuant to an alleged "Right of First Refusal" in the HCLOF membership agreement; and (ii) HarbourVest could not transfer its 49.98% equity interest to Highland without compliance with this purported "Right of First Refusal."  CLO Holdco did not object on any other basis to the HarbourVest Bankruptcy Settlement.

**January 14, 2021:**  The bankruptcy court held an evidentiary hearing on the proposed HarbourVest Bankruptcy Settlement, during which CLO Holdco voluntarily withdrew its objection to the HarbourVest Bankruptcy Settlement premised on the "Right of First Refusal." The lawyer for CLO Holdco was questioned extensively on the record as to why the objection was being withdrawn so suddenly. His reply was that, after studying the corporate documentation, he and his client had made the determination that the "Right of First Refusal" argument was not meritorious. After an extensive presentation of evidence, the bankruptcy court overruled certain remaining objections (specifically, those of certain family trusts of Mr. Dondero) and approved the HarbourVest Bankruptcy Settlement.  The Dondero family trusts appealed to the District Court

7

the approval of the HarbourVest Bankruptcy Settlement, and their appeal was dismissed for lack of standing.

**February 22, 2021:**   Very soon after the HarbourVest Bankruptcy Settlement, the bankruptcy court entered an order confirming a Chapter 11 plan for Highland [Bankr. Doc. No. 1943] (the "Confirmation Order"), which confirmed Highland's extensively mediated, negotiated, and litigated plan [Bankr. Doc. No. 1808] (the "Plan").  The Plan became effective on August 11, 2021 [Bankr. Doc. No. 2700] (the "Effective Date").  At least the following provisions of the Plan are germane to this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement.  **First**, pursuant to the Plan, the bankruptcy court expressly retained jurisdiction/authority to "allow, disallow, determine, liquidate … any Claim … including, without limitation, the resolution of any request for payment of any Administrative Expense Claim …."  Plan, Art. XI.  **Second**, the Plan defined "Administrative Expense Claim," in relevant part, as a: "Claim for costs and expenses of administration of the Chapter 11 Case . . . pursuant to sections 503(b), 507(a)(2), 507(b) … of the Bankruptcy Code, including … (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor . . . ."  Plan, Art. I.B.2.

**April 12, 2021**: Less than two months after the Plan was confirmed, and before it became effective, the Plaintiffs commenced this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement in the District Court—which was assigned Civ. Action No. 21-CV-0842-B (Judge Boyle)—naming Debtor/Highland, HCFA, and HCLOF as Defendants.  To be clear, this lawsuit was filed at a time when Highland was still a debtor in possession (its Plan had recently been confirmed, but the Plan Effective Date had not yet occurred—it occurred August 11, 2021).  The

underlying Complaint ("Complaint")[10] alleges that the conduct of Highland *during the bankruptcy case* in late 2020 and early 2021, surrounding the HarbourVest Bankruptcy Settlement—prior to the Confirmation Order—violated contractual and extra-contractual duties that Highland purportedly owed (i) to Plaintiff CLO Holdco as an investor in HCLOF; and (ii) to Plaintiff DAF as an advisee under an investment advisory agreement. The Complaint raises claims: (i) by both Plaintiffs for breaches of fiduciary duty against Highland and HCFA (Count 1); (ii) by CLO Holdco for breach of contract (i.e., the HCLOF Members Agreement)[11] against all three Defendants (Count 2); (iii) by both Plaintiffs for negligence against Highland and HCFA (Count 3); (iv) by both Plaintiffs for violations of the Racketeer Influenced and Corrupt Organizations statute (15 U.S.C. § 1961, et seq. ("RICO")) against Highland (Count 4); and (v) by CLO Holdco for tortious interference against Highland (Count 5). In Count 1 (breaches of fiduciary duty), Plaintiffs allege that Debtor/Highland violated duties to Plaintiffs under the Investment Advisers Act and Highland's "internal policies and procedures" by: (i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of HarbourVest's 49.98% equity interest in HCLOF; and (iii) "diverting" the investment opportunity in the HarbourVest entities to the Debtor without first offering it to Plaintiffs.[12] In Count 4 (RICO), Plaintiffs allege that Highland and the co-Defendants were an "association-in-fact" engaged in a pattern of racketeering

---

[10] *See* Highland Appendix in support of Renewed MTD, at Adv. Proc. Doc. No. 124, Ex. 11, Appx. 410-436. Henceforth, all references to this appendix will be cited as Highland Appendix, Ex. __, Appx. ___.

[11] Highland Appendix, Ex. 13, Appx. 459-487.

[12] While specific statutory references to the federal Investment Advisers Act are sparse in the Complaint, subsequent pleadings of the Plaintiffs make clear that they are referring to at least 15 U.S.C. § 80b-6 and 80b-15(a) (which they cite as imposing both a duty of care and a duty of loyalty, each unwaivable, on investment advisors, in favor of funds and its investors, citing *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008)); 15 U.S.C. § 206(2) (which they cite as requiring investment advisers to seek "best execution" for all their clients' transactions, citing *SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 286, 300 (E.D. Pa. 2021)); and 15 U.S.C. § 215 (which they cite as recognizing "a limited private right of action for equitable relief including disgorgement, wherein one may seek to void the rights of a violator who performs a contract in violation of the Advisers Act"). Response to Renewed MTD, pp. 12-13. Adv. Proc. Doc. No. 130.

9

activity for this same underlying conduct; namely, failing to disclose the value of HCLOF's interest and ultimately effectuating the HarbourVest Bankruptcy Settlement. Again, Highland's alleged misconduct was the act of settling the $300 million proofs of claim filed against Highland by HarbourVest, pursuant to the terms and conditions of the HarbourVest Bankruptcy Settlement. To be clear, the HarbourVest Bankruptcy Settlement was implemented after full notice to creditors in the Highland bankruptcy case, an opportunity to take discovery, an evidentiary hearing, and approval by the bankruptcy court after fulsome findings of fact and conclusions of law. And as noted earlier, one of the Plaintiffs, CLO Holdco, even objected to the HarbourVest Bankruptcy Settlement and then abruptly withdrew its objection the morning of the bankruptcy court's hearing on the HarbourVest Bankruptcy Settlement.

**May 19, 2021**: Soon after the commencement of this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, Highland moved before Judge Boyle for an order to enforce the Northern District of Texas's standing order of reference (Misc. Order No. 33) [Adv. Proc. Doc. No. 22] (the aforementioned "Motion to Enforce"), arguing that the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement should be referred to the bankruptcy court, since it asserted claims arising in, arising under, or related to Title 11 and Highland's bankruptcy case.

**May 27, 2021**: Highland also moved to dismiss the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement [Adv. Proc. Doc. No. 26] (the "Original MTD"). The Original MTD was fully briefed to Judge Boyle.[13]

**June 29, 2021:** Plaintiffs filed their response to the Motion to Enforce [Adv. Proc. Doc. No. 36], arguing the Motion to Enforce should be denied, and ***cross-moving therein that Judge***

---

[13] Defendant HCLOF, which had not yet been dismissed from the Action at this point, filed a *Motion to Dismiss and Joinder in Motion to Dismiss of Highland Capital Management, L.P.* in the District Court, Civ. Act. No. 3:21-cv-0842-B, at D. C. Doc. No. 57 (Adv. Proc. Doc. No. 57) on August 30, 2021.

***Boyle should keep the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement*** because the claims therein were subject to mandatory withdrawal of the reference, under 28 U.S.C § 157(d)— i.e., they involved "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" and could not be adjudicated in the bankruptcy court.  As earlier noted, the underlying <u>Complaint</u> (while, in essence, complaining about the HarbourVest Bankruptcy Settlement) asserts two claims that purport to be grounded in federal law:  breach of fiduciary duty under the federal Investment Advisers Act ("<u>IAA</u>") and the RICO count.  Notably, the arguments in Plaintiffs' pleading filed on June 29, 2021, appear to be identical to those in Plaintiffs' <u>Renewed MTWR</u> filed November 18, 2022.

**<u>August 26, 2021:</u>** Plaintiffs filed a motion before Judge Boyle asking her to stay this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, pending appeal of the <u>Confirmation Order</u> [Bankr. Doc. No. 55] (the "<u>Stay Motion</u>"), arguing that the <u>Plan</u> injunction might prohibit the prosecution of the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement.  The <u>Stay Motion</u> was fully briefed to Judge Boyle.

**<u>September 20, 2021:</u>** Judge Boyle granted Highland's <u>Motion to Enforce</u> and referred this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement to the bankruptcy court, including the <u>Original MTD</u>, "[p]ursuant to 28 U.S.C. § 157 … to be adjudicated as a matter related to the … Bankruptcy of Highland Capital Management, L.P." [Adv. Proc. Doc. No. 64].

**<u>November 23, 2021:</u>** Plaintiffs and Defendants next argued the <u>Stay Motion</u> and the merits of the <u>Original MTD</u>, including their alleged claims under the IAA and RICO, to the bankruptcy court.  Following the hearing the bankruptcy court denied the <u>Stay Motion</u>.[14]

---

[14] *See Order Denying Motion to Stay*, Adv. Proc. Doc. No. 81, entered on December 7, 2021.  On the same date, the bankruptcy court also entered its *Order* dismissing the Defendant HCLOF from the Action (there was no opposition to this by Plaintiffs) [Adv. Proc. Doc. No. 80].

11

**March 11, 2022:** The bankruptcy court granted the <u>Original MTD</u> and issued a written ruling on it (the "<u>Original MTD Order</u>")—never getting to the merits of the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. [Adv. Proc. Doc. No. 100]. Rather, the bankruptcy court dismissed the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement with prejudice, on the basis that the claims were precluded by the doctrines of collateral estoppel and judicial estoppel. *See Charitable DAF Fund, L.P. and CLO Holdco, Ltd. v. Highland Cap. Mgmt., L.P., et al. (In re Highland Cap. Mgmt., L.P.)*, 2022 WL 780991 (Bankr. N.D. Tex., Mar. 11, 2022). The bankruptcy court concluded that the claims in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement were estopped due to the strategic decisions of Plaintiff CLO Holdco during the bankruptcy case (i.e., choosing to withdraw its objection to the HarbourVest Bankruptcy Settlement) and that this strategic decision was also binding on its Co-Plaintiff DAF (its parent) since the two were in privity. The bankruptcy court concluded that the adjudication of the bona fides of the HarbourVest Bankruptcy Settlement precluded further litigation pertaining to the HarbourVest Bankruptcy Settlement such as this Action. On March 25, 2022, the Plaintiffs appealed the <u>Original MTD Order</u> to the District Court. *See* 3:21-cv-00695-B [D.C. Doc. No. 2].

**June 17, 2022:** Judge Boyle entered an order consolidating the appeal of the <u>Original</u> <u>MTD</u> <u>Order</u> with Plaintiff's appeal of the bankruptcy court's order denying the <u>Stay Motion</u>, which had been assigned Civ. Act. No. 3:21-cv-03129. *See* 3:21-cv-03129-B [D.C. Doc. No. 20].

**September 2, 2022**: Judge Boyle, sitting this time in an appellate capacity: (i) reversed the bankruptcy court's conclusion that collateral estoppel barred Plaintiffs' claims, but (ii) remanded on the judicial estoppel determination.[15] *See Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162, 166 (N.D. Tex. 2022) (the "<u>District Court</u>

---

[15] Judge Boyle affirmed the bankruptcy court's order denying the <u>Stay Motion</u>.

<u>9/2/22 Remand Order</u>").  Specifically, Judge Boyle determined that the bankruptcy court had erred in its ruling that ***collateral estoppel*** barred entirely the claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, but Judge Boyle separately, in evaluating the bankruptcy court's determination that ***judicial estoppel*** also barred Plaintiff's Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, ruled that the bankruptcy court did not make a certain finding necessary to conclude judicial estoppel applied (i.e., ***a finding of "inadvertence"***).  Thus, Judge Boyle remanded to the bankruptcy court for possible further findings on the ***judicial estoppel doctrine*** and presumably for an adjudication on the merits of the various claims asserted in the Lawsuit Pertaining to HarbourVest Bankruptcy Settlement if the bankruptcy court concluded judicial estoppel did ***not*** apply (after evaluating the "inadvertence" factor).

**September 8, 2022**: Meanwhile, the U.S. Court of Appeals for the Fifth Circuit affirmed, in material part, the <u>Confirmation Order</u> in support of the Highland <u>Plan</u>.  *NexPoint Advisors, L.P., et al. v. Highland Cap. Mgmt.*, L.P., 48 F.4th 419 (5th Cir. 2022).  A petition for writ of certiorari is now pending before the U.S. Supreme Court regarding the <u>Confirmation Order</u>. To be clear, there has never been a stay of the <u>Plan</u> (i.e., the <u>Confirmation Order</u>), and the Highland <u>Plan</u> has been in effect since August 11, 2021.

**October 14, 2022**: In response to the <u>District Court 9/2/22 Remand Order</u>, Highland filed a renewed motion to dismiss [Adv. Proc. Doc. No. 122] (the "<u>Renewed MTD</u>"), which is now before the court.  It addresses the "inadvertence" factor on the judicial estoppel defense (arguing that it, indeed, bars Counts 2 and 5 of the <u>Complaint</u>), and also argues that all claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement—even if not precluded by the doctrine of judicial estoppel—are not plausible on their face, under *Iqbal* and *Twombly*.[16]

---

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**November 18, 2022**:  Plaintiffs responded to the Renewed MTD and also filed their Renewed MTWR, again urging mandatory withdrawal of the reference.  ***Plaintiffs, at this point, moved to dismiss their RICO count (without prejudice)***.  *See* Plaintiff's Response to Renewed MTD at 23[17] ("Plaintiffs respectfully dismiss the RICO claim under Rule 41(a) to the extent such a claim is revealed to have existed under non-securities bases. . . . Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.").  Thus, Plaintiffs' sole "other federal law" argument at this juncture (assuming they have withdrawn their RICO claim) seemingly boils down to this:

> This adversary proceeding primarily involves fiduciary duties imposed upon Registered Investment Advisers by the Investment Advisers Act of 1940 ("Advisers Act") and corresponding state law claims for breach of those duties. As a result, presiding over this action will require extensive consideration of federal laws regulating interstate commerce, which renders withdrawal of the reference to bankruptcy court mandatory under 28 U.S.C. § 157(d).

Renewed MTWR, at ¶ 5.

**February 6, 2023**:  The bankruptcy court issued a Report & Recommendation, recommending that the Renewed MTWR be denied.  It is still pending.

**IV.    JURISDICTION AND LEGAL STANDARD.**

The bankruptcy court hereby rules on Highland's Renewed MTD.  In the event the District Court **grants** the pending Renewed MTWR of the Plaintiffs, the bankruptcy court proposes that this Memorandum Opinion and Order should be treated as a Report & Recommendation to the District Court, recommending that it grant Highland's Renewed MTD.[18]

*A.  Jurisdiction and Core Nature of the Action*

---

[17] Adv. Proc. Doc. No. 129.

[18] *See* 28 U.S.C. 1334(c)(1). *See also Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014).

Bankruptcy subject matter jurisdiction exists over the claims in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement pursuant to 28 U.S.C. §§ 1334(b) and 157.  Under 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11."[19] (Emphasis added.)  The bankruptcy courts, in turn, are delegated authority to exercise that jurisdiction from the district courts, under 28 U.S.C. § 157(a).[20]  There does not appear to be any dispute that this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement is at least "related to" the Highland bankruptcy case.  Thus, it is undisputed that bankruptcy subject matter jurisdiction exists.[21]  Moreover, the Action involves "core" matters over which a bankruptcy court may generally enter final judgments.[22] As noted recently by the Fifth Circuit:  "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.  For example, claims concerning the administration of the estate, allowance or disallowance of claims against the estate, and sale of property of the estate are all core proceedings.[23]

---

[19] 28 U.S.C. § 1334(b); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("[Section] 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e., proceedings 'related to' bankruptcy.").

[20] *In re PFO Glob., Inc.*, 26 F.4th 245, 252 (5th Cir. 2022) (citing 28 U.S.C. § 157(a)).

[21] *In re Bass*, 171 F.3d at 1022 ("To determine whether [bankruptcy] jurisdiction exists, 'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'" (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995))).

[22] As noted earlier, there is a non-debtor Defendant still technically in this lawsuit, HCFA, that is a subsidiary of Highland.  The Claims asserted against it by Plaintiffs (which appear to be asserted in Counts 1-3) arguably would not be core matters.  However, HCFA has not been served and has failed to appear or defend in this matter.  Thus, presumably there will be no adjudication of the claims against HCFA in this Action and, thus, the claims against it are irrelevant.

[23] *Foster v. Aurzada, et al.*, 2023 WL 20872, at p. 2 (5th Cir. Jan. 3, 2023) (per curium), *citing In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) and 28 U.S.C. § 157(b)(2)(A), (B), (N), (O)). *See also In re Southmark Corp.*, 163 F.3d 925, 930-31 (5th Cir. 1999) (citing 28 U.S.C. § 157(b)(3) and stating that whether claim has a state law origin is not dispositive to whether it is a core bankruptcy matter; accordingly, malpractice suit against an examiner's accountant was a core proceeding; "The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. . . . enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.").

To be clear, even though most of the Counts in this Action (Count I, breach of fiduciary duty; Count 2, breach of contract; Count 3, negligence; and Count 5, tortious interference) sound like mostly state law claims, ***they are all claims being asserted against Highland relating to its actions during its Chapter 11 bankruptcy case.***[24]   Therefore, they are "core" in nature.[25]   All of the causes of action in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement are tantamount to the assertion of administrative expense claims against a Chapter 11 Debtor.  As a general matter, the filing of administrative expense claims triggers the claims allowance process and subjects a claimant to the bankruptcy court's equitable jurisdiction.[26]

B.  *Legal Standard.*

With regard to Rule 12(b)(6), to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[27]  Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks."[28]

Set forth below, the court will properly analyze whether judicial estoppel bars Count 2 and 5 of the Complaint—as argued by Highland (this time properly considering the "inadvertence factor" which the District Court held was not considered, as required, in its <u>District Court 9/2/22 Remand Order</u>).  The court will additionally analyze (regardless of the court's determination of

---

[24] *In re Wood*, 825 F.2d at 97 n.34 (stating that whether right is state created is not dispositive to whether proceeding is core under 28 U.S.C. § 157).

[25] *Foster v. Aurzada, et al.*, 2023 WL 20872, at p. 2.

[26] *See, e.g., In re UAL Corp.*, 386 B.R. 701, 707 (Bankr. N.D. Ill. 2008) ("[B]y filing a claim … the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power … As such, there is no Seventh Amendment right to a jury trial … Claims for payment of an administrative expense are no different from other claims in this regard.") (citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)). *See also Harpole Constr., Inc. v. Medallion Midstream, LLC (In re Harpole Constr., Inc.)*, 565 B.R. 193, 202 (Bankr. D. N.M. 2017) (same); *Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 290-311 (Bankr. M.D. La. 1998) (finding breach of fiduciary duty claim against bankruptcy trustee originally filed in state court was an administrative expense claim and no jury trial right existed).

[27] *Twombly*, 550 U.S. at 570. *See also Iqbal*, 556 U.S. at 663.

[28] *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995).

the judicial estoppel question) whether any or all of the Counts (1, 2, 3, 4, and 5)[29] should be dismissed for failure to state a plausible claim. But first, the court sets forth the undisputed facts, many of which were set forth in the timeline at Part III above.

## V. UNDISPUTED FACTS.

Highland filed its Chapter 11 case on October 16, 2019. Many months before that, HarbourVest invested approximately $80 million in HCLOF. In exchange for HarbourVest's investment, HarbourVest obtained a 49.98% interest in HCLOF. The Plaintiff CLO Holdco was also an investor in HCLOF. Following this HarbourVest investment, CLO Holdco owned 49.02% of the equity of HCLOF, and the remaining 1% was held by Highland (.6%) and certain Highland employees (.4%). Thus, the entity HCLOF was owned by HarbourVest, CLO Holdco, Highland and certain employees.

Things eventually grew sour with HarbourVest. After Highland filed bankruptcy, HarbourVest filed proofs of claim against the Debtor in excess of $300 million, alleging that it was fraudulently induced into its investment by factual misrepresentations and omissions made by Mr. Dondero and certain Highland employees. *See* Highland Appendix, Ex. 1, Appx. 1-61.

The Highland bankruptcy case was very contentious with numerous large, disputed claims—some of which were the subject of mediation before respected mediators. The HarbourVest proofs of claim were among those hotly disputed claims (although not the subject of formal mediation).

Eventually, the Debtor settled the HarbourVest proofs of claim.[30] On December 23, 2020, the Debtor filed a motion [Bankr. Doc. No. 1625] (the "HarbourVest Settlement Motion")

---

[29] As noted earlier, Plaintiffs have moved to dismiss the Count 4 RICO claim.

[30] As earlier noted herein, during the bankruptcy case (in mid-January 2020)—pursuant to a settlement with the Official Committee of Unsecured Creditors—the Debtor started being governed by an Independent Board of Directors

providing notice and seeking bankruptcy court approval for same. <u>Highland Appendix</u>, Ex. 2, Appx. 62-75. As earlier noted, the key feature of the HarbourVest Bankruptcy Settlement was for HarbourVest to transfer its 49.98% equity interest in HCLOF to the Debtor's designee in exchange for greatly reduced claims against the estate. <u>Highland Appendix</u>, Ex. 2 ¶ 32, Appx. 71-72; Ex. 3, Appx. 76-95. The transfer of this 49.98% equity interest was a key component of the HarbourVest Bankruptcy Settlement. The <u>HarbourVest Settlement Motion</u> disclosed all aspects of the HarbourVest Bankruptcy Settlement, including (i) what HarbourVest was transferring; (ii) the valuation (and method of valuation) of the equity interests it was transferring; (iii) the method of transfer; and (iv) the compromised amount of the HarbourVest proofs of claim that would be allowed. <u>Highland Appendix</u>, Ex. 2 ¶ 32 & n.5, Appx. 71-72; Ex. 3, ¶ 1(b), Appx. 78.

On January 6, 2021, Mr. Dondero filed an objection to the HarbourVest Bankruptcy Settlement [Bankr. Doc. No. 1697] ("Dondero's Objection"). <u>Highland Appendix</u>, Ex. 4, Appx. 96-111. On January 8, 2021, Mr. Dondero's family trusts (i.e., Get Good Trust and The Dugaboy Investment Trust) (the "Dondero Trusts") filed their own objection [Bankr. Doc. No. 1706] (the "<u>Dondero Trusts' Objection</u>"). <u>Highland Appendix</u>, Ex. 5, Appx. 112-122.

CLO Holdco also objected to the HarbourVest Bankruptcy Settlement on January 8, 2021 [Bankr. Doc. No. 1707] ("CLO Holdco's Objection"). <u>Highland Appendix</u>, Ex. 6, Appx. 123-133. CLO Holdco challenged HarbourVest's right to effectuate the transfer of its 49.98% membership interest in HCLOF to Highland, contending that: (i) CLO Holdco and the other members of HCLOF had a "Right of First Refusal" under the HCLOF Members Agreement, *id.* ¶ 3, Appx. 125, and (ii) "HarbourVest has no authority to transfer its interest in HCLOF without first complying with the Right of First Refusal." *Id.* ¶ 6, Appx. 126. CLO Holdco set forth a lengthy

---

and an independent CRO, who was eventually named CEO (Mr. Seery). The Debtor parted ways in the process with former CEO Mr. Dondero.

analysis of the HCLOF Members Agreement, including CLO Holdco's purported "Right of First Refusal" under Article 6 thereof. *See id.* ¶¶ 9-22, Appx. 127-132.

After filing their objections, CLO Holdco and Mr. Dondero conducted discovery under Bankruptcy Rule 9014(c) and deposed Michael Pugatch, a representative of HarbourVest [Bankr. Doc. No. 1705]. Highland Appendix, Ex. 7, Appx. 134-188. CLO Holdco never contended in the bankruptcy court that: (i) the Debtor had a fiduciary duty to offer the 49.98% membership interest in HCLOF to CLO Holdco, or (ii) the Investment Advisers Act of 1940 (the "IAA") was implicated by the HarbourVest Bankruptcy Settlement.

On January 13, 2021, the Debtor filed its reply [Bankr. Doc. No. 1731] (the "Omnibus Reply") (Highland Appendix, Ex. 8, Appx. 189-211), in which it argued that the HCLOF Members Agreement did not impede the HarbourVest Bankruptcy Settlement and rebutted CLO Holdco's argument regarding the "Right of First Refusal" therein at Article 6, *id.* ¶¶ 26-39, Appx. 203-209.

Much to the bankruptcy court's surprise, at the January 14, 2021, hearing, CLO Holdco suddenly withdrew its objection, indicating that this was after analysis of the HCLOF Members Agreement and applicable law. CLO Holdco's counsel stated on the record:

> CLO Holdco has had an opportunity to review the reply briefing, and after doing so has gone back and scrubbed the HCLOF corporate documents. Based on our analysis of Guernsey law and some arguments of counsel on those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as trustee for CLO Holdco, to withdraw the CLO Holdco objection based on the interpretation of the Members Agreement.

Highland Appendix, Ex. 9 at 7:20-8:6, Appx. 219-220.

The Debtor called two witnesses in support of the HarbourVest Settlement Motion—its court-appointed CRO and CEO, Mr. Seery, and HarbourVest's representative, Mr. Pugatch. Counsel for Mr. Dondero and the Dondero Trusts cross-examined the Debtor's witnesses but did not inquire about the value of the HCLOF interests, the Debtor's purported fiduciary obligations,

or the transfer of the HCLOF interests.  Highland Appendix, Ex. 9 at 87:18-89:21, Appx. 299-301.

At the conclusion of the hearing, in reliance on CLO Holdco's withdrawal of its Objection, and

the evidence admitted at the hearing, the bankruptcy court entered an order overruling the

remaining objections and approving the HarbourVest Bankruptcy Settlement [Bankr. Doc. No.

1788] (the "HarbourVest Settlement Order").  Highland Appendix, Ex. 10, Appx. 386-409.

The HarbourVest Settlement Order expressly authorized the transfer of HarbourVest's

49.98% interest in HCLOF to a Debtor subsidiary providing, in relevant part, that "[p]ursuant to

the express terms of the [HCLOF Members Agreement] … HarbourVest is authorized to transfer

its interest in HCLOF to a wholly-owned and controlled subsidiary of the Debtor … without the

need to obtain the consent of any party or to offer such interests first to any other investor in

HCLOF." Id. ¶ 6, Appx. 390.  The bankruptcy court included this language because of concerns

that Mr. Dondero, the Dondero Trusts, or CLO Holdco, among others, might "go to a different

court somehow to challenge the transfer." Highland Appendix, Ex. 9, Appx. 368.10-369:5.

Approximately three months later, on April 12, 2021, with a new trustee in place at CLO

Holdco (Mr. Mark Patrick) and with new counsel, the Plaintiffs filed their Complaint in the District

Court, initiating this Lawsuit Pertaining to HarbourVest Settlement, in which they, inter alia, have

challenged the transfer of the HarbourVest 49.98% interest in HCLOF to Highland's subsidiary,

premised on the "Right of First Refusal." Highland Appendix, Ex. 11, Appx. 410-436. As noted

earlier, the District Court subsequently referred this Action to the bankruptcy court.  [Adv. Proc.

Doc. No. 1-1].  To re-cap. the Complaint raises claims for: (i) breach of fiduciary duty (Count 1);

(ii) breach of the HCLOF Members Agreement (Count 2); (iii) negligence (Count 3); (iv) RICO

violations (Count 4); and (v) tortious interference (Count 5) (each, a "Count" and collectively, the

"Counts").  In Count 1 (breach of fiduciary duty), the Plaintiffs allege that the Debtor violated its

"broad" duties to Plaintiffs under the IAA and the Debtor's "internal policies and procedures" by:
(i) engaging in "insider trading with HarbourVest"; (ii) "concealing" the value of HarbourVest's
49.98% interest in HCLOF; and (iii) "diverting" the investment opportunity in the HCLOF interest
to the Debtor without offering it to the Plaintiffs. *Id.* ¶¶ 67-74. In Count 4 (RICO), the Plaintiffs
allege that the Debtor and Defendant HCLOF (now dismissed), and Defendant HCFA (never
served) were an "association-in-fact" engaged in a pattern of racketeering activity for this same
underlying conduct; namely, failing to disclose the valuation of the 49.98% HCLOF interest and
ultimately effectuating the HarbourVest Bankruptcy Settlement. *Id.* ¶¶ 113-133. The Plaintiffs'
state-law Counts rest on the same underlying allegations. In support of Count 2 for breach of the
HCLOF Members Agreement, the Plaintiffs again allege that the Debtor breached the "Right of
First Refusal." Complaint ¶¶ 92-102. In Count 3 (negligence), the Plaintiffs assert that the
Debtor's actions violated the HCLOF Members Agreement and the Debtor's internal policies by
failing to accurately calculate the HCLOF interests and failing to give the Plaintiffs the Right of
First Refusal to purchase the interests. *Id.* ¶¶ 103-112. Count 5 (tortious interference) is again
premised on the Debtor's alleged interference with Plaintiffs' "Right of First Refusal" under the
HCLOF Members Agreement. *Id.* ¶¶ 134-141.

## VI. LEGAL ANALYSIS.

A. *Revisiting Judicial Estoppel as a Potential Bar to this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement: Upon Further Analysis, the Bankruptcy Court Believes Counts 2 and 5 Are Barred by Judicial Estoppel.*

This court now revisits the "judicial estoppel" doctrine, and how it might apply to this
Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, mindful of the instruction from the
District Court that the bankruptcy court previously failed to consider "inadvertence" as a factor
that might prevent application of the judicial estoppel doctrine here.

21

As earlier noted, after the bankruptcy court issued its Original MTD Order, concluding that two estoppel doctrines (collateral estoppel and judicial estoppel) precluded all claims asserted in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, there was an appeal by DAF and CLO Holdco and, thereafter, issuance of the District Court 9/2/22 Remand Order.[31] To recap, the District Court: (i) reversed the bankruptcy court's determination that collateral estoppel barred the Plaintiffs' claims, but (ii) remanded the bankruptcy court's judicial estoppel determination for consideration of whether the Plaintiffs' (CLO Holdco's) withdrawal of its objection to the HarbourVest Bankruptcy Settlement, based on its claimed Right of First Refusal, was "inadvertent" (as the District Court concluded that "inadvertence" is a factor that might negate application of the judicial estoppel doctrine and, therefore, must be analyzed here).

As explained below, the court, after scrutinizing the "inadvertence" factor, has now concluded that judicial estoppel indeed bars Count 2 (for breach of the HCLOF Members Agreement) and Count 5 (for tortious interference with the HCLOF Members Agreement).

First, to recap, judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position."[32] The purpose of the doctrine is to protect the integrity of the judicial process by "prevent[ing] parties from 'playing fast and loose' with (the courts) to suit the exigencies of self-interest."[33]  In other words, "judicial estoppel is designed to protect the judicial system, not the litigants," thus, "detrimental reliance by the party opponent is not required."[34]  "Generally, judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair

---

[31] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, 643 B.R. 162 (N.D. Tex. 2022) (slip opinion version included at Highland Appendix, Ex. 12, Appx. 437-458).
[32] *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).
[33] *Id.* (various citations therein omitted); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).
[34] *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.),* 374 F.3d 330, 334 (5th Cir. 2004) (cites omitted).

advantage in a forum provided for suitors seeking justice.'"[35]  As stated in the <u>District Court 9/2/22</u>
<u>Remand Order</u>:

> A court examines three criteria when determining the applicability of
> judicial estoppel: "(1) the party against whom judicial estoppel is sought has
> asserted a legal position which is plainly inconsistent with a prior position; (2) a
> court accepted the prior position; and (3) the party did not act inadvertently."[36]

To be clear, the District Court affirmed the bankruptcy court's determination on the first
two criteria of judicial estoppel but noted that the bankruptcy court did not evaluate whether the
Plaintiff's actions in the bankruptcy court with regard to the HarbourVest Bankruptcy Settlement
hearing were inadvertent, and, thus, remanded for a determination as to whether the Plaintiffs'
change of position was "inadvertent." Thus, the only issue before the bankruptcy court with regard
to the judicial estoppel determination is the element of "inadvertence."[37]

By way of analogy, the Fifth Circuit has held in the bankruptcy context (albeit when dealing
with the debtor; *see* note 37 *supra*) that the act of failing to disclose claims against another in a
bankruptcy case is considered "'inadvertent' only when, in general, the debtor either ***lacks***
***knowledge*** of the undisclosed claims or has ***no motive for their concealment***."[38] Applying this

---

[35] *Id.* at 334-335 (citations omitted).

[36] <u>District Court 9/2/22 Remand Order</u>, 643 B.R. at 173 (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th
Cir. 2011) (en banc)).

[37] The court notes, anecdotally, that the issue of "inadvertence" was not raised by the Plaintiffs in their prior briefing
to the bankruptcy court. Perhaps there was some confusion all around as to whether the "inadvertence" factor applies
here.  Specifically, in the Fifth Circuit, the element of "inadvertence" is generally applied in a bankruptcy context
where a ***debtor***, post-discharge, seeks to assert a claim that had or could have been addressed within the bankruptcy.
Therefore, one might be unclear whether the element of "inadvertence" applies in this case, which relates to ***a non-***
***debtor plaintiff's change of position in an adversary proceeding***. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d
550, 553 n.3 (5th Cir. 2014) (rejecting appellant's argument that the third factor of "inadvertence" applies in a non-
bankruptcy case, noting, "we apply [inadvertence] only when the judicial estoppel is based on the non-disclosure of a
claim in a prior bankruptcy proceeding"); *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 396 (5th Cir. 2003)
(applying two-factor test to judicial estoppel determination in non-bankruptcy case, namely, (a) whether position was
clearly inconsistent, and (b) whether court was convinced to accept such position).

[38] *Superior Crewboats*, 374 F.3d at 335 (emphasis added); *see also Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600-
01 (5th Cir. 2005) ("To establish that [debtor's] failure to disclose was inadvertent, [debtor] may prove either that she
did not know of the inconsistent position or that she had no motive to conceal it from the court … at the time she filed
her bankruptcy petition.").

test to the Plaintiffs here with regard to their claims against the Debtor, the Plaintiffs *knew* of and analyzed the factual and legal issues underpinning Counts 2 and 5 when they unequivocally withdrew the CLO Holdco objection to the HarbourVest Bankruptcy Settlement in the bankruptcy court.  To be clear, CLO Holdco filed a multi-page objection to the HarbourVest Bankruptcy Settlement that was almost entirely premised on the position that the transfer contemplated in the settlement, of the HarbourVest 49.98% interest in HCLOF, would violate the "Right of First Refusal" in the HCLOF Members Agreement.  *See* <u>Highland Appendix</u>, Ex. 6 ¶¶ 3, 6, Appx. 125-126. Then CLO Holdco came into the bankruptcy court the morning of the hearing on the HarbourVest Bankruptcy Settlement and stated that, after "review[ing] the reply briefing," "scrubb[ing] the HCLOF corporate documents," analyzing Guernsey law, and reviewing the "appropriate documents," it was withdrawing its objection to the HarbourVest Bankruptcy Settlement, premised on the "Right of First Refusal" being violated, "based on the interpretation of the Members Agreement." *See* <u>Highland Appendix</u>, Ex. 9, Appx. 219-220. Thus, there can be no plausible doubt that the Plaintiffs knew of the underlying facts and legal issues underlying Counts 2 and 5 when CLO Holdco withdrew its objection to the HarbourVest Bankruptcy Settlement in the prior proceedings in the bankruptcy court. Their acts were intentional based on the unrefuted record.

Plaintiffs have alleged in support of Count 2 that they were "not informed of the fact that HarbourVest had offered its shares to Defendant [Highland] for $22.5 million …" <u>Complaint</u>, ¶ 98.  This allegation, assuming for the moment it is true, would be irrelevant, but it is also inaccurate and contradicted by the record. The allegation is irrelevant because the "Right of First Refusal" (if it applied) would not be dependent on the value of the HCLOF shares/membership interests. But the allegation is inaccurate per the record, because HarbourVest did not "offer" its 49.98%

membership interest in HCLOF to Highland. Rather, a component of the HarbourVest Bankruptcy Settlement was for HarbourVest to transfer its membership interest in HCLOF to Highland's nominee in exchange for HarbourVest having allowed (but reduced) claims against the bankruptcy estate. Highland Appendix, Ex. 2 ¶ 32, Appx. 71-72; Ex. 3, Appx. 76-95. Finally, the allegation is contradicted by the record because the HarbourVest Bankruptcy Settlement Motion *expressly stated* that the net asset value of the interest was "estimated to be approximately $22 million as of December 1, 2020." Highland Appendix, Ex. 2 ¶ 32 & n.5, Appx. 71-72; Ex. 3, ¶ 1(b), Appx. 78.

As far as the notion of motive—i.e., looking at whether CLO Holdco might have had a motive for concealment—it certainly seems implausible here to conclude that the Plaintiffs would have had no motive to take inconsistent positions on Counts 2 and 5.  Why?  Thinking through this, if CLO Holdco had successfully pressed the "Right of First Refusal" argument at the bankruptcy court, things likely would not have played out well for CLO Holdco or the bankruptcy estate and its creditors. First, since HarbourVest received a total of $80 million in allowed claims in the HarbourVest Bankruptcy Settlement, presumably, Plaintiffs would have had to have something significantly more than the alleged $22.5 million value of the HCLOF membership interests (depending upon what HarbourVest thought its $80 million worth of allowed proofs of claim might ultimately yield for it during the bankruptcy case). Then, regardless of what CLO Holdco might have had to pay HarbourVest for them, the HCLOF interests would have been speculative, illiquid, hard to value, and subject to portfolio performance risk. And, all the while, HarbourVest may have continued to press its $300 million of proofs of claim in the bankruptcy case (absent the HarbourVest Bankruptcy Settlement) resulting in potential costly and lengthy litigation, and an overall reduced recovery for creditors.  By contrast, in the Complaint, the Plaintiffs now seek monetary recovery or specific performance. *See* Complaint, ¶ 143.

Accordingly, the only current risk to Plaintiffs is litigation risk. They have borne none of the speculative risk of what would happen to the value of the HCLOF membership interests, had they had the opportunity to acquire it.[39]

In summary, CLO Holdco's inconsistent positions regarding the "Right of First Refusal" under the HCLOF Members Agreement would appear, by any plausible measure, to be deliberate, directed, and ***not inadvertent***.[40]  There can be no legitimate dispute that Plaintiffs' conduct—with regard to Plaintiff CLO Holdco's withdrawal of its objection to the HarbourVest Settlement—was "advertent."[41]  Therefore, judicial estoppel bars Count 2 (for breach of the HCLOF Members Agreement) and Count 5 (for tortious interference with the HCLOF Members Agreement).  These two counts are all about the "Right of First Refusal" provision in the HCLOF Members Agreement.

### B.  Plaintiffs Failure to State a Plausible Claim on the Other Counts (First, Counts 1, 3, & 4).

With respect to all other Counts in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement, this court now undertakes a traditional Rule 12(b)(6) analysis.  The bankruptcy court has never ruled on the plausibility of the claims in this Action, under an *Iqbal* and *Twombly*

---

[39] *See Superior Crewboats*, 337 F.3d at 336 (debtors "had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim").

[40] *Superior Crewboats, Inc.*, 374 F.3d at 335-36 (debtors' non-disclosure of a viable personal injury claim in schedules filed in their no asset bankruptcy case was not "inadvertent" where debtors "were aware of the facts underlying the claim" for months, noting, "[a]lleged confusion as to a limitations period does not evince a lack of knowledge as to the existence of the claim."); *Jethroe*, 412 F.3d at 601 (failure to disclose claim was not "inadvertent" where party was aware of "the facts giving rise to them" at the time she filed bankruptcy); *U.S. ex rel. Long v. GSDMidea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015) (failure to disclose claims was not "inadvertent" where party "was aware of the facts underlying his claims as early as 2010 and [] filed this lawsuit in 2011," noting that, inadvertence through lack of knowledge cannot be shown "as long as the debtor has enough information to suggest that he may have a potential claim; the debtor need not know all of the underlying facts or even the legal basis of the claim.").

[41] It is indisputable that the Plaintiff DAF is in privity with the Plaintiff CLO Holdco and therefore cannot argue that only CLO Holdco should be bound by judicial estoppel for filing and then withdrawing its objection. *See Charitable DAF Fund L.P.*, 2022 U.S. Dist. LEXIS 175778, at *12-13 ("DAF is in privity with CLO Holdco because it controls and owns 100% of CLO Holdco … [DAF] had a fair chance to challenge the gatekeeping orders or [is] in privity with an entity that did.")

standard,[42] because with the Original MTD, the bankruptcy court simply stopped after concluding

that *all Counts* were precluded by estoppel doctrines.  Now, post-remand, and because Highland

has filed its Renewed MTD, the bankruptcy court believes it is duty-bound to evaluate all Counts

under a traditional Rule 12(b)(6) plausibility standard.  The court will start with the Counts as to

which it has concluded judicial estoppel does not apply.

> **(i)    Breach of Fiduciary Duty (Count 1).**

Plaintiffs fail to state a plausible claim for breach of fiduciary duty (Count 1).

The Plaintiffs' breach of fiduciary duty Count is premised on the Debtor's alleged: (i)

insider trading; (ii) concealment of the value of HarbourVest's 49.98% interest in HCLOF; and

(iii) diversion of an investment opportunity from Plaintiffs to the Debtor, in violation of Section

10(b) of the Securities and Exchange Act of 1934 and the IAA.  *See* Complaint ¶¶ 67-80.[43]

"Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), makes

unlawful the use of 'any manipulative or deceptive device or contrivance' in contravention of SEC

rules."[44]  "A cause of action lies under Rule 10b-5 'only if the conduct alleged can be fairly viewed

as manipulative or deceptive' within the meaning of the statute."[45]  To state a securities fraud claim

under section 10(b) and Rule 10b–5, plaintiffs must plead: "(1) a misstatement or omission; (2) of

a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately

caused the plaintiffs' injuries."[46]  "A fact is material if there is 'a substantial likelihood that, under

---

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[43] Note that where a plaintiff's breach of fiduciary duty claim is premised on theories of securities fraud, Rule 9(b)'s heightened pleading standards apply. *See Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004).

[44] *Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 608 (5th Cir. 1979).

[45] *Id.* (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473-74 (1977)).

[46] *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'"[47] "Scienter is a crucial element of the securities fraud claims."[48]

Plaintiffs' allegations underlying their breach of fiduciary duty claim are wholly conclusory. And because Plaintiffs fail to properly plead securities fraud, any fiduciary claim premised on such allegations necessarily fails as well.[49] Plaintiffs fail to plead with particularity that any alleged omissions by the Debtor posed any real significance to the Plaintiffs. *See, e.g.*, Complaint ¶¶ 82-89 (speculating about Plaintiffs' "lost opportunity cost," and ambiguously asserting that "Defendants' malfeasance" has "exposed HCLOF to a massive liability from HarbourVest").[50] These allegations also fail to give rise to a "strong interference of scienter" sufficient to state a claim under Rule 10(b).[51] Plaintiffs' allegations regarding proximate cause are likewise deficient. *See* Complaint ¶¶ 88-89 (vaguely alleging that because of Defendants' actions, "Plaintiffs have lost over $25 million").

Plaintiffs also allege breach of fiduciary duty under state law, citing some Texas law in their Response to Renewed MTD. [Adv. Proc. Doc. No. 129, p.1.] However, HCLOF is a Guernsey entity, and the HCLOF Members Agreement is governed by Guernsey law. *See* Highland Appendix, Ex. 13 at Appx. 475. Under the internal affairs doctrine, Guernsey law controls on issues of fiduciary duties to the members.[52] In any event, Plaintiffs fail to allege any breach of fiduciary claims premised on Texas state law. Texas law provides "[t]he elements of a breach of

---

[47] *Id.* (quoting *Grigsby v. CMI Corp.,* 765 F.2d 1369, 1373 (9th Cir.1985)).

[48] *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

[49] *See Town North Bank, N.A. v. Shay Fin. Servs.*, 2014 WL 4851558, at *27 (N.D. Tex. Sep. 30, 2014).

[50] Interestingly, HarbourVest is nowhere to be found in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement. HarbourVest has never complained about anything—no doubt feeling blissfully free of its former Highland entanglements.

[51] *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 635-36 (S.D. Tex. 2003); *Southland,* 365 F.3d at 368 (plaintiff must plead "more than allegations of motive and opportunity to withstand dismissal" for claim of securities fraud) (citing *Goldstein v. MCI WorldCom,* 340 F.3d 238, 250-51 (5th Cir. 2003)).

[52] *See Pridgin v. Safety-Kleen Corp.*, 2021 WL 5964630, at *2 (N.D. Tex. Dec. 16, 2021).

fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."[53]  "The plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that that a fiduciary duty has been breached."[54] The <u>Complaint</u> fails to sufficiently allege facts regarding the nature of the relationship between Plaintiffs and the Debtor. *See* <u>Complaint,</u> ¶¶ 62-63 (simply alleging that (i) the Debtor "owed a fiduciary duty to [Plaintiffs]" pursuant to which the Debtor "agreed to provide sound investment advice, and (ii) this fiduciary relationship is "broad and applies to the entire advisors-client relationship"). The <u>Complaint</u> also fails to adequately allege that any law of Guernsey setting forth fiduciary duties existed, let alone was breached for the same reasons.[55] Allegations of the Debtor's breach of its "internal policies and procedures" or the diversion of "corporate opportunities" are vague and conclusory. *See* <u>Complaint,</u> ¶¶ 72-89.[56]

Plaintiffs assert that the Debtor breached its "unwaivable" fiduciary obligation under the IAA by, among other things, "diverting a corporate opportunity." <u>Complaint,</u> ¶¶ 82-84. This Count is purportedly premised on the IAA because (i) the Debtor was the DAF's investment adviser under an advisory agreement and (ii) HCFA is HCLOF's investment adviser under a separate advisory agreement.  However, under Supreme Court precedent, the IAA ***does not provide a private right of action to sue for damages arising from breach of fiduciary duty***. *Transamerica Mtg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979) (holding there is no private right of action under Section 206 of the IAA).  Rather, a party can seek to void an investment management

---

[53] *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 221 (5th Cir. 2017) (and citations therein omitted).
[54] *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019).
[55] *Id.* (no allegation of "the nature of the fiduciary duty owed" to plaintiff).
[56] *See In re Soporex, Inc.*, 463 B.R. 344, 417 (Bankr. N.D. Tex. 2011).

agreement under Section 215 of the IAA, if the agreement's formation or performance would violate the IAA.[57]  Plaintiffs have not pleaded any such claim.

Even if there were a right of action under the IAA, Plaintiffs' allegations would still be deficient for failure to plead "duty" or "breach." The Debtor owed no duty to offer the HarbourVest 49.98% ownership interest in HCLOF to Plaintiffs. The transfer of same was effectuated in compliance with the HCLOF Members Agreement and "Right of First Refusal." The DAF's advisory agreement included full and clear disclosure that the Debtor could compete with the DAF for investments with no obligation to offer those investments to the DAF.  *See* Highland Appendix, Ex. 14, at Appx. 504-505 (indicating that the "Fund will be subject to a number of actual and potential conflicts of interest . . . including . . . that . . . Highland . . . may actively engage in transactions in the same securities sought by the Fund and, therefore, may compete with the Fund for investment opportunities . . . ").[58]  Highland also owed no duty to CLO Holdco as an investor in HCLOF; there is no fiduciary relationship between an adviser to a fund and the fund's investors.[59]

Finally, there was no corporate opportunity to divert.  HarbourVest asserted $300 million worth of proofs of claim against the Debtor seeking, among other things, effectively the rescission of its investment in HCLOF, an investment allegedly induced by fraud. The HarbourVest Bankruptcy Settlement effectuated that remedy. Because HarbourVest had no claims against

---

[57] *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.,* 620 F. Supp.3d 36, 43 (S.D.N.Y. 2022) ("Plaintiff has not adequately pleaded a claim … under the IAA … there is no private right of action to bring a claim pursuant to [Section 206 of the IAA].").

[58] *See SEC v. Cap. Gains Research Bureau, Inc.*, 375 U.S. 180, 198 (1963) (noting that "the evident purpose of the Investment Advisers Act of 1940 [was] to substitute a philosophy of disclosure for the philosophy of caveat emptor," and discussing that a disclosure of an adviser's practice of trading in the market for his own account and the same time as advising clients would satisfy the adviser's fiduciary obligations under the IAA); *Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.*, 2022 WL 4450490, at *5 (N.D. Tex. Sept. 22, 2022) (addressing argument that fiduciary obligations under the IAA cannot be waived and finding no breach of duty when conflict disclosed).

[59] *Goldstein v. SEC*, 451 F.3d 873, 879-882 (D.C. Cir. 2006).

Plaintiffs, there was no taking of a corporate opportunity. The Debtor was resolving a claim against the Debtor, not purchasing a security for cash, and could not transfer its liability to HarbourVest to Plaintiffs.

Accordingly, the breach of fiduciary duty causes of action (Count 1), should be dismissed for implausibility.

**(ii)    Negligence (Count 3).**

Next, Plaintiffs also fail to state a plausible claim of negligence (Count 3).

The analysis here is quite straightforward.  This claim is barred by the confirmed <u>Plan</u> which has been affirmed at the Fifth Circuit.[60]  Pursuant to the <u>Plan</u>, Highland was exculpated from all claims for "conduct occurring on or after the Petition Date [October 16, 2019] in connection with or arising out of (i) the … administration of the Chapter 11 Case … and (v) any negotiations, transactions, and documentation in connection with the foregoing" unless such conduct constituted "bad faith, gross negligence, criminal misconduct, or willful misconduct."[61] The negotiation and consummation of the HarbourVest Bankruptcy Settlement were part of the "administration of the Chapter 11 Case," and Highland, therefore, has been exculpated from Plaintiffs' claim for negligence.

Even absent exculpation, Plaintiffs failed to state a claim.  "The elements of a negligence claim under Texas law are: '(1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.'"[62]  The negligence allegations are speculative, conclusory, and fail to allege proximate cause.[63]

---

[60] *NexPoint v. Highland Capital Management*, 48 F.4th 419 (5th Cir. 2022).
[61] <u>Plan</u>, Art. I.B.62; Art. IX.C.
[62] *Sivertsen v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 789 (E.D. Tex. 2019) (and numerous citations therein).
[63] *See Rodgers v. City of Lancaster Police*, 2017 W.L. 457074, *17 (N.D. Tex. Jan. 6, 2017).

**(iii)    RICO (Count 4).**

Next, Plaintiffs also fail to state a plausible claim under RICO (Count 4).

First, it should be noted that Plaintiffs put in their <u>Response to Renewed MTD</u>, at page 23, that they were moving to withdraw their RICO claim, pursuant to Rule 41(a).  Specifically, they state:

> Plaintiffs respectfully dismiss the RICO claim under Rule 41(a) to the extent such a claim is revealed to have existed under non-securities bases. Because Highland has conceded that Plaintiffs' claims are actionable under the federal securities laws and the Advisers Act, and has cited same as a basis for dismissing the RICO claim, Highland is precluded and estopped from denying the violations of the Securities Laws and the Advisers Act. As such, to the extent that other, non-securities law violations may give rise to RICO violations, Plaintiffs respectfully reserve the right to bring such a claim but respectfully dismiss their RICO claim at this time.

Adv. Proc. Doc. No. 130.

The court is confused and concerned a bit about the procedure employed here.  The court is not sure that Rule 41(a) is the correct mechanism (notice, without a court order), particularly after Highland has fully briefed a Rule 12(b)(6) motion and Plaintiffs have not responded to that briefing but, rather, are reserving the right to bring their RICO claims but are dismissing them "at this time."  Accordingly, the court will briefly address why it believes Plaintiffs failed to state a plausible claim under RICO.

To state a RICO claim, a plaintiff must allege: "1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity."[64]  The RICO claim must be pleaded "with sufficient particularity" under Rule 9(b).[65]

---

[64] *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 424 (5th Cir.1987) (and citations therein).
[65] *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1138 (5th Cir. 1992).

First, the Plaintiffs failed to allege a **pattern** of **racketeering activity**. "'A pattern of racketeering activity consists of **two or more predicate criminal acts** that are (1) related and (2) amount to or pose a threat of continued criminal activity.'"[66] Plaintiffs allege **three predicate offenses**: (i) wire fraud, (ii) mail fraud, and (iii) violation of the IAA's antifraud provisions. *See* Complaint, ¶¶ 130-132. But the Plaintiffs fail to sufficiently plead any of these alleged predicate acts.

With regard to **mail fraud**, a plaintiff must allege: "(1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme."[67] The elements of **wire fraud** are the same but apply to "wire communications in furtherance of the scheme."[68] "[B]oth RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations."[69] The thrust of Plaintiffs' RICO claim is that the Debtor operated in such a way as to "violate insider trading rules and regulations when it traded with HarbourVest" by concealing "non-public information that it had not supplied" to Plaintiffs. Complaint, ¶ 118. Plaintiffs' RICO claim is a series of conclusory allegations predicated on allegations of mail, wire, and securities fraud. *See id.* at ¶¶ 113-133. But the Complaint only vaguely alleges that Mr. Seery (i) "utilized the interstate wires and/or mails to obtain or arrive at valuations of the HCLOF interests," *id.* at ¶ 120; (ii) "transmitted or caused to be transmitted through the interstate wires information to HCLOF investors from [Highland]," *id.* at ¶ 121 and (iii) "operated [the Debtor] in such a way that he concealed the true value of the HCLOF interests by utilizing the interstate wires and mails to transmit communications to the court in the form of

---

[66] *D&T Partners v. Baymark Partners LP*, 2022 WL 1458554, at *6 (N.D. Tex. May 9, 2022) (quoting *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)).
[67] *United States v. Gray*, 96 F.3d 769, 773 (5th Cir. 1996) (and cites therein).
[68] *Id.*
[69] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

written representations…" *id*. at ¶ 122. The Plaintiffs do not plead with particularity details about the contents of those alleged communications, when the Debtor had them, to whom, or where such communications were directed.[70] Plaintiffs only generally allege that Mr. Seery testified about the valuation of the HCLOF interests (<u>Complaint</u>, ¶ 125) but provide no details about mail or wire fraud. The <u>Complaint</u>, therefore, "does not identify specific acts of communication by mail or by interstate wires" undertaken by the Debtor "in furtherance of a fraudulent scheme" as required by Rule 9(b).[71]   Plaintiffs' allegations are not sufficient to state a plausible claim for relief under RICO.[72]

With regard to the ***alleged predicate offense of violation of the IAA's antifraud provisions***, alleged violations of securities laws cannot be predicate acts for a RICO claim.[73]  Thus, to the extent that the Plaintiffs' RICO claims allege "conduct that would have been actionable as fraud in connection with the purchase or sale of securities" (18 U.S.C. § 1964(c)), the claims are barred by statute. "Courts have interpreted the scope of § 1964(c)'s so-called 'securities fraud exception' broadly to apply even where a plaintiff does not expressly plead securities fraud as the predicate act, where a plaintiff could not have even brought a securities fraud claim against the particular defendant, and where a plaintiff pleads securities fraud violations but fails to state a claim for relief."[74]  The Plaintiffs' RICO claim seems predicated on violations of the securities laws: "Defendants' conduct violated the wire fraud and mail fraud laws, and the [IAA's] antifraud

---

[70] *See Merrill Lynch, Pierce, Fenner & Smith v. Young*, 1994 WL 88129, at *7-9 (S.D.N.Y. Mar. 15, 1994); *Tel-Phonic Servs.*, 975 F.2d at 1138.

[71] *See Merrill Lynch*, 1994 WL 88129, at *11; *Tel-Phonic Servs*, 975 F.2d at 1134 (Rule 9(b) requires pleading particulars of time, place, content and maker of the misrepresentation).

[72] *See Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 640 (E.D. La. 2016) (dismissing RICO claims where plaintiff provided no factual details).

[73] *See* 18 U.S.C. § 1964(c); *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 191 (5th Cir. 2010).

[74] *Woods v. Michael*, 2021 WL 1055816, at *3 (S.D. Fla. Feb. 10, 2021).

provisions." Complaint, ¶ 132. Because the RICO claim is improperly founded on alleged securities fraud, it must be dismissed.

Additionally, the Plaintiffs have failed to plead a "pattern of racketeering activity." "To prove a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity."[75] To constitute a "pattern," the activities must show "continuity."[76] "Continuity" refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[77] "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."[78]

Here, the Complaint does not allege "continuity." There is no specific "threat of repetition" or distinct threat of long-term criminal conduct. Nor do the allegations suggest the Debtor is "operating as part of a long-term association that exists for criminal purposes."[79] Plaintiffs' RICO allegations concern only non-specific conduct allegedly occurring in a limited period, September 2020 to January 2021, concerning **one transaction**—the HarbourVest Bankruptcy Settlement. *See, e.g.,* Complaint, ¶¶ 119-128. Such allegations concern short-term, discrete transactions, and do not show a "pattern of activity," or threat of "continuing racketeering activity."[80]

Finally, the Plaintiffs have failed to plausibly allege causation. RICO provides civil remedies to "[a]ny person injured in [their] business or property by reason of a violation of section

---

[75] *MWK Recruiting, Inc. v. Jowers*, 2020 WL 722997, at *8 (W.D. Tex. Dec. 8, 2020) (quoting *Tel-Phonic Servs.*, 975 F.2d at 1139-40).

[76] *Tel-Phonic Servs.*, 975 F.2d at 1140.

[77] *Id.* at 1139-40.

[78] *Id.* (quoting *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)); *see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir.1991) ("Short-term criminal conduct is not the concern of RICO.")

[79] *See Partain v. City of S. Padre Island*, 2018 WL 7202486, at *15-16 (S.D. Tex. Dec. 5, 2018) (quoting *H. J. Inc.*, 492 U.S. at 242-43).

[80] *See Calcasieu*, 943 F.2d at 1464.

1962."[81] "An injured party must show that the violation was the but-for and proximate cause of the injury."[82]

The Plaintiffs failed to allege that the Debtor's actions induced them to act or that any Debtor's actions were the proximate cause of any cognizable injury. Plaintiffs generally allege that "had Plaintiff been offered those interests [the HarbourVest 49.98% interest in HCLOF], it would have happily purchased them and therefore would have infused over $20 million in cash into the estate for the purpose of executing the HarbourVest Settlement." Complaint, ¶ 50. Such "would have" allegations are conclusory and speculative and insufficient to show proximate and but-for causation.[83]

In summary, the Plaintiffs' RICO claim fails the key elements set forth above and should be dismissed, pursuant to Rule 12(b)(6), rather than Rule 41(a).

*C. Dismissal of Counts 2 and 5 for Failure to State a Plausible Claim, in the Event the Judicial Estoppel Doctrine Does Not Bar Such Claims.*

If this court has incorrectly determined that the doctrine of judicial estoppel bars Count 2 (for breach of the HCLOF Members Agreement) and Count 5 (for tortious interference with the HCLOF Members Agreement), as set forth in Part VI.A above, this court nevertheless holds that these Counts should be dismissed under Rule 12(b)(6) for failure to state a plausible claim.

With regard to the breach of contract claim (Count 2), HarbourVest's transfer of its interests in HCLOF to a subsidiary of Highland was permitted under the plain and unambiguous

---

[81] 18 U.S.C. § 1964(c).

[82] *Robinson*, 191 F. Supp. 3d at 645 (internal quotations omitted). Causation requires "[a] direct relationship between the fraud and the injury." *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* 802 F. Supp. 2d 725, 730 (E.D. La. 2011).

[83] *See Robinson*, 191 F. Supp. 3d at 645 (allegations failed to state causation where plaintiff's "after-the-fact" and "bare assertion that she would have acted differently" had she known of certain facts were insufficient "absent additional factual allegations to support or explain this assertion,"); *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* 802 F. Supp. 2d at 729 (no causation where economic harms suffered by plaintiffs were "too remote" and causation theory "depends on a series of speculative assumptions to link the alleged fraud" with the harm).

terms of the HCLOF Members Agreement (<u>Highland Appendix</u>, Ex. 13, Appx. 459-487) and the Right of First Refusal did not apply. Plaintiffs are using semantics in an apparent attempt to recharacterize the transfer of HarbourVest's 49.98% interest in HCLOF as a "sale to Highland"; but this contradicts the facts and the terms of the transaction authorized by the bankruptcy court in the HarbourVest Settlement Order. As authorized, HarbourVest transferred its 49.98% interest in HCLOF to HCMLP Investments, LLC ("HCMLPI"), a wholly owned subsidiary (or "Affiliate") of Highland (<u>Highland Appendix</u>, Ex. 10, Appx. 386-409), as part of the settlement of HarbourVest's very large proofs of claim filed in the Highland bankruptcy case. HCMLPI's status as an "Affiliate" of Highland is established by documents of which the court may take judicial notice or on which the <u>Complaint</u> relies. *See, e.g.*, <u>Highland Appendix</u>, Ex. 3, at Appx. at 87 (showing that Highland is HCMLPI's member), Ex. 8, at Appx. 204-05 (Highland is an affiliate), and Ex. 10, at Appx. 402 (same). HarbourVest's interest could be transferred to an "Affiliate" of Highland under the HCLOF Members Agreement.

Plaintiffs' tortious interference claim (Count 5) also necessarily fails; it is duplicative of Plaintiffs' breach of contract claim and there is no breach of the HCLOF Members Agreement. Tortious interference with contract claims cannot exist in the absence of a contract right with which a defendant can interfere.[84] Further, Plaintiffs fail to explain how Highland, a party to the HCLOF Members Agreement, could have interfered with it; only third parties can interfere with a contract.[85]

---

[84] *See e.g., WickFire, L.L.C. v. Woodruff,* 989 F.3d 343, 354 (5th Cir. 2021) ("to prevail on an interference claim, the plaintiff must 'present evidence that some obligatory provision of a contract [was] breached'") (internal quotations omitted). CLO Holdco, of course, previously conceded in the bankruptcy court, in January 2021, that Plaintiffs had no contractual right of first refusal. In any event, the contract provisions clearly did not give it one under the uncontested facts at bar. Therefore, a claim for tortious interference cannot be viable.

[85] *1ˢᵗ & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 372 (Tex. App.—El Paso 2022) (and cases cited therein).

## VII. CONCLUSION.

For all the reasons stated herein, Highland's Renewed MTD is granted in full. First, Counts 2 and 5 are barred by the doctrine of judicial estoppel—due to the inconsistent/contrary positions taken by the Plaintiffs in January 2021 in the prior proceeding in the bankruptcy court involving the HarbourVest Bankruptcy Settlement. It cannot plausibly be argued that the Plaintiffs' prior inconsistent position was inadvertent.

Moreover, all Counts in this Lawsuit Pertaining to HarbourVest Bankruptcy Settlement (including Counts 2 and 5) fail to state claims that are plausible on their face under an *Iqbal/Twombly* analysis and should, accordingly, be dismissed pursuant to Rule 12(b)(6).

**IT IS SO ORDERED**.


**###END OF MEMORANDUM OPINION AND ORDER###**

United States Bankruptcy Court

Northern District of Texas

Charitable DAF Fund, LP,

    Plaintiff                                                                                    Adv. Proc. No. 21-03067-sgj

Highland Capital Management, LP,

    Defendant

# CERTIFICATE OF NOTICE

District/off: 0539-3                          User: admin                          Page 1 of 2
Date Rcvd: Jun 26, 2023                       Form ID: pdf001                       Total Noticed: 5

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 28, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | Ira D Kharasch, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067-4003 |
| aty | + | Jeffrey N. Pomerantz, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4114 |
| aty | + | Judith Elkin, Pachulski Stang Ziehl & Jones, 780 Third Avenue, 34th Floor, New York, NY 10017-2024 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion06.da.ecf@usdoj.gov | Jun 26 2023 21:49:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jun 26 2023 21:49:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 2

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| dft | | Highland HCF Advisor Ltd |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 28, 2023                  Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 25, 2023 at the address(es) listed below:**

District/off: 0539-3 | User: admin | Page 2 of 2
Date Rcvd: Jun 26, 2023 | Form ID: pdf001 | Total Noticed: 5

| Name | Email Address |
| --- | --- |
| Gregory V. Demo | on behalf of Defendant Highland Capital Management  LP gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Hayley R. Winograd | on behalf of Defendant Highland Capital Management  LP hwinograd@pszjlaw.com |
| John A. Morris | on behalf of Defendant Highland Capital Management  LP jmorris@pszjlaw.com |
| Jonathan E. Bridges | on behalf of Plaintiff Charitable DAF Fund  LP jeb@sbaitilaw.com |
| Jonathan E. Bridges | on behalf of Plaintiff CLO Holdco  Ltd. jeb@sbaitilaw.com |
| Louis M. Phillips | on behalf of Plaintiff Charitable DAF Fund  LP louis.phillips@kellyhart.com, june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com |
| Louis M. Phillips | on behalf of Plaintiff CLO Holdco  Ltd. louis.phillips@kellyhart.com, june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com |
| Mazin Ahmad Sbaiti | on behalf of Plaintiff CLO Holdco  Ltd. mas@sbaitilaw.com, krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com |
| Mazin Ahmad Sbaiti | on behalf of Plaintiff Charitable DAF Fund  LP mas@sbaitilaw.com, krj@sbaitilaw.com;jeb@sbaitilaw.com;mgp@sbaitilaw.com;mgp@sbaitilaw.com |
| Melissa S. Hayward | on behalf of Defendant Highland Capital Management  LP MHayward@HaywardFirm.com, mholmes@HaywardFirm.com |
| Robert Joel Feinstein | on behalf of Defendant Highland Capital Management  LP rfeinstein@pszjlaw.com |
| Zachery Z. Annable | on behalf of Defendant Highland Capital Management  LP zannable@haywardfirm.com |

TOTAL: 12